IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION DIVISION

CASE NO. 11-10900-CA-40

DINURO INVESTMENTS, LLC, a Florida limited liability company,

        Plaintiff,

vs.

FELISBERTO FIGUEIRA CAMACHO; FELMA, LLC, a Florida limited liability company; MERICI, LLC, a Florida limited liability company; JAVIER MACEDO; ROMAC, LLC, a Florida limited liability company; STARMAC, LLC, a Florida limited liability company; SR ACQUISITIONS – HOMESTEAD, LLC, a Florida limited liability company; SR ACQUISITIONS, LLC, a Florida limited liability company; ROMAC, LLC, a Delaware limited liability company, FELCA, LLC, a limited liability company; and OCEAN BANK,

        Defendants.

_____/

## AGREED ORDER GRANTING MOTION FOR ENLARGEMENT OF TIME

THIS MATTER is before the Court upon Defendants Romac, LLC, a Delaware limited liability company, Felca, LLC, SR Acquisitions, LLC, Felma, LLC, and Javier Macedo's (hereinafter collectively referred to as "RFSFM" ) Motion for Enlargement of Time, dated October 19, 2011. The Court having reviewed the Motion and being fully advised in the premises, it is hereby

ORDERED and ADJUDGED as follows:

1.     The Motion for Enlargement of Time is hereby Granted.

CASE NO. 11-10900-CA-40

2.      The RFSFM Defendants shall have until November 10, 2011 to serve their Reply to Dinuro's

Memorandum in Opposition to RFSFM's Motion to Dismiss First Amended Complaint and Motion to

Strike.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on 10/20/11 2:19

PM.


*Gill S. Freeman*

GILL S. FREEMAN
CIRCUIT COURT JUDGE

The movant shall, using any method(s) mandated by the Florida Rules of Civil Procedure serve all parties/counsel of record with a true and correct copy of this Order IMMEDIATELY and file proof of service with the Clerk.

Signed and stamped original Order sent to court file by Judge Freeman's staff.
Electronic copy furnished ONLY to any below listed recipient(s) by facsimile whose facsimile number(s) is/are CORRECTLY FORMATTED and listed herein.

Copies furnished to:


[Fax:Steven M. Ebner@305-347-7760]
[Fax:Scott Burr@305-444-3665]
[Fax:Jorge E. Otero@305-443-0164]
[Fax:Wilfredo A. Rodriguez@305-779-3561]

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN
AND FOR MIAMI-DADE COUNTY,
FLORIDA

DINURO INVESTMENTS, LLC

Complex Business Litigation Division
Case No. 11 - 10900 -CA-40

Plaintiffs,

vs.

FELISBERTO FIGUEIRA CAMACHO,
ET AL

ORDER   DENYING   MOTION   TO
DISMISS AMENDED COMPLAINT

Defendant.

_____/

**THIS MATTER** came before the Court on Ocean Bank's Motion to Dismiss the
Amended Complaint and the Court having reviewed the file, the motion, memoranda, and being
otherwise fully advised in the premises, it is

**ORDERED** and **ADJUDGED** that the Motion is **DENIED**.  *Chodorow v Porto Vita
Ltd.*, 954 So. 2d 1240, 1242 (Fla. 3d DCA 2007); *see also Regis Ins. Co. v. Miami Management
Inc.,* 902 So. 2d 966, 968 (Fla. 4th DCA 2005)("A Court may not go beyond the four corners of
the complaint and must accept the facts alleged therein and exhibits attached as true, with all
reasonable inferences drawn in favor of the pleader.").  A motion to dismiss is not a substitute
for a motion for summary judgment. *Roberts v. Children's Medical Services,* 751 So. 2d 672,
673 (Fla. 2d DCA 2000); *Baycon Industries v Shea*, 714 So. 2d 1094, 1095 (Fla. 2d DCA 1998).
Defendant has ten (10) days within which to file its answer.

**DONE** and **ORDERED** in Chambers at Miami, Miami-Dade County, Florida, on this
4th day of November, 2011.

GILL S. FREEMAN
CIRCUIT COURT JUDGE

cc:     Counsel / Parties of record

**Conformed Copy**

NOV 0 4 2011

Gill S. Freeman
Circuit Court Judge

EXHIBIT

_A_

IN THE CIRCUIT COURT FOR THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION DIVISION

**CASE NO. 11-10900 CA 40**
**Consolidated for Discovery Only With**
**CASE NO. 11-10901 CA 40**

DINURO INVESTMENTS, LLC,
a Florida limited liability company,

        Plaintiff,

v.

FELISBERTO FIGUEIRA CAMACHO,
et al.,

        Defendants.

_____/

**GENERAL MAGISTRATE'S REPORT AND RECOMMENDATION**
**GRANTING DEFENDANTS' MOTION FOR PROTECTIVE ORDER**
**STAYING DISCOVERY AND ON PLAINTIFF'S MOTION TO OVERRULE**
**OBJECTIONS TO SUBPOENA DUCES TECUM TO NON-PARTY**
**SAN REMO HOMES AT HOMESTEAD, LLC**

THIS CAUSE came on for hearing on December 8, 2011, pursuant to the Court's

Order of Referral on Defendants, Merici, LLC, Starmac, LLC, SR Acquisitions-Homestead,

LLC, SR Acquisitions, LLC, Romac, LLC, Felca, LLC, Flema LLC, and Javier Macedo

(collectively, "Objecting Defendants"), September 27, 2011, Motion for Protective Order

Staying Discovery, and on the Plaintiff, Dinuro Investments, Inc.'s, September 29, 2011,

Motion to Overrule Objections, and the undersigned, having heard argument of counsel and

having reviewed the Objecting Party's September 6, 2011, Notice of Objection to the

Page 1 of 4

Plaintiff's August 25, 2011, Notice of Intent and the proposed subpoena duces tecum to non-party San Remo Homes at Homestead, LLC, and the Objecting Party's October 12, 2011, Response, and Plaintiff's October 17, 2011, Reply, and having reviewed the discovery at issue and the file herein and being otherwise advised in the premises, it is

FOUND AND RECOMMENDED as follows:

**A.     The Objecting Defendants' Motion for Protective Order Staying Discovery**

1.      The Objecting Defendants' Motion for Protective Order is granted.  The Magistrate finds good cause for a brief stay of discovery in light of the Court's Orders denying Ocean Bank's Motions to Dismiss and based upon the Court's indication that the rulings on the Objecting Defendants' pending Motions to Dismiss in the cases consolidated for discovery are anticipated within the next thirty days.

2.      Accordingly, discovery between and among the Plaintiff and the Objecting Parties only is stayed until **the earlier of ten days following entry of the Court's Order on the pending motions to dismiss or Monday, January 24, 2012.**

3.      Once the Court enters its Order on the pending Motions to Dismiss, the Plaintiff's counsel shall serve a copy of the Court's Order by fax to all counsel of record.  Any party may then seek an expedited conference call case management conference with the Magistrate's office on the issue of discovery and discovery scheduling.

**B.     The Objecting Defendants' Objection to Plaintiff's Notice of Intent to Serve a Subpoena Duces Tecum to Non-Party San Remo Homes at Homestead, LLC**

CASE NO. 11-10900 CA 40 Consolidated for Discovery Only With CASE NO. 11-10901 CA 40

4.      The Magistrate reviewed the Objecting Defendants' objections to Plaintiff's August 25, 2011, proposed Subpoena Duces Tecum to non-party San Remo Homes at Homestead, LLC. Specifically, the Objecting Defendants raised objections that the twenty-two categories of documents (not including subparts) requested in Schedule "A" were overbroad, irrelevant (i.e., not calculated to lead to the discovery of admissible evidence), and "improper."

5.      In the event that the Objecting Parties' Motion to Dismiss is denied (or, for example, if the Court grants their Motion to Dismiss in part, without prejudice, and denies their Motion in part), the Magistrate will provide an expedited hearing on the merits of the Defendants' Objections and set a deadline for San Remo Homes at Homestead, LLC's service of objections and a hearing on those objections.

6.      Because this Report was prepared without the benefit of a hearing transcript, either side may seek rehearing or clarification by setting a conference call hearing with the Magistrate's office prior to the expiration of the deadline for exceptions.

7.      Absent timely exceptions pursuant to Fla. R. Civ. P. 1.490(h), the Objecting Defendants' Motion to Stay is granted until the earlier of (a) ten days following entry of the Court's Orders on the pending motions to dismiss, or (b) Monday, January 24, 2012.

(This Report is continued on the next page.)

Page 3 of 4

CASE NO, 11-10900 CA 40 Consolidated for Discovery Only With CASE NO. 11-10901 CA 40

This Report and Recommendation is filed with the Clerk of Court in Miami, Miami-

Dade County, Florida, this 8th day of December, 2011.

Elizabeth M. Schwabedissen
GENERAL MAGISTRATE

Conformed copies furnished via telecopy to:

Scott A. Burr, Esq.
Jorge E. Otero, Esq.
Steve Ebner, Esq.
Wilfredo A. Rodriguez, Esq.

Page 4 of 4

IN THE CIRCUIT COURT OF THE ELEVENTH
JUDICIAL CIRCUIT IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION SECTION

CASE NO. 11-10900 CA (40)

DINURO INVESTMENTS, LLC,

      Plaintiff,

v.

FELISBERTO FIGUEIRA CAMACHO,
FELMA, LLC, MERICI, LLC, JAVIER
MACEDO, ROMAC, LLC, STARMAC,
LLC, SR ACQUISITIONS –
HOMESTEAD, LLC, SR ACQUISITIONS,
LCC, ROMAC, LLC, FELCA, LLC, and
OCEAN BANK,

      Defendants.

_____/

### DEFENDANT OCEAN BANK'S ANSWER & AFFIRMATIVE DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant, Ocean Bank ("Ocean Bank"), by and through undersigned counsel, hereby submits its Answer and Affirmative Defenses to the First Amended Complaint served by Plaintiff, Dinuro Investments, LLC ("Plaintiff"), states:

### ANSWER

Ocean Bank answers each of the like-numbered paragraphs of the First Amended Complaint as follows:

### NATURE OF THE CASE

1.    Ocean Bank admits only that Defendant, San Remo Homes at Homestead, LLC ("San Remo"), defaulted on a loan made by Ocean Bank to San Remo and that Ocean Bank subsequently sold the defaulted loan to Defendant, SR Acquisitions – Homestead, LLC ("SR"),

at par value.  Ocean Bank is without knowledge of the remaining allegations of Paragraph 1 and those allegations are, therefore, denied.

2. Ocean Bank denies that it "substantially assisted" any of the remaining Defendants in the purported "scheme" set forth in Paragraph 1.  Ocean Bank is without knowledge of the remaining allegations of Paragraph 2 and those allegations are, therefore, denied.

3. Ocean Bank admits that Plaintiff seeks to recover monetary damages and attorneys' fees and costs, but denies that Plaintiff is entitled to the relief it seeks and denies the propriety of Plaintiff's causes of action.

## JURISDICTION AND VENUE

4. Ocean Bank admits that Plaintiff seeks damages in excess of $15,000, but denies that Plaintiff is entitled to the relief it seeks.

5. Ocean Bank admits it is subject to the Court's personal jurisdiction, but denies that it has "committed violations of Florida law in Florida" that bring it within this Court's personal jurisdiction.

6. Admitted.

## THE PARTIES

7. Without sufficient knowledge and, therefore, denied.

### The San Remo at Home-Homestead Corporate Structure

8. Without sufficient knowledge and, therefore, denied.

9. Without sufficient knowledge and, therefore, denied.

10. Without sufficient knowledge and, therefore, denied.

11. Without sufficient knowledge and, therefore, denied.

12. Without sufficient knowledge and, therefore, denied.

13.    Without sufficient knowledge and, therefore, denied.

**The SR-Homestead Corporate Structure**

14.    Without sufficient knowledge and, therefore, denied.

15.    Without sufficient knowledge and, therefore, denied.

16.    Without sufficient knowledge and, therefore, denied.

17.    Without sufficient knowledge and, therefore, denied.

18.    Without sufficient knowledge and, therefore, denied.

19.    Without sufficient knowledge and, therefore, denied.

**Other Co-Conspirator**

20.    Admitted.

## FACTUAL BACKGROUND

21.    Without sufficient knowledge and, therefore, denied.

22.    Without sufficient knowledge and, therefore, denied.

23.    Without sufficient knowledge and, therefore, denied.

24.    Without sufficient knowledge and, therefore, denied.

25.    Without sufficient knowledge and, therefore, denied.

26.    Without sufficient knowledge and, therefore, denied.

27.    Without sufficient knowledge and, therefore, denied.

28.    Admitted.

29.    Admitted.

30.    Paragraph 30 elicits a legal conclusion, with respect to which no response is required.

31.    Admitted.

32.    Admitted.

3

33.    Admitted.

34.    Ocean Bank admits only that Defendant, Javier Macedo ("Macedo"), is a director of Ocean Bank. Ocean Bank denies that Macedo was permitted or able to trade on his inside position at Ocean Bank for any purpose. Ocean Bank is without knowledge as to the remaining allegations of Paragraph 34 and those allegations are, therefore, denied.

35.    Ocean Bank admits only that it provided proposed commitment letters to San Remo's members in anticipation of the maturity of the subject loan. Ocean Bank is without knowledge as to the remaining allegations of Paragraph 35 and those allegations are, therefore, denied.

36.    Ocean Bank admits only that San Remo's members did not execute the proposed commitment letters for renewal of the subject loan and that San Remo subsequently defaulted on the loan.

37.    Ocean Bank is without sufficient knowledge of the allegations of Paragraph 37 and those allegations are, therefore, denied.

38.    Admitted.

39.    Ocean Bank admits only that SR purchased the subject loan from Ocean Bank shortly after August 6, 2010. Ocean Bank is without sufficient knowledge of the remaining allegations of Paragraph 39 and those allegations are, therefore, denied.

40.    Ocean Bank is without sufficient knowledge of the allegations of Paragraph 40 and those allegations are, therefore, denied.

41.    Ocean Bank is without sufficient knowledge of the allegations of Paragraph 41 and those allegations are, therefore, denied.

42.    Admitted.

43. Ocean Bank admits that Plaintiff's principals requested certain financial information regarding Defendant San Remo, which Ocean Bank did not make available because was precluded from disclosing such information by applicable banking laws. Ocean Bank is without sufficient knowledge of the remaining allegations of Paragraph 43 and those allegations are, therefore, denied.

44. Ocean Bank admits that on or about August 5, 2011, it renewed its offer to Plaintiff's principals to purchase the subject loan based on the information previously provided by Ocean Bank to Plaintiff's principals. Ocean Bank admits that Plaintiff and its principals requested additional time to evaluate the loan, which Ocean Bank did not provide. Ocean Bank is without sufficient knowledge of the remaining allegations of Paragraph 44 and those allegations are, therefore, denied.

45. Ocean Bank admits only that SR purchased the subject loan from Ocean Bank on or about August 9, 2010. Ocean Bank denies that it provided favorable treatment to Macedo and/or SR. Otherwise, denied.

46. Without sufficient knowledge and, therefore, denied.

47. Admitted.

48. Admitted.

49. Without sufficient knowledge and, therefore, denied.

50. Ocean Bank denies any wrongdoing on its part. Ocean Bank is without sufficient knowledge of the remaining allegations of Paragraph 50 and those allegations are, therefore, denied.

## CAUSES OF ACTION

## COUNT I – BREACH OF CONTRACT (FLORIDA LAW)

### (Plaintiff v. Defendants Merici and Starmac)

51.     Ocean Bank repeats its responses above to Paragraphs 1 through 50 of the First Amended Complaint as if set forth fully herein.

52 – 55.     The allegations of Paragraphs 52 through 55 do not apply to Ocean Bank and, therefore, no response is required.

## COUNT II – BREACH OF IMPLIED COVENANT OF
## GOOD FAITH AND FAIR DEALING – FLORIDA LAW

### (Plaintiff v. Defendants Merici and Starmac)

56.     Ocean Bank repeats its responses above to Paragraphs 1 through 50 of the First Amended Complaint as if set forth fully herein.

57 – 60.     The allegations of Paragraphs 57 through 60 do not apply to Ocean Bank and, therefore, no response is required.

## COUNT III – BREACH OF FIDUCIARY DUTY – FLORIDA LAW

### (Plaintiff v. Defendants Merici and Starmac)

61.     Ocean Bank repeats its responses above to Paragraphs 1 through 50 of the First Amended Complaint as if set forth fully herein.

62 – 64.     The allegations of Paragraphs 62 through 64 do not apply to Ocean and, therefore, no response is required.

## COUNT IV – AIDING AND ABETTING BREACH OF FIDUCIARY DUTY –
## FLORIDA LAW

### (Plaintiff v. Defendants Camacho, Macedo, Romac, Felma,
### SR-Florida City, SR Acquisitions, Felca, and Ocean Bank)

65.     Ocean Bank repeats its responses above to Paragraphs 1 through 50 and 61 through 64 of the First Amended Complaint as if set forth fully herein.

66.     Without sufficient knowledge and, therefore, denied.

67.     Without sufficient knowledge and, therefore, denied.

6

68.     Without sufficient knowledge and, therefore, denied.

69.     Without sufficient knowledge and, therefore, denied.

70.     Without sufficient knowledge and, therefore, denied.

71.     Ocean Bank repeats its responses above to Paragraphs 20, 42 and 44 of the First Amended Complaint as if set forth fully herein. Ocean Bank denies that it had knowledge of any breach of fiduciary duty or that it in any way substantially assisted in inducing such breach. Otherwise, denied.

72.     Denied.

## COUNT V – FRAUD AND DECEIT – FLORIDA LAW

### (Plaintiff v. Defendants Camacho, Macedo, Merici, and Starmac)

73.     Ocean Bank repeats its responses above to Paragraphs 1 through 50 and 61 through 64 of the First Amended Complaint as if set forth fully herein.

74 – 75.     The allegations of Paragraphs 74 and 75 do not pertain to Ocean Bank and, therefore, no response is required.

## COUNT VI – AIDING AND ABETTING FRAUD AND DECEIT – FLORIDA LAW

### (Plaintiff v. Felca, Felma, Roma, SR-Florida City, SR Acquisitions and Ocean Bank)

76.     Ocean Bank repeats its responses above to Paragraphs 1 through 50 and 73 through 75 of the First Amended Complaint as if set forth fully herein.

77.     Without sufficient knowledge and, therefore, denied.

78.     Without sufficient knowledge and, therefore, denied.

79.     Ocean Bank repeats its responses above to Paragraphs 42 through 45 of the First Amended Complaint as if set forth fully herein. Ocean Bank denies that it had knowledge of any fraud or that it in any way substantially assisted in inducing such breach. Otherwise, denied.

80.     Without sufficient knowledge and, therefore, denied.

7

81.     Denied.

## COUNT VII – CONSPIRACY – FLORIDA LAW

### (Plaintiff v. Defendants Camacho, Macedo, Starmac, Merici, Romac, Felma, Felca, Ocean Bank, SR-Florida City and SR Acquisitions)

82.     Ocean Bank repeats its responses above to Paragraphs 1 through 50, 61 through 64, and 73 through 75 of the First Amended Complaint as if set forth fully herein.

83.     Denied as to Ocean Bank.  Ocean Bank is without sufficient knowledge of the remaining allegations of Paragraph 83 and those allegations are, therefore, denied.

84.     Denied as to Ocean Bank.  Ocean Bank is without sufficient knowledge of the remaining allegations of Paragraph 84 and those allegations are, therefore, denied.

85.     Denied as to Ocean Bank.  Ocean Bank is without sufficient knowledge of the remaining allegations of Paragraph 85 and those allegations are, therefore, denied.

## PRAYER FOR RELIEF

Ocean Bank denies that Plaintiff is entitled to the relief it seeks from Ocean Bank and denies any allegations to that effect.

## JURY DEMAND

Because the nature of the relief Plaintiff seeks and the nature of its underlying claims is derivative by nature, Plaintiff is not entitled to a trial by jury on any of its claims.

Any allegation or averment in the First Amended Complaint not specifically admitted above is hereby denied.

## AFFIRMATIVE DEFENSES

Ocean Bank asserts the following affirmative defenses:

8

### First Affirmative Defense

Plaintiff's claims are barred because it lacks standing to assert its claims, which are derivative claims by nature. More specifically, Plaintiff's claims are based upon injury sustained by San Remo, of which it was a member. Plaintiff alleges that by purchasing the subject loan from Ocean Bank and seeking to enforce the loan documents in question, Defendants Merici, LLC ("Merici") and Starmac, LLC ("Starmac"), as well as their related entities, have in essence usurped an opportunity that was rightfully San Remo's—i.e., the opportunity to develop the property that served as collateral for the subject loan and derive the profits therefrom. Plaintiff alleges that Merici, Starmac and their related entities effectively diluted Plaintiff's interest in San Remo by defaulting on the subject loan causing San Remo to lose the property in question to SR, of which Plaintiff is not a member. Plaintiff's claims are derivative in nature and cannot form the basis of direct claims by Plaintiff. Accordingly, Plaintiff lacks standing to assert its claims as a matter of law.

### Second Affirmative Defense

Plaintiff's claims as to Ocean Bank are barred as a matter of law since Plaintiff has sustained no damages as a result of Ocean Bank's sale of the subject loan to SR. More specifically, Plaintiff admits that any damages it may have suffered were the result of Merici and Starmac electing to default on the loan that is the subject of this litigation, and not the subsequent sale of said loan to SR. SR's subsequent enforcement of the terms of the loan is no different than if Ocean Bank had elected to enforce the underlying loan itself rather than sell the loan. Had Ocean Bank elected instead to enforce the obligations set forth in the loan documents, as it clearly had the right to do, Plaintiff (derivatively through San Remo) would have sustained the same damages it now claims it suffered as a result of Ocean Bank's sale of the loan. That is, San Remo would have still lost the property that served as collateral for the loan and Plaintiff's

9

interest in San Remo would have been diluted accordingly. Plaintiff's claims are barred as to Ocean Bank because Plaintiff has sustained no damages as a result of Ocean Bank's conduct.

### Third Affirmative Defense

Plaintiff's claims as to Ocean Bank are barred to the extent they are founded upon allegations that Ocean Bank demonstrated favorable treatment to Macedo and/or SR in its sale of the loan. To the contrary, Ocean Bank demonstrated favorable treatment to Plaintiff and its principals, the Romagloni Brothers, by offering them the opportunity to purchase the loan upon receipt of an offer by SR and its principals to purchase the loan and prior to the closing of such purchase. Despite offering Plaintiff and its principals the opportunity to purchase the loan on two separate occasions, Plaintiff demanded that Ocean Bank provide confidential financial information to Plaintiff and its principals which Ocean Bank was not authorized to release to Plaintiff or its principals as a matter of law and which information was not provided to SR or its principals and related entities during their own evaluation of the purchase of the loan. Notwithstanding, Ocean Bank demonstrated favorable treatment to Plaintiff and its principals by offering them the opportunity to purchase the loan, presumably to the detriment of Macedo, SR, Merici, Starmac and their related entities. Accordingly, Plaintiff's claims are barred to the extent they rely on allegations that Ocean Bank demonstrated favorable treatment to SR and/or Macedo, and their related parties, as such allegations are categorically untrue.

### Fourth Affirmative Defense

Plaintiff's claims are barred under the doctrine of unclean hands. Plaintiff cannot complaint about Ocean Bank's sale of the subject loan to SR when Plaintiff's principals were engaged in discussions to complete the identical transaction on Plaintiff's and their own behalf. Plaintiff's contention that the sale of the loan to SR was a breach of duty (contractual or otherwise), or fraudulent, is inconsistent with Plaintiff's own admitted attempts to purchase the

loan to the detriment of Merici, Starmac, Macedo and their related entities and parties. Plaintiff's admitted efforts to purchase the loan for itself or its members demonstrate their unclean hands.

### Fifth Affirmative Defense

Plaintiff's claims are barred as to Ocean Bank because of the non-existence of any underlying tort or wrong by Ocean Bank. Plaintiff contends that Ocean Bank favored SR and/or Macedo by refusing to provided confidential financial information regarding San Remo to Plaintiff's principals for their evaluation of their own purchase of the loan. However, Plaintiff was precluded as a matter of law from disclosing such information and its refusal to do so cannot form the basis of any claims against Ocean Bank as a matter of law.

### Sixth Affirmative Defense

Plaintiff's claims are barred by its failure to mitigate appropriately their damages. Specifically, Plaintiff and its principals were provided two separate opportunities to purchase the loan themselves and refused to do so amid unreasonable demands that Ocean Bank provide confidential financial information that it was precluded from disclosing. Plaintiff had an opportunity to mitigate its damages and failed to do so by refusing to purchase the loan.

WHEREFORE, Defendant, Ocean Bank, demands that the Court enter judgment in its favor, giving Plaintiff nothing, and awarding Ocean Bank its attorneys' fees and costs in this action, and for such further relief as the Court deems just and proper.

11

AVILA RODRIGUEZ, HERNANDEZ
MENA & FERRI, LLP
*Attorneys for Defendant Ocean Bank*
2525 Ponce de Leon Boulevard, Suite 1225
Coral Gables, Florida 33134
Telephone: (305) 779-3560
Facsimile: (305) 779-3561
Email: frodriguez@arhmf.com
Email: erodriguez@arhmf.com


By: _____
Wilfredo A. Rodriguez
Florida Bar No: 334936
Eduardo F. Rodriguez
Florida Bar No: 036423


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 22nd day of December, 2011, a true and correct copy of the foregoing was furnished by U.S. Mail upon: **Carlos F. Concepcion, Esq., Scott A. Burr, Esq. and Patricia M. Montes de Oca, Esq., Concepcion Martinez & Bellido**, 255 Aragon Avenue, Second Floor, Coral Gables, Florida 33134; **Jorge E. Otero, Esq., Jorge E. Otero & Associates, P.A.** 75 Valencia Avenue, Second Floor, Coral Gables, Florida 33134; **Joshua W. Dobin, Esq. and Eric Ostroff, Esq., Meland Russin & Budwick, P.A.**, 3000 Southeast Financial Center, 200 South Biscayne Boulevard, Miami, Florida 33131; and **Steven Ebner, Esq., Shutts & Bowen, LLP**, 1500 Miami Center, 201 South Biscayne Boulevard, Miami, Florida 33131.


By: _____
Eduardo F. Rodriguez


12

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

DINURO INVESTMENTS, LLC

Plaintiffs,

vs.

FELISBERTO FIGUEIRA CAMACHO, ET AL

Defendant.

_____/

Complex Business Litigation Division
Case No. 11 – 10900 -CA-40
Case No. 11-10901 – CA -40

ORDER GRANTING MOTIONS TO DISMISS AMENDED COMPLAINT

**THIS MATTER** came before the Court on all Defendants', except Ocean Bank, and Camacho who has not been served, Motions to Dismiss the Amended Complaint and the Court having reviewed the file, the motion, memoranda, and being otherwise fully advised in the premises, it is

**ORDERED** and **ADJUDGED** that the Motions are **GRANTED** on the grounds asserted.

Plaintiff shall have ten (10) days from the date hereof within which to file its Second Amended Complaint.

**DONE** and **ORDERED** in Chambers at Miami, Miami-Dade County, Florida, on this 28 day of December, 2011.

_____
GILL S. FREEMAN
CIRCUIT COURT JUDGE

cc:     Counsel / Parties of record

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION DIVISION

DINURO INVESTMENTS, LLC, a Florida limited    CASE NO. 11-cv-10900 CA 40
liability company,
           Plaintiff,

v.

FELISBERTO FIGUEIRA CAMACHO; FELMA,
LLC, a Florida limited liability company; MERICI,
LLC, a Florida limited liability company; JAVIER
MACEDO; ROMAC, LLC, a Florida limited
liability company; STARMAC, LLC, a Florida
limited liability company; SR ACQUISITIONS –
HOMESTEAD, LLC, a Florida limited liability
company; SR ACQUISITIONS, LLC, a Florida
limited liability company; ROMAC, LLC, a
Delaware limited liability company; FELCA, LLC,
a limited liability company; and OCEAN BANK,

           Defendants,

_____/

### ORDER GRANTING PLAINTIFF DINURO'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO FILE THE SECOND AMENDED COMPLAINT

       THIS CAUSE having come before me on Plaintiff Dinuro Investments LLC's ("Dinuro")

Unopposed Motion for Extension of Time to file the Second Amended Complaint (the "Motion") and,

having reviewed the Motion and being duly advised in the premises, it is hereby ORDERED AND

ADJUGED as follows:

       1.     Plaintiff Dinuro's Motion is GRANTED.

       2.     Plaintiff Dinuro shall file its Second Amended Complaint, on or before January 19, 2012.

       DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on 01/06/12

5:40 PM.

                            *Gill S. Freeman*

                            GILL S. FREEMAN
                            CIRCUIT COURT JUDGE

CASE NO. 11-10900-CA 40

The movant shall, using any method(s) mandated by the Florida Rules of Civil Procedure serve all parties/counsel of record with a true and correct copy of this Order IMMEDIATELY and file proof of service with the Clerk.

Signed and stamped original Order sent to court file by Judge Freeman's staff. Electronic copy furnished ONLY to any below listed recipient(s) by facsimile whose facsimile number(s) is/are CORRECTLY FORMATTED and listed herein.

Copies furnished to:

Scott A. Burr, Esq. [Fax: Scott A. Burr@305-444-3665]
Steve Ebner, Esq. [Fax: Steve Ebner@305-347-7760]
Eduardo F. Rodriguez, Esq. [Fax: Eduardo F. Rodriguez@305-779-3561]

2

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION
DIVISION

DINURO INVESTMENTS, LLC, a Florida limited   CASE NO. 11-cv-10900 CA 40
liability company,

                Plaintiff,

v.

FELISBERTO FIGUEIRA CAMACHO;
FELMA, LLC, a Florida limited liability
company; MERICI, LLC, a Florida limited liability
company; JAVIER MACEDO;
ROMAC, LLC, a Florida limited liability
company; STARMAC, LLC, a Florida limited
liability company; SR ACQUISITIONS –
HOMESTEAD, LLC, a Florida limited liability
company; SR ACQUISITIONS, LLC, a Florida
limited liability company; ROMAC, LLC, a
Delaware  limited liability company;
FELCA, LLC, a limited liability company; and
OCEAN BANK,

                Defendants,

_____/

## PLAINTIFF DINURO'S REPLY TO OCEAN BANK'S
## AFFIRMATIVE DEFENSES

Plaintiff Dinuro Investments, LLC ("Dinuro") replies to Defendant Ocean Bank's

affirmative defenses as follows:

### First Affirmative Defense

The First Affirmative Defense is denied.

### Second Affirmative Defense

The Second Affirmative Defense is denied.

### Third Affirmative Defense

The Third Affirmative Defense is denied.

### Fourth Affirmative Defense

The Fourth Affirmative Defense is denied.

### Fifth Affirmative Defense

The Fifth Affirmative Defense is denied.

### Sixth Affirmative Defense

The Sixth Affirmative Defense is denied.

WHEREFORE, Plaintiff Dinuro demands that judgment be entered in its favor and against Defendant Ocean Bank.

Respectfully submitted,

**CONCEPCION MARTINEZ & BELLIDO**
*Attorneys for DINURO INVESTMENTS, LLC,*
255 Aragon Avenue, Second Floor
Coral Gables, Florida 33134
Tel.: (305) 444-6669; Fax: (305) 444-3665

By: _____
   CARLOS F. CONCEPCION
   Florida Bar. No. 386730
   SCOTT A. BURR
   Florida Bar No. 99325

and

JORGE E. OTERO & ASSOCIATES, P.A.
75 Valencia Avenue, Second Floor
Coral Gables Florida 33134
Tel.: (305) 567-9000; Fax:  (305) 443-0164

By: _____
   JORGE E. OTERO
   Florida Bar No. 438596

2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by

U.S. Mail this January 11, 2012 to:

Steve Ebner, Esq.                    Wilfredo A. Rodriguez, Esq.
Shutts & Bowen, LLP                  Eduardo F. Rodriguez, Esq.
1500 Miami Center                    Avila, Rodriguez, Hernandez, Mena & Ferri, LLP.
201 South Biscayne Blvd.             2525 Ponce de Leon Boulevard, Suite 1225
Miami, FL. 33131                     Coral Gables, FL. 33134
Fax: (305) 347-7760                  Fax: (305) 779-3561

_____
SCOTT A. BURR

3

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION
DIVISION

ROBERTO ROMAGNOLI, MARCO
ROMAGNOLI, and DINURO INVESTMENTS,
LLC, a Florida limited liability company,

CASE NO. 11-cv-10901 CA 40

Consolidated with

Plaintiff,

CASE NO. 11-cv-10900 CA 40

v.

FELISBERTO FIGUEIRA CAMACHO; FELMA,
LLC, a Florida limited liability company; MERICI,
LLC, a Florida limited liability company; JAVIER
MACEDO; ROMAC, LLC, a Delaware limited
liability company; STARMAC, LLC, a Florida
limited liability company; SR-ACQUISITIONS,
LLC, a Florida limited liability company; SR
ACQUISITIONS – FLORIDA CITY, LLC, a
Florida limited liability company; SR
ACQUISITIONS-HOMESTEAD, LLC; FELCA,
LLC, a limited liability company; and OCEAN
BANK,

Defendants.

_____/

## SECOND AMENDED COMPLAINT

Plaintiffs Roberto Romagnoli ("R. Romagnoli"), Marco Romagnoli ("M. Romagnoli"),
and Dinuro Investments, LLC ("Dinuro") sue Felisberto Figueira Camacho ("Camacho"), Javier
Macedo Rodriguez ("Macedo"), Merici, LLC ("Merici"), Starmac, LLC ("Starmac"), SR
Acquisitions, LLC ("SR Acquisitions"), SR Acquisitions-Florida City, LLC (SR-Florida City"),
SR Acquisitions-Homestead, LLC ("Homestead"), Romac, LLC (Romac"), Felca, LLC ("Felca")
and Ocean Bank ("the Bank"), and state:

CASE NO. 11-cv-10901 CA 40
11-cv-10900 CA 40

## NATURE OF THE CASE

1.      In 2003, four successful businessmen, the Romagnoli brothers, M. Romagnoli and

R. Romagnoli, Camacho and Macedo decided to join together and develop townhome

communities in the Miami-Dade area.  The partners decided that they would each contribute one-

third of the capital needed for each project.

2.      At first, things appeared from the outside to be going well. The business partners'

initial development community in Kendall was a great success, so much so that the partners

decided to go ahead in 2005 to borrow money to acquire land in Florida City and Homestead to

develop townhome communities.

3.      Greed, however, would soon rear its ugly head. Two of the partners, Camacho

and Macedo, decided to squeeze out their third partner, the Romagnoli brothers, so they could

increase their one-third interests in the financially successful projects to one-half interests.

4.      Defendants Camacho and Macedo, through the closed-companies they control,

effectuated this scheme, in part, by causing the corporate entities through which the townhome

communities were to be built, called the "San Remo' companies, to default on their loans from

Ocean Bank.

5.      Camacho and Macedo then created new and independent entities, called the "SR

Acquisitions" companies, for purchasing that debt from the Bank and foreclosing; the result of

which was to cripple the operations of the San Remo development projects.

6.      Defendants Camacho and Macedo orchestrated this scheme with the agreement of

the defendant companies of which they are the principals and of the Bank.

2

CASE NO. 11-cv-10901 CA 40
11-cv-10900 CA 40

7.       Plaintiffs seek to recover monetary damages for Breach of Contract, Breach of Fiduciary Duty, Tortious Interference with a Contractual Relationship, Tortious Intereference with a Business Relationship, violation of 12 U.S.C. § 375, and Conspiracy. Plaintiffs also seek to recover their attorneys' fees and costs incurred in prosecuting this action to vindicate their rights.

## JURISDICTION AND VENUE

8.       This Court has subject matter jurisdiction as this is an action for damages in excess of $15,000.00, excluding costs, interest and attorney's fees, and is within the monetary jurisdiction of this Court.

9.       This Court has personal jurisdiction over Defendants because: (a) Defendants are organized under Florida law; or (b) Defendants engage in substantial and not isolated activities in the State of Florida and benefit substantially from these activities; or (c) Defendants are authorized to do and do substantial business in Florida; or (d) Defendants committed violations of Florida law in Florida.

10.     Venue is proper in this Circuit as one or more Defendants are found in this Circuit.

## THE PARTIES

11.     Plaintiff Roberto Romagnoli is a principal in and co-managing member of Dinuro. He is a permanent resident of the United States and resides in Miami-Dade County, Florida. R. Romagnoli is the brother of M. Romagnoli (collectively the "Romagnoli brothers").

3

CASE NO. 11-cv-10901 CA 40
11-cv-10900 CA 40

12.     Plaintiff Marco Romagnoli is a principal in and co-managing member of Dinuro. He is a permanent resident of the United States and resides in Miami-Dade County, Florida. M. Romagnoli is the brother of R. Romagnoli.

13.     Plaintiff Dinuro is a limited liability company organized under the laws of Florida with its principal place of business in Miami-Dade County, Florida. Dinuro acts through its principals, the Romagnoli brothers, and is a co-managing member of San Remo Homes at Florida City, LLC and San Remo Homes at Homestead, LLC.

14.     Defendant Camacho is a Venezuelan citizen who maintains a residence in Miami-Dade County, Florida. Camacho is a principal in and the sole managing member of co-Defendants Merici and Felma.

15.     Defendant Merici is a limited liability company organized under the laws of Florida with its principal address in Miami-Dade County, Florida. Merici acts through its principal, Defendant Camacho, and is a co-managing member of San Remo Homes at Florida City, LLC and San Remo Homes at Homestead, LLC.

16.     Defendant Felma is a limited liability company organized under the laws of Florida with its principal address in Miami-Dade County, Florida. Felma acts through its principal, Camacho, and is the sole managing member in co-Defendant Merici.

17.     Defendant Macedo is a permanent resident of the United States and resides in Miami-Dade, County, Florida. Macedo is a principal in and the sole managing member of co-Defendants Starmac and Romac. He is also a director and shareholder in Ocean Bank.

18.     Defendant Starmac is a limited liability company organized under the laws of Florida with its principal address in Miami-Dade County, Florida. Starmac acts through its

4

principal, Macedo, and is a co-managing member of San Remo Homes at Florida City, LLC and San Remo Homes at Homestead.

19.     Defendant Romac is a limited liability company organized under the laws of Delaware. Romac acts through its principal, Macedo, and is a co-managing member of SR-Florida City and SR-Homestead.

20.     Defendant SR Acquisitions is a limited liability company organized under the laws of Florida with its principal address in Miami-Dade County, Florida.  SR Acquisitions acts through its principals, co-Defendants Camacho and Macedo.

21.     Defendant SR-Florida City is a limited liability company organized under the laws of Florida with its principal address in Miami-Dade County, Florida. SR-Florida City acts through its principals, Camacho and Macedo, and is the co-managing member of  SR Acquisitions.

22.     Defendant SR-Homestead is a limited liability company organized under the laws of Florida with its principal address in Miami-Dade County, Florida. SR-Homestead acts through its principals, Camacho and Macedo, and is the co-managing member of  SR Acquisitions.

23.     Defendant Felca is a limited liability company organized under the laws of Florida. Felca acts through its principal, Camacho, and is a co-managing member of SR-Florida City and SR-Homestead.

24.     Defendant Ocean Bank is a Florida for profit corporation with its principal address in Miami-Dade County, Florida. Defendant Macedo is a director and shareholder of the Bank.

5

CASE NO. 11-cv-10901 CA 40
11-cv-10900 CA 40

## FACTUAL BACKGROUND

25.     Beginning in 2003, M. and R. Romagnoli entered into a business venture with their long-time friends and fellow Venezuelans, Camacho and Macedo, to build townhome developments in the Miami-Dade County area. At that time, the Romagnoli brothers, Macedo and Camacho each agreed to contribute one-third of the capital necessary for each project. It was further agreed that M. Romagnoli would be the partner to serve as the general manager supervising the projects and that his contribution in "sweat equity" would be recognized by his partners in their future dealings.

### San Remo Homes, LLC

26.     In October 2003, the partners, acting through their respective companies, Dinuro, Starmac, and Merici, formed San Remo Homes, LLC to acquire land in Kendall, Florida and to develop a 53 unit townhome project known as "Forest Lake Paradise."

27.     On or about January 2005, Dinuro, Merici, and Starmac, acting through the Romagnoli brothers, Camacho and Macedo, entered into an Operating Agreement to govern San Remo Homes, LLC. A true and correct copy of the Operating Agreement is attached as Exhibit "A."

28.     The Operating Agreement provided that each member would contribute as follows:

| Name: | Capital Contribution | LLC Interest |
|---|---|---|
| Dinuro | $1,000,000.00 | 50 Shares |
| Starmac | $1,000,000.00 | 50 Shares |
| Merici | $1,000,000.00 | 50 Shares |

6

CASE NO. 11-cv-10901 CA 40
11-cv-10900 CA 40

29.     The partners were richly successful, constructing 53 units at considerable profit.

30.     While the partners were building Forest Lake Paradise, they were also scouting for new property, and in 2005 identified parcels of land in Florida City and Homestead to acquire and develop as their next joint projects.

**San Remo Homes at Florida City**

31.     On February 10, 2005, Dinuro, Merici, and Starmac, acting through the Romagnoli brothers, Camacho and Macedo, formed San Remo Homes at Florida City for the purpose of acquiring land in Florida City and developing a 205 unit townhome project known as "Key Lakes."

32.     On or about February 1, 2005, Dinuro, Merici, and Starmac, acting through the Romagnoli brothers, Camacho and Macedo, entered into an Operating Agreement to govern San Remo Homes at Florida City, LLC.  A true and correct copy of the Operating Agreement is attached as Exhibit "A."

33.     The Operating Agreement provided that each member would contribute as follows:

| **Name**: | **Capital Contribution** | **LLC Interest** |
|---|---|---|
| Dinuro | $1,497,271.96 | 50 Shares |
| Starmac | $1,497,271.96 | 50 Shares |
| Merici | $1,497,271.96 | 50 Shares |

34.     The Operating Agreement further contained the following anti-dilution of interest provisions to preserve each member's one-third (1/3) interest in San Remo-Florida City:

4.2     **Additional Contributions.** Except as specifically set forth

7

in this Agreement, no Member shall be required to make any additional Capital Contributions.

4.5.   **Advances by Members**.   The Members anticipate that additional funds and working capital may be required for the working capital needs of the LLC and the Project.   The Members agree that one or more Members may, from time to time, advance such additional funds and working capital as may be required for such purposes in the form of loan advances and such advances shall be repaid to such Member(s) as the Member's cash flow shall permit. . . .

35.   The Operating Agreement also provides that:

7.4   . . . any act of a Manager which may materially affect the LLC or its property shall require the prior consent of the Members. . . .

36.   Finally, the Operating Agreement states that:

7.5   Except with the written consent or ratification of all of the Members, no Manager shall have the authority to: . . .

7.5.2   Do any act that would make it impossible or unreasonably burdensome to carry on the ordinary business and purpose of the LLC;

37.   On May 31, 2005, San Remo-Florida City purchased real property in Florida City on which to develop its townhome residential project. The Romagnoli brothers, Camacho, and Macedo rolled-over their profits from San Remo Homes, at LLC to the San Remo-Florida City project. In order to finance the purchase of the Florida City land, San Remo-Florida City obtained a mortgage loan in the amount of $3,600,000 from the Bank.

38.   On May 31, 2005, San Remo-Florida City executed a Mortgage Deed, Security Agreement and Promissory Note in favor of the Bank.

39.   To secure payment of the loan, the Romagnoli brothers, Camacho and Macedo

8

CASE NO. 11-cv-10901 CA 40
11-cv-10900 CA 40

agreed to pledge San Remo-Florida City's leases, rents and profits, its personal property, certain

bank accounts, intangibles and other rights as collateral. In addition, the Romagnoli brothers,

Macedo, and Camacho were required to, and did, provide their own personal guarantees.

**San Remo Homes at Homestead**

    40.    On July 11, 2005, Dinuro, Merici, and Starmac, acting through the Romagnoli

brothers, Camacho and Macedo, formed San Remo Homes at Homestead for the purpose of

acquiring land in Homestead and developing a 38 unit townhome project known as "Tropical

Villas."

    41.    On that same date, Dinuro, Merici, and Starmac, acting through the Romagnoli

brothers, Camacho and Macedo, entered into an Operating Agreement to govern San Remo

Homes at Homestead, LLC. A true and correct copy of the Operating Agreement is attached as

Exhibit "B."

    42.    The Operating Agreement provided that each member should contribute to the

San Remo-Homestead as follows:

| **Name:** | **Capital Contribution** | **LLC Interest** |
|---|---|---|
| Dinuro | $200,000 | 50 Shares |
| Starmac | $200,000 | 50 Shares |
| Merici | $200,000 | 50 Shares |

    43.    The Operating Agreement further contained the following anti-dilution of interest

provisions to preserve each member's one-third (1/3) interest in San Remo-Homestead:

    4.2    **Additional Contributions.** Except as specifically set forth
in this Agreement, no Member shall be required to make any
additional Capital Contributions.

9

CASE NO. 11-cv-10901 CA 40
11-cv-10900 CA 40

4.5.   **Advances by Members**.   The Members anticipate that additional funds and working capital may be required for the working capital needs of the LLC and the Project.   The Members agree that one or more Members may, from time to time, advance such additional funds and working capital as may be required for such purposes in the form of loan advances and such advances shall be repaid to such Member(s) as the Member's cash flow shall permit. . . .

44.   The Operating Agreement also provides that:

7.4     . . . any act of a Manager which may materially affect the LLC or its property shall require the prior consent of the Members.
. . .

45.   Finally, the Operating Agreement states that:

7.5   Except with the written consent or ratification of all of the Members, no Manager shall have the authority to: . . .

7.5.2   Do any act that would make it impossible or unreasonably burdensome to carry on the ordinary business and purpose of the LLC;

46.   On September 29, 2005, San Remo-Homestead purchased real property in Homestead to develop its townhome residential project.   The Romagnoli brothers, Camacho, and Macedo rolled-over their profits from San Remo Homes ,LLC to the San Remo Homes at Homestead project. In order to finance the purchase, San Remo-Homestead obtained a mortgage loan in the amount of $1,080,000 from the Bank.

47.   On September 29, 2005, San Remo-Homestead executed a Mortgage Deed, Security Agreement and Promissory Note in favor of the Bank.

48.   To secure payment of the loan, the Romagnoli brothers, Camacho and Macedo had San Remo-Homestead pledge its leases, rents and profits, its personal property, certain bank

10

CASE NO. 11-cv-10901 CA 40
11-cv-10900 CA 40

accounts, intangibles and other rights as collateral. In addition, the Romagnoli brothers, Macedo, and Camacho were required to, and did, provide their own personal guarantees.

**Camacho and Macedo Decide to Default on the Bank Loans**

49. From 2005 through 2009, the Romagnoli brothers, Camacho and Macedo agreed to modify the mortgage loan on the Florida City and Homestead properties three times.

50. The Bank's loans were set to mature in March 29, 2010.

51. Sometime before March 29, 2010, Macedo and Camacho concocted a scheme whereby – trading on Macedo's inside position as a director of the Bank --they would purchase the San Remo-Florida City and San Remo-Homestead promissory notes themselves from the Bank and foreclose on the pledged collateral of San Remo-Florida City. The objective and effect of the scheme was to eliminate the Romagnoli brother's one-third (1/3) ownership interest in the San Remo properties and to ultimately obtain them for themselves after a judicial sale of the foreclosed property.

52. On February 24, 2010 and March 6, 2010, the Bank provided the Romagnoli brothers, Camacho and Macedo with proposed commitment letters, which provided certain pay down requirements and extension terms for the continuation of the loans. True and correct copies of the commitment letters are attached as Exhibit "C."

53. Unlike three prior instances, this time Camacho and Macedo decided not to sign the commitment letters on behalf of Merici and Starmac. Instead, Camacho and Macedo decided to allow San Remo-Florida City and San Remo-Homestead to default on the loan to the Bank.

54. At about the same time, on or about March 4, 2010, Camacho and Macedo offered to the Romagnoli brothers that they would have San Remo-Florida City and San Remo

11

Concepción Martinez & Bellido, Attorneys at Law
255 Aragon Avenue • 2nd Floor • Coral Gables, FL 33134 • T 305.444.6669 • F 305.444.3665
www.cfclaw.com

Homestead redeem Dinuro's membership interests in exchange for the Romagnoli brothers' personal guarantee of any amounts that could be payable by them with regard to the guarantees they delivered to Ocean Bank.  In other words, in consideration for the Romagnoli brothers' surrender of their interest in San Remo-Florida City and San Remo-Homestead, Defendants Camacho and Macedo would indemnify the Romagnoli brothers for any amounts due under their personal guarantees to Ocean Bank.

55.     On May 11, 2010, the Bank provided notice to the San Remo-Florida City and San Remo-Homestead that they were in default on the loans.

**Camacho and Macedo Agree to Buy the Loans**

56.     On or about July 2, 2010, Camacho informed the Romagnoli brothers by letter of his and Macedo's intention to create a competing company that would purchase the San Remo-Florida City and San Remo-Homestead loan from the Bank. A true and correct copy of the letter of July 2, 2010, is attached as Exhibit "D." Defendants Macedo and Camacho invited Dinuro to purchase membership interests in "SR Acquisitions, LLC," which was to be formed for this purpose. Camacho and Macedo represented to Dinuro that the members of the new company would be Starmac, Merici, and if the Romagnoli brothers chose, Dinuro.  Defendants Macedo and Camacho, however, only gave the Romagnoli brothers 24 hours to make a decision whether to invest in the new company.  Under the circumstances, the Romagnoli brothers did not participate.

57.     Under the terms of the proposed SR-Florida City Operating Agreement -- unlike with the San Remo-Florida City and San Remo-Homestead Operating Agreements -- the Romagnoli brothers and Dinuro would not be protected from being squeezed out of SR-Florida

12

CASE NO. 11-cv-10901 CA 40
11-cv-10900 CA 40

City and SR-Homestead by Macedo and Camacho.

**Ocean Bank Sells the Loans to its Insider Macedo**

58.     On July 19, 2010, the Bank informed Dinuro that it had received a request to purchase the San Remo-Florida City and San Remo-Homestead loans and for the "purchase price that equates to the unpaid principal balance plus all accrued and default interest up until the day of closing." The Bank informed Dinuro that if it chose to purchase the loan that it had to pay the same amount and close in 48 hours, or by July 22, 2010.

59.     In order to evaluate any such purchase, the Romagnoli brothers asked Ocean Bank to provide it with certain crucial information, but the Bank refused. Specifically, the Romagnoli brothers, on behalf of Dinuro, requested Ocean Bank to provide them with copies of San Remo-Florida City's and San Remo-Homestead's 2008 and 2009 tax returns, financial information of the guarantors, and related financial information, which was not otherwise available to them, but was to Macedo, as a director and shareholder of the Bank. The Bank refused to provide the information.

60.     On August 5, 2010, the Bank once again requested Dinuro to inform it if it wanted to purchase the loan "based on the information that was already sent to you," which did not include the requested and relevant financial information of the guarantors. Further, the Romagnoli brothers' father had just died, so Dinuro requested that the Bank provide it with additional time to evaluate the loan. The Bank refused to provide the additional time.

61.     While the Bank was feigning an interest in selling the loans to the Romagnoli brothers, it turns out that the Bank had been negotiating for months to sell the loans to Macedo behind the Romagnoli brothers' backs.

13

CASE NO. 11-cv-10901 CA 40
11-cv-10900 CA 40

62.     Pursuant to their scheme, on August 6, 2010, Camacho and Macedo created SR-Florida City and SR-Homestead to purchase the promissory notes from the Bank.

63.     On August 9, 2010, SR-Florida City and SR-Homestead purchased from the Bank all of the Bank's rights under the loan documents.  The Bank sold the loans on better terms to Macedo and Camacho than it had offered to Romagnoli.  The Bank waived all interest and default penalties for Macedo.  The Bank gave its director and shareholder, Macedo, favorable treatment.

64.     On September 10, 2010, SR-Florida City and SR-Homestead provided San Remo-Florida City and San Remo-Homestead notice that it had acquired the Bank's interest in the mortgage loan, that San Remo-Florida City and San Remo-Homestead were in default, and demanded payment.

**Camacho and Macedo Foreclose on the Property**

65.     On February 16, 2011, Macedo and Camacho filed complaints styled *SR Acquisitions-Florida City, LLC v. San Remo Homes at Florida City, LLC*, Case No. 11-05222 CA 20 and *SR Acquisitions-Homestead, LLC v. San Remo Homes at Homestead, LLC*, Case No. 11-05222 CA 20, in the 11th Judicial Circuit Court to foreclose on the mortgage and all of the collateral.

66.     On December 16, 2011, Macedo and Camacho obtained Final Judgments of foreclosure.  The sale date for the properties is February 7, 2011.

67.     As a result of Macedo and Camacho's actions, the Romagnoli brothers and Dinuro have and will suffer substantial monetary damage as set forth below:

14

CASE NO. 11-cv-10901 CA 40
11-cv-10900 CA 40

(a) The purchase of the land by SR-Florida City and SR-Homestead immediately resulted in a gain to SR-Florida City and SR-Homestead as the "book value" of the promissory notes was lower than the fair market value of the properties subject to the mortgages and Dinuro was deprived of the ability to share in this "gain."

(b) Dinuro was denied its contractual and proportionate rights to share in the future profits from the sale of developed units. San Remo-Florida City had intended to construct 205 units on its property and in 2009 projected a profit margin of $50,000 to $60,000 per unit at the time of completion. San Remo-Homestead had intended to construct 38 units on its property and in 2009 projected a profit margin of $60,000 per unit at the time of completion.

(c)     Dinuro was deprived of its proportionate share of $3.2 million in expenses related to the pre-development planning and design of the developed units.

(d)     Dinuro has lost its proportionate share of profits from San Remo Homes, LLC that were rolled over into the San Remo-Florida City project.

(e)     The Romagnoli brothers may be liable for any deficiencies resulting from the sale of the property.

(f)     The Romagnoli brothers sustained losses due to the decrease in value of Dinuro after the wrongs committed by their partners to the San Remo companies.

## CAUSES OF ACTION

### COUNT I – BREACH OF CONTRACT (FLORIDA LAW)

#### (Plaintiff Dinuro v. Defendants Merici and Starmac)

68.     Plaintiff repeats the allegations contained in paragraphs 1 through 67.

15

CASE NO. 11-cv-10901 CA 40
11-cv-10900 CA 40

69.     The Operating Agreements (attached as Exhibits "A" and "B") are contracts among the members of the San Remo-Florida City and among the members of San Remo-Homestead. Macedo signed them on behalf of Starmac and Camacho signed them on behalf Merici. The Operating Agreements contain a choice of law provision specifying that the "Agreement shall be governed by, and interpreted in accordance with, the laws of the State of Florida." (San Remo-Florida City Agreement ¶ 16.11; San Remo-Homestead Agreement ¶ 15.11).

70.     Defendants Merici, by Camacho, and Starmac, by Macedo, breached Sections 7.4, 7.5 and 7.5.2 of the Operating Agreements by participating in the conduct taken by Camacho and Macedo as set forth above "which may materially affect the LLC or its property" and "would make it impossible or unreasonably burdensome to carry on the ordinary business and purpose of the LLC" without the prior consent of all members, including Dinuro.

71.     In addition, Defendants Merici and Starmac have acted in bad faith and breached the implied covenant of good faith and fair dealing by participating in and/or acquiescing in Camacho's and Macedo's misuse of confidential business information, for their own purposes and not for the benefit of the San Remo-Florida City and San Remo-Homestead and all of its members, and the creation of a competing company through which they could steal San Remo-Florida City's and San Remo-Homestead's assets for their own. This conduct is a breach of Sections 7.4 and 7.4.17 of the Operating Agreements.

72.     Dinuro has sustained damages as set forth in paragraph 67 as a result of Defendant Merici's and Starmac's breaches of contract.

16

CASE NO. 11-cv-10901 CA 40
11-cv-10900 CA 40

## COUNT II – BREACH OF FIDUCIARY DUTY – USURPATION OF CORPORATE OPPORTUNITY

### (Plaintiff Dinuro v. Defendants Merici and Starmac)

73.     Plaintiff repeats the allegations contained in paragraphs 1 through 67.

74.     Defendants Merici and Starmac are fiduciaries of San Remo-Florida City and San Remo Homestead, and their members, and owe to them the duty to conduct the business of San Remo-Florida City and San Remo-Homestead loyally, faithfully, carefully, diligently and prudently.  *See* Fla. Stat. §608.4225; Operating Agreements ¶ 7.8.  Defendants Merici, by Camacho, and Starmac, by Macedo, owed Dinuro a fiduciary duty to safeguard Dinuro's capital investment and act in the best interests of the San Remo-Florida City and not for themselves.

75.     Defendants Merici, by Camacho, and Starmac, by Macedo, breached their fiduciary duties to Dinuro by:

(a)     refusing to execute the commitment letters;

(b)     creating SR-Florida City and SR-Homestead, competing companies in which they invested sufficient capital to purchase from Ocean Bank the mortgage loans; and

(c)     participating in and/or acquiescing in Camacho and Macedo's decisions to have SR-Florida City deem San Remo-Florida City, and SR-Homestead deem San Remo-Homestead, in default of their loans and proceedeing to foreclose on the assets (the real and personal property) of San Remo-Florida City and San Remo-Homestead.

76.     Plaintiff Dinuro has sustained damages as set forth in paragraph 67 above.

17

CASE NO. 11-cv-10901 CA 40
11-cv-10900 CA 40

## COUNT III – BREACH OF FIDUCIARY DUTY – FLORIDA LAW

### (Plaintiffs M. and R. Romagnoli v. Defendants Camacho and Macedo)

77.     Plaintiff repeats the allegations contained in paragraphs 1 through 67.

78.     Defendants Camacho and Macedo are fiduciaries of the Romagnoli brothers, who reposed trust and confidence in them as business partners.  Camacho and Macedo owe to the Romagnoli brothers the duty to conduct the business of San Remo-Florida City and San Remo-Homestead loyally, faithfully, carefully, diligently and prudently.  *See* Fla. Stat. §608.4225; Operating Agreements ¶ 7.8. Defendants Camacho and Macedo owed the Romagnoli brothers a fiduciary duty to safeguard their capital investment and act in the Romagnoli brothers' best interest and not for themselves.

79.     Defendants Camacho and Macedo breached their fiduciary duties to the Romagnoli brothers by:

(a)     refusing to execute the commitment letters on behalf of their respective companies;

(b)     creating SR-Florida City and SR-Homestead, competing companies in which they, through their wholly-owned companies, invested sufficient capital to purchase from Ocean Bank the mortgage loans; and

(c)     deciding to have SR-Florida City deem San Remo-Florida City, and SR-Homestead deem San Remo-Homestead, in default of their loans and proceedeing to foreclose on the assets (the real and personal property) of San Remo-Florida City and San Remo-Homestead.

80.     Plaintiff Dinuro has sustained damages as set forth in paragraph 67 above.

18

CASE NO. 11-cv-10901 CA 40
11-cv-10900 CA 40

## COUNT IV – TORTIOUS INTERFERENCE IN CONTRACTUAL RELATIONSHIP

### (Plaintiff Dinuro v.   Defendant Ocean Bank)

81.     Plaintiff repeats the allegations contained in paragraphs 1 through 67.

82.     Dinuro, Starmac and Merici are parties to contracts, the Operating Agreements for San Remo-Florida City and San Remo-Homestead.

83.     Defendant Bank had knowledge of the Operating Agreements and, through Macedo, knew that SR-Florida City and SR-Homestead intended to foreclose on the San Remo companies' Loans to the detriment of Dinuro and the San Remo companies.

84.     The Bank intentionally and unjustifiably interfered with Dinuro's contractual relationships with Starmac and Merici by committing the following acts:

(a)     facilitating to an insider of the Bank, Macedo, the opportunity for SR-Florida City and SR-Homestead to buy the San Remo-Florida City and San Remo-Homestead Loan documents in order to foreclose on the Loans (to the advantage of the insider), and thereby cause Merici and Starmac to breach the Operating Agreements; and

(b)     by not sharing contemporaneously the same financial information regarding the Loans and the guarantors with the Romagnoli brothers as it provided to Macedo, in order to favor its insider, and thereby cause Merici and Starmac to breach the Operating Agreements.

85.     The Bank's conduct was not privileged.

86.     Plaintiff Dinuro has sustained damages as set forth in paragraph 67 above.

19

CASE NO. 11-cv-10901 CA 40
11-cv-10900 CA 40

### COUNT V – TORTIOUS INTERFERENCE IN BUSINESS RELATIONSHIP

#### (Plaintiffs M. and R. Romagnoli v. Defendant Ocean Bank)

87.     Plaintiff repeats the allegations contained in paragraphs 1 through 67.

88.     The Romagnoli brothers, Camacho, and Macedo have an advantageous business relationship.

89.     Defendant Bank had knowledge of that advantageous business relationship and, through Macedo, knew that SR-Florida City and SR-Homestead intended to foreclose on the San Remo companies' Loans to the detriment of the Romagnoli brothers and the San Remo companies.

90.     The Bank intentionally and unjustifiably interfered with the Romagnoli brothers' advantageous business relationship with Camacho and Macedo by committing the following acts:

(a)     facilitating to an insider of the Bank, Macedo, the opportunity for SR-Florida City and SR-Homestead to buy the San Remo-Florida City and San Remo-Homestead Loan documents in order to foreclose on the Loans (to the advantage of the insider), and thereby cause Camacho and Macedo to terminate their business relationship with the Romagnoli brothers; and

(b)     by not sharing contemporaneously the same financial information regarding the Loan and the guarantors with the Romagnoli brothers as it provided to Macedo, in order to favor its insider, and thereby cause Camacho and Macedo to terminate their business relationship with the Romagnoli brothers.

91.     The Bank's conduct was not privileged.

20

CASE NO. 11-cv-10901 CA 40
11-cv-10900 CA 40

92.     Plaintiff Dinuro has sustained damages as set forth in paragraph 67 above.

## COUNT VI – VIOLATION OF 12 U.S.C. §375

### (Plaintiffs v. Defendant Macedo)

93.     Plaintiff repeats the allegations contained in paragraphs 1 through 67.

94.     12 U.S.C. §375(a) applied at the time of the Bank's sale of the Loan documents to SR-Florida City and SR-Homestead.

95.     12 U.S.C. §375(a) provides that "[a]ny member bank may sell securities or other property to any of its directors, or to a firm of which any of its directors is a member, in the regular course of business on terms not more favorable to such director or firm than those offered to others. . . ."

96.     12 U.S.C. § 503 makes it unlawful for any director or officer of any member bank to "knowingly violate or permit any of its agents, officers, or directors of any member bank to violate any provision of sections 375 . . . ."

97.     Defendant Macedo knowingly violated Section 375 by permitting the Bank's officers and directors to sell the San Remo-Florida City and the San Remo-Homestead Loan documents to SR-Florida City and SR-Homestead on terms more favorable than those offered to the Romagnolis and Dinuro.

98.     Plaintiff Dinuro has sustained damages as set forth in paragraph 67 above.

## COUNT IV –CONSPIRACY – FLORIDA LAW

### (Plaintiffs M. Romagnoli, R. Romagnoli, and Dinuro v. Defendants Camacho, Macedo, Starmac, Merici, Romac, Felma, Felca, Ocean Bank, SR-Florida City, SR-Homestead, and SR Acquisitions)

99.     Plaintiff repeats the allegations contained in paragraphs 1 through 67.

21

CASE NO. 11-cv-10901 CA 40
11-cv-10900 CA 40

100.    Defendants Camacho, Macedo, Starmac, Merici, Romac, Felma, Felca, Ocean Bank, SR Florida City and SR Acquisitions agreed to commit one or more of the offenses alleged in Counts I through III.

101.    One or more of the Defendants have, as alleged in paragraphs 24 through 67, committed an overt act in furtherance of the conspiracy.

102.    Plaintiff has sustained damages as set forth in paragraph 67 because of the conspiracy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter a judgment as follows:

A.    For monetary damages as set forth in paragraph 67 this Second Amended Complaint for each of their claims brought against Defendants in an amount to be proved at trial.

B.    That Plaintiffs be awarded their costs and expenses, including attorneys' fees as provided by Section 15.8 of the San Remo-Homestead Operating Agreement and by Section 16.8 of the San Remo-Florida City Operating Agreement.

C.    For such other relief as this Court deems just and proper.

22

CASE NO. 11-cv-10901 CA 40
11-cv-10900 CA 40

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable as a right by a jury.

Dated: January 19, 2011.

**CONCEPCION MARTINEZ & BELLIDO**
*Attorneys for DINURO INVESTMENTS, LLC*
255 Aragon Avenue, Second Floor
Coral Gables, Florida 33134
Telephone: (305) 444-6669
Facsimile: (305) 444-3665

By: _____
CARLOS F. CONCEPCION
Florida Bar No. 386730
SCOTT A. BURR
Florida Bar No. 99325

and

_____
JORGE E. OTERO & ASSOCIATES, P.A.
Jorge E. Otero
Florida Bar No. 438596
75 Valencia Avenue, Second Floor
Coral Gables Florida 33134
Telephone:  (305) 567-9000
Facsimile:  (305) 443-0164

23

CASE NO. 11-cv-10901 CA 40
11-cv-10900 CA 40

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by

U.S. Mail this 19th day of January, 2011 to:

Steve Ebner, Esq.                            Wilfredo A. Rodriguez, Esq.
Shutts & Bowen, LLP                          Eduardo F. Rodriguez, Esq.
1500 Miami Center                            Avila, Rodriguez, Hernandez, Mena & Ferri, LLP.
201 South Biscayne Blvd.                     2525 Ponce de Leon Boulevard, Suite 1225
Miami, FL. 33131                             Coral Gables, FL. 33134
Fax: (305) 347-7760                          Fax: (305) 779-3561

By: _____
SCOTT A. BURR

24

# SAN REMO HOMES AT FLORIDA CITY, LLC.

## OPERATING AGREEMENT

THIS AMENDED OPERATING AGREEMENT (the "Agreement") is made and entered into and effective as of this _10_ day of _February_ 2005, by and among Dinuro Investments, LLC, a Florida limited liability company ("Dinuro"), Starmac, LLC, a Florida limited liability company ("Starmac"), and MERICI, LLC, a Florida limited liability company ("Merici") (Dinuro, Starmac and Merici are hereinafter sometimes individually or collectively referred to as the "Member" or "Members", as appropriate).

### RECITALS:

WHEREAS, the Members have formed a limited liability company named San Remo Homes at Florida City, LLC, under the laws of the State of Florida (hereinafter referred to as the "LLC").

WHEREAS, the articles of organization of the LLC were filed on February 10, 2005 with the Secretary of State of the State of Florida (hereinafter referred to as "Articles of Organization").

WHEREAS, the purpose of the LLC is to acquire, develop and sell certain real property (the "Property") legally described as follows:

> **Lots 9 and 10, Block 1, MIAMI LAND & DEVELOPMENT COMPANY'S SUBDIVISION, SECTION 19, TOWNSHIP 57 SOUTH, RANGE 39 EAST, according to the Plat thereof as recorded in Plat Book 5, Page 10, of the Public Records of Miami-Dade County, Florida.**

WHEREAS, the LLC desires to develop and construct on the Property a townhouse project (the "Project") to be known as "Keys Lake."

NOW THEREFORE, in consideration of Ten 00/100 Dollars ($10.00), the covenants and the promises made herein, and other good and valuable consideration the receipt of which is hereby acknowledged, the parties hereby agree as follows:

### SECTION 1

### DEFINITIONS:

1.1 **"Accounting Period"** shall mean the calendar year which shall also be the LLC's fiscal year, unless another fiscal year is selected by the Members and permission to change to such other fiscal year is granted by the Internal Revenue Service.

1.2 **"Agreement"** means this Limited Liability Company Operating Agreement, as amended.

1.3 **"Articles of Organization"** means the articles of organization which were filed February 10, 2005 with the Secretary of State of the State of Florida for the purpose of forming this LLC.

EXHIBIT
A

1.4  **"Budget"** means the proposed LLC expenses that will be based on the preliminary budget attached hereto as Exhibit "A" hereto and will be agreed upon by the Members prior to closing on the construction loan to finance the Project.

1.5  **"Code"** means the Internal Revenue Code of 1996, as amended.

1.6  **"Capital Account"** means the capital account in accordance with Treasury Regulation Section 1.704-1(b)(2)(iv).  The Capital Account shall be increased by: (1) Member's Capital Contribution, (2) a Member's share of net profits, (3) any items in the nature of income or gain that are specially allocated to each Member, and (4) the amount of any LLC liabilities assumed by a Member. The Capital Account shall be decreased by (1) distributions, (2) share of net losses, (3) fair market value of distributed property, (4) specially allocated items of loss, and (5) Member distributions assumed by the LLC..

1.7  **"Capital Contribution"** means any contribution of value, including but not limited to cash, property, assets, etc., by a Member to the capital of the LLC.

1.8  **"Cash Flow"** means all cash generated from the sale of the Project minus (i) all payments then due and payable on account of any loans made to the LLC by the Construction Lender or any other creditor other than the Members, (ii) the expenses incurred by the LLC in owning, holding, operating, maintaining and selling the Project and (iii) a reasonable reserve for working capital and other future obligations of the LLC.  The cash flow of the LLC shall be determined by the Members separately for each fiscal year and not cumulatively.

1.9  **"Construction Lender"** means the bank providing acquisition, development and construction financing for the Project.

1.10  **"Improvements"** means the site development and infrastructure on the Property, and the construction of residential townhouse units on the Property, together with any recreational or other facilities incidental thereto, if any.

1.11  **"Financial Interest"** means a member's right to share in the profits, losses, incomes, expenses, or other monetary items and to receive distributions and allocations from the LLC.

1.12  **"LLC"** means San Remo Homes at Florida City, LLC., a limited liability company organized under the laws of the State of Florida.

1.13  **"LLC Interest"** or **"Interest"** means an ownership interest in the LLC, which includes the Financial Interest, the right to vote, the right to participate in management, and the right to obtain information concerning the LLC and any other rights granted to a Member under the Articles of Organization or this Agreement.

1.14  **"Majority in Interest"** shall have the same meaning as is provided for in the Statute.

1.15  **"Member"** means any person or entity who owns any interest in this LLC.

1.16  **"Property"** means the Property described in the recitals hereto and any and all assets, in whole or in part, of the LLC, both tangible and intangible.

1.17 **"Project"** means the residential homes to be constructed on the Property described in the recitals hereto.

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 2 of 22*

1.18 **"Regulations"** means current binding regulations issued pursuant to the Code.

1.19 **"Statute"** means the Florida Limited Liability Company Act, as amended, set forth as Chapter 608 of the Florida Statutes.

## SECTION 2

### FORMATION

2.1 **Formation of the LLC.** The Members have formed the LLC pursuant to the laws of the State of Florida by filing the Articles of Organization with the Secretary of State.

2.2 **Name.** The name of the LLC is **"San Remo Homes at Florida City, LLC."** The Members shall operate the business of the LLC under such name or use such other names as the Members deem necessary provided that such names do not violate the Statute.

2.3 **Principal Office.** The LLC's principal place of business will be located at 782 N.W. LeJeune Road, Suite 635, Miami, Florida 33126 or any other location mutually agreed upon by the Members.

2.4 **Term.** The LLC will continue to exist until terminated or dissolved in accordance with its Articles of Organization or this Agreement.

2.5 **Business Purpose.** The purpose of the LLC is to engage in any lawful activities for which a LLC may be organized under the Statute.

2.6 **Registered Agent.** The LLC's registered agent will be Esquire Corporate Services, Inc., a Florida Corporation or any other person or entity with an office in the state of organization as determined by the Members.

2.7 **Registered Office.** The LLC's registered office will be ESQUIRE CORPORATE SERVICES, INC., 780 NW Le Jeune Road, Suite 324, Miami, Florida 33126 or any other location within the State of organization as determined by the Members.

## SECTION 3

### MEMBERSHIP

3.1 **Initial Members.** The initial Members of the LLC are those persons set forth at the outset of this Agreement.

3.2 **Additional Members.** Additional persons or entities may be admitted to the LLC as Members, and LLC Interests may be issued to those additional Members, upon the unanimous consent of the current Members and on such terms and conditions as determined by the Members and in accordance with the Articles of Organization and this Agreement. All new Members must sign a copy of this Agreement and agree to be bound by the terms of this Agreement.

3.3 **Liability to Third Parties.** No Member shall be liable for the debts, obligations or liabilities of the LLC to a third party unless the Member agrees in writing to be liable.

3.4 **Authority.** Each Member has the authority or power to act for or on behalf of, to bind, or to incur any liability on behalf of the LLC except as otherwise provided in this Agreement.

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 3 of 22*

3.5 **Withdrawal.** No Member has the right to withdraw from the LLC as a Member except as provided in this Agreement. However, a Member has the power to withdraw but such withdrawal shall be deemed a breach of this Agreement. If a Member does exercise such power of withdrawal in breach of this Agreement, the Member shall be liable to the LLC and the other Members for all monetary damages as a result of the breach, including but not limited to direct, indirect, incidental, and consequential damages. The LLC and the other Members shall not have the right to prevent the withdrawing Member from withdrawing through the use of an injunction or otherwise.

3.6 **Compensation.** No Member shall receive compensation for services rendered to the LLC except as expressly permitted by this Agreement or any other written agreement. However, the LLC shall reimburse Members for any expense paid by them that is properly an expense of the LLC.

## SECTION 4

### CAPITAL ACCOUNTS

4.1 **Capital Contributions.** The initial Members shall contribute to the LLC the following Capital Contributions and shall receive the following LLC Interest:

| Name: | Capital Contribution: | LLC Interest: |
|-------|----------------------|---------------|
| Dinuro | $1,497,271.96 | 50 Shares |
| Starmac | $1,497,271.96 | 50 Shares |
| Merici | $1,497,271.96 | 50 Shares |

4.2 **Additional Contributions.** Except as specifically set forth in this Agreement, no Member shall be required to make any additional Capital Contributions.

4.3 **Failure to Contribute.** If a Member fails to timely provide a required Capital Contribution, the LLC may take such action as it deems necessary and appropriate including but not limited to instituting a court proceeding to obtain payment, canceling the Member's LLC Interest, or exercising any other right or remedy available at law or equity.

4.4 **Capital Accounts.** A Capital Account (hereinafter referred to as "Capital Account") shall be established and maintained for each Member. Each Member's Capital Account will be accounted for separately and will be maintained in accordance with generally accepted accounting principles. If a Member validly transfers an LLC interest, the Capital Account of the transferring Member shall carry over to the transferee Member in accordance with the Code and Regulations.

4.5 **Advances by Members.** The Members anticipate that additional funds and working capital may be required for the working capital needs of the LLC and the Project. The Members agree that one or more Members may, from time to time, advance such additional funds and working capital as may be required for such purposes in the form of loan advances and such advances shall be repaid to such Member(s) as the Member's cash flow shall permit. All loans made by the Members shall bear interest at a rate of not less than the prime rate published in the Wall Street Journal at the time the loan is made to the LLC plus two percent (2%), as shall be agreed to between

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 4 of 22*

the lending Member(s) and the LLC, shall be evidenced by a promissory note or shown on the books and records of the LLC and shall be due and payable in full principal and interest, at such time as shall be mutually agreed to by such Member(s) and the LLC.

4.6 **Preemptive Rights.** Each Member of the LLC shall be entitled to full preemptive or preferential rights, as such rights are defined by law, to subscribe for or purchase his or her proportional part of any additional or future LLC Interests which may be issued by the LLC.

4.7 **Return of Capital.** No Member shall have the right to withdraw or obtain a return of his or her capital contribution except as provided in this Agreement. The return of a Member's capital contribution may not be withdrawn in the form of property other than cash except as provided in this Agreement.

## SECTION 5

### ALLOCATION OF PROFITS AND LOSSES AND DISTRIBUTIONS

5.1 **Determination of Profits and Losses.** Profits and losses shall mean net income and net loss as determined by the books and records of the LLC which shall be kept in accordance with generally accepted accounting principals and the Code.

5.2 **Allocations.** For each Accounting Period, all items of income, gain, revenue, credit, expenses, deductions, losses, and costs (including all income items separately stated on the LLC's informational tax return filed for federal tax purposes) shall be allocated as follows:

5.2.1 Losses shall be allocated to Members in accordance with each Member's Capital Contributions.

5.2.2 Until the Members have been allocated profits equal to the aggregate losses allocated to them, if any, profits shall be allocated to Members in the same manner as losses were allocated to them.

5.2.3 Thereafter, Members shall be allocated profit to the extent of distributions received pursuant to Section 5.6.

5.3 **Qualified Income Offset.** Notwithstanding the above, if a Member unexpectedly receives any adjustments, allocations, or distributions described in Treasury Regulations Section 1.704-1(b)(2)(ii)(d)(4) and (5) or (6) or any amendment thereto, or receives an allocation of loss which produces a negative capital account for any Member while any other Member has a positive capital account, then items of LLC income shall be specially allocated to such Member such that the deficit Capital Account is eliminated. This paragraph is intended to constitute a "qualified income offset" within the meaning of Treasury Regulation Section 1.704-1(b)(2)(ii)(d).

5.4 **Minimum Gain Chargeback.** Notwithstanding the above, if there is a net decrease in LLC "minimum gain" during a taxable year, each Member shall be specially allocated, before any other allocation, items of income and gain for such taxable year (and, if necessary, subsequent years) in proportion to each Member's share of the net decrease in LLC "minimum gain" as determined in accordance with Treasury Regulation Section 1.704-2(g)(2). This paragraph is intended to comply with the "minimum gain chargeback" provisions of Treasury Regulation Section 1704.-2(f).

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 5 of 22*

5.5 **Section 704(c) Allocation.** Notwithstanding the above, to the extent that Code Section 704(c)) is applicable to any item of income, gain, loss, and deduction with respect to any property (other than cash) that has been contributed by a Member and which is required to be allocated to such Member for income tax purposes, the item shall be allocated to such Member in accordance with Code Section 704(c).

5.6 **Distributions.** The Members understand and agree that all distributions shall be made at such times and in such amounts as shall be determined by the unanimous consent of the Members from available Cash Flow. If the Members, unanimously, determine to make a distribution of Cash Flow, then the Managing Member shall distribute the Cash Flow in the following order of priority (provided that no distribution shall be made if any default exists under the loan from the Construction Lender):

5.6.1 To pay any debt, service, including accrued interest or principal, on any outstanding obligation of the LLC, including without limitation, the LLC's loan from the Construction Lender, made by the Members, and to provide a reasonable reserve for such payment in the future.

5.6.2 To the extent that there is Cash Flow thereafter available, said Cash Flow shall be distributed to the Members to the extent of their positive Capital Account balance on a pro-rata basis in accordance with each Member's Interest.

5.6.3 To the extent that there is Cash Flow thereafter available, said Cash Flow shall be distributed among the Members on a pro-rata basis.

5.7 **Distribution of Assets in Kind.** Except as otherwise provided in this Section, if any assets of the Members shall be distributed in kind, such assets shall be distributed to the Members entitled thereto as tenants in common, in the same proportions in which such Members would have been entitled to cash distributions if there had been a sale of said assets.

5.8 **Demand for Distribution.** No Member shall be entitled to demand or receive a distribution of LLC property in return for his Capital Contribution to the LLC.

## SECTION 6

### MEETINGS

6.1 **Place of Meeting.** Meetings of Members shall be held at any place within or outside the United States designated by the Members and stated in the notice of the meeting. If no place is so specified, Members' meetings shall be held at the LLC's principal office.

6.2 **Annual Meeting.** An annual meeting of Members shall be held on the last week of February of each year at the corporate offices of the LLC. At the annual meeting, any proper business may be transacted.

6.3 **Special Meetings.** A special meeting of the Members may be called at any time by one or more Members holding Interests which, in the aggregate, constitute not less than ten percent (10%) of the LLC Interests. A request for a special meeting of the Members shall be in writing, specifying the time and place of the meeting and the general nature of the business proposed to be transacted. The notice shall be delivered in accordance with this Agreement.

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 6 of 22*

6.4 **Notice of Members' Meetings.** All notices of meetings of Members shall be sent not less than ten (10) nor more than sixty (60) days before the date of the meeting being noticed. The notice shall specify the place, date, and hour of the meeting and (i) in the case of a special meeting, the general nature of the business to be transacted, or (ii) in the case of the annual meeting, those matters which are intended to be presented for action by the Members. If a proposal contains (i) a contract or transaction in which a Member has a direct or indirect Financial Interest, (ii) an amendment of the Articles of Organization, (iii) a reorganization of the LLC, or (iv) a voluntary dissolution of the LLC, the notice shall state the general nature of such proposal.

6.5 **Conduct of Meetings.** All meetings of the Members shall be presided over by the chairman of the meeting who shall be designated by a majority of the Members at the meeting. The chairman of the meeting shall determine the order of business and the procedures to be followed at the meeting.

6.6 **Quorum.** The presence, in person or by proxy, of the holder(s) of an aggregate of fifty one percent (51%) or more of the LLC Interests shall constitute a quorum at all meetings of the Members for the transaction of business.

6.7 **Voting.** Each Member shall have a number of votes equal to the percentage LLC Interest held by such Member. An aggregate of fifty one percent (51%) or more of the votes shall be required to approve any action, unless a greater or lesser vote is required pursuant to this Agreement or by Statute. Any Member entitled to vote on any matter may vote part of the votes in favor of the proposal and refrain from voting the remaining votes or vote them against the proposal, but if the member fails to specify the number of votes such Member is voting affirmatively, it will be conclusively presumed that the Member's approving vote is with respect to all votes the Member is entitled to vote.

6.8 **Adjourned Meeting and Notice Thereof.** Any Members' meeting, annual or special, whether or not a quorum is present, may be adjourned from time to time by the vote of a majority of the LLC Interests represented at such meeting, either in person or by proxy, but in the absence of a quorum, no other business may be transacted at such meeting. When any meeting of Members, either annual or special, is adjourned to another time and place, notice need not be given of the adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken, unless a new record date for the adjourned meeting is fixed, or unless the adjournment is for more than five (5) days from the date set for the original meeting, in which case the Members shall set a new record date. Notice of any such adjourned meeting, if required, shall be given to each Member entitled to vote at the adjourned meeting in accordance with this Agreement. At any adjourned meeting the LLC may transact any business which might have been transacted at the original meeting.

6.9 **Waiver of Notice or Consent by Absent Members.** The transactions of any meeting of Members, either annual or special, however called and noticed, and whenever held, shall be as valid as if it had occurred at a meeting duly held after regular call and notice, if a quorum be present either in person or by proxy and if, either before or after the meeting, each person entitled to vote but not present in person or by proxy, signs a written waiver of notice, a consent to the holding of the meeting or any approval of the minutes thereof. The waiver of notice or consent shall state either the business to be transacted or the purpose of any annual or special meeting of Members. All such

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 7 of 22*

waivers, consents and approvals shall be filed with the LLC's books and records. Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, unless such person objects at the beginning of the meeting.

6.10 **Member Action by Written Consent without a Meeting.** Any action which may be taken at any annual or special meeting of Members may be taken without a meeting and without prior notice, if consent in writing, setting forth the action so taken, are signed by Members holding LLC interests representing the aggregate number of votes equal to or greater than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all LLC Interests entitled to vote thereon were present and voted. All such consents shall be filed with the LLC's books and records.

6.11 **Arbitration.** In the event of a deadlock between the Members as to decisions or matters which require the unanimous vote of all of Members or inability to reach a fifty one percent (51%) Membership Interest consensus, the dispute or matter shall be settled through binding arbitration in accordance with the procedures, rules and regulations of the American Arbitration Association. The Managers shall each select one (1) impartial and independent arbitrator with at least 5 years experience in the mediation and arbitration of real estate development and construction disputes. A third arbitrator shall be chosen by the American Arbitration Association. The decision rendered by the arbitration panel shall be binding upon the Members. Arbitration shall be held in Miami Dade County, Florida. The non prevailing party shall pay for any costs, fees and expenses regarding the arbitration and said costs, fees and expenses shall not be reimbursed or paid by the LLC.

## SECTION 7

### MANAGEMENT

7.1 **Managers.** Each of the Members shall be a Manager, until changed by an amendment to this Agreement. The Managers shall be responsible for the management of the LLC's business and affairs.

7.2 **Vacancies.** A Manager vacancy shall be deemed to exist if (i) a Manager dies, or is removed by the Members; or (ii) a Manager resigns. Vacancies are to be filled solely by vote of the Members, but the Members shall not be obligated to fill a vacancy.

7.3 **Resignation.** Any Manager may resign effective upon the delivery of written notice to any other Member, unless the notice specifies a later effective date.

7.4 **Powers.** Any two (2) Manager(s) have, subject to the control of the Members, general supervision, direction, and control of the business of the LLC, and the authority to bind the LLC. In addition, subject to the provisions of the Statute, Florida law, any limitations in the Articles of Organization and this Agreement relating to actions requiring approval by the Members, any two (2) Managers may make all decisions and take all actions on behalf of the LLC not otherwise provided for in this Agreement including but not limited to the following:

7.4.1 To borrow money, with or without security, in furtherance of any or all of the purposes of the LLC, and to secure the same by mortgage, pledge or other lien on any assets of the LLC, and to execute and deliver in the name of the LLC, notes evidencing same and mortgages, deeds of trust

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 8 of 22*

and any other security instruments securing same and to modify, alter or otherwise restructure indebtedness of the LLC, provided, however, that one of the Managers acting on behalf of the LLC pursuant to this Section 7.4.1 shall be Starmac or Merici;

7.4.2  To procure and maintain with responsible companies such insurance as may be advisable in such amounts and covering such risks as are deemed appropriate by the Members;

7.4.3  To execute and deliver on behalf of and in the name of the LLC, or in the name of a nominee of the LLC, deeds, mortgages, deeds of trust, notes, leases, subleases, licenses, rental or occupancy agreements, or use agreements of or with respect to all or any assets of the LLC, management agreements, sales agreements, bills of sale, and any and all other instruments necessary or incidental to the conduct of the LLC 's business, provided, however, that one of the Managers acting on behalf of the LLC pursuant to this Section 7.4.3 shall be Starmac or Merici;

7.4.4  To protect and preserve the assets of the LLC and incur any other indebtedness in the LLC 's ordinary course of business, provided, however, that one of the Managers acting on behalf of the LLC pursuant to this Section 7.4.4 shall be Starmac or Merici;

7.4.5  To delegate all or any of its duties hereunder and in furtherance of any such delegation, to appoint, employ or contract on behalf of the LLC with any person (including entities owned or controlled, by, or affiliated with a Member provided that the other Members consent in advance thereto), as the Managers may in their sole discretion deem necessary or desirable; which persons may, under the supervision of the Managers, perform any of the following or other acts or services for the LLC as the Managers may approve, except that the Managers shall continue to be primarily responsible for the performance of all such obligations: serve as the LLC 's advisor and consultant in connection with policy decisions made by the Members or the Managers; act as or engage the services of consultants, accountants, correspondents, attorneys, brokers, escrow agents, or in any other capacity deemed by the Managers necessary or desirable; investigate, select and, on behalf of the LLC, conduct relations with persons acting in such capacities and pay appropriate fees to, and enter into appropriate contracts with, or employ or retain any of them to render services for the LLC; and perform or assist in the performance of administrative or managerial functions necessary in the management of the LLC;

7.4.6  To open LLC bank accounts to deposit LLC funds and to pay LLC expenses and obligations, provided, however, that any payment of an LLC expense or obligation in excess of Ten Thousand and 00/100 Dollars ($10,000.00) shall require the act of either Starmac or Merici or Jose Coto, acting as agent for Starmac or Merici, but only for the matters specifically set forth in this Section 7.4.6.;

7.4.7  To acquire, develop, improve, operate, finance, refinance, sell or dispose of the Project, provided, however, that one of the Managers acting on behalf of the LLC pursuant to this Section 7.4.7 shall be Starmac or Merici or Jose Coto, upon specific written authority of Starmac or Merici;

7.4.8  To engage in any kind of activity and to perform and carry out contracts of any kind necessary to, or in connection with, or incidental to the accomplishment of the purposes of the LLC, provided said activities and contracts may be lawfully carried on or performed by a LLC under the laws of the State of Florida, and further provided that any contract obligating the LLC to payment of funds in excess of Fifty Thousand and 00/100 Dollars ($50,000.00) shall require the act of either

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 9 of 22*

Starmac or Merici or Jose Coto, acting as agent for Starmac or Merici, but only for the matters specifically set forth in this Section 7.4.8;

7.4.9  To make all decisions concerning the operational aspects of the LLC, and the execution and delivery of all contracts, deeds and other instruments for the sales of residential units within the Project, in connection therewith provided, however; that one of the Managers acting on behalf of the LLC pursuant to this Section 7.4.9 shall be Starmac or Merici or Jose Coto, upon specific written authority of Starmac or Merici;

7.4.10  To ask for, collect, and receive any rents, issues, and profits or income from any property of the LLC, or any part or parts thereof, and to disburse LLC funds for LLC purposes to those persons entitled to receive same, subject to the limits on disbursements established in Section 7.4.6 above;

7.4.11  Subject to Section 7.4.6 above, to pay from LLC assets, all expenses of organizing and conducting the business of the LLC, including without limitation, engineering, architectural, construction, professional, consulting, marketing, brokerage, legal, accounting fees and other;

7.4.12  To institute, prosecute, defend, mediate, arbitrate, settle, compromise, and dismiss lawsuits or other judicial or administrative proceedings brought on or in behalf of, or against, the LLC or the Members in connection with activities arising out of, connected with, or incidental to this Agreement, and to engage counsel or others in connection therewith provided, however; that one of the Managers acting on behalf of the LLC pursuant to this Section 7.4.12 shall be Starmac or Merici or Jose Coto, upon specific written authority of Starmac or Merici;

7.4.13  To execute any and all other instruments and take any and all other actions necessary or desirable to carry out the purposes and business of the LLC;

7.4.14  To execute and approve homeowners' association documents, or to sell, transfer, convey, exchange, lease, ground lease, or grant an easement to any of the property of the LLC or any portion of the LLC property, including closing statements provided, however; that one of the Managers acting on behalf of the LLC pursuant to this Section 7.4.14 shall be Starmac or Merici or Jose Coto, upon specific written authority of Starmac or Merici;

7.4.15  To assume the overall duties, general management, and final determination of all questions relating to the usual daily business affairs and ministerial acts of the LLC;

7.4.16  To sell all or substantially all of the assets of the LLC, whether or not in the ordinary course of business, to pay, settle and compromise LLC liabilities, obligations and expenses, and to wind up the affairs of and liquidate the LLC, provided, however, that one of the Managers acting on behalf of the LLC pursuant to this Section 7.4.16 shall be either Starmac and Merici; and

7.4.17  To do any and all acts necessary, useful or convenient, in the judgment of the Managers to carry on the business and affairs of the LLC and the purposes thereof.

Notwithstanding anything herein to the contrary, any act of a Manager which may materially affect the LLC or its property shall require the prior consent of the Members. Additionally, the Members understand and agree that no Manager shall be compensated for the services it renders to and capital it contributes to, for, or on behalf of the LLC, except as provided for in the Budget.

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 10 of 22*

7.5 **Restrictions on Authority of the Managers.** Except with the written consent or ratification of all of the Members, no Manager shall have the authority to:

7.5.1 Do any act in contravention of the certificate of the LLC or this Agreement;

7.5.2 Do any act that would make it impossible or unreasonably burdensome to carry on the ordinary business and purpose of the LLC;

7.5.3 Confess a judgment against the LLC;

7.5.4 Make, execute or deliver any general assignment for the benefit of the creditors of the LLC;

7.5.5 Possess LLC property or assign the LLC's rights in specific LLC property for other than an LLC purpose;

7.5.6 Knowingly or willingly do any act (except an act expressly required by this Agreement) which would cause the LLC to become an association taxable as a corporation;

7.5.7 Change or reorganize the LLC into any other legal form;

7.5.8 Incur any obligation in the name or on the credit of the LLC, except in the ordinary course of the LLC's business; or

7.5.9 Amend or otherwise change this Agreement so as to modify the rights of a Member to profits, losses, allocations, or distribution, or obligations of the Member as set forth herein.

7.6 **Place of Meeting.** Regular meetings of the Managers may be held without notice, at any time and at any place within the United States that is designated by the Managers. In the absence of the designation of a place, regular meetings shall be held at the principal office of the LLC. Special meetings of the Managers shall be held at any place that has been designated in the notice of the meeting or, if not stated in the notice, at the principal office of the LLC. Any meeting, regular or special, may be held by conference telephone or similar communications equipment, so long as all Managers participating in such meeting can hear one another, and all such Managers shall be deemed to be present in person at such meeting.

7.7 **Liability to Third Parties.** No Manager shall be liable for the debts, obligations, or liabilities of the LLC to a third party unless the Manager agrees in writing to be liable.

7.8 **Standard of Care; Liability.** Each Manager shall exercise such powers and otherwise perform such duties in good faith, in the matters such Manager believes to be in the best interests of the LLC, and with such care including reasonable inquiry, using ordinary prudence, as a person in a like position would use under similar circumstances. In performing the duties of a Manager, a Manager shall be entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, in which case prepared or presented by:

7.8.1 one or more Officers or employees of the LLC who the Manager believes to be reliable and competent in the matters presented;

7.8.2 counsel, independent accountants, or other persons as to matters which the Manager believes to be within such person's professional or expert competence; or

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 11 of 22*

7.8.3  a Committee upon which the Manager does not serve, as to matters within the Committee's designated authority, which Committee the Manager believes to merit confidence, so long as in any such case, the Manager acts in good faith, after reasonable inquiry when the need therefor is indicated by the circumstances, and without knowledge that would cause such reliance to be unwarranted.

## SECTION 8:

### TRANSFER AND ASSIGNMENT OF LLC INTERESTS

8.1  **Transfer or Assignment of Member's Interest.** Except as otherwise provided in this Agreement, no Member may transfer and/or assign, in whole or in part, his or her LLC Interest at any time without the consent of the other member. For purposes of this Agreement transfer shall mean sale, exchange, assignment, alienation, sale of underlying company interest, disposition, gift, pledge, hypothecation, encumbrance, or grant of security interest in the LLC Interest.

8.2  **Consent to Transfer.** No transfer or assignment of a LLC Interest, or any part thereof, will be valid without the express written consent of all of the Members. If a LLC Interest is transferred or assigned without the consent of all of the other Members, the transferee shall have no rights in, nor may participate in the management or operation of the business and affairs of the LLC, nor have the right to become a Member of the LLC. Any transfer or assignment of a LLC Interest without the proper consent shall only effect a transfer or assignment of the Member's Financial Interest, and the transferring Member shall still be bound to the terms of this Agreement. If a transfer or assignment does obtain the required consent, then the transferee shall be admitted as an additional Member pursuant to this Agreement.

8.3  **Right of First Refusal.** If any Member shall receive an offer from a third party to sell its interest and that Member desires to sell his or her Interests, that Member must cause the purchaser to make the same offer to purchase all the Interests of the Members on the same terms and conditions as made to the selling Member. The other Members shall have thirty (30) days to accept or reject the offer. If the other Members reject the offer, whoever shall desire to sell his or her Interests shall first offer the offer thereof to the LLC and the other Members on a pro-rata basis upon the same terms and conditions as made to the selling Member. Such offer shall be communicated by the one offering to sell his or her Interest to all other parties and the LLC by written notice. If either the LLC or the other Members do not wish to purchase the pro-rata share, the LLC or other Members may purchase all or any part of the Interests being sold. In the event that such offer shall not be accepted by written notice no later than thirty (30) days after the date of the mailing of the offer by either the LLC or the other Members, whoever shall have offered the Interests shall be free to sell his or her Interests to any other person, firm, or entity, subject to any restrictions in the articles of organization, this Agreement, or other governing documents, except that the subsequent transfer of such Interests shall not be on different or terms more favorable to the transferee than the terms upon which the transfer was initially offered to the LLC or other Members. If, within thirty (30) days after the expiration of the thirty (30) day period referred to in the preceding paragraph, the Member offering to sell his or her Interests shall fail to consummate a sale thereof to any other purchaser, then no sale of such shares may be made thereafter by the offeror without again reoffering the same to the LLC or the other Members in accordance with the provisions of this paragraph. Each Interest Certificate

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 12 of 22*

issued by the LLC to the Members, if any, shall bear an appropriate legend that the transfer of such Interests is restricted by the provisions of this Agreement.

8.4 **Permitted Transfers, Determination of Purchase Price and Payment.** If a Member desires to withdraw from the LLC or desires to sell its LLC Interest, the other Members shall have the right but not the obligation purchase all or any part of the withdrawing Member's LLC Interest. The price for Interests purchased pursuant to this Agreement shall be the Interest's net worth in the LLC, adjusted to reflect the fair market value of the LLC's contracts and potential contracts, of the LLC at the close of the fiscal quarter immediately preceding the occurrence of the event giving rise to the purchase. The Interest's net worth shall be determined, within thirty (30) days of acceptance by the remaining Members of the withdrawing Member's offer to sell, by a certified public accountant, selected by the LLC, in accordance with the accounting principles generally applied by the LLC. If the selling Member does not agree with the purchase price determined by the accountant selected by the LLC, the selling Member shall select an independent certified public accountant who shall, jointly with the accountant selected by the LLC, determine the purchase price of the Interest according to the terms of the preceding sentence. In the event such accountants cannot agree on the purchase price, they shall select a third independent certified public accountant. The purchase price determined by a majority of the three accountants shall be final and binding. Unless otherwise agreed, the purchase price shall be paid with an initial deposit of at least twenty percent (20%) of the total purchase price of the Interest not later than the thirtieth (30th) day following the date upon which the accountants determine the purchase price of the Interest. The LLC shall pay to the selling party the balance of the purchase price (hereinafter referred to as the "Balance") represented by the amount by which the aggregate purchase price of the Interest exceeds the amount of the initial payment, in twenty four (24) consecutive equal monthly payments commencing one month after the initial payment. The Balance outstanding shall bear interest from the date of sale, payable monthly together with the principal, at a rate equal to the yield to maturity of one hundred eighty (180) day United States Treasury Bills (at their date of issue) issued most recently prior to the date on which the interest rate is being determined. The obligation to pay the Balance and interest thereon shall be evidenced by a duly executed promissory note, payable to the order of the selling party, secured by the Interest being sold which shall be held in escrow until the final payment, and containing the aforesaid terms and such other terms as are customary for such instruments, including acceleration in the event of default, the right of prepayment in whole or part without penalty. Notwithstanding the foregoing, no Member shall be obligated, under any circumstances, to purchase the Membership Interests of a selling Member pursuant to this Section.

8.5 **Interests.** This Agreement shall control the disposition of any Interest of the LLC now owned or hereafter acquired by the Members.

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 13 of 22*

## SECTION 9

### BOOKS AND RECORDS

9.1 **Maintenance of Books and Records.** The LLC shall establish and maintain appropriate books and records of the LLC in accordance with generally accepted accounting principles. There shall be kept at the principal office of the LLC, the following LLC documents: (a) A current list of the name and business or residence address of each Member and his or her Capital Contribution and LLC Interest; (b) A current list of the name and business or residence address of each Manager, if any; (c) A copy of the Articles of Organization and this Agreement and any amendments thereto; (d) Copies of the LLC's federal, state, and local income tax or information returns, if any, for the past six fiscal years; (e) Copies of the financial statements of the LLC, if any, for the past six fiscal years; (f) Originals or copies of all minutes, actions by written consent, consents to action, and waivers of notice to Members, Member votes, actions and consents; and (f) Any other information required to be maintained by the LLC pursuant to the Statute.

9.2 **Annual Accounting.** Within ninety (90) days after the close of each fiscal year of the LLC, the LLC shall cause to be prepared and submitted to each Member a balance sheet and income statement for the preceding fiscal year of the LLC (or portion thereof in conformity with generally accepted accounting principles and provide to the Members all information necessary for them to complete federal and state tax returns.

9.3 **Inspection and Audit Rights.** Each Member has the right, upon reasonable request, for purposes reasonably related to the interest of that Member, to inspect and copy during normal business hours any of the LLC books and records. Such right may be exercised by the Member or his or her agent or attorney. Any Member may require a review and/or audit of the books, records, and reports of the LLC.

9.4 **Bank Accounts.** All funds of the LLC shall be deposited in the LLC's name in such banks as determined by the Members. All checks, drafts, or other orders for payment of money, notes or other evidences of indebtedness, issued in the name of or payable to the LLC, shall be signed or endorsed by such person or persons and in such manner as, from time to time, shall be determined by the Members.

9.5 **Fiscal Year.** The LLC's fiscal year shall end on December 31st.

9.6 **Accounting Method.** For financial reporting purposes, the books and records of the LLC shall be kept on the cash (or accrual) method of accounting applied in a consistent manner and shall reflect all transactions of the LLC and be appropriate and adequate for the purposes of the LLC.

## SECTION 10:

### TAXATION

10.1 **Tax Year.** The LLC's taxable year shall end on December 31st.

10.2 **Tax Matters Member.** The Code requires the Internal Revenue Service (the "Service") to promulgate regulations describing procedures for designating a Tax Matters Member (the "TMM"). Unless prohibited by such regulations, the LLC intends to designate Starmac to serve as TMM for the LLC. Until a different person is designated the TMM, Starmac will act as liaison

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 14 of 22*

between the LLC and the Service in connection with all administrative and judicial proceedings involving tax controversies of the LLC, and agrees to assume all the rights and duties of a TMM as set forth in the Code. These rights and duties include, but are not limited to:

10.2.1 The duty to notify and keep all other Members informed of any audit of the LLC;

10.2.2 The obligation to furnish the Service with the name, address, and taxpayer identification number of each Member;

10.2.3 The right to settle, any claims by the Service against the LLC;

10.2.4 The right to initiate judicial proceedings contesting adverse determinations by the Service against the LLC;

10.2.5 The right to extend the statute of limitations; and

10.2.6 The right to take any other action on behalf of the Members or the LLC in connection with any administrative or judicial tax proceeding to the extent permitted by applicable laws or regulations.

Notwithstanding the fact that Starmac will act as TMM, as to tax related matters or controversies which affect the other Members, Starmac shall seek the advice and consent of Dinuro and Merici in acting as TMM and shall take no action which would adversely affect the other Members without each other Member's prior consent.

## SECTION 11:

### INDEMNIFICATION

11.1 **Definitions: Agents, Proceedings, and Expenses.** For the purposes of this Agreement, "Agent" means any person who is or was a Member, Manager, Officer, employee, or other agent of this LLC; "Proceeding" means any threatened, pending or completed action or proceeding, whether civil, criminal, administrative, or investigative; and "Expenses" means any and all costs, fees, and expenses including but not limited to court costs and attorneys' fees.

11.2 **Actions Other Than by the LLC.** The LLC shall indemnify and hold harmless any person or Agent who was or is a party, or is threatened to be made a party, to any Proceeding (other than an action by or in the right of this LLC) by reason of the fact that such person is or was an Agent of this LLC, against Expenses, judgments, fines, settlements and other amounts actually and reasonably incurred in connection with such Proceeding, if that person acted in good faith and in a manner that person reasonably believed to be in the best interests of this LLC, and, in the case of a criminal proceeding, had no reasonable cause to believe his or her conduct was unlawful. The termination of any Proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent shall not, of itself, create a presumption that the person did not act in good faith and in a manner which the person reasonable believed to be in the best interests of this LLC or that the person had reasonable cause to believe that his or her conduct was unlawful. Notwithstanding the foregoing, no person or Agent shall be indemnified for their wilful acts or gross negligence.

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 15 of 22*

**11.3   Actions by the LLC.**  This LLC shall indemnify any person or Agent who was or is a party, or is threatened to be made a party, to any threatened, pending, or completed action by or in the right of this LLC to procure a judgment in its favor by reason of the fact that the person is or was an Agent of this LLC, against expenses actually and reasonably incurred by that person or Agent in connection with the defense or settlement of that action if that person or Agent acted in good faith, in a manner that person or Agent believed to be in the best interests of this LLC, and with such care, including reasonable inquiry, as an ordinary prudent person in a like position would use under similar circumstances.  No indemnification, however, shall be made under this Section 11.3 with respect to any claim, issue or matter as to which that person or Agent shall have been adjudged to be liable to this LLC in the performance of that person's or Agent's duty to the LLC, unless the court in which that action was brought shall determine upon application that the person or Agent is fairly and reasonably enticed to indemnity for the expenses which the court shall determine; (ii) for amounts paid in settling or otherwise disposing of a threatened or pending action, with or without court approval; or (iii) for Expenses incurred in defending a threatened or pending action which is settled or otherwise disposed of without court approval.  Notwithstanding the foregoing , no person or Agent shall be indemnified for their wilful acts or gross negligence.

**11.4   Successful Defense by Agent.**  To the extent that an Agent of this LLC has been successful on the merits in defense of any Proceeding, the Agent shall be indemnified against Expenses actually and reasonably incurred by the Agent in connection with the Proceeding.

**11.5   Required Approval.**  Any indemnification under this Section shall be made by the LLC only if authorized upon a determination by a majority vote of the LLC Interests of Members who were not parties to the proceeding at a duly held meeting of the Members at which a quorum is present.

**11.6   Advance of Expenses.**  Expenses incurred in defending any Proceeding may be advanced by the LLC before the final disposition of the Proceeding upon receipt of an undertaking by or on behalf of the Agent to repay the amount of the advance unless it shall be determined ultimately that the Agent is entitled to be indemnified.

**11.7   Other Contractual Rights.**  Nothing contained in this Section shall affect any right to indemnification to which Agents of this LLC or any subsidiary may be entitled by contract, by vote of the Members, as a matter of law or equity, or otherwise.

**11.8   Insurance.**  The LLC may, upon a determination by the Members, purchase and maintain insurance on behalf of any Agent of the LLC against any liability which might be asserted against or incurred by the Agent in such capacity, or which might arise out of the Agent's status as such, whether or not the LLC would have the power to indemnify the Agent against that liability.

**11.9   Amendment to Florida Laws.**  In the event that Florida law regarding indemnification of members, managers, directors, officers, employees, and other agents of a LLC, as in effect at the time of adoption of this Agreement, is subsequently amended to in any way that increases the scope of permissible indemnification beyond that set forth herein, the indemnification authorized by this Section shall be deemed to be coextensive with the maximum afforded by Florida law as so amended.

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 16 of 22*

## SECTION 12

### LLC CERTIFICATES

12.1  **Issuance of LLC Certificates.** Each Member's LLC Interest shall be represented by a LLC Certificate.  Upon the execution of this Agreement and the payment of the Capital Contributions by the Member, the Members shall have the LLC issue one or more LLC Certificates in the name of each Member certifying that the named Member is the record holder of the LLC Interests.

12.2  **Transfer of LLC Certificates.** An LLC Interest which is transferred in accordance with the terms of this Agreement shall be transferable on the books of the LLC. However, the transfer of an LLC Interest shall not be entered until the previously issued LLC Certificate representing such LLC Interest is surrendered to the LLC and canceled and a replacement LLC Certificates issued to the assignee of such LLC Interest.

12.3  **Lost, Stolen, or Destroyed Certificates.** The LLC shall issue a new LLC Certificate in place of any LLC Certificate previously issued if the holder of the LLC Certificate satisfactorily proves that a previously issued LLC Certificate has been lost, destroyed, or stolen. If a Member fails to notify the LLC within a reasonable time after it has notice of the loss, destruction, or theft of a LLC Certificate, and a transfer of the LLC Interest represented by the LLC Certificate is registered before receiving such notification, the LLC shall have no liability with respect to any claim against the LLC for such transfer or for a new LLC Certificate.

## SECTION 13

### DEFAULT BY A MEMBER

13.1  **Event of Default.** The following events shall constitute a default by a Member:

13.1.1  Violation of the provisions of this Agreement and failure to remedy the violation within sixty (60) days after written notice of the violation to the alleged defaulting Member from a non-defaulting Member and a reasonable opportunity to cure.

13.1.2  A fraudulent act by a Member in connection with the affairs of the LLC that materially adversely affects the LLC.

13.1.3  The assignment of a Member Interest by a Member for the benefit of creditors, or the voluntary or involuntary filing of a petition under any section or chapter of the Federal Bankruptcy Code or under any similar law of the United States or any state thereof.

13.1.4  Adjudication of a Member as bankrupt or insolvent under any section or chapter of the Federal Bankruptcy Code or under any similar law of the United States or any state thereof.

13.1.5  The appointment of a receiver or trustee for all or substantially all of a Member's assets and the failure to have the receiver or trustee discharged within thirty (30) days after appointment.

13.1.6  The commencement of any legal action by a creditor against a Member resulting in litigation that, in the reasonable opinion of the unrelated Member, creates a real and substantial risk of involvement of LLC property that will probably:

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 17 of 22*

13.1.6.1 Have a material adverse effect on the LLC; or

13.1.6.2 Result in the creditor or the creditor's assigns succeeding in or to all or part of the Member's interest in the LLC.

13.2 **Effect of Default by a Member.** Upon a Member's default, the unrelated Member shall have the right to elect to terminate the defaulting Member's LLC Interest without effecting a termination of the LLC. The unrelated Member may make this election at any time sixty (60) days from the date of knowledge by that Member of the default, upon ten (10) days' written notice of such election to the defaulting Member provided that the default is continuing on the date notice is given and the defaulting Member does undertake reasonable measures to correct the default.

Notwithstanding anything herein to the contrary, upon the expiration of any applicable cure period hereunder, and thereafter during the continuation of a default by a Member, the LLC Interest of such Member and of any Member affiliated with the defaulting Member shall be deemed to be "defaulted interests" and the holders of such defaulted interests shall have no right to vote on or otherwise to direct, manage or control the activities of the LLC. For the purposes of determining the interests required for the Members to take any action, any defaulted interest shall not be considered, and only the unanimous or majority vote, as the case may be, of the Members holding LLC Interests not in default shall be required to approve actions or make decisions for the LLC; provided, however, that in no event shall such non-defaulting Member(s) take any action or make any decision (i) to amend or modify the Agreement, (ii) which may adversely affect the interests of the Members in default, or (iii) which is not in the best interests of the LLC.

13.3 **Election to Purchase.** The Members understand and agree that a breach or violation of this Agreement may cause the LLC to suffer substantial damages which are not susceptible of accurate determination at this time. Accordingly, the Members understand and agree that such default by a Member may, in the reasonable discretion of the non defaulting Member, trigger an offer to sell such defaulting Member's LLC Interest to the other Members in accordance with the procedure set forth in Section 8.4. Provided, however, that the purchase price of the defaulting Member's LLC Interest shall be reduced by the aggregate amount of any outstanding debts of the defaulting Member to the LLC and by any damages caused by the defaulting Member's default, as determined by the Manager(s) in their reasonable discretion. The Members have agreed that this provision for liquidated damages is a fair and reasonable estimate and liquidation of the LLC's damages in the event of such Member's default.

Upon receipt of the purchase price, the defaulting Member shall have no further interest in the LLC, its business, or its assets, and shall execute and deliver any assignments and other instruments necessary to evidence and effectively transfer the interest of the defaulting Member to the Purchasing Members. If the necessary assignments and instruments are not delivered after notice by the Manager(s) that the consideration is available to the defaulting Member, the Purchasing Members shall execute such assignments and instruments as the defaulting Member's irrevocable agent. All Members agree that the Member(s) shall not be individually liable for any actions so taken. Each defaulting Member hereunder irrevocably constitutes and appoints the Manager(s) as its attorney and agent for, in the name of and on behalf of the defaulting Member to execute and deliver in the name of the defaulting Member, all such assignments, transfers, powers and instruments as may be necessary to effectively transfer the LLC Interrests being transferred to the

Purchasing Members on the books of the LLC. Such appointment and power of attorney, being coupled with an interest, shall not be revoked by the insolvency, bankruptcy, death or incapacity of the defaulting Member and the defaulting Member hereby ratifies and confirms and agrees to ratify and confirm all that the Manager(s) may lawfully do or cause to be done, by and on behalf of the LLC, by virtue thereof.

13.4   **Additional Effects of Default.** In the event of a Member's default under this Agreement, the LLC and the Members may, at their election, pursue any and all remedies provided under this Agreement or any other remedies available at law or equity. The LLC and the Members shall not be deemed to waive or forfeit, by pursuit of remedies provided under this Agreement not considered liquidated damages, any amounts due to them as a result of another Member's default under this Agreement. If non-defaulting Members or the LLC waive another Member's specific default, the waiver shall not be deemed to extend to any other default of this Agreement. If the non-defaulting Members or the LLC refrain from enforcing any remedy available under this Agreement against a defaulting Member, they shall not be deemed to have waived the default.

## SECTION 14:

### TERMINATION AND DISSOLUTION

14.1   **Dissolution.** The LLC shall be dissolved upon the occurrence of any of the following events: (a) The written consent of a majority (or all) of the LLC Interests; or (b) The death, withdrawal, resignation, expulsion, bankruptcy or dissolution of a Member or the occurrence of any other event which terminates the Member's continued membership in the LLC, unless the business of the LLC is continued by the consent of a majority (or all) of the remaining LLC Interests within ninety (90) days of the happening of that event.

14.2   **Conduct of Business.** Upon the occurrence of any of the events specified above, a majority of the members shall appoint one or more of the Members (or Managers) to act as liquidator and wind up all LLC business and affairs. However, the LLC shall continue to exist until Articles of Dissolution have been filed or until a decree dissolving the LLC has been entered by a court of competent jurisdiction.

14.3   **Distribution of Net Proceeds.** Upon the occurrence of any of the events specified above and the completion of the winding up of all LLC business and affairs, the assets of the LLC shall be promptly liquidated and distributed in the following order: (a) To the payment of creditors, excluding Members, in the order of priority as provided by law; (b) To the payment of loans or advances made by the Members; (c) To the Members in proportion to their Capital Accounts after adjustments for all allocations of net profits and net loss; and (d) any net profit thereafter remaining shall be distributed to the Members in proportion to their Membership Interest. Where the distribution consists both of cash and noncash assets, the cash shall be distributed first, in descending order, to the above categories. With respect to the noncash assets, which distribution values are to be based on the fair market value of the noncash asset as determined in good faith by the liquidator, the liquidator may sell the noncash assets and distribute the cash proceeds or distribute the assets in kind, in descending order, to the above categories.

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 19 of 22*

14.4  **Termination.** The LLC shall be terminated upon the distribution of all assets. The Members shall cause the LLC to file Articles of Dissolution, if required, or take any other actions necessary to terminate the LLC.

## SECTION 15

### AMENDMENTS

15.1  **Amendments by Members.** This Agreement may be adopted, amended, altered, or repealed by the vote or written consent of all the Members at which a quorum is present.

## SECTION 16

### GENERAL PROVISIONS

16.1  **Entire Agreement/Modification.** This Agreement contains the entire understanding of the parties with respect to the subject matter of the Agreement, and it supersedes all prior understandings and agreements, whether written or oral, and all prior dealings of the parties with respect to the subject matter hereof. This Agreement, in whole or in part, cannot be changed, modified, extended, or discharged orally and no waiver of compliance with any provision or condition hereof and no consent provided for herein shall be effective unless evidenced by an instrument in writing duly executed by the party against whom enforcement of any waiver, change, modification, extension, or discharge is sought. Further, no consent or waiver, express or implied, to or of any breach or default shall constitute a consent or waiver to or of any other breach.

16.2  **Confidentiality.** Each Member agrees that it shall not, and shall cause the LLC not to, at any time or under any circumstances, without the consent of the Majority in Interest, directly or indirectly, communicate or disclose to any person or entity any knowledge or information whatsoever acquired by such Member relating to confidential information of the LLC, or of the other Members, nor shall it utilize or make available any such knowledge or information directly or indirectly in connection with the transfer or proposed transfer of any of its Interest in the LLC.

16.3  **Partition.** Each Member agrees that the Member has no right, and irrevocably waives any and all such rights, to have the assets of the LLC partitioned, or to file a complaint, or institute and maintain any proceeding at law or equity to have the assets of the LLC partitioned.

16.4  **Further Actions.** Each of the Members agrees to execute, acknowledge, and deliver such additional documents, and take such further actions, as may reasonably be required from time to time to carry out each of the provisions and the intent of this Agreement, and every agreement or document relating hereto, or entered into in connection herewith.

16.5  **Severability.** If any provision of this Agreement or the application thereof to any person or circumstance shall be invalid or unenforceable to any extent, the remainder of this Agreement and the application of such provision to other persons or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

16.6  **Successor and Assigns.** This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors, legal representatives, and assigns. This Agreement may not be assigned by any party without the express written consent of the other parties.

16.7 **Notices.** Any notice to the LLC shall be addressed to it in care of the General Manager at the address specified below. All notices required or permitted by this Agreement shall be in writing and shall be hand-delivered or sent by registered or certified mail addressed to the applicable member or the LLC:

If to the LLC:          Attn: Marco Romagnoli,
                        San Remo Homes at Florida City, LLC
                        782 NW LeJeune Road, Suite 635, Miami, Florida 33126

                        with copy to
                        NICOLAS FERNANDEZ, P.A.
                        780 N.W. LeJeune Road, Suite 324, Miami, Florida 33126

If to Dinuro            Mr. Marco Romagnoli at 782 NW LeJeune Road, Suite
                        635, Miami, Florida 33126

If to Starmac           Mr. Javier Macedo at 782 NW LeJeune Road, Suite 635,
                        Miami, Florida 33126

If to Merici            Mr. Felisberto Camacho at 782 NW LeJeune Road, Suite
                        635, Miami, Florida 33126

or such other address as it shall supply for such purpose to the other parties hereto.

16.8 **Attorneys' Fees.** In the event of any litigation, arbitration or other dispute arising as a result of or by reason of this Agreement, the prevailing party in any such litigation, arbitration or other dispute shall be entitled to, in addition to any other damages assessed, its reasonable attorneys' fees, and all other costs and expenses incurred in connection with settling or resolving such dispute.

16.9 **Construction.** Throughout this Agreement, the masculine, feminine, or neuter genders shall be deemed to include the masculine, feminine, and neuter and the singular, the plural, and vice versa. The section headings of this Agreement are for convenience of reference only and do not form a part hereof and do not in any way modify, interpret, or construe the intentions of the parties.

16.10 **Execution and Counterparts.** This Agreement may be executed in several counterparts each of which shall be deemed to be an original, and all such counterparts when taken together shall constitute one and the same instrument.

16.11 **Governing Law.** This agreement shall be governed by, and interpreted in accordance with, the laws of the State of Florida.

16.12 **No Party Deemed Drafter**. The parties agree that no party shall be deemed to be the drafter of this Agreement and further that, in the event this Agreement is ever construed by a court of law, such court shall not construe this Agreement or any provision of this Agreement, against any party as the drafter of the Agreement.

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 21 of 22*

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be duly executed as of this __3__ day of _August_ , 2005.

Dinuro Investments, LLC, a Florida limited liability company

By: _____

Marco Romagnoli, Managing Member

By: _____

Roberto Romagnoli, Managing Member

Starmac LLC, a Florida limited liability company

By:   Romac, LLC, a Delaware limited liability company, Sole Member

By: _____

Javier Macedo, Manager

Merici LLC, a Florida limited liability company

By:   Felma, LLC, a Florida limited liability company, Sole Member

By: _____

Felisberto   Figueira   Camacho, Manager

## SAN REMO HOMES AT HOMESTEAD, LLC.

### OPERATING AGREEMENT

THIS OPERATING AGREEMENT (the "Agreement") is made and entered into and effective as of this _11_ day of _July_ 2005, by and among Dinuro Investments, LLC, a Florida limited liability company ("Dinuro"), Starmac, LLC, a Florida limited liability company ("Starmac"), and Merici, LLC, a Florida limited liability company ("Merici") (Dinuro, Starmac and Merici are hereinafter sometimes individually or collectively referred to as the "Member" or "Members", as appropriate).

### RECITALS:

WHEREAS, the Members have formed a limited liability company named San Remo Homes at Homestead, LLC, under the laws of the State of Florida (hereinafter referred to as the "LLC").

WHEREAS, the articles of organization of the LLC were filed on July 11, 2005 with the Secretary of State of the State of Florida (hereinafter referred to as "Articles of Organization").

WHEREAS, the purpose of the LLC is to acquire, develop and sell certain real property (the "Property") legally described as follows:

### See Attached Exhibit "A"

WHEREAS, the LLC desires to develop and construct on the Property a townhouse project (the "Project") to be known as "Tropical Villas."

NOW THEREFORE, in consideration of Ten 00/100 Dollars ($10.00), the covenants and the promises made herein, and other good and valuable consideration the receipt of which is hereby acknowledged, the parties hereby agree as follows:

### SECTION 1

### DEFINITIONS:

1.1 **"Accounting Period"** shall mean the calendar year which shall also be the LLC's fiscal year, unless another fiscal year is selected by the Members and permission to change to such other fiscal year is granted by the Internal Revenue Service.

1.2 **"Agreement"** means this Limited Liability Company Operating Agreement, as amended.

1.3 **"Articles of Organization"** means the articles of organization which were filed July 11, 2005 with the Secretary of State of the State of Florida for the purpose of forming this LLC.

1.4 **"Budget"** means the proposed LLC expenses that will be based on the preliminary budget attached hereto as Exhibit "A" hereto and will be agreed upon by the Members prior to closing on the construction loan to finance the Project.

1.5 **"Code"** means the Internal Revenue Code of 1996, as amended.

1.6 **"Capital Account"** means the capital account in accordance with Treasury Regulation Section 1.704-1(b)(2)(iv). The Capital Account shall be increased by: (1) Member's Capital

*Operating Agreement for San Remo Homes at Homestead, LLC.*
*Page 1 of 22*

**EXHIBIT**
A

Contribution, (2) a Member's share of net profits, (3) any items in the nature of income or gain that are specially allocated to each Member, and (4) the amount of any LLC liabilities assumed by a Member. The Capital Account shall be decreased by (1) distributions, (2) share of net losses, (3) fair market value of distributed property, (4) specially allocated items of loss, and (5) Member distributions assumed by the LLC..

1.7 **"Capital Contribution"** means any contribution of value, including but not limited to cash, property, assets, etc., by a Member to the capital of the LLC.

1.8 **"Cash Flow"** means all cash generated from the sale of the Project minus (i) all payments then due and payable on account of any loans made to the LLC by the Construction Lender or any other creditor other than the Members, (ii) the expenses incurred by the LLC in owning, holding, operating, maintaining and selling the Project and (iii) a reasonable reserve for working capital and other future obligations of the LLC. The cash flow of the LLC shall be determined by the Members separately for each fiscal year and not cumulatively.

1.9 **"Construction Lender"** means the bank providing acquisition, development and construction financing for the Project.

1.10 **"Improvements"** means the site development and infrastructure on the Property, and the construction of residential townhouse units on the Property, together with any recreational or other facilities incidental thereto, if any.

1.11 **"Financial Interest"** means a member's right to share in the profits, losses, incomes, expenses, or other monetary items and to receive distributions and allocations from the LLC.

1.12 **"LLC"** means San Remo Homes at Homestead, LLC., a limited liability company organized under the laws of the State of Florida.

1.13 **"LLC Interest"** or **"Interest"** means an ownership interest in the LLC, which includes the Financial Interest, the right to vote, the right to participate in management, and the right to obtain information concerning the LLC and any other rights granted to a Member under the Articles of Organization or this Agreement.

1.14 **"Majority in Interest"** shall have the same meaning as is provided for in the Statute.

1.15 **"Member"** means any person or entity who owns any interest in this LLC.

1.16 **"Property"** means the Property described in the recitals hereto and any and all assets, in whole or in part, of the LLC, both tangible and intangible.

1.17 **"Project"** means the residential homes to be constructed on the Property described in the recitals hereto.

1.18 **"Regulations"** means current binding regulations issued pursuant to the Code.

1.19 **"Statute"** means the Florida Limited Liability Company Act, as amended, set forth as Chapter 608 of the Florida Statutes.

## SECTION 2

### FORMATION

*Operating Agreement for San Remo Homes at Homestead, LLC.*
*Page 2 of 22*

2.1 **Formation of the LLC.** The Members have formed the LLC pursuant to the laws of the State of Florida by filing the Articles of Organization with the Secretary of State.

2.2 **Name.** The name of the LLC is "**San Remo Homes at Homestead, LLC.**" The Members shall operate the business of the LLC under such name or use such other names as the Members deem necessary provided that such names do not violate the Statute.

2.3 **Principal Office.** The LLC's principal place of business will be located at 782 N.W. LeJeune Road, Suite 635, Miami, Florida 33126 or any other location mutually agreed upon by the Members.

2.4 **Term.** The LLC will continue to exist until terminated or dissolved in accordance with its Articles of Organization or this Agreement.

2.5 **Business Purpose.** The purpose of the LLC is to engage in any lawful activities for which a LLC may be organized under the Statute.

2.6 **Registered Agent.** The LLC's registered agent will be Esquire Corporate Services, Inc., a Florida Corporation or any other person or entity with an office in the state of organization as determined by the Members.

2.7 **Registered Office.** The LLC's registered office will be ESQUIRE CORPORATE SERVICES, INC., 780 NW Le Jeune Road, Suite 324, Miami, Florida 33126 or any other location within the State of organization as determined by the Members.

### SECTION 3

#### MEMBERSHIP

3.1 **Initial Members.** The initial Members of the LLC are those persons set forth at the outset of this Agreement.

3.2 **Additional Members.** Additional persons or entities may be admitted to the LLC as Members, and LLC Interests may be issued to those additional Members, upon the unanimous consent of the current Members and on such terms and conditions as determined by the Members and in accordance with the Articles of Organization and this Agreement. All new Members must sign a copy of this Agreement and agree to be bound by the terms of this Agreement.

3.3 **Liability to Third Parties.** No Member shall be liable for the debts, obligations or liabilities of the LLC to a third party unless the Member agrees in writing to be liable.

3.4 **Authority.** Each Member has the authority or power to act for or on behalf of, to bind, or to incur any liability on behalf of the LLC except as otherwise provided in this Agreement.

3.5 **Withdrawal.** No Member has the right to withdraw from the LLC as a Member except as provided in this Agreement. However, a Member has the power to withdraw but such withdrawal shall be deemed a breach of this Agreement. If a Member does exercise such power of withdrawal in breach of this Agreement, the Member shall be liable to the LLC and the other Members for all monetary damages as a result of the breach, including but not limited to direct, indirect, incidental, and consequential damages. The LLC and the other Members shall not have the right to prevent the withdrawing Member from withdrawing through the use of an injunction or otherwise.

*Operating Agreement for San Remo Homes at Homestead, LLC.*
*Page 3 of 22*

3.6 **Compensation.** No Member shall receive compensation for services rendered to the LLC except as expressly permitted by this Agreement or any other written agreement. However, the LLC shall reimburse Members for any expense paid by them that is properly an expense of the LLC.

## SECTION 4

### CAPITAL ACCOUNTS

4.1 **Capital Contributions.** The initial Members shall contribute to the LLC the following Capital Contributions and shall receive the following LLC Interest:

| Name: | Capital Contribution: | LLC Interest: |
|---|---|---|
| Dinuro | $200,000.00 | 50 Shares |
| Starmac | $200,000.00 | 50 Shares |
| Merici | $200,000.00 | 50 Shares |

4.2 **Additional Contributions.** Except as specifically set forth in this Agreement, no Member shall be required to make any additional Capital Contributions.

4.3 **Failure to Contribute.** If a Member fails to timely provide a required Capital Contribution, the LLC may take such action as it deems necessary and appropriate including but not limited to instituting a court proceeding to obtain payment, canceling the Member's LLC Interest, or exercising any other right or remedy available at law or equity.

4.4 **Capital Accounts.** A Capital Account (hereinafter referred to as "Capital Account") shall be established and maintained for each Member. Each Member's Capital Account will be accounted for separately and will be maintained in accordance with generally accepted accounting principles. If a Member validly transfers an LLC interest, the Capital Account of the transferring Member shall carry over to the transferee Member in accordance with the Code and Regulations.

4.5 **Advances by Members.** The Members anticipate that additional funds and working capital may be required for the working capital needs of the LLC and the Project. The Members agree that one or more Members may, from time to time, advance such additional funds and working capital as may be required for such purposes in the form of loan advances and such advances shall be repaid to such Member(s) as the Member's cash flow shall permit. All loans made by the Members shall bear interest at a rate of not less than the prime rate published in the Wall Street Journal at the time the loan is made to the LLC plus two percent (2%), as shall be agreed to between the lending Member(s) and the LLC, shall be evidenced by a promissory note or shown on the books and records of the LLC and shall be due and payable in full principal and interest, at such time as shall be mutually agreed to by such Member(s) and the LLC.

4.6 **Preemptive Rights.** Each Member of the LLC shall be entitled to full preemptive or preferential rights, as such rights are defined by law, to subscribe for or purchase his or her proportional part of any additional or future LLC Interests which may be issued by the LLC.

*Operating Agreement for San Remo Homes at Homestead, LLC.*
*Page 4 of 22*

4.7 **Return of Capital.** No Member shall have the right to withdraw or obtain a return of his or her capital contribution except as provided in this Agreement. The return of a Member's capital contribution may not be withdrawn in the form of property other than cash except as provided in this Agreement.

## SECTION 5

### ALLOCATION OF PROFITS AND LOSSES AND DISTRIBUTIONS

5.1 **Determination of Profits and Losses.** Profits and losses shall mean net income and net loss as determined by the books and records of the LLC which shall be kept in accordance with generally accepted accounting principals and the Code.

5.2 **Allocations.** For each Accounting Period, all items of income, gain, revenue, credit, expenses, deductions, losses, and costs (including all income items separately stated on the LLC's informational tax return filed for federal tax purposes) shall be allocated as follows:

5.2.1 Losses shall be allocated to Members in accordance with each Member's Capital Contributions.

5.2.2 Until the Members have been allocated profits equal to the aggregate losses allocated to them, if any, profits shall be allocated to Members in the same manner as losses were allocated to them.

5.2.3 Thereafter, Members shall be allocated profit to the extent of distributions received pursuant to Section 5.6.

5.3 **Qualified Income Offset.** Notwithstanding the above, if a Member unexpectedly receives any adjustments, allocations, or distributions described in Treasury Regulations Section 1.704-1(b)(2)(ii)(d)(4) and (5) or (6) or any amendment thereto, or receives an allocation of loss which produces a negative capital account for any Member while any other Member has a positive capital account, then items of LLC income shall be specially allocated to such Member such that the deficit Capital Account is eliminated. This paragraph is intended to constitute a "qualified income offset" within the meaning of Treasury Regulation Section 1.704-1(b)(2)(ii)(d).

5.4 **Minimum Gain Chargeback.** Notwithstanding the above, if there is a net decrease in LLC "minimum gain" during a taxable year, each Member shall be specially allocated, before any other allocation, items of income and gain for such taxable year (and, if necessary, subsequent years) in proportion to each Member's share of the net decrease in LLC "minimum gain" as determined in accordance with Treasury Regulation Section 1.704-2(g)(2). This paragraph is intended to comply with the "minimum gain chargeback" provisions of Treasury Regulation Section 1704.-2(f).

5.5 **Section 704 (c) Allocation.** Notwithstanding the above, to the extent that Code Section 704(c)) is applicable to any item of income, gain, loss, and deduction with respect to any property (other than cash) that has been contributed by a Member and which is required to be allocated to such Member for income tax purposes, the item shall be allocated to such Member in accordance with Code Section 704(c).

5.6 **Distributions.** The Members understand and agree that all distributions shall be made at such times and in such amounts as shall be determined by the unanimous consent of the Members

*Operating Agreement for San Remo Homes at Homestead, LLC.*
*Page 5 of 22*

from available Cash Flow. If the Members, unanimously, determine to make a distribution of Cash Flow, then the Managing Member shall distribute the Cash Flow in the following order of priority (provided that no distribution shall be made if any default exists under the loan from the Construction Lender):

5.6.1 To pay any debt, service, including accrued interest or principal, on any outstanding obligation of the LLC, including without limitation, the LLC's loan from the Construction Lender, made by the Members, and to provide a reasonable reserve for such payment in the future.

5.6.2 To the extent that there is Cash Flow thereafter available, said Cash Flow shall be distributed to the Members to the extent of their positive Capital Account balance on a pro-rata basis in accordance with each Member's Interest.

5.6.3 To the extent that there is Cash Flow thereafter available, said Cash Flow shall be distributed among the Members on a pro-rata basis.

5.7 **Distribution of Assets in Kind.** Except as otherwise provided in this Section, if any assets of the Members shall be distributed in kind, such assets shall be distributed to the Members entitled thereto as tenants in common, in the same proportions in which such Members would have been entitled to cash distributions if there had been a sale of said assets.

5.8 **Demand for Distribution.** No Member shall be entitled to demand or receive a distribution of LLC property in return for his Capital Contribution to the LLC.

## SECTION 6

### MEETINGS

6.1 **Place of Meeting.** Meetings of Members shall be held at any place within or outside the United States designated by the Members and stated in the notice of the meeting. If no place is so specified, Members' meetings shall be held at the LLC's principal office.

6.2 **Annual Meeting.** An annual meeting of Members shall be held on the last week in the month of February of each year at the corporate offices of the LLC. At the annual meeting, any proper business may be transacted.

6.3 **Special Meetings.** A special meeting of the Members may be called at any time by one or more Members holding Interests which, in the aggregate, constitute not less than ten percent (10%) of the LLC Interests. A request for a special meeting of the Members shall be in writing, specifying the time and place of the meeting and the general nature of the business proposed to be transacted. The notice shall be delivered in accordance with this Agreement.

6.4 **Notice of Members' Meetings.** All notices of meetings of Members shall be sent not less than ten (10) nor more than sixty (60) days before the date of the meeting being noticed. The notice shall specify the place, date, and hour of the meeting and (i) in the case of a special meeting, the general nature of the business to be transacted, or (ii) in the case of the annual meeting, those matters which are intended to be presented for action by the Members. If a proposal contains (i) a contract or transaction in which a Member has a direct or indirect Financial Interest, (ii) an amendment of the Articles of Organization, (iii) a reorganization of the LLC, or (iv) a voluntary dissolution of the LLC, the notice shall state the general nature of such proposal.

6.5  **Conduct of Meetings.**  All meetings of the Members shall be presided over by the chairman of the meeting who shall be designated by a majority of the Members at the meeting. The chairman of the meeting shall determine the order of business and the procedures to be followed at the meeting.

6.6  **Quorum.**  The presence, in person or by proxy, of the holder(s) of an aggregate of fifty one percent (51%) or more of the LLC Interests shall constitute a quorum at all meetings of the Members for the transaction of business.

6.7  **Voting.**  Each Member shall have a number of votes equal to the percentage LLC Interest held by such Member.  An aggregate of fifty one percent (51%) or more of the votes shall be required to approve any action, unless a greater or lesser vote is required pursuant to this Agreement or by Statute.  Any Member entitled to vote on any matter may vote part of the votes in favor of the proposal and refrain from voting the remaining votes or vote them against the proposal, but if the member fails to specify the number of votes such Member is voting affirmatively, it will be conclusively presumed that the Member's approving vote is with respect to all votes the Member is entitled to vote.

6.8  **Adjourned Meeting and Notice Thereof.**  Any Members' meeting, annual or special, whether or not a quorum is present, may be adjourned from time to time by the vote of a majority of the LLC Interests represented at such meeting, either in person or by proxy, but in the absence of a quorum, no other business may be transacted at such meeting.  When any meeting of Members, either annual or special, is adjourned to another time and place, notice need not be given of the adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken, unless a new record date for the adjourned meeting is fixed, or unless the adjournment is for more than five (5) days from the date set for the original meeting, in which case the Members shall set a new record date.  Notice of any such adjourned meeting, if required, shall be given to each Member entitled to vote at the adjourned meeting in accordance with this Agreement.  At any adjourned meeting the LLC may transact any business which might have been transacted at the original meeting.

6.9  **Waiver of Notice or Consent by Absent Members.**  The transactions of any meeting of Members, either annual or special, however called and noticed, and whenever held, shall be as valid as if it had occurred at a meeting duly held after regular call and notice, if a quorum be present either in person or by proxy and if, either before or after the meeting, each person entitled to vote but not present in person or by proxy, signs a written waiver of notice, a consent to the holding of the meeting or any approval of the minutes thereof.  The waiver of notice or consent shall state either the business to be transacted or the purpose of any annual or special meeting of Members.  All such waivers, consents and approvals shall be filed with the LLC's books and records.  Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, unless such person objects at the beginning of the meeting.

6.10  **Member Action by Written Consent without a Meeting.**  Any action which may be taken at any annual or special meeting of Members may be taken without a meeting and without prior notice, if consent in writing, setting forth the action so taken, are signed by Members holding LLC interests representing the aggregate number of votes equal to or greater than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all

LLC Interests entitled to vote thereon were present and voted. All such consents shall be filed with the LLC's books and records.

6.11 **Arbitration.** In the event of a deadlock between the Members as to decisions or matters which require the unanimous vote of all of Members or inability to reach a fifty one percent (51%) Membership Interest consensus, the dispute or matter shall be settled through binding arbitration in accordance with the procedures, rules and regulations of the American Arbitration Association. The Managers shall each select one (1) impartial and independent arbitrator with at least 5 years experience in the mediation and arbitration of real estate development and construction disputes. A third arbitrator shall be chosen by the American Arbitration Association. The decision rendered by the arbitration panel shall be binding upon the Members. Arbitration shall be held in Miami Dade County, Florida. The non prevailing party shall pay for any costs, fees and expenses regarding the arbitration and said costs, fees and expenses shall not be reimbursed or paid by the LLC.

## SECTION 7

### MANAGEMENT

7.1 **Managers.** Each of the Members shall be a Manager, until changed by an amendment to this Agreement. The Managers shall be responsible for the management of the LLC's business and affairs.

7.2 **Vacancies.** A Manager vacancy shall be deemed to exist if (i) a Manager dies, or is removed by the Members; or (ii) a Manager resigns. Vacancies are to be filled solely by vote of the Members, but the Members shall not be obligated to fill a vacancy.

7.3 **Resignation.** Any Manager may resign effective upon the delivery of written notice to any other Member, unless the notice specifies a later effective date.

7.4 **Powers.** Any two (2) Manager(s) have, subject to the control of the Members, general supervision, direction, and control of the business of the LLC, and the authority to bind the LLC. In addition, subject to the provisions of the Statute, Florida law, any limitations in the Articles of Organization and this Agreement relating to actions requiring approval by the Members, any two (2) Managers may make all decisions and take all actions on behalf of the LLC not otherwise provided for in this Agreement including but not limited to the following:

7.4.1 To borrow money, with or without security, in furtherance of any or all of the purposes of the LLC, and to secure the same by mortgage, pledge or other lien on any assets of the LLC, and to execute and deliver in the name of the LLC, notes evidencing same and mortgages, deeds of trust and any other security instruments securing same and to modify, alter or otherwise restructure indebtedness of the LLC, provided, however, that one of the Managers acting on behalf of the LLC pursuant to this Section 7.4.1 shall be Starmac or Merici;

7.4.2 To procure and maintain with responsible companies such insurance as may be advisable in such amounts and covering such risks as are deemed appropriate by the Members;

7.4.3 To execute and deliver on behalf of and in the name of the LLC, or in the name of a nominee of the LLC, deeds, mortgages, deeds of trust, notes, leases, subleases, licenses, rental or

*Operating Agreement for San Remo Homes at Homestead, LLC.*
*Page 8 of 22*

occupancy agreements, or use agreements of or with respect to all or any assets of the LLC, management agreements, sales agreements, bills of sale, and any and all other instruments necessary or incidental to the conduct of the LLC 's business, provided, however, that one of the Managers acting on behalf of the LLC pursuant to this Section 7.4.3 shall be Starmac or Merici;

7.4.4  To protect and preserve the assets of the LLC and incur any other indebtedness in the LLC 's ordinary course of business, provided, however, that one of the Managers acting on behalf of the LLC pursuant to this Section 7.4.4 shall be Starmac or Merici;

7.4.5  To delegate all or any of its duties hereunder and in furtherance of any such delegation, to appoint, employ or contract on behalf of the LLC with any person (including entities owned or controlled, by, or affiliated with a Member provided that the other Members consent in advance thereto), as the Managers may in their sole discretion deem necessary or desirable; which persons may, under the supervision of the Managers, perform any of the following or other acts or services for the LLC as the Managers may approve, except that the Managers shall continue to be primarily responsible for the performance of all such obligations: serve as the LLC 's advisor and consultant in connection with policy decisions made by the Members or the Managers; act as or engage the services of consultants, accountants, correspondents, attorneys, brokers, escrow agents, or in any other capacity deemed by the Managers necessary or desirable; investigate, select and, on behalf of the LLC, conduct relations with persons acting in such capacities and pay appropriate fees to, and enter into appropriate contracts with, or employ or retain any of them to render services for the LLC; and perform or assist in the performance of administrative or managerial functions necessary in the management of the LLC;

7.4.6  To open LLC bank accounts to deposit LLC funds and to pay LLC expenses and obligations, provided, however, that any payment of an LLC expense or obligation in excess of Ten Thousand and 00/100 Dollars ($10,000.00) shall require the act of either Starmac or Merici or Jose Coto, acting as agent for Starmac or Merici, but only for the matters specifically set forth in this Section 7.4.6.;

7.4.7  To acquire, develop, improve, operate, finance, refinance, sell or dispose of the Project, provided, however, that one of the Managers acting on behalf of the LLC pursuant to this Section 7.4.7 shall be Starmac or Merici or Jose Coto, upon specific written authority of Starmac or Merici;

7.4.8  To engage in any kind of activity and to perform and carry out contracts of any kind necessary to, or in connection with, or incidental to the accomplishment of the purposes of the LLC, provided said activities and contracts may be lawfully carried on or performed by a LLC under the laws of the State of Florida, and further provided that any contract obligating the LLC to payment of funds in excess of Fifty Thousand and 00/100 Dollars ($50,000.00) shall require the act of either Starmac or Merici or Jose Coto, acting as agent for Starmac or Merici, but only for the matters specifically set forth in this Section 7.4.8;

7.4.9  To make all decisions concerning the operational aspects of the LLC, and the execution and delivery of all contracts, deeds and other instruments for the sales of residential units within the Project, in connection therewith provided, however, that one of the Managers acting on behalf of the LLC pursuant to this Section 7.4.9 shall be Starmac or Merici or Jose Coto, upon specific written authority of Starmac or Merici;

*Operating Agreement for San Remo Homes at Homestead, LLC.*
*Page 9 of 22*

7.4.10  To ask for, collect, and receive any rents, issues, and profits or income from any property of the LLC, or any part or parts thereof, and to disburse LLC funds for LLC purposes to those persons entitled to receive same, subject to the limits on disbursements established in Section 7.4.6 above;

7.4.11  Subject to Section 7.4.6 above, to pay from LLC assets, all expenses of organizing and conducting the business of the LLC, including without limitation, engineering, architectural, construction, professional, consulting, marketing, brokerage, legal, accounting fees and other;

7.4.12  To institute, prosecute, defend, mediate, arbitrate, settle, compromise, and dismiss lawsuits or other judicial or administrative proceedings brought on or in behalf of, or against, the LLC or the Members in connection with activities arising out of, connected with, or incidental to this Agreement, and to engage counsel or others in connection therewith provided, however; that one of the Managers acting on behalf of the LLC pursuant to this Section 7.4.12 shall be Starmac or Merici or Jose Coto, upon specific written authority of Starmac or Merici;

7.4.13  To execute any and all other instruments and take any and all other actions necessary or desirable to carry out the purposes and business of the LLC;

7.4.14  To execute and approve homeowners' association documents, or to sell, transfer, convey, exchange, lease, ground lease, or grant an easement to any of the property of the LLC or any portion of the LLC property, including closing statements provided, however; that one of the Managers acting on behalf of the LLC pursuant to this Section 7.4.14 shall be Starmac or Merici or Jose Coto, upon specific written authority of Starmac or Merici;

7.4.15  To assume the overall duties, general management, and final determination of all questions relating to the usual daily business affairs and ministerial acts of the LLC;

7.4.16  To sell all or substantially all of the assets of the LLC, whether or not in the ordinary course of business, to pay, settle and compromise LLC liabilities, obligations and expenses, and to wind up the affairs of and liquidate the LLC, provided, however, that one of the Managers acting on behalf of the LLC pursuant to this Section 7.4.16 shall be either Starmac and Merici; and

7.4.17  To do any and all acts necessary, useful or convenient, in the judgment of the Managers to carry on the business and affairs of the LLC and the purposes thereof.

Notwithstanding anything herein to the contrary, any act of a Manager which may materially affect the LLC or its property shall require the prior consent of the Members. Additionally, the Members understand and agree that no Manager shall be compensated for the services it renders to and capital it contributes to, for, or on behalf of the LLC, except as provided for in the Budget.

7.5  **Restrictions on Authority of the Managers.** Except with the written consent or ratification of all of the Members, no Manager shall have the authority to:

7.5.1  Do any act in contravention of the certificate of the LLC or this Agreement;

7.5.2  Do any act that would make it impossible or unreasonably burdensome to carry on the ordinary business and purpose of the LLC;

7.5.3  Confess a judgment against the LLC;

*Operating Agreement for San Remo Homes at Homestead, LLC.*
*Page 10 of 22*

7.5.4  Make, execute or deliver any general assignment for the benefit of the creditors of the LLC;

7.5.5  Possess LLC property or assign the LLC 's rights in specific LLC property for other than an LLC purpose;

7.5.6  Knowingly or willingly do any act (except an act expressly required by this Agreement) which would cause the LLC to become an association taxable as a corporation;

7.5.7  Change or reorganize the LLC into any other legal form;

7.5.8  Incur any obligation in the name or on the credit of the LLC, except in the ordinary course of the LLC 's business; or

7.5.9  Amend or otherwise change this Agreement so as to modify the rights of a Member to profits, losses, allocations, or distribution, or obligations of the Member as set forth herein.

7.6  **Place of Meeting.**  Regular meetings of the Managers may be held without notice, at any time and at any place within the United States that is designated by the Managers.  In the absence of the designation of a place, regular meetings shall be held at the principal office of the LLC. Special meetings of the Managers shall be held at any place that has been designated in the notice of the meeting or, if not stated in the notice, at the principal office of the LLC.  Any meeting, regular or special, may be held by conference telephone or similar communications equipment, so long as all Managers participating in such meeting can hear one another, and all such Managers shall be deemed to be present in person at such meeting.

7.7  **Liability to Third Parties.**  No Manager shall be liable for the debts, obligations, or liabilities of the LLC to a third party unless the Manager agrees in writing to be liable.

7.8  **Standard of Care; Liability.**  Each Manager shall exercise such powers and otherwise perform such duties in good faith, in the matters such Manager believes to be in the best interests of the LLC, and with such care including reasonable inquiry, using ordinary prudence, as a person in a like position would use under similar circumstances.  In performing the duties of a Manager, a Manager shall be entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, in which case prepared or presented by:

7.8.1  one or more Officers or employees of the LLC who the Manager believes to be reliable and competent in the matters presented;

7.8.2  counsel, independent accountants, or other persons as to matters which the Manager believes to be within such person's professional or expert competence; or

7.8.3  a Committee upon which the Manager does not serve, as to matters within the Committee's designated authority, which Committee the Manager believes to merit confidence, so long as in any such case, the Manager acts in good faith, after reasonable inquiry when the need therefor is indicated by the circumstances, and without knowledge that would cause such reliance to be unwarranted.

## SECTION 8:

### TRANSFER AND ASSIGNMENT OF LLC INTERESTS

*Operating Agreement for San Remo Homes at Homestead, LLC.*
*Page 11 of 22*

8.1   **Transfer or Assignment of Member's Interest.** Except as otherwise provided in this Agreement, no Member may transfer and/or assign, in whole or in part, his or her LLC Interest at any time without the consent of the other member.  For purposes of this Agreement transfer shall mean sale, exchange, assignment, alienation, sale of underlying company interest, disposition, gift, pledge, hypothecation, encumbrance, or grant of security interest in the LLC Interest.

8.2   **Consent to Transfer.** No transfer or assignment of a LLC Interest, or any part thereof, will be valid without the express written consent of all of the Members.  If a LLC Interest is transferred or assigned without the consent of all of the other Members, the transferee shall have no rights in, nor may participate in the management or operation of the business and affairs of the LLC, nor have the right to become a Member of the LLC.  Any transfer or assignment of a LLC Interest without the proper consent shall only effect a transfer or assignment of the Member's Financial Interest, and the transferring Member shall still be bound to the terms of this Agreement.  If a transfer or assignment does obtain the required consent, then the transferee shall be admitted as an additional Member pursuant to this Agreement.

8.3 **Right of First Refusal.**  If any Member shall receive an offer from a third party to sell its interest and that Member desires to sell his or her Interests, that Member must cause the purchaser to make the same offer to purchase all the Interests of the Members on the same terms and conditions as made to the selling Member.  The other Members shall have thirty (30) days to accept or reject the offer.  If the other Members reject the offer, whoever shall desire to sell his or her Interests shall first offer the offer thereof to the LLC and the other Members on a pro-rata basis upon the same terms and conditions as made to the selling Member.  Such offer shall be communicated by the one offering to sell his or her Interest to all other parties and the LLC by written notice.  If either the LLC or the other Members do not wish to purchase the pro-rata share, the LLC or other Members may purchase all or any part of the Interests being sold.  In the event that such offer shall not be accepted by written notice no later than thirty (30) days after the date of the mailing of the offer by either the LLC or the other Members, whoever shall have offered the Interests shall be free to sell his or her Interests to any other person, firm, or entity, subject to any restrictions in the articles of organization, this Agreement, or other governing documents, except that the subsequent transfer of such Interests shall not be on different or terms more favorable to the transferee than the terms upon which the transfer was initially offered to the LLC or other Members.  If, within thirty (30) days after the expiration of the thirty (30) day period referred to in the preceding paragraph, the Member offering to sell his or her Interests shall fail to consummate a sale thereof to any other purchaser, then no sale of such shares may be made thereafter by the offeror without again reoffering the same to the LLC or the other Members in accordance with the provisions of this paragraph.  Each Interest Certificate issued by the LLC to the Members, if any, shall bear an appropriate legend that the transfer of such Interests is restricted by the provisions of this Agreement.

8.4 **Permitted Transfers, Determination of Purchase Price and Payment.**  If a Member desires to withdraw from the LLC or desires to sell its LLC Interest, the other Members shall have the right but not the obligation purchase all or any part of the withdrawing Member's LLC Interest. The price for Interests purchased pursuant to this Agreement shall be the Interest's net worth in the LLC, adjusted to reflect the fair market value of the LLC's contracts and potential contracts, of the LLC at the close of the fiscal quarter immediately preceding the occurrence of the event giving rise to the purchase.  The Interest's net worth shall be determined, within thirty (30) days of acceptance

*Operating Agreement for San Remo Homes at Homestead, LLC.*
*Page 12 of 22*

by the remaining Members of the withdrawing Member's offer to sell, by a certified public accountant, selected by the LLC, in accordance with the accounting principles generally applied by the LLC. If the selling Member does not agree with the purchase price determined by the accountant selected by the LLC, the selling Member shall select an independent certified public accountant who shall, jointly with the accountant selected by the LLC, determine the purchase price of the Interest according to the terms of the preceding sentence. In the event such accountants cannot agree on the purchase price, they shall select a third independent certified public accountant. The purchase price determined by a majority of the three accountants shall be final and binding. Unless otherwise agreed, the purchase price shall be paid with an initial deposit of at least twenty percent (20%) of the total purchase price of the Interest not later than the thirtieth (30th) day following the date upon which the accountants determine the purchase price of the Interest. The LLC shall pay to the selling party the balance of the purchase price (hereinafter referred to as the "Balance") represented by the amount by which the aggregate purchase price of the Interest exceeds the amount of the initial payment, in twenty four (24) consecutive equal monthly payments commencing one month after the initial payment. The Balance outstanding shall bear interest from the date of sale, payable monthly together with the principal, at a rate equal to the yield to maturity of one hundred eighty (180) day United States Treasury Bills (at their date of issue) issued most recently prior to the date on which the interest rate is being determined. The obligation to pay the Balance and interest thereon shall be evidenced by a duly executed promissory note, payable to the order of the selling party, secured by the Interest being sold which shall be held in escrow until the final payment, and containing the aforesaid terms and such other terms as are customary for such instruments, including acceleration in the event of default, the right of prepayment in whole or part without penalty. Notwithstanding the foregoing, no Member shall be obligated, under any circumstances, to purchase the Membership Interests of a selling Member pursuant to this Section.

8.5 **Interests.** This Agreement shall control the disposition of any Interest of the LLC now owned or hereafter acquired by the Members.

## BOOKS AND RECORDS

8.6 **Maintenance of Books and Records.** The LLC shall establish and maintain appropriate books and records of the LLC in accordance with generally accepted accounting principles. There shall be kept at the principal office of the LLC, the following LLC documents: (a) A current list of the name and business or residence address of each Member and his or her Capital Contribution and LLC Interest; (b) A current list of the name and business or residence address of each Manager, if any; (c) A copy of the Articles of Organization and this Agreement and any amendments thereto; (d) Copies of the LLC's federal, state, and local income tax or information returns, if any, for the past six fiscal years; (e) Copies of the financial statements of the LLC, if any, for the past six fiscal years; (f) Originals or copies of all minutes, actions by written consent, consents to action, and waivers of notice to Members, Member votes, actions and consents; and (f) Any other information required to be maintained by the LLC pursuant to the Statute.

8.7 **Annual Accounting.** Within ninety (90) days after the close of each fiscal year of the LLC, the LLC shall cause to be prepared and submitted to each Member a balance sheet and income statement for the preceding fiscal year of the LLC (or portion thereof in conformity with generally

*Operating Agreement for San Remo Homes at Homestead, LLC.*
*Page 13 of 22*

accepted accounting principles and provide to the Members all information necessary for them to complete federal and state tax returns.

8.8 **Inspection and Audit Rights.** Each Member has the right, upon reasonable request, for purposes reasonably related to the interest of that Member, to inspect and copy during normal business hours any of the LLC books and records. Such right may be exercised by the Member or his or her agent or attorney. Any Member may require a review and/or audit of the books, records, and reports of the LLC.

8.9 **Bank Accounts.** All funds of the LLC shall be deposited in the LLC's name in such banks as determined by the Members. All checks, drafts, or other orders for payment of money, notes or other evidences of indebtedness, issued in the name of or payable to the LLC, shall be signed or endorsed by such person or persons and in such manner as, from time to time, shall be determined by the Members.

8.10 **Fiscal Year.** The LLC's fiscal year shall end on December 31st.

8.11 **Accounting Method.** For financial reporting purposes, the books and records of the LLC shall be kept on the cash (or accrual) method of accounting applied in a consistent manner and shall reflect all transactions of the LLC and be appropriate and adequate for the purposes of the LLC.

## SECTION 9:

### TAXATION

9.1 **Tax Year.** The LLC's taxable year shall end on December 31st.

9.2 **Tax Matters Member.** The Code requires the Internal Revenue Service (the "Service") to promulgate regulations describing procedures for designating a Tax Matters Member (the "TMM"). Unless prohibited by such regulations, the LLC intends to designate Starmac to serve as TMM for the LLC. Until a different person is designated the TMM, Starmac will act as liaison between the LLC and the Service in connection with all administrative and judicial proceedings involving tax controversies of the LLC, and agrees to assume all the rights and duties of a TMM as set forth in the Code. These rights and duties include, but are not limited to:

9.2.1 The duty to notify and keep all other Members informed of any audit of the LLC;

9.2.2 The obligation to furnish the Service with the name, address, and taxpayer identification number of each Member;

9.2.3 The right to settle, any claims by the Service against the LLC;

9.2.4 The right to initiate judicial proceedings contesting adverse determinations by the Service against the LLC;

9.2.5 The right to extend the statute of limitations; and

9.2.6 The right to take any other action on behalf of the Members or the LLC in connection with any administrative or judicial tax proceeding to the extent permitted by applicable laws or regulations.

*Operating Agreement for San Remo Homes at Homestead, LLC.*
*Page 14 of 22*

Notwithstanding the fact that Starmac will act as TMM, as to tax related matters or controversies which affect the other Members, Starmac shall seek the advice and consent of Dinuro and Merici in acting as TMM and shall take no action which would adversely affect the other Members without each other Member's prior consent.

## SECTION 10:

### INDEMNIFICATION

10.1     **Definitions: Agents, Proceedings, and Expenses.**  For the purposes of this Agreement, "Agent" means any person who is or was a Member, Manager, Officer, employee, or other agent of this LLC; "Proceeding" means any threatened, pending or completed action or proceeding, whether civil, criminal, administrative, or investigative; and "Expenses" means any and all costs, fees, and expenses including but not limited to court costs and attorneys' fees.

10.2     **Actions Other Than by the LLC.**  The LLC shall indemnify and hold harmless any person or Agent who was or is a party, or is threatened to be made a party, to any Proceeding (other than an action by or in the right of this LLC) by reason of the fact that such person is or was an Agent of this LLC, against Expenses, judgments, fines, settlements and other amounts actually and reasonably incurred in connection with such Proceeding, if that person acted in good faith and in a manner that person reasonably believed to be in the best interests of this LLC, and, in the case of a criminal proceeding, had no reasonable cause to believe his or her conduct was unlawful.  The termination of any Proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent shall not, of itself, create a presumption that the person did not act in good faith and in a manner which the person reasonable believed to be in the best interests of this LLC or that the person had reasonable cause to believe that his or her conduct was unlawful. Notwithstanding the foregoing , no person or Agent shall be indemnified for their wilful acts or gross negligence.

10.3     **Actions by the LLC.**  This LLC shall indemnify any person or Agent who was or is a party, or is threatened to be made a party, to any threatened, pending, or completed action by or in the right of this LLC to procure a judgment in its favor by reason of the fact that the person is or was an Agent of this LLC, against expenses actually and reasonably incurred by that person or Agent in connection with the defense or settlement of that action if that person or Agent acted in good faith, in a manner that person or Agent believed to be in the best interests of this LLC, and with such care, including reasonable inquiry, as an ordinary prudent person in a like position would use under similar circumstances.  No indemnification, however, shall be made under this Section 11.3 with respect to any claim, issue or matter as to which that person or Agent shall have been adjudged to be liable to this LLC in the performance of that person's or Agent's duty to the LLC, unless the court in which that action was brought shall determine upon application that the person or Agent is fairly and reasonably enticed to indemnity for the expenses which the court shall determine; (ii) for amounts paid in settling or otherwise disposing of a threatened or pending action, with or without court approval; or (iii) for Expenses incurred in defending a threatened or pending action which is settled or otherwise disposed of without court approval. Notwithstanding the foregoing , no person or Agent shall be indemnified for their wilful acts or gross negligence.

10.4   **Successful Defense by Agent.** To the extent that an Agent of this LLC has been successful on the merits in defense of any Proceeding, the Agent shall be indemnified against Expenses actually and reasonably incurred by the Agent in connection with the Proceeding.

10.5   **Required Approval.** Any indemnification under this Section shall be made by the LLC only if authorized upon a determination by a majority vote of the LLC Interests of Members who were not parties to the proceeding at a duly held meeting of the Members at which a quorum is present.

10.6   **Advance of Expenses.** Expenses incurred in defending any Proceeding may be advanced by the LLC before the final disposition of the Proceeding upon receipt of an undertaking by or on behalf of the Agent to repay the amount of the advance unless it shall be determined ultimately that the Agent is entitled to be indemnified.

10.7   **Other Contractual Rights.** Nothing contained in this Section shall affect any right to indemnification to which Agents of this LLC or any subsidiary may be entitled by contract, by vote of the Members, as a matter of law or equity, or otherwise.

10.8   **Insurance.** The LLC may, upon a determination by the Members, purchase and maintain insurance on behalf of any Agent of the LLC against any liability which might be asserted against or incurred by the Agent in such capacity, or which might arise out of the Agent's status as such, whether or not the LLC would have the power to indemnify the Agent against that liability.

10.9   **Amendment to Florida Laws.** In the event that Florida law regarding indemnification of members, managers, directors, officers, employees, and other agents of a LLC, as in effect at the time of adoption of this Agreement, is subsequently amended to in any way that increases the scope of permissible indemnification beyond that set forth herein, the indemnification authorized by this Section shall be deemed to be coextensive with the maximum afforded by Florida law as so amended.

## SECTION 11

### LLC CERTIFICATES

11.1   **Issuance of LLC Certificates.** Each Member's LLC Interest shall be represented by a LLC Certificate. Upon the execution of this Agreement and the payment of the Capital Contributions by the Member, the Members shall have the LLC issue one or more LLC Certificates in the name of each Member certifying that the named Member is the record holder of the LLC Interests.

11.2   **Transfer of LLC Certificates.** An LLC Interest which is transferred in accordance with the terms of this Agreement shall be transferable on the books of the LLC. However, the transfer of an LLC Interest shall not be entered until the previously issued LLC Certificate representing such LLC Interest is surrendered to the LLC and canceled and a replacement LLC Certificates issued to the assignee of such LLC Interest.

11.3   **Lost, Stolen, or Destroyed Certificates.** The LLC shall issue a new LLC Certificate in place of any LLC Certificate previously issued if the holder of the LLC Certificate satisfactorily proves that a previously issued LLC Certificate has been lost, destroyed, or stolen. If a Member fails

*Operating Agreement for San Remo Homes at Homestead, LLC.*
*Page 16 of 22*

to notify the LLC within a reasonable time after it has notice of the loss, destruction, or theft of a LLC Certificate, and a transfer of the LLC Interest represented by the LLC Certificate is registered before receiving such notification, the LLC shall have no liability with respect to any claim against the LLC for such transfer or for a new LLC Certificate.

## SECTION 12

### DEFAULT BY A MEMBER

12.1 **Event of Default.** The following events shall constitute a default by a Member:

12.1.1 Violation of the provisions of this Agreement and failure to remedy the violation within sixty (60) days after written notice of the violation to the alleged defaulting Member from a non-defaulting Member and a reasonable opportunity to cure.

12.1.2 A fraudulent act by a Member in connection with the affairs of the LLC that materially adversely affects the LLC.

12.1.3 The assignment of a Member Interest by a Member for the benefit of creditors, or the voluntary or involuntary filing of a petition under any section or chapter of the Federal Bankruptcy Code or under any similar law of the United States or any state thereof.

12.1.4 Adjudication of a Member as bankrupt or insolvent under any section or chapter of the Federal Bankruptcy Code or under any similar law of the United States or any state thereof.

12.1.5 The appointment of a receiver or trustee for all or substantially all of a Member's assets and the failure to have the receiver or trustee discharged within thirty (30) days after appointment.

12.1.6 The commencement of any legal action by a creditor against a Member resulting in litigation that, in the reasonable opinion of the unrelated Member, creates a real and substantial risk of involvement of LLC property that will probably:

12.1.6.1 Have a material adverse effect on the LLC; or

12.1.6.2 Result in the creditor or the creditor's assigns succeeding in or to all or part of the Member's interest in the LLC.

12.2 **Effect of Default by a Member.** Upon a Member's default, the unrelated Member shall have the right to elect to terminate the defaulting Member's LLC Interest without effecting a termination of the LLC. The unrelated Member may make this election at any time sixty (60) days from the date of knowledge by that Member of the default, upon ten (10) days' written notice of such election to the defaulting Member provided that the default is continuing on the date notice is given and the defaulting Member does undertake reasonable measures to correct the default.

Notwithstanding anything herein to the contrary, upon the expiration of any applicable cure period hereunder, and thereafter during the continuation of a default by a Member, the LLC Interest of such Member and of any Member affiliated with the defaulting Member shall be deemed to be "defaulted interests" and the holders of such defaulted interests shall have no right to vote on or otherwise to direct, manage or control the activities of the LLC. For the purposes of determining the interests required for the Members to take any action, any defaulted interest shall not be considered,

*Operating Agreement for San Remo Homes at Homestead, LLC.*
*Page 17 of 22*

and only the unanimous or majority vote, as the case may be, of the Members holding LLC Interests not in default shall be required to approve actions or make decisions for the LLC; provided, however, that in no event shall such non-defaulting Member(s) take any action or make any decision (i) to amend or modify the Agreement, (ii) which may adversely affect the interests of the Members in default, or (iii) which is not in the best interests of the LLC.

12.3  **Election to Purchase.**  The Members understand and agree that a breach or violation of this Agreement may cause the LLC to suffer substantial damages which are not susceptible of accurate determination at this time. Accordingly, the Members understand and agree that such default by a Member may, in the reasonable discretion of the non defaulting Member, trigger an offer to sell such defaulting Member's LLC Interest to the other Members in accordance with the procedure set forth in Section 8.4.  Provided, however, that the purchase price of the defaulting Member's LLC Interest shall be reduced by the aggregate amount of any outstanding debts of the defaulting Member to the LLC and by any damages caused by the defaulting Member's default, as determined by the Manager(s) in their reasonable discretion.  The Members have agreed that this provision for liquidated damages is a fair and reasonable estimate and liquidation of the LLC's damages in the event of such Member's default.

Upon receipt of the purchase price, the defaulting Member shall have no further interest in the LLC, its business, or its assets, and shall execute and deliver any assignments and other instruments necessary to evidence and effectively transfer the interest of the defaulting Member to the Purchasing Members. If the necessary assignments and instruments are not delivered after notice by the Manager(s) that the consideration is available to the defaulting Member, the Purchasing Members shall execute such assignments and instruments as the defaulting Member's irrevocable agent. All Members agree that the Member(s) shall not be individually liable for any actions so taken. Each defaulting Member hereunder irrevocably constitutes and appoints the Manager(s) as its attorney and agent for, in the name of and on behalf of the defaulting Member to execute and deliver in the name of the defaulting Member, all such assignments, transfers, powers and instruments as may be necessary to effectively transfer the LLC Interests being transferred to the Purchasing Members on the books of the LLC.  Such appointment and power of attorney, being coupled with an interest, shall not be revoked by the insolvency, bankruptcy, death or incapacity of the defaulting Member and the defaulting Member hereby ratifies and confirms and agrees to ratify and confirm all that the Manager(s) may lawfully do or cause to be done, by and on behalf of the LLC, by virtue thereof.

12.4  **Additional Effects of Default.**  In the event of a Member's default under this Agreement, the LLC and the Members may, at their election, pursue any and all remedies provided under this Agreement or any other remedies available at law or equity. The LLC and the Members shall not be deemed to waive or forfeit, by pursuit of remedies provided under this Agreement not considered liquidated damages, any amounts due to them as a result of another Member's default under this Agreement.  If non-defaulting Members or the LLC waive another Member's specific default, the waiver shall not be deemed to extend to any other default of this Agreement. If the non-defaulting Members or the LLC refrain from enforcing any remedy available under this Agreement against a defaulting Member, they shall not be deemed to have waived the default.

**SECTION 13:**

*Operating Agreement for San Remo Homes at Homestead, LLC.*
*Page 18 of 22*

TERMINATION AND DISSOLUTION

13.1 **Dissolution.** The LLC shall be dissolved upon the occurrence of any of the following events: (a) The written consent of a majority (or all) of the LLC Interests; or (b) The death, withdrawal, resignation, expulsion, bankruptcy or dissolution of a Member or the occurrence of any other event which terminates the Member's continued membership in the LLC, unless the business of the LLC is continued by the consent of a majority (or all) of the remaining LLC Interests within ninety (90) days of the happening of that event.

13.2 **Conduct of Business.** Upon the occurrence of any of the events specified above, a majority of the members shall appoint one or more of the Members (or Managers) to act as liquidator and wind up all LLC business and affairs. However, the LLC shall continue to exist until Articles of Dissolution have been filed or until a decree dissolving the LLC has been entered by a court of competent jurisdiction.

13.3 **Distribution of Net Proceeds.** Upon the occurrence of any of the events specified above and the completion of the winding up of all LLC business and affairs, the assets of the LLC shall be promptly liquidated and distributed in the following order: (a) To the payment of creditors, excluding Members, in the order of priority as provided by law; (b) To the payment of loans or advances made by the Members; (c) To the Members in proportion to their Capital Accounts after adjustments for all allocations of net profits and net loss; and (d) any net profit thereafter remaining shall be distributed to the Members in proportion to their Membership Interest. Where the distribution consists both of cash and noncash assets, the cash shall be distributed first, in descending order, to the above categories. With respect to the noncash assets, which distribution values are to be based on the fair market value of the noncash asset as determined in good faith by the liquidator, the liquidator may sell the noncash assets and distribute the cash proceeds or distribute the assets in kind, in descending order, to the above categories.

13.4 **Termination.** The LLC shall be terminated upon the distribution of all assets. The Members shall cause the LLC to file Articles of Dissolution, if required, or take any other actions necessary to terminate the LLC.

SECTION 14

AMENDMENTS

14.1 **Amendments by Members.** This Agreement may be adopted, amended, altered, or repealed by the vote or written consent of all the Members at which a quorum is present.

SECTION 15

GENERAL PROVISIONS

15.1 **Entire Agreement/Modification.** This Agreement contains the entire understanding of the parties with respect to the subject matter of the Agreement, and it supersedes all prior understandings and agreements, whether written or oral, and all prior dealings of the parties with respect to the subject matter hereof. This Agreement, in whole or in part, cannot be changed, modified, extended, or discharged orally and no waiver of compliance with any provision or condition hereof and no consent provided for herein shall be effective unless evidenced by an

*Operating Agreement for San Remo Homes at Homestead, LLC.*
*Page 19 of 22*

instrument in writing duly executed by the party against whom enforcement of any waiver, change, modification, extension, or discharge is sought. Further, no consent or waiver, express or implied, to or of any breach or default shall constitute a consent or waiver to or of any other breach.

15.2 **Confidentiality.** Each Member agrees that it shall not, and shall cause the LLC not to, at any time or under any circumstances, without the consent of the Majority in Interest, directly or indirectly, communicate or disclose to any person or entity any knowledge or information whatsoever acquired by such Member relating to confidential information of the LLC, or of the other Members, nor shall it utilize or make available any such knowledge or information directly or indirectly in connection with the transfer or proposed transfer of any of its Interest in the LLC.

15.3 **Partition.** Each Member agrees that the Member has no right, and irrevocably waives any and all such rights, to have the assets of the LLC partitioned, or to file a complaint, or institute and maintain any proceeding at law or equity to have the assets of the LLC partitioned.

15.4 **Further Actions.** Each of the Members agrees to execute, acknowledge, and deliver such additional documents, and take such further actions, as may reasonably be required from time to time to carry out each of the provisions and the intent of this Agreement, and every agreement or document relating hereto, or entered into in connection herewith.

15.5 **Severability.** If any provision of this Agreement or the application thereof to any person or circumstance shall be invalid or unenforceable to any extent, the remainder of this Agreement and the application of such provision to other persons or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

15.6 **Successor and Assigns.** This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors, legal representatives, and assigns. This Agreement may not be assigned by any party without the express written consent of the other parties.

15.7 **Notices.** Any notice to the LLC shall be addressed to it in care of the General Manager at the address specified below. All notices required or permitted by this Agreement shall be in writing and shall be hand-delivered or sent by registered or certified mail addressed to the applicable member or the LLC:

| | |
|---|---|
| If to the LLC: | Attn: Marco Romagnoli,<br>San Remo Homes at Homestead, LLC<br>782 NW LeJeune Road, Suite 635, Miami, Florida 33126 |
| | with copy to<br>NICOLAS FERNANDEZ, P.A.<br>780 N.W. LeJeune Road, Suite 324, Miami, Florida 33126 |
| If to Dinuro | Mr. Marco Romagnoli at 782 NW LeJeune Road, Suite 635, Miami, Florida 33126 |
| If to Starmac | Mr. Javier Macedo at 782 NW LeJeune Road, Suite 635, Miami, Florida 33126 |

*Operating Agreement for San Remo Homes at Homestead, LLC.*
*Page 20 of 22*



If to Merici                    Mr. Felisberto Camacho at 782 NW LeJeune Road, Suite
                                635, Miami, Florida 33126

or such other address as it shall supply for such purpose to the other parties hereto.

15.8   **Attorneys' Fees.**  In the event of any litigation, arbitration or other dispute arising as a result of or by reason of this Agreement, the prevailing party in any such litigation, arbitration or other dispute shall be entitled to, in addition to any other damages assessed, its reasonable attorneys' fees, and all other costs and expenses incurred in connection with settling or resolving such dispute.

15.9   **Construction.**  Throughout this Agreement, the masculine, feminine, or neuter genders shall be deemed to include the masculine, feminine, and neuter and the singular, the plural, and vice versa. The section headings of this Agreement are for convenience of reference only and do not form a part hereof and do not in any way modify, interpret, or construe the intentions of the parties.

15.10   **Execution and Counterparts.**  This Agreement may be executed in several counterparts each of which shall be deemed to be an original, and all such counterparts when taken together shall constitute one and the same instrument.

15.11   **Governing Law.**  This agreement shall be governed by, and interpreted in accordance with, the laws of the State of Florida.

15.12   **No Party Deemed Drafter.**  The parties agree that no party shall be deemed to be the drafter of this Agreement and further that, in the event this Agreement is ever construed by a court of law, such court shall not construe this Agreement or any provision of this Agreement, against any party as the drafter of the Agreement.

*Operating Agreement for San Remo Homes at Homestead, LLC.*
*Page 21 of 22*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of this ⅗ day of _August_, 2005.

Dinuro Investments, LLC, a Florida limited liability company

By: _____
Marco Romagnoli, Managing Member

By: _____
Roberto Romagnoli, Managing Member

Starmac LLC, a Florida limited liability company

By: Romac, LLC, a Delaware limited liability company, Sole Member

By: _____
Javier Macedo, Manager

Merici, LLC, a Florida limited liability company

By: Felma, LLC, a Florida limited liability company, Sole Member

By: _____
Felisberto Figueira Camacho, Manager

_Operating Agreement for San Remo Homes at Homestead, LLC._
_Page 22 of 22_