IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION
DIVISION

DINURO INVESTMENTS, LLC, a Florida  CASE NO.  11 · 7 0 9 0 1 GA 40
limited liability company,

        Plaintiff,

v.

FELISBERTO FIGUEIRA CAMACHO;
JAVIER MACEDO; MERICI, LLC, a Florida
limited liability company; STARMAC, LLC, a
Florida limited liability company, SR
ACQUISITIONS – FLORIDA CITY, LLC, a
Florida limited liability company; OCEAN
BANK,

        Defendants,

_____/

## COMPLAINT

Plaintiff Dinuro Investments, LLC ("Dinuro") sues Felisberto Figueira Camacho

("Camacho"), Javier Macedo Rodriguez ("Macedo"), Merici, LLC ("Merici"), Starmac, LLC

("Starmac"), SR Acquisitions – Florida City, LLC (SR Acquisition"), and Ocean Bank ("the

Bank"), and states:

### NATURE OF THE CASE

1.    Plaintiff brings this action against majority members, Merici and Starmac for

intentional, reckless and/or negligent breaches of their fiduciary duties of care and candor arising

out of their selfish scheme to surreptitiously dilute Dinuro's ownership interest in San Remo

Homes At Florida City, LLC, to usurp valuable real estate for themselves, and to ultimately

squeeze Dinuro out of the residential development joint venture plans in Florida City. Merici

and Starmac effectuated this scheme, in part, by causing the Company to default on a $3 million loan from the Bank and by then creating SR Acquisitions, a new and independent entity, for purchasing that debt from the Bank at par value for itself; the result of which was to cripple the operations of the Company and to strip it of the opportunity to complete its residential development plans.

2.      Defendants Camacho and Macedo, through their respective, alter-ego companies, Merici and Starmac, orchestrated this scheme with the agreement and substantial assistance of SR Acquisitions and the Bank.

3.      Plaintiff seeks to recover monetary damages or restitution for Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Breach of Fiduciary Duty, Aiding and Abetting the Breach of Fiduciary Duty, and Conspiracy.  Plaintiff also seeks to recover its attorneys' fees and costs incurred in prosecuting this action to vindicate its rights.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction as this is an action for damages in excess of $15,000.00, excluding costs, interest and attorneys' fees, and is within the monetary jurisdiction of this Court.

5.      This Court has personal jurisdiction over Defendants because: (a) Defendants are organized under Florida law; or (b) Defendants engage in substantial and not isolated activities in the State of Florida and benefit substantially from these activities; or (c) Defendants are authorized to do and do substantial business in Florida; or (d) Defendants committed violations of Florida law in Florida.

6.      Venue is proper in this Circuit as one or more Defendants are found in this Circuit.

2

## THE PARTIES

7.     Plaintiff Dinuro is a limited liability company organized under the laws of Florida with its principal place of business in Miami-Dade County, Florida. The co-managing members are Marco and Roberto Romagnoli ("the Romagnoli brothers").

8.     Defendant Camacho is an individual who resides in Miami-Dade County, Florida. Defendant Camacho is the sole managing member in co-Defendant Merici, LLC.

9.     Merici, LLC is a limited liability company organized under the laws of Florida with its principal address in Miami-Dade County, Florida. Merici is the alter-ego of Camacho.

10.     Defendant Macedo is an individual who resides in Miami-Dade, County, Florida. Macedo is the sole member in Starmac, LLC. Macedo also is a director of co-Defendant Ocean Bank.

11.     Starmac is a limited liability company organized under the laws of Florida with its principal address in Miami-Dade County, Florida. Starmac is the alter-ego of Macedo.

12.     Defendant Ocean Bank is a Florida for profit corporation with its principal address in Miami-Dade County, Florida.

13.     Defendant SR Acquisitions is a limited liability company organized under the laws of Florida with its principal address in Miami-Dade County, Florida. Co-Defendants Merici and Starmac are the managing members of SR Acquisitions. SR Acquisitions is the alter-ego of co-Defendants Camacho and Macedo. As alleged herein, Defendants Camacho and Macedo used SR Acquisitions for their own personal interests and to defraud Dinuro and steal from the Company.

3

## **FACTUAL BACKGROUND**

14.     On February 10, 2005,  the Company filed its Articles of Organization with the

Florida Secretary of State.

15.     The original members of  the Company were Dinuro, Merici, and Starmac.  Each

member also serves as a manager.  The members of the Company have not changed since it was

organized.

16.     On August 3, 2005, Dinuro entered into an Operating Agreement dated and

effective February 10, 2005, with Merici and Starmac to form the Company.  A true and correct

copy of the Operating Agreement is attached as Exhibit "A."  According to the Operating

Agreement, the purpose of the Company was to acquire, develop and sell certain real property in

Florida City:

> Lots 9 and 10, Block 1, MIAMI LAND & DEVELOPMENT
> COMPANY'S SUBDIVISION, SECTION 19, TOWNSHIP 57
> SOUTH, RANGE 39 EAST, according to the Plat thereof as
> recorded in Plat Book 5, Page 10 of the Public Records of Miami-
> Dade County, Florida.

The Company desired to develop and construct a townhouse project known as "Keys Lake" on

the real property.

17.     The Operating Agreement provided that each member should contribute to the

Company as follows:

| **Name**: | **Capital Contribution** | **LLC Interest** |
|---|---|---|
| Dinuro | $1,497,271.96 | 50 Shares |
| Starmac | $1,497,271.96 | 50 Shares |
| Merici | $1,497,271.96 | 50 Shares |

18.     The Operating Agreement further contained the following anti-dilution of interest

4

provisions to preserve each member's one-third (1/3) interest in the Company:

> 4.2 **Additional Contributions.** Except as specifically set forth in this Agreement, no Member shall be required to make any additional Capital Contributions.
>
> 4.5. **Advances by Members.** The Members anticipate that additional funds and working capital may be required for the working capital needs of the LLC and the Project. The Members agree that one or more Members may, from time to time, advance such additional funds and working capital as may be required for such purposes in the form of loan advances and such advances shall be repaid to such Member(s) as the Member's cash flow shall permit. . . .

19.   The Operating Agreement also provides that:

> 7.4   . . . any act of a Manager which may materially affect the LLC or its property shall require the prior consent of the Members. . . .

20.   Finally, the Operating Agreement states that:

> 7.5   Except with the written consent or ratification of all of the Members, no Manager shall have the authority to: . . .
>
> 7.5.2   Do any act that would make it impossible or unreasonably burdensome to carry on the ordinary business and purpose of the LLC;

21.   On May 31, 2005, the Company purchased real estate to develop its townhome residential project. In order to finance the purchase, the Company obtained a mortgage loan in the amount of $3,600,000 from the Bank.

22.   On May 31, 2005, the Company executed a Mortgage Deed, Security Agreement and Promissory Note in favor of the Bank.

23.   The Mortgage Deed encumbered the property at:

> Lots 9 and 1, Block 1, MIAMI LAND & DEVELOPMENT COMPANY'S SUBDIVISION, SECTION 19, TOWNSHIP 57 SOUTH, RANGE 39 EAST, according to the Plat thereof as

Concepción Martinez & Bellido, Attorneys at Law
255 Aragon Avenue • 2nd Floor • Coral Gables, FL 33134 • T 305.444.6669 • F 305.444.3665
www.cfclaw.com

recorded in Plat Book 5, at Page 10, of the Public Records of
Miami-Dade County, Florida.

24.    To secure payment of the loan, the Company also pledged its leases, rents and

profits, its personal property, certain bank accounts, intangibles and other rights as collateral. In

addition, the owners of the members of the Company, Marco and Roberto Romagnoli, Macedo

and Camacho were required to, and did, provide their own personal guarantees.

25.    From 2005 through 2009, the members agreed to modify the mortgage loan six

times.

26.    The Bank's loan was set to mature in March 29, 2010.

27.    Sometime before March 29, 2010, Macedo and Camacho concocted a scheme

whereby – trading on Macedo's inside position as a director of the Bank --they would purchase

the Company's promissory note themselves from the Bank at par value and foreclose on the

collateral of the pledged collateral of the Company. The objective and effect of the scheme was

to eliminate Dinuro's 1/3 ownership interest in the Company's property and to obtain the

Company's property for themselves.

28.    On February 24, 2010 and March 6, 2010, the Bank provided Dinuro, Merici and

Starmac with proposed commitment letters, which provided certain pay down requirements and

extension terms for the continuation of the loan.

29.    Unlike in the six prior times, this time Merici and Starmac did not sign the

commitment letters. Instead, Merici and Starmac decided to permit the Company to default on

the loan to the Bank.

30.    On May 11, 2010, the Bank provided notice to the Company that it was in default

on the loan.

6

31.     Pursuant to their scheme, on August 6, 2010, Merici and Starmac (and their respective managers Camacho and Macedo) created SR Acquisitions to purchase the Company's promissory note from the Bank at par value.

32.     Macedo and Camacho informed the Romagnoli brothers of their intention that SR Acquisition would be purchasing the Company's loan from the Bank, but gave them little time to determine whether they wanted to participate in SR Acquisitions.  The Romagnoli brothers did not go forward under the circumstances.

33.     Under the terms of the proposed SR Acquisitions' Operating Agreement -- unlike with the Company's Operating Agreement -- the Romagnoli brothers and Dinuro would not be protected from being squeezed out of SR Acquisitions by Macedo and Camacho.

34.     Instead, the Romagnoli brothers tried to purchase the loan from the Bank themselves, but the Bank obstructed the Romagnoli's attempt by not providing them with sufficient documentation for them to properly evaluate the purchase of the loan, which loan transaction had been made by Macedo and Camacho.

35.     On August 9, 2010, SR Acquisitions purchased from the Bank all of the Bank's rights under the loan documents.  The Bank gave Macedo's company favorable treatment and cleared the $3 million bad debt from its balance sheet.

36.     On September 10, 2010, SR Acquisitions provided the Company notice that it had acquired the Bank's interest in the mortgage loan, that the Company was in default, and demanded payment in the mount of $3,633,750, plus various other costs and fees.

37.     On February 16, 2011, SR Acquisitions filed a complaint styled *SR Acquisitions-Florida City, LLC v. San Remo Homes at Florida City, LLC*, Case No. 11-05226 CA 13, in the 11th Judicial Circuit Court to foreclose on the mortgage and other collateral.

7

## CAUSES OF ACTION

### COUNT I – BREACH OF CONTRACT (FLORIDA LAW)

**(Plaintiff v. Merici and Starmac)**

38.     Plaintiff repeats the allegations contained in paragraphs 1 through 37.

39.     The Operating Agreement is a contract among the members of the Company.  The Operating Agreement contains a choice of law provision specifying that the "Agreement shall be governed by, and interpreted in accordance with, the laws of the State of Florida." (Agreement ¶ 16.11).

40.     Merici and Starmac breached the express terms of the Operating Agreement by taking the action set forth above "which may materially affect the LLC or its property" and "would make it impossible or unreasonably burdensome to carry on the ordinary business and purpose of the LLC" without the prior consent of all members, including Dinuro.

41.     Merici and Starmac also breached the terms of the Operating Agreement by using the Company's assets, including, but not limited to, confidential business information, for their own benefit and not for the benefit of the Company and all of its members.

42.     Plaintiff has sustained damages as a result of Merici and Starmac's breaches of contract in an amount to be proved at trial.

### COUNT II – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING – FLORIDA LAW.

**(Plaintiff v. Merici and Starmac)**

43.     Plaintiff repeats the allegations contained in paragraphs 1 through 37.

44.     Dinuro, Merici, and Starmac entered into a contract, the Company's Operating Agreement.  Every contract governed by Florida law contains an implied covenant of good faith

8

and fair dealing. Merici and Starmac acted in bad faith and breached the implied covenant of good faith and fair dealing by: (a) taking the action set forth above "which may materially affect the LLC or its property" and "would make it impossible or unreasonably burdensome to carry on the ordinary business and purpose of the LLC" without the prior consent of all members; and (b) using confidential business information, for their own purposes and not for the benefit of the Company and all of its members; and (c) organizing a competing company through which they would steal the Company's assets for their own.

45.     Plaintiff has sustained damages as a result of Merici and Starmac's breaches of the covenant of good faith and fair dealing in an amount to be proved at trial.

## COUNT III – BREACH OF FIDUCIARY DUTY – FLORIDA LAW

### (Plaintiff v. Merici and Starmac)

46.     Plaintiff repeats the allegations contained in paragraphs 1 through 45.

47.     Merici and Starmac are fiduciaries of the Company and its members and owes to them the duty to conduct the business of the Company loyally, faithfully, carefully, diligently and prudently. *See* Fla. Stat. §608.4225; Operating Agreement¶ 7.8.

48.     Merici and Starmac's actions violated their fiduciary duties of good faith, loyalty, care, and accountability in that they: (a) took action "which may materially affect the LLC or its property" and "would make it impossible or unreasonably burdensome to carry on the ordinary business and purpose of the LLC" without the prior consent of all members; (b) used confidential business information for their own purposes and not for the benefit of the Company and all of its members; and (c) organized a competing company through which they would steal the Company's property.

9

49.     Plaintiff has sustained damages as a result of Merici and Starmac's breaches of the covenant of good faith and fair dealing in an amount to be proved at trial.

## COUNT IV – AIDING AND ABETTING BREACH OF FIDUCIARY DUTY – FLORIDA LAW

### (Plaintiff v. Camacho, Macedo, Ocean Bank, and SR Acquisitions)

50.     Plaintiff repeats the allegations contained in paragraphs 1 through 49.

51.     Merici, and Starmac, as members and managers of the Company, owed Dinuro a fiduciary duty to safeguard Dinuro's investment and act in the best interests of the Company and not for themselves.

52.     As described in paragraphs 28 through 37, Merici and Starmac breached this fiduciary duty.

53.     As described in paragraphs 9, 11, 13, 27, 32, and 35-37, Camacho and Macedo had knowledge of the breach and provided substantial assistance in inducing the breach.

54.     As described in paragraph 12, 34, and 35, Ocean Bank had knowledge of the breach and provided substantial assistance or encouragement in causing the breach.

55.     As described in paragraph 13, and 35-37, SR Acquisition had knowledge of the breach and provided substantial assistance in causing the breach.

56.     Plaintiff has sustained damages as a result of the named defendants' conduct.

## COUNT V –CONSPIRACY – FLORIDA LAW

### (Plaintiff v. Merici, Starmac, Camacho, Macedo, Ocean Bank and SR Acquisitions)

57.     Plaintiff repeats the allegations contained in paragraphs 1 through 49.

58.     Merici, Starmac, Camacho, Macedo, Ocean Bank and SR Acquisitions agreed to commit one or more of the offenses alleged in Counts I through III.

10

59.     One or more of the defendants have, as alleged in paragraphs 1 through 37, committed an overt act in furtherance of the conspiracy.

60.     Plaintiff has sustained damages as a result of the conspiracy committed by Merici, Starmac, Macedo, Camacho, Ocean Bank and SR Acquisition in an amount to be proved at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter a judgment as follows:

A.      For monetary damages or restitution in favor of Plaintiff for each of his claims brought against Defendants in an amount to be proved at trial, including incidental, consequential, special, lost profit, disgorgement, and forfeiture.  Plaintiff reserves the right to request the Court to amend the relief to request punitive damages as may be appropriate. Plaintiff requests that the damages be molded in a fashion to ensure that Defendants do not participate therein or benefit thereby.

B.      That Plaintiff be awarded its costs and expenses, including attorneys' fees.

C.      For such other relief as this Court deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable as a right by a jury.

Dated:  April 7, 2011

11

**CONCEPCION MARTINEZ & BELLIDO**
*Attorneys for DINURO INVESTMENTS, LLC*
255 Aragon Avenue, Second Floor
Coral Gables, Florida 33134
Telephone: (305) 444-6669
Facsimile: (305) 444-3665

By: _____
      CARLOS F. CONCEPCION
      Florida Bar. No. 386730
      SCOTT A. BURR
      Florida Bar No. 99325
      PATRICIA M. MONTES DE OCA
      Florida Bar No. 519812

and

JORGE E. OTERO & ASSOCIATES, P.A.
75 Valencia Avenue, Second Floor
Coral Gables Florida 33134
Telephone:  (305) 567-9000
Facsimile:  (305) 443-0164

By: _____
      JORGE E. OTERO
      Florida Bar No. 438596

12

## **VERIFICATION**

STATE OF FLORIDA       )
                           )SS:
COUNTY OF MIAMI-DADE)

      Before me, the undersigned authority personally appeared Roberto Romagnoli, Managing Member, and Marco Romagnoli, Managing Member, of Dinuro Investments, LLC, a Florida limited liability company, who are personally known to me/who produced their Florida Licenses as identification, after being duly sworn, depose and say that the statements made in the above Verified Complaint are true and correct.

_____
Roberto Romagnoli

_____
Marco Romagnoli

      Sworn to and subscribed before me this ⎈ day of April, 2011 in Miami-Dade County, Florida.

_____
Notary Public

My commission expires:

LISSETTE NORIEGA
Comm# DD0818249
Expires 8/27/2012
Florida Notary Assn., Inc

# SAN REMO HOMES AT FLORIDA CITY, LLC.

## OPERATING AGREEMENT

**THIS AMENDED OPERATING AGREEMENT** (the "Agreement") is made and entered into and effective as of this _10_ day of _February_ 2005, by and among Dinuro Investments, LLC, a Florida limited liability company ("Dinuro"), Starmac, LLC, a Florida limited liability company ("Starmac"), and MERICI, LLC, a Florida limited liability company ("Merici") (Dinuro, Starmac and Merici are hereinafter sometimes individually or collectively referred to as the "Member" or "Members", as appropriate).

### RECITALS:

**WHEREAS**, the Members have formed a limited liability company named San Remo Homes at Florida City, LLC, under the laws of the State of Florida (hereinafter referred to as the "LLC").

**WHEREAS**, the articles of organization of the LLC were filed on February 10, 2005 with the Secretary of State of the State of Florida (hereinafter referred to as "Articles of Organization").

**WHEREAS**, the purpose of the LLC is to acquire, develop and sell certain real property (the "Property") legally described as follows:

> **Lots 9 and 10, Block 1, MIAMI LAND & DEVELOPMENT COMPANY'S SUBDIVISION, SECTION 19, TOWNSHIP 57 SOUTH, RANGE 39 EAST, according to the Plat thereof as recorded in Plat Book 5, Page 10, of the Public Records of Miami-Dade County, Florida.**

**WHEREAS**, the LLC desires to develop and construct on the Property a townhouse project (the "Project") to be known as "Keys Lake."

**NOW THEREFORE**, in consideration of Ten 00/100 Dollars ($10.00), the covenants and the promises made herein, and other good and valuable consideration the receipt of which is hereby acknowledged, the parties hereby agree as follows:

### SECTION 1

### DEFINITIONS:

1.1 **"Accounting Period"** shall mean the calendar year which shall also be the LLC's fiscal year, unless another fiscal year is selected by the Members and permission to change to such other fiscal year is granted by the Internal Revenue Service.

1.2 **"Agreement"** means this Limited Liability Company Operating Agreement, as amended.

1.3 **"Articles of Organization"** means the articles of organization which were filed February 10, 2005 with the Secretary of State of the State of Florida for the purpose of forming this LLC.

**EXHIBIT A**

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 1 of 22*

1.4 **"Budget"** means the proposed LLC expenses that will be based on the preliminary budget attached hereto as Exhibit "A" hereto and will be agreed upon by the Members prior to closing on the construction loan to finance the Project.

1.5 **"Code"** means the Internal Revenue Code of 1996, as amended.

1.6 **"Capital Account"** means the capital account in accordance with Treasury Regulation Section 1.704-1(b)(2)(iv). The Capital Account shall be increased by: (1) Member's Capital Contribution, (2) a Member's share of net profits, (3) any items in the nature of income or gain that are specially allocated to each Member, and (4) the amount of any LLC liabilities assumed by a Member. The Capital Account shall be decreased by (1) distributions, (2) share of net losses, (3) fair market value of distributed property, (4) specially allocated items of loss, and (5) Member distributions assumed by the LLC..

1.7 **"Capital Contribution"** means any contribution of value, including but not limited to cash, property, assets, etc., by a Member to the capital of the LLC.

1.8 **"Cash Flow"** means all cash generated from the sale of the Project minus (i) all payments then due and payable on account of any loans made to the LLC by the Construction Lender or any other creditor other than the Members, (ii) the expenses incurred by the LLC in owning, holding, operating, maintaining and selling the Project and (iii) a reasonable reserve for working capital and other future obligations of the LLC. The cash flow of the LLC shall be determined by the Members separately for each fiscal year and not cumulatively.

1.9 **"Construction Lender"** means the bank providing acquisition, development and construction financing for the Project.

1.10 **"Improvements"** means the site development and infrastructure on the Property, and the construction of residential townhouse units on the Property, together with any recreational or other facilities incidental thereto, if any.

1.11 **"Financial Interest"** means a member's right to share in the profits, losses, incomes, expenses, or other monetary items and to receive distributions and allocations from the LLC.

1.12 **"LLC"** means San Remo Homes at Florida City, LLC., a limited liability company organized under the laws of the State of Florida.

1.13 **"LLC Interest"** or **"Interest"** means an ownership interest in the LLC, which includes the Financial Interest, the right to vote, the right to participate in management, and the right to obtain information concerning the LLC and any other rights granted to a Member under the Articles of Organization or this Agreement.

1.14 **"Majority in Interest"** shall have the same meaning as is provided for in the Statute.

1.15 **"Member"** means any person or entity who owns any interest in this LLC.

1.16 **"Property"** means the Property described in the recitals hereto and any and all assets, in whole or in part, of the LLC, both tangible and intangible.

1.17 **"Project"** means the residential homes to be constructed on the Property described in the recitals hereto.

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 2 of 22*

1.18 **"Regulations"** means current binding regulations issued pursuant to the Code.

1.19 **"Statute"** means the Florida Limited Liability Company Act, as amended, set forth as Chapter 608 of the Florida Statutes.

## SECTION 2

### FORMATION

2.1 **Formation of the LLC.** The Members have formed the LLC pursuant to the laws of the State of Florida by filing the Articles of Organization with the Secretary of State.

2.2 **Name.** The name of the LLC is **"San Remo Homes at Florida City, LLC."** The Members shall operate the business of the LLC under such name or use such other names as the Members deem necessary provided that such names do not violate the Statute.

2.3 **Principal Office.** The LLC's principal place of business will be located at 782 N.W. LeJeune Road, Suite 635, Miami, Florida 33126 or any other location mutually agreed upon by the Members.

2.4 **Term.** The LLC will continue to exist until terminated or dissolved in accordance with its Articles of Organization or this Agreement.

2.5 **Business Purpose.** The purpose of the LLC is to engage in any lawful activities for which a LLC may be organized under the Statute.

2.6 **Registered Agent.** The LLC's registered agent will be Esquire Corporate Services, Inc., a Florida Corporation or any other person or entity with an office in the state of organization as determined by the Members.

2.7 **Registered Office.** The LLC's registered office will be ESQUIRE CORPORATE SERVICES, INC., 780 NW Le Jeune Road, Suite 324, Miami, Florida 33126 or any other location within the State of organization as determined by the Members.

## SECTION 3

### MEMBERSHIP

3.1 **Initial Members.** The initial Members of the LLC are those persons set forth at the outset of this Agreement.

3.2 **Additional Members.** Additional persons or entities may be admitted to the LLC as Members, and LLC Interests may be issued to those additional Members, upon the unanimous consent of the current Members and on such terms and conditions as determined by the Members and in accordance with the Articles of Organization and this Agreement. All new Members must sign a copy of this Agreement and agree to be bound by the terms of this Agreement.

3.3 **Liability to Third Parties.** No Member shall be liable for the debts, obligations or liabilities of the LLC to a third party unless the Member agrees in writing to be liable.

3.4 **Authority.** Each Member has the authority or power to act for or on behalf of, to bind, or to incur any liability on behalf of the LLC except as otherwise provided in this Agreement.

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 3 of 22*



3.5 **Withdrawal.** No Member has the right to withdraw from the LLC as a Member except as provided in this Agreement. However, a Member has the power to withdraw but such withdrawal shall be deemed a breach of this Agreement. If a Member does exercise such power of withdrawal in breach of this Agreement, the Member shall be liable to the LLC and the other Members for all monetary damages as a result of the breach, including but not limited to direct, indirect, incidental, and consequential damages. The LLC and the other Members shall not have the right to prevent the withdrawing Member from withdrawing through the use of an injunction or otherwise.

3.6 **Compensation.** No Member shall receive compensation for services rendered to the LLC except as expressly permitted by this Agreement or any other written agreement. However, the LLC shall reimburse Members for any expense paid by them that is properly an expense of the LLC.

## SECTION 4

### CAPITAL ACCOUNTS

4.1 **Capital Contributions.** The initial Members shall contribute to the LLC the following Capital Contributions and shall receive the following LLC Interest:

| Name: | Capital Contribution: | LLC Interest: |
|-------|----------------------|---------------|
| Dinuro | $1,497,271.96 | 50 Shares |
| Starmac | $1,497,271.96 | 50 Shares |
| Merici | $1,497,271.96 | 50 Shares |

4.2 **Additional Contributions.** Except as specifically set forth in this Agreement, no Member shall be required to make any additional Capital Contributions.

4.3 **Failure to Contribute.** If a Member fails to timely provide a required Capital Contribution, the LLC may take such action as it deems necessary and appropriate including but not limited to instituting a court proceeding to obtain payment, canceling the Member's LLC Interest, or exercising any other right or remedy available at law or equity.

4.4 **Capital Accounts.** A Capital Account (hereinafter referred to as "Capital Account") shall be established and maintained for each Member. Each Member's Capital Account will be accounted for separately and will be maintained in accordance with generally accepted accounting principles. If a Member validly transfers an LLC interest, the Capital Account of the transferring Member shall carry over to the transferee Member in accordance with the Code and Regulations.

4.5 **Advances by Members.** The Members anticipate that additional funds and working capital may be required for the working capital needs of the LLC and the Project. The Members agree that one or more Members may, from time to time, advance such additional funds and working capital as may be required for such purposes in the form of loan advances and such advances shall be repaid to such Member(s) as the Member's cash flow shall permit. All loans made by the Members shall bear interest at a rate of not less than the prime rate published in the Wall Street Journal at the time the loan is made to the LLC plus two percent (2%), as shall be agreed to between

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 4 of 22*

the lending Member(s) and the LLC, shall be evidenced by a promissory note or shown on the books and records of the LLC and shall be due and payable in full principal and interest, at such time as shall be mutually agreed to by such Member(s) and the LLC.

4.6 **Preemptive Rights.** Each Member of the LLC shall be entitled to full preemptive or preferential rights, as such rights are defined by law, to subscribe for or purchase his or her proportional part of any additional or future LLC Interests which may be issued by the LLC.

4.7 **Return of Capital.** No Member shall have the right to withdraw or obtain a return of his or her capital contribution except as provided in this Agreement. The return of a Member's capital contribution may not be withdrawn in the form of property other than cash except as provided in this Agreement.

## SECTION 5

### ALLOCATION OF PROFITS AND LOSSES AND DISTRIBUTIONS

5.1 **Determination of Profits and Losses.** Profits and losses shall mean net income and net loss as determined by the books and records of the LLC which shall be kept in accordance with generally accepted accounting principals and the Code.

5.2 **Allocations.** For each Accounting Period, all items of income, gain, revenue, credit, expenses, deductions, losses, and costs (including all income items separately stated on the LLC's informational tax return filed for federal tax purposes) shall be allocated as follows:

5.2.1 Losses shall be allocated to Members in accordance with each Member's Capital Contributions.

5.2.2 Until the Members have been allocated profits equal to the aggregate losses allocated to them, if any, profits shall be allocated to Members in the same manner as losses were allocated to them.

5.2.3 Thereafter, Members shall be allocated profit to the extent of distributions received pursuant to Section 5.6.

5.3 **Qualified Income Offset.** Notwithstanding the above, if a Member unexpectedly receives any adjustments, allocations, or distributions described in Treasury Regulations Section 1.704-1(b)(2)(ii)(d)(4) and (5) or (6) or any amendment thereto, or receives an allocation of loss which produces a negative capital account for any Member while any other Member has a positive capital account, then items of LLC income shall be specially allocated to such Member such that the deficit Capital Account is eliminated. This paragraph is intended to constitute a "qualified income offset" within the meaning of Treasury Regulation Section 1.704-1(b)(2)(ii)(d).

5.4 **Minimum Gain Chargeback.** Notwithstanding the above, if there is a net decrease in LLC "minimum gain" during a taxable year, each Member shall be specially allocated, before any other allocation, items of income and gain for such taxable year (and, if necessary, subsequent years) in proportion to each Member's share of the net decrease in LLC "minimum gain" as determined in accordance with Treasury Regulation Section 1.704-2(g)(2). This paragraph is intended to comply with the "minimum gain chargeback" provisions of Treasury Regulation Section 1704.-2(f).

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 5 of 22*

5.5 **Section 704(c) Allocation.** Notwithstanding the above, to the extent that Code Section 704(c)) is applicable to any item of income, gain, loss, and deduction with respect to any property (other than cash) that has been contributed by a Member and which is required to be allocated to such Member for income tax purposes, the item shall be allocated to such Member in accordance with Code Section 704(c).

5.6 **Distributions.** The Members understand and agree that all distributions shall be made at such times and in such amounts as shall be determined by the unanimous consent of the Members from available Cash Flow. If the Members, unanimously, determine to make a distribution of Cash Flow, then the Managing Member shall distribute the Cash Flow in the following order of priority (provided that no distribution shall be made if any default exists under the loan from the Construction Lender):

5.6.1 To pay any debt, service, including accrued interest or principal, on any outstanding obligation of the LLC, including without limitation, the LLC's loan from the Construction Lender, made by the Members, and to provide a reasonable reserve for such payment in the future.

5.6.2 To the extent that there is Cash Flow thereafter available, said Cash Flow shall be distributed to the Members to the extent of their positive Capital Account balance on a pro-rata basis in accordance with each Member's Interest.

5.6.3 To the extent that there is Cash Flow thereafter available, said Cash Flow shall be distributed among the Members on a pro-rata basis.

5.7 **Distribution of Assets in Kind.** Except as otherwise provided in this Section, if any assets of the Members shall be distributed in kind, such assets shall be distributed to the Members entitled thereto as tenants in common, in the same proportions in which such Members would have been entitled to cash distributions if there had been a sale of said assets.

5.8 **Demand for Distribution.** No Member shall be entitled to demand or receive a distribution of LLC property in return for his Capital Contribution to the LLC.

## SECTION 6

### MEETINGS

6.1 **Place of Meeting.** Meetings of Members shall be held at any place within or outside the United States designated by the Members and stated in the notice of the meeting. If no place is so specified, Members' meetings shall be held at the LLC's principal office.

6.2 **Annual Meeting.** An annual meeting of Members shall be held on the last week of February of each year at the corporate offices of the LLC. At the annual meeting, any proper business may be transacted.

6.3 **Special Meetings.** A special meeting of the Members may be called at any time by one or more Members holding Interests which, in the aggregate, constitute not less than ten percent (10%) of the LLC Interests. A request for a special meeting of the Members shall be in writing, specifying the time and place of the meeting and the general nature of the business proposed to be transacted. The notice shall be delivered in accordance with this Agreement.

6.4 **Notice of Members' Meetings.** All notices of meetings of Members shall be sent not less than ten (10) nor more than sixty (60) days before the date of the meeting being noticed. The notice shall specify the place, date, and hour of the meeting and (i) in the case of a special meeting, the general nature of the business to be transacted, or (ii) in the case of the annual meeting, those matters which are intended to be presented for action by the Members. If a proposal contains (i) a contract or transaction in which a Member has a direct or indirect Financial Interest, (ii) an amendment of the Articles of Organization, (iii) a reorganization of the LLC, or (iv) a voluntary dissolution of the LLC, the notice shall state the general nature of such proposal.

6.5 **Conduct of Meetings.** All meetings of the Members shall be presided over by the chairman of the meeting who shall be designated by a majority of the Members at the meeting. The chairman of the meeting shall determine the order of business and the procedures to be followed at the meeting.

6.6 **Quorum.** The presence, in person or by proxy, of the holder(s) of an aggregate of fifty one percent (51%) or more of the LLC Interests shall constitute a quorum at all meetings of the Members for the transaction of business.

6.7 **Voting.** Each Member shall have a number of votes equal to the percentage LLC Interest held by such Member. An aggregate of fifty one percent (51%) or more of the votes shall be required to approve any action, unless a greater or lesser vote is required pursuant to this Agreement or by Statute. Any Member entitled to vote on any matter may vote part of the votes in favor of the proposal and refrain from voting the remaining votes or vote them against the proposal, but if the member fails to specify the number of votes such Member is voting affirmatively, it will be conclusively presumed that the Member's approving vote is with respect to all votes the Member is entitled to vote.

6.8 **Adjourned Meeting and Notice Thereof.** Any Members' meeting, annual or special, whether or not a quorum is present, may be adjourned from time to time by the vote of a majority of the LLC Interests represented at such meeting, either in person or by proxy, but in the absence of a quorum, no other business may be transacted at such meeting. When any meeting of Members, either annual or special, is adjourned to another time and place, notice need not be given of the adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken, unless a new record date for the adjourned meeting is fixed, or unless the adjournment is for more than five (5) days from the date set for the original meeting, in which case the Members shall set a new record date. Notice of any such adjourned meeting, if required, shall be given to each Member entitled to vote at the adjourned meeting in accordance with this Agreement. At any adjourned meeting the LLC may transact any business which might have been transacted at the original meeting.

6.9 **Waiver of Notice or Consent by Absent Members.** The transactions of any meeting of Members, either annual or special, however called and noticed, and whenever held, shall be as valid as if it had occurred at a meeting duly held after regular call and notice, if a quorum be present either in person or by proxy and if, either before or after the meeting, each person entitled to vote but not present in person or by proxy, signs a written waiver of notice, a consent to the holding of the meeting or any approval of the minutes thereof. The waiver of notice or consent shall state either the business to be transacted or the purpose of any annual or special meeting of Members. All such

waivers, consents and approvals shall be filed with the LLC's books and records. Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, unless such person objects at the beginning of the meeting.

6.10 **Member Action by Written Consent without a Meeting.** Any action which may be taken at any annual or special meeting of Members may be taken without a meeting and without prior notice, if consent in writing, setting forth the action so taken, are signed by Members holding LLC interests representing the aggregate number of votes equal to or greater than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all LLC Interests entitled to vote thereon were present and voted. All such consents shall be filed with the LLC's books and records.

6.11 **Arbitration.** In the event of a deadlock between the Members as to decisions or matters which require the unanimous vote of all of Members or inability to reach a fifty one percent (51%) Membership Interest consensus, the dispute or matter shall be settled through binding arbitration in accordance with the procedures, rules and regulations of the American Arbitration Association. The Managers shall each select one (1) impartial and independent arbitrator with at least 5 years experience in the mediation and arbitration of real estate development and construction disputes. A third arbitrator shall be chosen by the American Arbitration Association. The decision rendered by the arbitration panel shall be binding upon the Members. Arbitration shall be held in Miami Dade County, Florida. The non prevailing party shall pay for any costs, fees and expenses regarding the arbitration and said costs, fees and expenses shall not be reimbursed or paid by the LLC.

## SECTION 7

### MANAGEMENT

7.1 **Managers.** Each of the Members shall be a Manager, until changed by an amendment to this Agreement. The Managers shall be responsible for the management of the LLC's business and affairs.

7.2 **Vacancies.** A Manager vacancy shall be deemed to exist if (i) a Manager dies, or is removed by the Members; or (ii) a Manager resigns. Vacancies are to be filled solely by vote of the Members, but the Members shall not be obligated to fill a vacancy.

7.3 **Resignation.** Any Manager may resign effective upon the delivery of written notice to any other Member, unless the notice specifies a later effective date.

7.4 **Powers.** Any two (2) Manager(s) have, subject to the control of the Members, general supervision, direction, and control of the business of the LLC, and the authority to bind the LLC. In addition, subject to the provisions of the Statute, Florida law, any limitations in the Articles of Organization and this Agreement relating to actions requiring approval by the Members, any two (2) Managers may make all decisions and take all actions on behalf of the LLC not otherwise provided for in this Agreement including but not limited to the following:

7.4.1 To borrow money, with or without security, in furtherance of any or all of the purposes of the LLC, and to secure the same by mortgage, pledge or other lien on any assets of the LLC, and to execute and deliver in the name of the LLC, notes evidencing same and mortgages, deeds of trust

and any other security instruments securing same and to modify, alter or otherwise restructure indebtedness of the LLC, provided, however, that one of the Managers acting on behalf of the LLC pursuant to this Section 7.4.1 shall be Starmac or Merici;

7.4.2  To procure and maintain with responsible companies such insurance as may be advisable in such amounts and covering such risks as are deemed appropriate by the Members;

7.4.3  To execute and deliver on behalf of and in the name of the LLC, or in the name of a nominee of the LLC, deeds, mortgages, deeds of trust, notes, leases, subleases, licenses, rental or occupancy agreements, or use agreements of or with respect to all or any assets of the LLC, management agreements, sales agreements, bills of sale, and any and all other instruments necessary or incidental to the conduct of the LLC 's business, provided, however, that one of the Managers acting on behalf of the LLC pursuant to this Section 7.4.3 shall be Starmac or Merici;

7.4.4  To protect and preserve the assets of the LLC and incur any other indebtedness in the LLC 's ordinary course of business, provided, however, that one of the Managers acting on behalf of the LLC pursuant to this Section 7.4.4 shall be Starmac or Merici;

7.4.5  To delegate all or any of its duties hereunder and in furtherance of any such delegation, to appoint, employ or contract on behalf of the LLC with any person (including entities owned or controlled, by, or affiliated with a Member provided that the other Members consent in advance thereto), as the Managers may in their sole discretion deem necessary or desirable; which persons may, under the supervision of the Managers, perform any of the following or other acts or services for the LLC as the Managers may approve, except that the Managers shall continue to be primarily responsible for the performance of all such obligations: serve as the LLC 's advisor and consultant in connection with policy decisions made by the Members or the Managers; act as or engage the services of consultants, accountants, correspondents, attorneys, brokers, escrow agents, or in any other capacity deemed by the Managers necessary or desirable; investigate, select and, on behalf of the LLC, conduct relations with persons acting in such capacities and pay appropriate fees to, and enter into appropriate contracts with, or employ or retain any of them to render services for the LLC; and perform or assist in the performance of administrative or managerial functions necessary in the management of the LLC;

7.4.6  To open LLC bank accounts to deposit LLC funds and to pay LLC expenses and obligations, provided, however, that any payment of an LLC expense or obligation in excess of Ten Thousand and 00/100 Dollars ($10,000.00) shall require the act of either Starmac or Merici or Jose Coto, acting as agent for Starmac or Merici, but only for the matters specifically set forth in this Section 7.4.6.;

7.4.7  To acquire, develop, improve, operate, finance, refinance, sell or dispose of the Project, provided, however, that one of the Managers acting on behalf of the LLC pursuant to this Section 7.4.7 shall be Starmac or Merici or Jose Coto, upon specific written authority of Starmac or Merici;

7.4.8  To engage in any kind of activity and to perform and carry out contracts of any kind necessary to, or in connection with, or incidental to the accomplishment of the purposes of the LLC, provided said activities and contracts may be lawfully carried on or performed by a LLC under the laws of the State of Florida, and further provided that any contract obligating the LLC to payment of funds in excess of Fifty Thousand and 00/100 Dollars ($50,000.00) shall require the act of either

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 9 of 22*

Starmac or Merici or Jose Coto, acting as agent for Starmac or Merici, but only for the matters specifically set forth in this Section 7.4.8;

7.4.9 To make all decisions concerning the operational aspects of the LLC, and the execution and delivery of all contracts, deeds and other instruments for the sales of residential units within the Project, in connection therewith provided, however; that one of the Managers acting on behalf of the LLC pursuant to this Section 7.4.9 shall be Starmac or Merici or Jose Coto, upon specific written authority of Starmac or Merici;

7.4.10 To ask for, collect, and receive any rents, issues, and profits or income from any property of the LLC, or any part or parts thereof, and to disburse LLC funds for LLC purposes to those persons entitled to receive same, subject to the limits on disbursements established in Section 7.4.6 above;

7.4.11 Subject to Section 7.4.6 above, to pay from LLC assets, all expenses of organizing and conducting the business of the LLC, including without limitation, engineering, architectural, construction, professional, consulting, marketing, brokerage, legal, accounting fees and other;

7.4.12 To institute, prosecute, defend, mediate, arbitrate, settle, compromise, and dismiss lawsuits or other judicial or administrative proceedings brought on or in behalf of, or against, the LLC or the Members in connection with activities arising out of, connected with, or incidental to this Agreement, and to engage counsel or others in connection therewith provided, however; that one of the Managers acting on behalf of the LLC pursuant to this Section 7.4.12 shall be Starmac or Merici or Jose Coto, upon specific written authority of Starmac or Merici;

7.4.13 To execute any and all other instruments and take any and all other actions necessary or desirable to carry out the purposes and business of the LLC;

7.4.14 To execute and approve homeowners' association documents, or to sell, transfer, convey, exchange, lease, ground lease, or grant an easement to any of the property of the LLC or any portion of the LLC property, including closing statements provided, however; that one of the Managers acting on behalf of the LLC pursuant to this Section 7.4.14 shall be Starmac or Merici or Jose Coto, upon specific written authority of Starmac or Merici;

7.4.15 To assume the overall duties, general management, and final determination of all questions relating to the usual daily business affairs and ministerial acts of the LLC;

7.4.16 To sell all or substantially all of the assets of the LLC, whether or not in the ordinary course of business, to pay, settle and compromise LLC liabilities, obligations and expenses, and to wind up the affairs of and liquidate the LLC, provided, however, that one of the Managers acting on behalf of the LLC pursuant to this Section 7.4.16 shall be either Starmac and Merici; and

7.4.17 To do any and all acts necessary, useful or convenient, in the judgment of the Managers to carry on the business and affairs of the LLC and the purposes thereof.

Notwithstanding anything herein to the contrary, any act of a Manager which may materially affect the LLC or its property shall require the prior consent of the Members. Additionally, the Members understand and agree that no Manager shall be compensated for the services it renders to and capital it contributes to, for, or on behalf of the LLC, except as provided for in the Budget.

7.5 **Restrictions on Authority of the Managers.** Except with the written consent or ratification of all of the Members, no Manager shall have the authority to:

7.5.1 Do any act in contravention of the certificate of the LLC or this Agreement;

7.5.2 Do any act that would make it impossible or unreasonably burdensome to carry on the ordinary business and purpose of the LLC;

7.5.3 Confess a judgment against the LLC;

7.5.4 Make, execute or deliver any general assignment for the benefit of the creditors of the LLC;

7.5.5 Possess LLC property or assign the LLC 's rights in specific LLC property for other than an LLC purpose;

7.5.6 Knowingly or willingly do any act (except an act expressly required by this Agreement) which would cause the LLC to become an association taxable as a corporation;

7.5.7 Change or reorganize the LLC into any other legal form;

7.5.8 Incur any obligation in the name or on the credit of the LLC, except in the ordinary course of the LLC 's business; or

7.5.9 Amend or otherwise change this Agreement so as to modify the rights of a Member to profits, losses, allocations, or distribution, or obligations of the Member as set forth herein.

7.6 **Place of Meeting.** Regular meetings of the Managers may be held without notice, at any time and at any place within the United States that is designated by the Managers. In the absence of the designation of a place, regular meetings shall be held at the principal office of the LLC. Special meetings of the Managers shall be held at any place that has been designated in the notice of the meeting or, if not stated in the notice, at the principal office of the LLC. Any meeting, regular or special, may be held by conference telephone or similar communications equipment, so long as all Managers participating in such meeting can hear one another, and all such Managers shall be deemed to be present in person at such meeting.

7.7 **Liability to Third Parties.** No Manager shall be liable for the debts, obligations, or liabilities of the LLC to a third party unless the Manager agrees in writing to be liable.

7.8 **Standard of Care; Liability.** Each Manager shall exercise such powers and otherwise perform such duties in good faith, in the matters such Manager believes to be in the best interests of the LLC, and with such care including reasonable inquiry, using ordinary prudence, as a person in a like position would use under similar circumstances. In performing the duties of a Manager, a Manager shall be entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, in which case prepared or presented by:

7.8.1 one or more Officers or employees of the LLC who the Manager believes to be reliable and competent in the matters presented;

7.8.2 counsel, independent accountants, or other persons as to matters which the Manager believes to be within such person's professional or expert competence; or

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 11 of 22*

7.8.3  a Committee upon which the Manager does not serve, as to matters within the Committee's designated authority, which Committee the Manager believes to merit confidence, so long as in any such case, the Manager acts in good faith, after reasonable inquiry when the need therefor is indicated by the circumstances, and without knowledge that would cause such reliance to be unwarranted.

## SECTION 8:

### TRANSFER AND ASSIGNMENT OF LLC INTERESTS

8.1  **Transfer or Assignment of Member's Interest.** Except as otherwise provided in this Agreement, no Member may transfer and/or assign, in whole or in part, his or her LLC Interest at any time without the consent of the other member.  For purposes of this Agreement transfer shall mean sale, exchange, assignment, alienation, sale of underlying company interest, disposition, gift, pledge, hypothecation, encumbrance, or grant of security interest in the LLC Interest.

8.2  **Consent to Transfer.** No transfer or assignment of a LLC Interest, or any part thereof, will be valid without the express written consent of all of the Members.  If a LLC Interest is transferred or assigned without the consent of all of the other Members, the transferee shall have no rights in, nor may participate in the management or operation of the business and affairs of the LLC, nor have the right to become a Member of the LLC.  Any transfer or assignment of a LLC Interest without the proper consent shall only effect a transfer or assignment of the Member's Financial Interest, and the transferring Member shall still be bound to the terms of this Agreement.  If a transfer or assignment does obtain the required consent, then the transferee shall be admitted as an additional Member pursuant to this Agreement.

8.3  **Right of First Refusal.** If any Member shall receive an offer from a third party to sell its interest and that Member desires to sell his or her Interests, that Member must cause the purchaser to make the same offer to purchase all the Interests of the Members on the same terms and conditions as made to the selling Member.  The other Members shall have thirty (30) days to accept or reject the offer.  If the other Members reject the offer, whoever shall desire to sell his or her Interests shall first offer the offer thereof to the LLC and the other Members on a pro-rata basis upon the same terms and conditions as made to the selling Member.  Such offer shall be communicated by the one offering to sell his or her Interest to all other parties and the LLC by written notice.  If either the LLC or the other Members do not wish to purchase the pro-rata share, the LLC or other Members may purchase all or any part of the Interests being sold.  In the event that such offer shall not be accepted by written notice no later than thirty (30) days after the date of the mailing of the offer by either the LLC or the other Members, whoever shall have offered the Interests shall be free to sell his or her Interests to any other person, firm, or entity, subject to any restrictions in the articles of organization, this Agreement, or other governing documents, except that the subsequent transfer of such Interests shall not be on different or terms more favorable to the transferee than the terms upon which the transfer was initially offered to the LLC or other Members.  If, within thirty (30) days after the expiration of the thirty (30) day period referred to in the preceding paragraph, the Member offering to sell his or her Interests shall fail to consummate a sale thereof to any other purchaser, then no sale of such shares may be made thereafter by the offeror without again reoffering the same to the LLC or the other Members in accordance with the provisions of this paragraph.  Each Interest Certificate

issued by the LLC to the Members, if any, shall bear an appropriate legend that the transfer of such Interests is restricted by the provisions of this Agreement.

8.4 **Permitted Transfers, Determination of Purchase Price and Payment.** If a Member desires to withdraw from the LLC or desires to sell its LLC Interest, the other Members shall have the right but not the obligation purchase all or any part of the withdrawing Member's LLC Interest. The price for Interests purchased pursuant to this Agreement shall be the Interest's net worth in the LLC, adjusted to reflect the fair market value of the LLC's contracts and potential contracts, of the LLC at the close of the fiscal quarter immediately preceding the occurrence of the event giving rise to the purchase. The Interest's net worth shall be determined, within thirty (30) days of acceptance by the remaining Members of the withdrawing Member's offer to sell, by a certified public accountant, selected by the LLC, in accordance with the accounting principles generally applied by the LLC. If the selling Member does not agree with the purchase price determined by the accountant selected by the LLC, the selling Member shall select an independent certified public accountant who shall, jointly with the accountant selected by the LLC, determine the purchase price of the Interest according to the terms of the preceding sentence. In the event such accountants cannot agree on the purchase price, they shall select a third independent certified public accountant. The purchase price determined by a majority of the three accountants shall be final and binding. Unless otherwise agreed, the purchase price shall be paid with an initial deposit of at least twenty percent (20%) of the total purchase price of the Interest not later than the thirtieth (30th) day following the date upon which the accountants determine the purchase price of the Interest. The LLC shall pay to the selling party the balance of the purchase price (hereinafter referred to as the "Balance") represented by the amount by which the aggregate purchase price of the Interest exceeds the amount of the initial payment, in twenty four (24) consecutive equal monthly payments commencing one month after the initial payment. The Balance outstanding shall bear interest from the date of sale, payable monthly together with the principal, at a rate equal to the yield to maturity of one hundred eighty (180) day United States Treasury Bills (at their date of issue) issued most recently prior to the date on which the interest rate is being determined. The obligation to pay the Balance and interest thereon shall be evidenced by a duly executed promissory note, payable to the order of the selling party, secured by the Interest being sold which shall be held in escrow until the final payment, and containing the aforesaid terms and such other terms as are customary for such instruments, including acceleration in the event of default, the right of prepayment in whole or part without penalty. Notwithstanding the foregoing, no Member shall be obligated, under any circumstances, to purchase the Membership Interests of a selling Member pursuant to this Section.

8.5 **Interests.** This Agreement shall control the disposition of any Interest of the LLC now owned or hereafter acquired by the Members.

## SECTION 9

### BOOKS AND RECORDS

9.1 **Maintenance of Books and Records.** The LLC shall establish and maintain appropriate books and records of the LLC in accordance with generally accepted accounting principles. There shall be kept at the principal office of the LLC, the following LLC documents: (a) A current list of the name and business or residence address of each Member and his or her Capital Contribution and LLC Interest; (b) A current list of the name and business or residence address of each Manager, if any; (c) A copy of the Articles of Organization and this Agreement and any amendments thereto; (d) Copies of the LLC's federal, state, and local income tax or information returns, if any, for the past six fiscal years; (e) Copies of the financial statements of the LLC, if any, for the past six fiscal years; (f) Originals or copies of all minutes, actions by written consent, consents to action, and waivers of notice to Members, Member votes, actions and consents; and (f) Any other information required to be maintained by the LLC pursuant to the Statute.

9.2 **Annual Accounting.** Within ninety (90) days after the close of each fiscal year of the LLC, the LLC shall cause to be prepared and submitted to each Member a balance sheet and income statement for the preceding fiscal year of the LLC (or portion thereof in conformity with generally accepted accounting principles and provide to the Members all information necessary for them to complete federal and state tax returns.

9.3 **Inspection and Audit Rights.** Each Member has the right, upon reasonable request, for purposes reasonably related to the interest of that Member, to inspect and copy during normal business hours any of the LLC books and records. Such right may be exercised by the Member or his or her agent or attorney. Any Member may require a review and/or audit of the books, records, and reports of the LLC.

9.4 **Bank Accounts.** All funds of the LLC shall be deposited in the LLC's name in such banks as determined by the Members. All checks, drafts, or other orders for payment of money, notes or other evidences of indebtedness, issued in the name of or payable to the LLC, shall be signed or endorsed by such person or persons and in such manner as, from time to time, shall be determined by the Members.

9.5 **Fiscal Year.** The LLC's fiscal year shall end on December 31st.

9.6 **Accounting Method.** For financial reporting purposes, the books and records of the LLC shall be kept on the cash (or accrual) method of accounting applied in a consistent manner and shall reflect all transactions of the LLC and be appropriate and adequate for the purposes of the LLC.

## SECTION 10:

### TAXATION

10.1 **Tax Year.** The LLC's taxable year shall end on December 31st.

10.2 **Tax Matters Member.** The Code requires the Internal Revenue Service (the "Service") to promulgate regulations describing procedures for designating a Tax Matters Member (the "TMM"). Unless prohibited by such regulations, the LLC intends to designate Starmac to serve as TMM for the LLC. Until a different person is designated the TMM, Starmac will act as liaison

between the LLC and the Service in connection with all administrative and judicial proceedings involving tax controversies of the LLC, and agrees to assume all the rights and duties of a TMM as set forth in the Code. These rights and duties include, but are not limited to:

10.2.1  The duty to notify and keep all other Members informed of any audit of the LLC;

10.2.2  The obligation to furnish the Service with the name, address, and taxpayer identification number of each Member;

10.2.3  The right to settle, any claims by the Service against the LLC;

10.2.4  The right to initiate judicial proceedings contesting adverse determinations by the Service against the LLC;

10.2.5  The right to extend the statute of limitations; and

10.2.6  The right to take any other action on behalf of the Members or the LLC in connection with any administrative or judicial tax proceeding to the extent permitted by applicable laws or regulations.

Notwithstanding the fact that Starmac will act as TMM, as to tax related matters or controversies which affect the other Members, Starmac shall seek the advice and consent of Dinuro and Merici in acting as TMM and shall take no action which would adversely affect the other Members without each other Member's prior consent.

## SECTION 11:

### INDEMNIFICATION

11.1     **Definitions: Agents, Proceedings, and Expenses.**  For the purposes of this Agreement, "Agent" means any person who is or was a Member, Manager, Officer, employee, or other agent of this LLC; "Proceeding" means any threatened, pending or completed action or proceeding, whether civil, criminal, administrative, or investigative; and "Expenses" means any and all costs, fees, and expenses including but not limited to court costs and attorneys' fees.

11.2   **Actions Other Than by the LLC.**  The LLC shall indemnify and hold harmless any person or Agent who was or is a party, or is threatened to be made a party, to any Proceeding (other than an action by or in the right of this LLC) by reason of the fact that such person is or was an Agent of this LLC, against Expenses, judgments, fines, settlements and other amounts actually and reasonably incurred in connection with such Proceeding, if that person acted in good faith and in a manner that person reasonably believed to be in the best interests of this LLC, and, in the case of a criminal proceeding, had no reasonable cause to believe his or her conduct was unlawful.  The termination of any Proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent shall not, of itself, create a presumption that the person did not act in good faith and in a manner which the person reasonable believed to be in the best interests of this LLC or that the person had reasonable cause to believe that his or her conduct was unlawful. Notwithstanding the foregoing , no person or Agent shall be indemnified for their wilful acts or gross negligence.

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 15 of 22*

11.3   **Actions by the LLC.** This LLC shall indemnify any person or Agent who was or is a party, or is threatened to be made a party, to any threatened, pending, or completed action by or in the right of this LLC to procure a judgment in its favor by reason of the fact that the person is or was an Agent of this LLC, against expenses actually and reasonably incurred by that person or Agent in connection with the defense or settlement of that action if that person or Agent acted in good faith, in a manner that person or Agent believed to be in the best interests of this LLC, and with such care, including reasonable inquiry, as an ordinary prudent person in a like position would use under similar circumstances.  No indemnification, however, shall be made under this Section 11.3 with respect to any claim, issue or matter as to which that person or Agent shall have been adjudged to be liable to this LLC in the performance of that person's or Agent's duty to the LLC, unless the court in which that action was brought shall determine upon application that the person or Agent is fairly and reasonably enticed to indemnity for the expenses which the court shall determine; (ii) for amounts paid in settling or otherwise disposing of a threatened or pending action, with or without court approval; or (iii) for Expenses incurred in defending a threatened or pending action which is settled or otherwise disposed of without court approval.  Notwithstanding the foregoing , no person or Agent shall be indemnified for their wilful acts or gross negligence.

11.4   **Successful Defense by Agent.**  To the extent that an Agent of this LLC has been successful on the merits in defense of any Proceeding, the Agent shall be indemnified against Expenses actually and reasonably incurred by the Agent in connection with the Proceeding.

11.5   **Required Approval.**  Any indemnification under this Section shall be made by the LLC only if authorized upon a determination by a majority vote of the LLC Interests of Members who were not parties to the proceeding at a duly held meeting of the Members at which a quorum is present.

11.6   **Advance of Expenses.**  Expenses incurred in defending any Proceeding may be advanced by the LLC before the final disposition of the Proceeding upon receipt of an undertaking by or on behalf of the Agent to repay the amount of the advance unless it shall be determined ultimately that the Agent is entitled to be indemnified.

11.7   **Other Contractual Rights.**  Nothing contained in this Section shall affect any right to indemnification to which Agents of this LLC or any subsidiary may be entitled by contract, by vote of the Members, as a matter of law or equity, or otherwise.

11.8   **Insurance.**  The LLC may, upon a determination by the Members, purchase and maintain insurance on behalf of any Agent of the LLC against any liability which might be asserted against or incurred by the Agent in such capacity, or which might arise out of the Agent's status as such, whether or not the LLC would have the power to indemnify the Agent against that liability.

11.9   **Amendment to Florida Laws.**  In the event that Florida law regarding indemnification of members, managers, directors, officers, employees, and other agents of a LLC, as in effect at the time of adoption of this Agreement, is subsequently amended to in any way that increases the scope of permissible indemnification beyond that set forth herein, the indemnification authorized by this Section shall be deemed to be coextensive with the maximum afforded by Florida law as so amended.

## SECTION 12

### LLC CERTIFICATES

12.1  **Issuance of LLC Certificates.** Each Member's LLC Interest shall be represented by a LLC Certificate.  Upon the execution of this Agreement and the payment of the Capital Contributions by the Member, the Members shall have the LLC issue one or more LLC Certificates in the name of each Member certifying that the named Member is the record holder of the LLC Interests.

12.2  **Transfer of LLC Certificates.** An LLC Interest which is transferred in accordance with the terms of this Agreement shall be transferable on the books of the LLC. However, the transfer of an LLC Interest shall not be entered until the previously issued LLC Certificate representing such LLC Interest is surrendered to the LLC and canceled and a replacement LLC Certificates issued to the assignee of such LLC Interest.

12.3  **Lost, Stolen, or Destroyed Certificates.** The LLC shall issue a new LLC Certificate in place of any LLC Certificate previously issued if the holder of the LLC Certificate satisfactorily proves that a previously issued LLC Certificate has been lost, destroyed, or stolen.  If a Member fails to notify the LLC within a reasonable time after it has notice of the loss, destruction, or theft of a LLC Certificate, and a transfer of the LLC Interest represented by the LLC Certificate is registered before receiving such notification, the LLC shall have no liability with respect to any claim against the LLC for such transfer or for a new LLC Certificate.

## SECTION 13

### DEFAULT BY A MEMBER

13.1  **Event of Default**.  The following events shall constitute a default by a Member:

13.1.1  Violation of the provisions of this Agreement and failure to remedy the violation within sixty (60) days after written notice of the violation to the alleged defaulting Member from a non-defaulting Member and a reasonable opportunity to cure.

13.1.2  A fraudulent act by a Member in connection with the affairs of the LLC that materially adversely affects the LLC.

13.1.3  The assignment of a Member Interest by a Member for the benefit of creditors, or the voluntary or involuntary filing of a petition under any section or chapter of the Federal Bankruptcy Code or under any similar law of the United States or any state thereof.

13.1.4  Adjudication of a Member as bankrupt or insolvent under any section or chapter of the Federal Bankruptcy Code or under any similar law of the United States or any state thereof.

13.1.5  The appointment of a receiver or trustee for all or substantially all of a Member's assets and the failure to have the receiver or trustee discharged within thirty (30) days after appointment.

13.1.6  The commencement of any legal action by a creditor against a Member resulting in litigation that, in the reasonable opinion of the unrelated Member, creates a real and substantial risk of involvement of LLC property that will probably:

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 17 of 22*

13.1.6.1 Have a material adverse effect on the LLC; or

13.1.6.2 Result in the creditor or the creditor's assigns succeeding in or to all or part of the Member's interest in the LLC.

13.2 **Effect of Default by a Member.** Upon a Member's default, the unrelated Member shall have the right to elect to terminate the defaulting Member's LLC Interest without effecting a termination of the LLC. The unrelated Member may make this election at any time sixty (60) days from the date of knowledge by that Member of the default, upon ten (10) days' written notice of such election to the defaulting Member provided that the default is continuing on the date notice is given and the defaulting Member does undertake reasonable measures to correct the default.

Notwithstanding anything herein to the contrary, upon the expiration of any applicable cure period hereunder, and thereafter during the continuation of a default by a Member, the LLC Interest of such Member and of any Member affiliated with the defaulting Member shall be deemed to be "defaulted interests" and the holders of such defaulted interests shall have no right to vote on or otherwise to direct, manage or control the activities of the LLC. For the purposes of determining the interests required for the Members to take any action, any defaulted interest shall not be considered, and only the unanimous or majority vote, as the case may be, of the Members holding LLC Interests not in default shall be required to approve actions or make decisions for the LLC; provided, however, that in no event shall such non-defaulting Member(s) take any action or make any decision (i) to amend or modify the Agreement, (ii) which may adversely affect the interests of the Members in default, or (iii) which is not in the best interests of the LLC.

13.3 **Election to Purchase.** The Members understand and agree that a breach or violation of this Agreement may cause the LLC to suffer substantial damages which are not susceptible of accurate determination at this time. Accordingly, the Members understand and agree that such default by a Member may, in the reasonable discretion of the non defaulting Member, trigger an offer to sell such defaulting Member's LLC Interest to the other Members in accordance with the procedure set forth in Section 8.4. Provided, however, that the purchase price of the defaulting Member's LLC Interest shall be reduced by the aggregate amount of any outstanding debts of the defaulting Member to the LLC and by any damages caused by the defaulting Member's default, as determined by the Manager(s) in their reasonable discretion. The Members have agreed that this provision for liquidated damages is a fair and reasonable estimate and liquidation of the LLC's damages in the event of such Member's default.

Upon receipt of the purchase price, the defaulting Member shall have no further interest in the LLC, its business, or its assets, and shall execute and deliver any assignments and other instruments necessary to evidence and effectively transfer the interest of the defaulting Member to the Purchasing Members. If the necessary assignments and instruments are not delivered after notice by the Manager(s) that the consideration is available to the defaulting Member, the Purchasing Members shall execute such assignments and instruments as the defaulting Member's irrevocable agent. All Members agree that the Member(s) shall not be individually liable for any actions so taken. Each defaulting Member hereunder irrevocably constitutes and appoints the Manager(s) as its attorney and agent for, in the name of and on behalf of the defaulting Member to execute and deliver in the name of the defaulting Member, all such assignments, transfers, powers and instruments as may be necessary to effectively transfer the LLC Interrests being transferred to the

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 18 of 22*

Purchasing Members on the books of the LLC. Such appointment and power of attorney, being coupled with an interest, shall not be revoked by the insolvency, bankruptcy, death or incapacity of the defaulting Member and the defaulting Member hereby ratifies and confirms and agrees to ratify and confirm all that the Manager(s) may lawfully do or cause to be done, by and on behalf of the LLC, by virtue thereof.

13.4   **Additional Effects of Default**.   In the event of a Member's default under this Agreement, the LLC and the Members may, at their election, pursue any and all remedies provided under this Agreement or any other remedies available at law or equity. The LLC and the Members shall not be deemed to waive or forfeit, by pursuit of remedies provided under this Agreement not considered liquidated damages, any amounts due to them as a result of another Member's default under this Agreement. If non-defaulting Members or the LLC waive another Member's specific default, the waiver shall not be deemed to extend to any other default of this Agreement. If the non-defaulting Members or the LLC refrain from enforcing any remedy available under this Agreement against a defaulting Member, they shall not be deemed to have waived the default.

## SECTION 14:

### TERMINATION AND DISSOLUTION

14.1   **Dissolution.**   The LLC shall be dissolved upon the occurrence of any of the following events: (a) The written consent of a majority (or all) of the LLC Interests; or (b) The death, withdrawal, resignation, expulsion, bankruptcy or dissolution of a Member or the occurrence of any other event which terminates the Member's continued membership in the LLC, unless the business of the LLC is continued by the consent of a majority (or all) of the remaining LLC Interests within ninety (90) days of the happening of that event.

14.2   **Conduct of Business.**   Upon the occurrence of any of the events specified above, a majority of the members shall appoint one or more of the Members (or Managers) to act as liquidator and wind up all LLC business and affairs. However, the LLC shall continue to exist until Articles of Dissolution have been filed or until a decree dissolving the LLC has been entered by a court of competent jurisdiction.

14.3   **Distribution of Net Proceeds.**   Upon the occurrence of any of the events specified above and the completion of the winding up of all LLC business and affairs, the assets of the LLC shall be promptly liquidated and distributed in the following order: (a) To the payment of creditors, excluding Members, in the order of priority as provided by law; (b) To the payment of loans or advances made by the Members; (c) To the Members in proportion to their Capital Accounts after adjustments for all allocations of net profits and net loss; and (d) any net profit thereafter remaining shall be distributed to the Members in proportion to their Membership Interest. Where the distribution consists both of cash and noncash assets, the cash shall be distributed first, in descending order, to the above categories. With respect to the noncash assets, which distribution values are to be based on the fair market value of the noncash asset as determined in good faith by the liquidator, the liquidator may sell the noncash assets and distribute the cash proceeds or distribute the assets in kind, in descending order, to the above categories.

14.4 **Termination.** The LLC shall be terminated upon the distribution of all assets. The Members shall cause the LLC to file Articles of Dissolution, if required, or take any other actions necessary to terminate the LLC.

## SECTION 15

### AMENDMENTS

15.1 **Amendments by Members.** This Agreement may be adopted, amended, altered, or repealed by the vote or written consent of all the Members at which a quorum is present.

## SECTION 16

### GENERAL PROVISIONS

16.1 **Entire Agreement/Modification.** This Agreement contains the entire understanding of the parties with respect to the subject matter of the Agreement, and it supersedes all prior understandings and agreements, whether written or oral, and all prior dealings of the parties with respect to the subject matter hereof. This Agreement, in whole or in part, cannot be changed, modified, extended, or discharged orally and no waiver of compliance with any provision or condition hereof and no consent provided for herein shall be effective unless evidenced by an instrument in writing duly executed by the party against whom enforcement of any waiver, change, modification, extension, or discharge is sought. Further, no consent or waiver, express or implied, to or of any breach or default shall constitute a consent or waiver to or of any other breach.

16.2 **Confidentiality.** Each Member agrees that it shall not, and shall cause the LLC not to, at any time or under any circumstances, without the consent of the Majority in Interest, directly or indirectly, communicate or disclose to any person or entity any knowledge or information whatsoever acquired by such Member relating to confidential information of the LLC, or of the other Members, nor shall it utilize or make available any such knowledge or information directly or indirectly in connection with the transfer or proposed transfer of any of its Interest in the LLC.

16.3 **Partition.** Each Member agrees that the Member has no right, and irrevocably waives any and all such rights, to have the assets of the LLC partitioned, or to file a complaint, or institute and maintain any proceeding at law or equity to have the assets of the LLC partitioned.

16.4 **Further Actions.** Each of the Members agrees to execute, acknowledge, and deliver such additional documents, and take such further actions, as may reasonably be required from time to time to carry out each of the provisions and the intent of this Agreement, and every agreement or document relating hereto, or entered into in connection herewith.

16.5 **Severability.** If any provision of this Agreement or the application thereof to any person or circumstance shall be invalid or unenforceable to any extent, the remainder of this Agreement and the application of such provision to other persons or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

16.6 **Successor and Assigns.** This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors, legal representatives, and assigns. This Agreement may not be assigned by any party without the express written consent of the other parties.

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 20 of 22*

16.7    **Notices.**  Any notice to the LLC shall be addressed to it in care of the General Manager at the address specified below.  All notices required or permitted by this Agreement shall be in writing and shall be hand-delivered or sent by registered or certified mail addressed to the applicable member or the LLC:

| | |
|---|---|
| If to the LLC: | Attn: Marco Romagnoli,<br>San Remo Homes at Florida City, LLC<br>782 NW LeJeune Road, Suite 635, Miami, Florida 33126 |
| | with copy to<br>NICOLAS FERNANDEZ, P.A.<br>780 N.W. LeJeune Road, Suite 324, Miami, Florida 33126 |
| If to Dinuro | Mr. Marco Romagnoli at 782 NW LeJeune Road, Suite 635, Miami, Florida 33126 |
| If to Starmac | Mr. Javier Macedo at 782 NW LeJeune Road, Suite 635, Miami, Florida 33126 |
| If to Merici | Mr. Felisberto Camacho at 782 NW LeJeune Road, Suite 635, Miami, Florida 33126 |

or such other address as it shall supply for such purpose to the other parties hereto.

16.8    **Attorneys' Fees.**  In the event of any litigation, arbitration or other dispute arising as a result of or by reason of this Agreement, the prevailing party in any such litigation, arbitration or other dispute shall be entitled to, in addition to any other damages assessed, its reasonable attorneys' fees, and all other costs and expenses incurred in connection with settling or resolving such dispute.

16.9 **Construction.**  Throughout this Agreement, the masculine, feminine, or neuter genders shall be deemed to include the masculine, feminine, and neuter and the singular, the plural, and vice versa. The section headings of this Agreement are for convenience of reference only and do not form a part hereof and do not in any way modify, interpret, or construe the intentions of the parties.

16.10    **Execution and Counterparts.**  This Agreement may be executed in several counterparts each of which shall be deemed to be an original, and all such counterparts when taken together shall constitute one and the same instrument.

16.11 **Governing Law.**  This agreement shall be governed by, and interpreted in accordance with, the laws of the State of Florida.

16.12 **No Party Deemed Drafter**.  The parties agree that no party shall be deemed to be the drafter of this Agreement and further that, in the event this Agreement is ever construed by a court of law, such court shall not construe this Agreement or any provision of this Agreement, against any party as the drafter of the Agreement.

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 21 of 22*

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be duly executed as of this _3_ day of _August_ , 2005.

Dinuro Investments, LLC, a Florida limited liability company

By: _____

Marco Romagnoli, Managing Member

By: _____

Roberto Romagnoli, Managing Member

Starmac LLC, a Florida limited liability company

By: Romac, LLC, a Delaware limited liability company, Sole Member

By: _____

Javier Macedo, Manager

Merici LLC, a Florida limited liability company

By: Felma, LLC, a Florida limited liability company, Sole Member

By: _____

Felisberto Figueira Camacho, Manager

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 22 of 22*

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION
DIVISION

DINURO INVESTMENTS, LLC, a Florida   CASE NO. 1 1 - 1 0 9 0 1 CA 4 0
limited liability company,
              Plaintiff,

v.

FELISBERTO FIGUEIRA CAMACHO;
JAVIER MACEDO; MERICI, LLC, a Florida
limited liability company; STARMAC, LLC, a
Florida limited liability company; SR
ACQUISITIONS – FLORIDA CITY, LLC, a
Florida limited liability company; OCEAN
BANK,

              Defendants,

_____/

## SUMMONS

TO:      JAVIER MACEDO
           13054 SW 133 COURT
           MIAMI FL 33186

      A lawsuit has been filed against you. You have **TWENTY (20)** calendar days after this
Summons is served on you to file a written response to the attached Complaint with the Clerk of this
Court. A telephone call will not protect you; your written response, including the case number given
above and the names of the parties, must be filed if you want the Court to hear your side of the case. If
you do not file your response on time, you may lose the case, and your wages, money and property may
thereafter be taken without further warning from the Court. There are other legal requirements. You may
want to call an attorney right away. If you do not know an attorney, you may call an attorney referral
service or a legal aid office (listed in the telephone book).

      If you choose to file a written response yourself, at the same time you file written response to the
Court you must also mail or take a copy of your written responses to the Plaintiff attorneys named below.

**CARLOS F. CONCEPCION, ESQ.**
**SCOTT A. BURR, ESQ.**
**CONCEPCION MARTINEZ & BELLIDO**
**255 Aragon Avenue**
**Second Floor**
**Coral Gables, Florida 33134**

THE STATE OF FLORIDA

TO EACH SHERIFF OF THE STATE:

      **YOU ARE COMMANDED** to serve this Summons and a copy of the Complaint in this lawsuit on the above-named Defendant.

      **DATED** on _____ APR - 8 2011

        CLERK OF COURT

By: ~~TARON BETHEL~~_____Deputy Clerk

## IMPORTANTE

Usted ha sido demando legalment.  Tiene **Veinte (20) dias,** contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada telefonica no lo protegera.  Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero de Caso, y los nombres de las partes interesadas.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, or privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo desea, puede usted consultar a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el Tribunal, debera usted enviar por correo o entregar en persona, una copia de su respuesta a la persona denominada al reverso como "Plaintiff C Attorney" (Abogado del Demandante).

## IMPORTANT

Des pursuites judicares ont ete entreprises contre vous.  Vous avez **20** jours consecutifs a partir de la date de l' assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal.  Un simple coup de telephone est insuffisant pour vous proteger.  Vous estes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende a votre cause.  Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous resquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal.  Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat.  Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff C Attorney" nomme au verso (Plaignant ou a son avocat).

## COURT LOCATION

Miami-Dade Courthouse
73 West Flagler Street
Miami, FL.  33131

Form 1.999. Order Designating A Case Complex. This form order is for designating a case complex under rule 1.201 and directing the clerk of court to update the court's records and to report the case activity to the Supreme Court.

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA

DINURO INVESTMENTS, LLC., a
Florida limited liability company,

                Plaintiff,

vs.

FELISBERTO FIGUEIRA CAMACHO;
JAVIER MACEDO; MERICI, LLC., a
Florida limited liability company, et al.,

                Defendants.

Case No.: 11-10901 CA
Division: (40)

_____/

## ORDER DESIGNATING CASE A "COMPLEX CASE"
## DIRECTIONS TO THE CLERK OF COURT

THIS CAUSE was considered on the court's own motion to designate this case a "complex case" as defined in rule 1.201, Fla. R. Civ. P. Being fully advised in the circumstances, the court determines that the case meets the criteria for proceeding under the rule and designates it as a "complex case."

The clerk of the court shall designate this case a "complex case," update the court's records accordingly, and report such designation and the case activity to the Supreme Court pursuant to section 25.075 Fla. Stat. and rule 2.245(a), Fla. R. Jud. Admin.

DONE AND ORDERED at Miami, Miami-Dade County, Florida, on 14th of April, 2011.

Conformed Copy

APR 1 4 2011

Gill S. Freeman
Circuit Court Judge

_____
GILL S. FREEMAN
CIRCUIT COURT JUDGE

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION
DIVISION

DINURO INVESTMENTS, LLC, a Florida     CASE NO. 11-10901-CA 40
limited liability company,

        Plaintiff,

v.

FELISBERTO FIGUEIRA CAMACHO;
JAVIER MACEDO; MERICI, LLC, a Florida
limited liability company; STARMAC, LLC, a
Florida limited liability company, SR
ACQUISITIONS – FLORIDA CITY, LLC, a
Florida limited liability company; OCEAN
BANK,

        Defendants,

_____/

### ORDER GRANTING PLAINTIFF DINURO'S
### UNOPPOSED MOTION FOR EXTENSION OF TIME
### TO RESPOND TO DEFENDANT OCEAN BANK'S MOTION TO DISMISS

THIS CAUSE having come before me on Plaintiff Dinuro Investments LLC's ("Dinuro")

Unopposed Motion for Extension of Time to Respond to Defendant Ocean Bank's Motion to

Dismiss (the "Motion") and, having reviewed the Motion and being duly advised in the premises,

it is hereby ORDERED AND ADJUGED as follows:

    1.    Plaintiff Dinuro's Motion is GRANTED.

    2.    Plaintiff Dinuro shall serve its response to Defendant Ocean Bank's Motion to

Dismiss on or before June 23, 2011.

    DONE AND ORDERED in Miami-Dade County, Florida this 25th day of May 2011.

                             **Judge Gill S. Freeman**

Copies furnished to:                _____
Counsel of Record                 GILL S. FREEMAN
                       CIRCUIT COURT JUDGE

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION DIVISION

CASE NO. 11-10901-CA-40

DINURO INVESTMENTS, LLC, a Florida limited liability company,

       Plaintiff,

vs.

FELISBERTO FIGUEIRA CAMACHO; JAVIER MACEDO; MERICI, LLC, a Florida limited liability company; STARMAC, LLC, a Florida limited liability company; SR ACQUISITIONS – FLORIDA CITY, LLC, a Florida limited liability company; OCEAN BANK,

       Defendants.

_____/

## AGREED ORDER GRANTING MOTION FOR ENLARGEMENT OF TIME

THIS MATTER is before the Court upon Defendants SR Acquisitions – Florida City, LLC, Merici, LLC and Starmac, LLC's Motion for Enlargement of Time, dated May 16, 2011. The Court having reviewed the Motion and being fully advised in the premises, it is hereby

ORDERED and ADJUDGED as follows:

1.      The Motion for Enlargement of Time is hereby Granted.

2.      Defendants SR Acquisitions – Florida City, LLC, Merici, LLC and Starmac, LLC shall have until June 20, 2011 to serve their Responses to Plaintiff's Complaint, by motions or otherwise.

**DONE AND ORDERED** in chambers at Miami-Dade County, Florida, this 2nd day of June, 2011.

Conformed Copy

JUN 0 2 2011

Gill S. Freeman
Circuit Court Judge

_X̲u̲i̲l̲ ̲S̲.̲ ̲F̲r̲e̲e̲m̲a̲n̲_
THE HONORABLE GILL S. FREEMAN
CIRCUIT COURT JUDGE

Copies furnished to:
Steven M. Ebner, Esq.
Scott Burr, Esq.
Jorge E. Otero, Esq.
Wilfredo A. Rodriguez, Esq.

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION DIVISION

DINURO INVESTMENTS, LLC, a Florida              CASE NO.:  11-10901-CA-40
limited liability company,

               Plaintiff,

v.

FELISBERTO FIGUEIRA CAMACHO;
JAVIER MACEDO; MERICI, LLC, a Florida
limited liability company; STARMAC, LLC, a
Florida limited liability company, SR
ACQUISITIONS – FLORIDA CITY, LLC, a
Florida limited liability company; OCEAN
BANK,

               Defendants,

_____/

## ORDER GRANTING PLAINTIFF DINURO'S
## UNOPPOSED MOTION FOR EXTENSION OF TIME
## TO RESPOND TO DEFENDANTS' MOTION TO DISMISS

      THIS CAUSE having come before me on Plaintiff Dinuro Investments LLC's ("Dinuro")

Unopposed Motion for Extension of Time to Respond to Defendants' Motion to Dismiss (the

"Motion") and, having reviewed the Motion and being duly advised in the premises, it is hereby

ORDERED AND ADJUGED as follows:

     1.     Plaintiff Dinuro's Motion is GRANTED.

     2.     Plaintiff Dinuro shall serve its response to Defendant s' Motion to Dismiss on or

before July 14, 2011.

      DONE AND ORDERED in Miami-Dade County, Florida this 27th day of June 2011.

                                        Judge Gill S. Freeman

Copies furnished to:

Counsel of record                         GILL S. FREEMAN
                                        CIRCUIT COURT JUDGE

IN THE CIRCUIT COURT OF THE ELEVENTH
JUDICIAL CIRCUIT IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION SECTION

CASE NO. 11-10901 CA 40

DINURO INVESTMENTS, LLC,

      Plaintiff,

v.

FELISBERTO FIGUEIRA CAMACHO,
JAVIER MACEDO, MERICI, LLC,
STARMAC, LLC,
SR ACQUISITIONS – FLORIDA CITY, LLC, and
OCEAN BANK,

      Defendants.

_____/

## ORDER GRANTING DEFENDANT OCEAN BANK'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO SUBMIT REPLY IN SUPPORT OF MOTION TO DISMISS

THIS CAUSE having come before me on Defendant Ocean Bank's Unopposed Motion

for Extension of Time to Submit Reply in Support of Motion to Dismiss (the "Motion") and,

having reviewed the Motion and being duly advised in the premises, it is hereby

ORDERED AND ADJUGED as follows:

1.     Defendant Ocean Bank's Motion is GRANTED.

2.     Defendant Ocean Bank shall serve its Reply in support its Motion to Dismiss the

Plaintiff's Complaint on or before July 15, 2011.

**JUL 0 5 2011**

DONE AND ORDERED in Miami-Dade County, Florida this ___ day of ~~June~~ 2011.

                                    Judge Gill S. Freeman
                                 _____
                                 GILL S. FREEMAN
                                 CIRCUIT COURT JUDGE

Copies furnished to:
Counsel of record

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION DIVISION

DINURO INVESTMENTS, LLC, a Florida          CASE NO.: 11-10901-CA-40
limited liability company,

           Plaintiff,

v.

FELISBERTO FIGUEIRA CAMACHO;
JAVIER MACEDO; MERICI, LLC, a
Florida limited liability company;
STARMAC, LLC, a Florida limited liability
company, SR ACQUISITIONS –
FLORIDA CITY, LLC, a Florida limited
liability company; OCEAN BANK,

           Defendants,

_____/

**ORDER GRANTING PLAINTIFF DINURO'S
UNOPPOSED SECOND MOTION FOR EXTENSION OF TIME
TO RESPOND TO CERTAIN DEFENDANTS' MOTION TO DISMISS**

      THIS CAUSE having come before me on Plaintiff Dinuro Investments LLC's ("Dinuro")

Unopposed Second Motion for Extension of Time to Respond to Certain Defendants' Motion to

Dismiss (the "Motion") and, having reviewed the Motion and being duly advised in the premises,

it is hereby ORDERED AND ADJUGED as follows:

    1.     Plaintiff Dinuro's Motion is GRANTED.

    2.     Plaintiff Dinuro shall file its amended complaint in response to Certain

Defendants' Motion to Dismiss on or before July 21, 2011.

      DONE AND ORDERED in Miami-Dade County, Florida this 18th day of July 2011.

Copies furnished to:

Counsel of record

           Judge Gill S. Freeman

           _____

           GILL S. FREEMAN
           CIRCUIT COURT JUDGE

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION
DIVISION

DINURO INVESTMENTS, LLC, a Florida          CASE NO. 11-10901-CA 40
limited liability company,
                 Plaintiff,

v.

FELISBERTO FIGUEIRA CAMACHO;
JAVIER MACEDO; MERICI, LLC, a Florida
limited liability company; STARMAC, LLC, a
Florida limited liability company, SR
ACQUISITIONS – FLORIDA CITY, LLC, a
Florida limited liability company; OCEAN
BANK,

             Defendants,

_____/

## ORDER GRANTING PLAINTIFF DINURO'S UNOPPOSED
## MOTION FOR EXTENSION OF TIME TO FILE
## JOINT CASE MANAGEMENT REPORT

       THIS CAUSE having come before me on Plaintiff Dinuro Investments LLC's ("Dinuro")

Unopposed Motion for Extension of Time to File Joint Case Management Report (the "Motion")

and, having reviewed the Motion and being duly advised in the premises, it is hereby ORDERED

AND ADJUGED as follows:

      1.    Plaintiff Dinuro's Motion is GRANTED.

      2.    The Parties shall file their Joint Case Management Report on or before **JUL 2 5 2011**

_____, 2011.

      DONE AND ORDERED in Miami-Dade County, Florida this __21st__ day of July 2011.

                       Judge Gill S. Freeman
                  _____
                  GILL S. FREEMAN
                  CIRCUIT COURT JUDGE

Copies Furnished To:
All counsel of Record

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION
DIVISION

DINURO INVESTMENTS, LLC, a Florida
limited liability company,
                Plaintiff,

v.

FELISBERTO FIGUEIRA CAMACHO;
JAVIER MACEDO; MERICI, LLC, a Florida
limited liability company; STARMAC, LLC, a
Florida limited liability company, SR
ACQUISITIONS – FLORIDA CITY, LLC, a
Florida limited liability company; OCEAN
BANK,

           Defendants,

_____/

CASE NO. 11-10901-CA 40

## ORDER GRANTING PLAINTIFF DINURO'S UNOPPOSED
## MOTION FOR CLARIFICATION OF THIS COURT'S JULY 21, 2011 ORDER AND
## FOR EXTENSION OF TIME TO FILE
## JOINT CASE MANAGEMENT REPORT

THIS CAUSE having come before me on Plaintiff Dinuro Investments LLC's ("Dinuro")

Agreed Motion for Clarification of this Court's July 21, 2011 Order and for Extension of Time to

File Joint Case Management Report (the "Motion") and, having reviewed the Motion and being

duly advised in the premises, it is hereby ORDERED AND ADJUGED as follows:

    1.    Plaintiff Dinuro's Motion is GRANTED.

    2.    The Parties shall file their Joint Case Management Report on or before August 1,

2011.

DONE AND ORDERED in Miami-Dade County, Florida this 25th day of July 2011.

                        Judge Gill S. Freeman
                        _____
                        GILL S. FREEMAN
                        CIRCUIT COURT JUDGE

Copies Furnished To:
All counsel of Record

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION DIVISION

DINURO INVESTMENTS, LLC, a Florida limited         CASE NO. 11-cv-10901 CA 40
liability company,

                Plaintiff,

v.

FELISBERTO FIGUEIRA CAMACHO;
FELMA, LLC, a Florida limited liability
company; MERICI, LLC, a Florida limited liability
company; JAVIER MACEDO;
ROMAC, LLC, a Florida limited liability
company; STARMAC, LLC, a Florida limited
liability company; SR ACQUISITIONS –
FLORIDA CITY, LLC, a Florida limited liability
company; SR ACQUISITIONS, LLC, a Florida
limited liability company; ROMAC, LLC, a
Delaware limited liability company;
FELCA, LLC, a limited liability company; and
OCEAN BANK,

                Defendants,

_____/

## FIRST AMENDED COMPLAINT

Plaintiff Dinuro Investments, LLC ("Dinuro") sues Felisberto Figueira Camacho ("Camacho"), Javier Macedo Rodriguez ("Macedo"), Merici, LLC ("Merici"), Starmac, LLC ("Starmac"), SR Acquisitions-Florida City, LLC (SR-Florida City"), SR Acquisitions, LLC ("SR Acquisitions"), Romac, LLC (Romac"), Felca, LLC ("Felca") and Ocean Bank ("the Bank"), and states:

## NATURE OF THE CASE

1.    Plaintiff brings this action against Defendants Camacho and Macedo and the Defendant corporations of which they are the beneficial owners and alter-egos to seek redress for

Defendants' scheme to surreptitiously dilute Dinuro's ownership interest in San Remo Homes At Florida City, LLC ("San Remo Florida City"), to usurp valuable real estate for themselves, and to ultimately squeeze Dinuro out of the residential development joint venture plans in Florida City. Defendants Camacho and Macedo, through the companies they control, effectuated this scheme, in part, by causing the San Remo-Florida City to default on a $3.6 million loan from the Bank and by then creating SR-Florida City, a new and independent entity, for purchasing that debt from the Bank; the result of which was to cripple the operations of the San Remo-Florida City and to strip it of the opportunity to complete its residential development plans.

2.      Defendants Camacho and Macedo, through their respective, alter-ego companies, Merici, Starmac, Romac, and Felma orchestrated this scheme with the agreement and substantial assistance of SR-Florida City, SR-Acquisitions, Felca and the Bank.

3.      Plaintiff seeks to recover monetary damages for Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Breach of Fiduciary Duty, Aiding and Abetting the Breach of Fiduciary Duty, Fraud, Aiding and Abetting Fraud, and Conspiracy. Plaintiff also seeks to recover its attorneys' fees and costs incurred in prosecuting this action to vindicate its rights.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction as this is an action for damages in excess of $15,000.00, excluding costs, interest and attorney's fees, and is within the monetary jurisdiction of this Court.

5.      This Court has personal jurisdiction over Defendants because: (a) Defendants are organized under Florida law; or (b) Defendants engage in substantial and not isolated activities in

2

the State of Florida and benefit substantially from these activities; or (c) Defendants are authorized to do and do substantial business in Florida; or (d) Defendants committed violations of Florida law in Florida.

6.      Venue is proper in this Circuit as one or more Defendants are found in this Circuit.

## THE PARTIES

7.      Plaintiff Dinuro Investments, LLC ("Dinuro") is a limited liability company organized under the laws of Florida with its principal place of business in Miami-Dade County, Florida. Dinuro is a co-managing member of San Remo Homes at Florida City, LLC. Marco and Roberto Romagnoli ("the Romagnoli brothers") are the co-managing members of Dinuro.

### The San Remo at Home-Florida City Corporate Structure

8.      Defendant Merici, LLC is a limited liability company organized under the laws of Florida with its principal address in Miami-Dade County, Florida.  Merici is a co-managing member of San Remo Homes at Florida City, LLC.  Defendant Felma, LLC ("Felma") is the sole managing member of Merici.  Merici is the alter-ego of Felma and was used for the improper purpose as described herein.

9.      Defendant Felma is a limited liability company organized under the laws of Florida with its principal address in Miami-Dade County, Florida.  Felma is the sole managing member in co-Defendant Merici.  Felma is the alter-ego of Camacho and was used for the improper purpose as described herein.

10.     Defendant Starmac, LLC ("Starmac") is a limited liability company organized under the laws of Florida with its principal address in Miami-Dade County, Florida. Starmac is a

3

co-managing member of San Remo Homes at Florida City, LLC. Defendant Romac, LLC ("Romac") is the sole managing member of Starmac. Starmac is the alter-ego of Romac and was used for the improper purpose as described herein.

11.     Defendant Romac, LLC is a limited liability company organized under the laws of Delaware with its principal address in Miami-Dade County, Florida. Defendant Macedo is the sole managing member in Romac. Romac is the alter-ego of Macedo and was used for the improper purpose as described herein.

12.     Defendant Camacho is an individual who resides in Miami-Dade County, Florida. Camacho is the sole managing member in co-Defendants Merici and Felma. Camacho is the beneficial owner of Defendants Merici and Felma. Camacho dominates and controls these entities to such an extent that their independent existence is in fact non-existent and he is the alter ego of these companies

13.     Defendant Macedo is an individual who resides in Miami-Dade, County, Florida. Macedo is the sole managing member in co-Defendants Starmac and Romac. Macedo is the beneficial owner of Starmac and Romac. Macedo dominates and controls these entities to such an extent that their independent existence is in fact non-existent and he is the alter ego of these companies.

4

CASE NO. 11-cv-10901 CA 40



## The SR-Florida City Corporate Structure

14. Defendant SR Acquisitions-Florida City, LLC, ("SR-Florida City") is a limited liability company organized under the laws of Florida with its principal address in Miami-Dade County, Florida. Co-Defendant SR Acquisitions, LLC is the sole managing member of SR-Florida City. SR-Florida City is the alter-ego of SR Acquisitions, LLC. As alleged herein, SR Acquisitions, LLC used SR-Florida City for its own personal interest and to defraud Dinuro and steal from San Remo.

15. Defendant SR Acquisitions, LLC ("SR Acquisitions"), is a limited liability company organized under the laws of Florida with its principal address in Miami-Dade County, Florida. SR Acquisitions is the sole managing member of Defendant SR-Florida City. Defendants Romac, LLC ("Romac") and Felca, LLC ("Felca") are the co-managing members of SR Acquisitions. SR Acquisitions is the alter-ego of Romac and Felca and was used for the improper purpose as described herein.

16. Defendant Romac is a limited liability company organized under the laws of Delaware. Romac is a co-managing member of SR Acquisitions. Defendant Macedo is the sole

5

CASE NO. 11-cv-10901 CA 40

managing member of Romac. Romac is the alter-ego of Macedo and was used for the improper purpose as described herein.

17.    Defendant Felca is a limited liability company organized under the laws of Florida. Felca is a co-managing member of SR Acquisitions. Defendant Camacho is the sole managing member of Felca. Felca is the alter-ego of Camacho and was used for the improper purpose as described herein.

18.    Defendant Camacho is an individual who resides in Miami-Dade County, Florida. Camacho is the sole managing member in co-Defendant Felca. Camacho is the beneficial owner of Defendants Felca, SR Acquisitions, and SR-Florida City. Camacho dominates and controls these entities to such an extent that their independent existence is in fact non-existent and he is the alter ego of these companies

19.    Defendant Macedo is an individual who resides in Miami-Dade, County, Florida. Macedo is the sole managing member in Romac. Macedo is the beneficial owner of Romac, SR Acquisitions and SR-Florida City. Macedo dominates and controls these entities to such an extent that their independent existence  is in fact non-existent and he is the alter ego of these

6

CASE NO. 11-cv-10901 CA 40

companies.



**Other Co-Conspirator**

20.     Defendant Ocean Bank is a Florida for profit corporation with its principal address in Miami-Dade County, Florida.

## FACTUAL BACKGROUND

21.     On February 10, 2005, San Remo-Florida City filed its Articles of Organization with the Florida Secretary of State.

22.     The original members of San Remo-Florida City were Dinuro, Merici, and Starmac. Each member also serves as a manager. The members of the San Remo-Florida City have not changed since it was organized.

23.     On August 3, 2005, Dinuro entered into an Operating Agreement dated and effective July 11, 2005, with Merici and Starmac to form the San Remo-Florida City. A true and correct copy of the Operating Agreement is attached as Exhibit "A." According to the Operating Agreement, the purpose of the San Remo-Florida City was to acquire, develop and sell certain real property in Florida City:

7

CASE NO. 11-cv-10901 CA 40

> Lots 9 and 10, Block 1, MIAMI LAND & DEVELOPMENT COMPANY'S SUBDIVISION, SECTION 19, TOWNSHIP 57 SOUTH, RANGE 39 EAST, according to the Plat thereof as recorded in Plat Book 5, Page 10 of the Public Records of Miami-Dade County, Florida.

San Remo-Florida City desired to develop and construct a townhouse project known as "Key Lakes" on the real property.

24.     The Operating Agreement provided that each member should contribute to the San Remo-Florida City as follows:

| **Name**: | **Capital Contribution** | **LLC Interest** |
|---|---|---|
| Dinuro | $1,497,271.96 | 50 Shares |
| Starmac | $1,497,271.96 | 50 Shares |
| Merici | $1,497,271.96 | 50 Shares |

25.     The Operating Agreement further contained the following anti-dilution of interest provisions to preserve each member's one-third (1/3) interest in San Remo-Florida City:

> 4.2     **Additional Contributions.** Except as specifically set forth in this Agreement, no Member shall be required to make any additional Capital Contributions.

> 4.5.     **Advances by Members.** The Members anticipate that additional funds and working capital may be required for the working capital needs of the LLC and the Project. The Members agree that one or more Members may, from time to time, advance such additional funds and working capital as may be required for such purposes in the form of loan advances and such advances shall be repaid to such Member(s) as the Member's cash flow shall permit. . . .

26.     The Operating Agreement also provides that:

> 7.4     . . . any act of a Manager which may materially affect the LLC or its property shall require the prior consent of the Members.

8

. . .

27.     Finally, the Operating Agreement states that:

> 7.5     Except with the written consent or ratification of all of the Members, no Manager shall have the authority to: . . .
>
> 7.5.2   Do any act that would make it impossible or unreasonably burdensome to carry on the ordinary business and purpose of the LLC;

28.     On May 31, 2005,  San Remo-Florida City purchased real estate to develop its townhome residential project.  In order to finance the purchase, San Remo-Florida City obtained a mortgage loan in the amount of 3,600,000 from the Bank.

29.     On May 31, 2005, San Remo-Florida City executed a Mortgage Deed, Security Agreement and Promissory Note in favor of the Bank.

30.     The Mortgage Deed encumbered the property at:

> Lots 9 and 10, Block 1, MIAMI LAND & DEVELOPMENT COMPANY'S SUBDIVISION, SECTION 19, TOWNSHIP 57 SOUTH, RANGE 39 EAST, according to the Plat thereof as recorded in Plat Book 5, at Page 10, of the Public Records of Miami-Dade County, Florida.

31.     To secure payment of the loan, San Remo-Florida City also pledged its leases, rents and profits, its personal property, certain bank accounts, intangibles and other rights as collateral.  In addition, the owners of the members of the San Remo-Florida City, Marco and Roberto Romagnoli, Macedo, and Camacho were required to, and did, provide their own personal guarantees. The personal guarantees were unlimited guarantees that provided that they "shall be several and also joint, each with all or with any one or more the others, and may be enforced against each separately or against any two or more jointly, or against some separately

9

CASE NO. 11-cv-10901 CA 40

and some jointly."

32.     From 2005 through 2009, the members agreed to modify the mortgage loan three times.

33.     The Bank's loan was set to mature in March 29, 2010.

34.     Sometime before March 29, 2010, Defendants Macedo and Camacho concocted a scheme whereby – trading on Macedo's inside position as a director of the Bank --they would purchase the San Remo-Florida City's promissory note themselves from the Bank and foreclose on the pledged collateral of San Remo-Florida City. To effectuate this scheme Defendants Macedo and Camacho created the numerous co-defendant corporations in an attempt to conceal their ultimate ownership and control. The objective and effect of the scheme was to eliminate Dinuro's one-third (1/3) ownership interest in the San Remo-Florida City's property and to ultimately obtain the San Remo-Florida City's property for themselves, presumably through a judicial sale of the foreclosed property.

35.     On February 24, 2010 and March 6, 2010, the Bank provided Dinuro, Merici and Starmac with proposed commitment letters, which provided certain pay down requirements and extension terms for the continuation of the loan. In the past, Defendants Camacho and Macedo had signed the commitment letters and paid the extension fees, including advancing Dinuro's fee.

36.     Unlike in the three prior times, this time Defendants Camacho and Macedo decided not to have Starmac and Merici sign the commitment letters. Instead, Defendants Camacho and Macedo, through Merici and Starmac, decided to allow San Remo-Florida City to default on the loan to the Bank.

10

37. At about the same time, on or about March 4, 2010, Defendants Camacho and Macedo offered to the Romagnoli brothers that they would have San Remo-Florida City redeem Dinuro's membership interest in San Remo-Florida City in exchange for the Romagnoli brothers' personal guarantee of any amounts that could be payable by them with regard to the guarantees they delivered to Ocean Bank. In other words, in consideration for the Romagnoli brothers' surrender of their interest in San Remo-Florida City, Defendants Camacho and Macedo would indemnify the Romagnoli brothers for any amounts due under their personal guarantees to Ocean Bank.

38. On May 11, 2010, the Bank provided notice to the San Remo-Florida City that it was in default on the loan.

39. Pursuant to their scheme, on August 6, 2010, Defendants Camacho and Macedo created SR-Florida City and the corporate ownership structure depicted above in paragraphs 12 through 17 to purchase San Remo-Florida City's promissory note from the Bank. The layered corporate ownership structure was designed to conceal the true owners of SR-Florida City, Camacho and Macedo.

40. On or about July 2, 2010, Defendants Macedo and Camacho informed the Romagnoli brothers of their intention to create a competing company that would purchase the San Remo-Florida City loan from the Bank. Defendants Macedo and Camacho invited Dinuro to purchase membership interests in "SR Acquisitions, LLC," which was to be formed for this purpose. Defendants Camacho and Macedo represented to Dinuro that the members of the new company would be Starmac, Merici, and if the Romagnoli brothers chose, Dinuro. Defendants Macedo and Camacho, however, only gave the Romagnoli brothers 24 hours to make a decision

11

CASE NO. 11-cv-10901 CA 40

whether to invest in the new company. Under the circumstances, the Romagnoli brothers decided not to participate.

41.    Under the terms of the proposed SR-Florida City Operating Agreement -- unlike with the San Remo-Florida City's Operating Agreement -- the Romagnoli brothers and Dinuro would not be protected from being squeezed out of SR-Florida City by Macedo and Camacho.

42.    On July 19, 2010, the Bank informed Dinuro that it had received a request to purchase the San Remo-Florida City loan and for the "purchase price that equates to the unpaid principal balance plus all accrued and default interest up until the day of closing." The Bank informed Dinuro that if it chose to purchase the loan that it had to pay the same amount and close in 48 hours, or by July 22, 2010.

43.    In order to evaluate any such purchase, the Romagnoli brothers asked Ocean Bank to provide it with certain crucial information, but the Bank refused. Specifically, the Romagnoli brothers, on behalf of Dinuro, requested Ocean Bank to provide Dinuro with copies of San Remo-Florida City's 2008 and 2009 tax returns, financial information of the guarantors, and related financial information, which was not otherwise available to them. The Bank did not provide the information.

44.    On August 5, 2010, the Bank once again requested Dinuro to inform it if it wanted to purchase the loan "based on the information that was already sent to you," which did not include the requested and relevant financial information of the guarantors. Further, the Romagnoli brothers' father had just died, so Dinuro requested that the Bank provide it with additional time to evaluate the loan. The Bank did not provide the additional time.

45.    On August 9, 2010, SR-Florida City purchased from the Bank all of the Bank's

12

rights under the loan documents. The Bank gave Macedo's SR-Florida City favorable treatment.

46.     On September 10, 2010, SR-Florida City provided San Remo-Florida City notice that it had acquired the Bank's interest in the mortgage loan, that San Remo-Florida City was in default, and demanded payment in the amount of $3,633,750, plus various other costs and fees.

47.     On February 16, 2011, SR-Florida City filed a complaint styled *SR Acquisitions-Florida City, LLC v. San Remo Homes at Florida City, LLC*, Case No. 11-05222 CA 20, in the 11th Judicial Circuit Court to foreclose on the mortgage and other collateral.

48.     On March 14, 2011, SR-Florida City obtained a Clerk's Default.

49.     SR-Florida City has expressed its intention to hold the Romagnoli brothers liable on their personal guarantee for any deficiency in sale price of the property.

50.     San Remo-Florida City had intended to construct 205 units on its property and in 2009 projected a profit margin of $50,000 to $60,000 per unit at the time of completion. As a result of Defendants' collective wrongful conduct as described herein, Dinuro has been deprived of its one-third interest in this profit and the loss of other opportunities.

## CAUSES OF ACTION

### COUNT I – BREACH OF CONTRACT (FLORIDA LAW)

#### (Plaintiff v. Defendants Merici and Starmac)

51.     Plaintiff repeats the allegations contained in paragraphs 1 through 50.

52.     The Operating Agreement is a contract among the members of the San Remo-Florida City. Macedo signed it as manager of Defendant Romac, which is the alter-ego of San Remo-Florida City. Camacho signed it as manager of Defendant Felma, which is the alter-ego of Merici. The Operating Agreement contains a choice of law provision specifying that the

13

CASE NO. 11-cv-10901 CA 40

"Agreement shall be governed by, and interpreted in accordance with, the laws of the State of Florida." (Agreement ¶ 16.11).

53.     At all times relevant hereto, Defendants Merici and Starmac were indirectly controlled by Defendants Camacho and Macedo and at all times acted at their direction.

54.     Defendants Merici and Starmac breached Sections 7.4, 7.5 and 7.5.2 of the Operating Agreement by participating and/or acquiescing in the conduct taken by their managing members and their beneficial owners as set forth above "which may materially affect the LLC or its property" and "would make it impossible or unreasonably burdensome to carry on the ordinary business and purpose of the LLC" without the prior consent of all members, including Dinuro.

55.     Plaintiff has sustained damages as set forth in paragraphs 49 and 50 as a result of Defendant Merici's and Starmac's breaches of contract.

## COUNT II – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING – FLORIDA LAW.

### (Plaintiff v. Defendants Merici and Starmac)

56.     Plaintiff repeats the allegations contained in paragraphs 1 through 50.

57.     Dinuro, Merici, and Starmac entered into a contract, the San Remo-Florida City's Operating Agreement.  Macedo signed it as manager of Defendant Romac, which is the alter-ego of San Remo-Florida City.  Camacho signed it as manager of Defendant Felma, which is the alter-ego of Merici. Every contract governed by Florida law contains an implied covenant of good faith and fair dealing.

14

58.     If Count I fails to state a claim against Defendants Merici and Starmac as a matter of law, then alternatively, Defendants Merici and Starmac acted in bad faith and breached the implied covenant of good faith and fair dealing by participating in and/or acquiescing in the action set forth above by its managing members and beneficial owner "which may materially affect the LLC or its property" and "would make it impossible or unreasonably burdensome to carry on the ordinary business and purpose of the LLC" without the prior consent of all members as required by Sections 7.4, 7.5 and 7.5.2 of the Operating Agreement.

59.     In addition, Defendants Merici and Starmac have acted in bad faith and breached the implied covenant of good faith and fair dealing by participating in and/or acquiescing in their managing members' and beneficial owners' misuse of confidential business information, for their own purposes and not for the benefit of the San Remo-Florida City and all of its members, and their participating in and/or acquiescing in their managing members' and beneficial owners' creation of a competing company through which they could steal San Remo-Florida City's assets for their own.  This conduct is a breach of Sections 7.4 and 7.4.17 of the Operating Agreement, which are attached hereto and incorporated herein by reference.

60.     Plaintiff has sustained damages as set forth in paragraphs 49 and 50 because of Merici's and Starmac's breaches of the covenant of good faith and fair dealing.

## COUNT III – BREACH OF FIDUCIARY DUTY – FLORIDA LAW

### (Plaintiff v. Defendants Merici and Starmac)

61.     Plaintiff repeats the allegations contained in paragraphs 1 through 50.

62.     Defendants Merici and Starmac are fiduciaries of San Remo-Florida City and its members and owe to them the duty to conduct the business of San Remo-Florida City loyally,

15

faithfully, carefully, diligently and prudently. *See* Fla. Stat. §608.4225; Operating Agreement¶ 7.8. Defendants Merici and Starmac owed Dinuro a fiduciary duty to safeguard Dinuro's capital investment and act in the best interests of the San Remo-Florida City and not for themselves.

63.     Defendants Merici and Starmac breached their fiduciary duties to Dinuro by:

(a)     obtaining a loan for San Remo-Florida City from Ocean Bank that San Remo-Florida City was not able to or was unwilling to satisfy on the maturity date;

(b)     deciding that rather than calling for an increase in capital contribution from the members and their beneficial owners or making a personal loan to San Remo-Florida City that they would allow San Remo-Florida City to default on its mortgage loan obligation to Ocean Bank;

(c)     participating directly or indirectly in the creation SR-Florida City, a competing limited liability company in which they invested sufficient capital to purchase from Ocean Bank the mortgage loan; and

(d)     participating in and/or acquiescing in its managing members' and beneficial owners' decisions to have SR-Florida City deem San Remo-Florida City in default of the loan and proceedeing to foreclose on the assets (the real and personal property) of San Remo-Florida City.

64.     Plaintiff has sustained damages as set forth in paragraphs 49 and 50 above as a result of Defendants Merici's and Starmac's breaches of the covenant of good faith and fair dealing.

16

CASE NO. 11-cv-10901 CA 40

## COUNT IV – AIDING AND ABETTING BREACH OF FIDUCIARY DUTY – FLORIDA LAW

### (Plaintiff v. Defendants Camacho, Macedo, Romac, Felma, SR-Florida City, SR Acquisitions, Felca, and Ocean Bank)

65.     Plaintiff repeats the allegations contained in paragraphs 1 through 50 and in paragraphs 61 through 64.

66.     Defendants Merici and Starmac as members and managers of the San Remo-Florida City owed Dinuro a fiduciary duty to safeguard Dinuro's capital investment and act in the best interests of the San Remo-Florida City and not for themselves.

67.     As described in paragraphs 34 through 50 and 61 through 64, Defendants Merici and Starmac breached this fiduciary duty.

68.     As described in paragraphs 2, 8 through 19, 34, 36, 37, 39, 40, and 45 through 48, Defendants Camacho and Macedo had knowledge of the breach and provided substantial assistance in inducing the breach.

69.     As described in paragraphs 14 through 19, 34, 39, 40, and 45 through 48 Defendants Romac, Felca, SR Acquisitions, LLC and SR-Florida City had knowledge of the breach and provided substantial assistance in inducing the breach.

70.     As described in paragraphs 9, 12, 34, 39, 40, and 45 through 48, Defendant Felma had knowledge of the breach and provided substantial assistance in inducing the breach.

71.     As described in paragraphs 20, 42 through 45, Ocean Bank had knowledge of the breach and provided substantial assistance in inducing the breach.

72.     Plaintiff has sustained damages as set forth in paragraphs 49 and 50 above because of Defendants aiding and abetting in the breach of fiduciary duty.

17

CASE NO. 11-cv-10901 CA 40

## COUNT V –FRAUD AND DECEIT – FLORIDA LAW

### (Plaintiff v. Defendants Camacho, Macedo, Merici, and Starmac)

73.     Plaintiff repeats the allegations contained in paragraphs 1 through 50.

74.     In undertaking the scheme as described in paragraphs 34 through 50 above, Defendant Camacho, acting through Merici, and Defendant Macedo, acting through Starmac, knowingly and intentionally failed to disclose and/or made material omissions of fact to Dinuro, who acts through the Romagnoli brothers, upon which Dinuro relied, which omissions included, but were not limited to these Count V Defendants' intent:

(a)     to increase secretly their ownership interest in San Remo-Florida City's assets from one-third to one-half;

(b)     to dilute Dinuro's interest and participation in San Remo-Florida City;

(c)     to have SR-Florida City purchase the loan from Ocean Bank with the ultimate intent to foreclose and purchase the foreclosed property at judicial sale;

(d)     to compete against San Remo-Florida City; and

(e)     ultimately to put San Remo-Florida City out of business.

75.     As a result of these acts of fraud and deceit and/or omissions, Dinuro has suffered damages as set forth in paragraphs 49 and 50.

## COUNT VI – AIDING AND ABETTING FRAUD AND DECEIT – FLORIDA LAW

### (Plaintiff v. Felca, Felma, Romac, SR-Florida City, SR Acquisitions and Ocean Bank)

76.     Plaintiff repeats the allegations contained in paragraphs 1 through 50  and paragraphs 73 through 75.

18

CASE NO. 11-cv-10901 CA 40

77.     As described in paragraphs 2, 8 through 19, 34, 36, 37, 39, 40, and 45 through 48 Defendants Camacho, Macedo, Merici and Starmac are attempting to defraud Dinuro of its interest in San Remo-Florida City.

78.     As described in paragraphs 2, 8 through 13, and 34, Defendants Romac and Felma had knowledge of the fraud and provided substantial assistance in the commission of the fraud.

79.     As described in paragraphs 42 through 45, Ocean Bank had knowledge of the fraud and provided substantial assistance in the commission of the fraud.

80.     As described in paragraphs 2, 14 through 19, 34, 40, and 45 through 48, SR-Florida City, SR Acquisition, Romac, and Felca  had knowledge of the fraud and provided substantial assistance in the commission of the fraud.

81.     As a result of the named Defendants' conduct, Dinuro has suffered damages as set forth in paragraphs 49 and 50.

## COUNT VII –CONSPIRACY – FLORIDA LAW

**(Plaintiff v. Defendants Camacho, Macedo, Starmac, Merici, Romac, Felma, Felca Ocean Bank, SR-Florida City and SR Acquisitions)**

82.     Plaintiff repeats the allegations contained in paragraphs 1 through 50, paragraphs 61 through 64, and paragraphs 73 through 75.

83.     Defendants Camacho, Macedo, Starmac, Merici, Romac, Felma, Felca, Ocean Bank, SR Florida City and SR Acquisitions agreed to commit one or more of the offenses alleged in Counts III and V.

84.     One or more of the defendants have, as alleged in paragraphs 1 through 50, committed an overt act in furtherance of the conspiracy.

19

Concepción Martinez & Bellido, Attorneys at Law
255 Aragon Avenue • 2nd Floor • Coral Gables, FL 33134 • T 305.444.6669 • F 305.444.3665
www.cfclaw.com

CASE NO. 11-cv-10901 CA 40

85.     Plaintiff has sustained damages as set forth in paragraphs 49 and 50 because of the conspiracy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter a judgment as follows:

A.     For monetary damages as set forth in paragraph 49 and 50 of this First Amended Complaint for each of its claims brought against Defendants in an amount to be proved at trial.

B.     That Plaintiff be awarded its costs and expenses, including attorneys' fees as provided by Section 15.8 of the Operating Agreement.

C.     For such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable as a right by a jury.

Dated:  July 25, 2011.

**CONCEPCION MARTINEZ & BELLIDO**
*Attorneys for DINURO INVESTMENTS, LLC*
255 Aragon Avenue, Second Floor
Coral Gables, Florida 33134
Telephone: (305) 444-6669
Facsimile: (305) 444-3665

By: _____ for
     CARLOS F. CONCEPCION
     Florida Bar No. 386730
     SCOTT A. BURR
     Florida Bar No. 99325
     MANUEL A. RODRIGUEZ
     Florida Bar No. 598240

and

20

CASE NO. 11-cv-10901 CA 40

JORGE E. OTERO & ASSOCIATES,
P.A.
Jorge E. Otero
Florida Bar No. 438596
75 Valencia Avenue, Second Floor
Coral Gables Florida 33134
Telephone: (305) 567-9000
Facsimile: (305) 443-0164

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by

U.S. Mail this 25<u>th</u> day of July, 2011 to:

Joshua W. Dobin, Esq.
Eric Ostroff, Esq.
Meland Russin & Budwick, P.A.
3000 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Fax: (305) 358-1221

San Remo Homes at Florida City, LLC
c/o Isis Valle, Registered Agent
150 SE 2ND Avenue. Suite 1007
Miami, FL 33131

Steve Ebner, Esq.
Shutts & Bowen, LLP
1500 Miami Center
201 South Biscayne Blvd.
Miami, FL. 33131
Fax: (305) 347-7760

Wilfredo A. Rodriguez, Esq.
Eduardo F. Rodriguez, Esq.
Avila, Rodriguez, Hernandez, Mena & Ferri, LLP.
2525 Ponce de Leon Boulevard, Suite 1225
Coral Gables, FL. 33134
Fax: (305) 779-3561

By: _____
CARLOS F. CONCEPCION

21

## SAN REMO HOMES AT FLORIDA CITY, LLC.

### OPERATING AGREEMENT

THIS AMENDED OPERATING AGREEMENT (the "Agreement") is made and entered into and effective as of this _10_ day of _February_ 2005, by and among Dinuro Investments, LLC, a Florida limited liability company ("Dinuro"), Starmac, LLC, a Florida limited liability company ("Starmac"), and MERICI, LLC, a Florida limited liability company ("Merici") (Dinuro, Starmac and Merici are hereinafter sometimes individually or collectively referred to as the "Member" or "Members", as appropriate).

### RECITALS:

WHEREAS, the Members have formed a limited liability company named San Remo Homes at Florida City, LLC, under the laws of the State of Florida (hereinafter referred to as the "LLC").

WHEREAS, the articles of organization of the LLC were filed on February 10, 2005 with the Secretary of State of the State of Florida (hereinafter referred to as "Articles of Organization").

WHEREAS, the purpose of the LLC is to acquire, develop and sell certain real property (the "Property") legally described as follows:

> **Lots 9 and 10, Block 1, MIAMI LAND & DEVELOPMENT COMPANY'S SUBDIVISION, SECTION 19, TOWNSHIP 57 SOUTH, RANGE 39 EAST, according to the Plat thereof as recorded in Plat Book 5, Page 10, of the Public Records of Miami-Dade County, Florida.**

WHEREAS, the LLC desires to develop and construct on the Property a townhouse project (the "Project") to be known as "Keys Lake."

NOW THEREFORE, in consideration of Ten 00/100 Dollars ($10.00), the covenants and the promises made herein, and other good and valuable consideration the receipt of which is hereby acknowledged, the parties hereby agree as follows:

### SECTION 1

### DEFINITIONS:

1.1 **"Accounting Period"** shall mean the calendar year which shall also be the LLC's fiscal year, unless another fiscal year is selected by the Members and permission to change to such other fiscal year is granted by the Internal Revenue Service.

1.2 **"Agreement"** means this Limited Liability Company Operating Agreement, as amended.

1.3 **"Articles of Organization"** means the articles of organization which were filed February 10, 2005 with the Secretary of State of the State of Florida for the purpose of forming this LLC.

EXHIBIT
A

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 1 of 22*

1.4 **"Budget"** means the proposed LLC expenses that will be based on the preliminary budget attached hereto as Exhibit "A" hereto and will be agreed upon by the Members prior to closing on the construction loan to finance the Project.

1.5 **"Code"** means the Internal Revenue Code of 1996, as amended.

1.6 **"Capital Account"** means the capital account in accordance with Treasury Regulation Section 1.704-1(b)(2)(iv). The Capital Account shall be increased by: (1) Member's Capital Contribution, (2) a Member's share of net profits, (3) any items in the nature of income or gain that are specially allocated to each Member, and (4) the amount of any LLC liabilities assumed by a Member. The Capital Account shall be decreased by (1) distributions, (2) share of net losses, (3) fair market value of distributed property, (4) specially allocated items of loss, and (5) Member distributions assumed by the LLC..

1.7 **"Capital Contribution"** means any contribution of value, including but not limited to cash, property, assets, etc., by a Member to the capital of the LLC.

1.8 **"Cash Flow"** means all cash generated from the sale of the Project minus (i) all payments then due and payable on account of any loans made to the LLC by the Construction Lender or any other creditor other than the Members, (ii) the expenses incurred by the LLC in owning, holding, operating, maintaining and selling the Project and (iii) a reasonable reserve for working capital and other future obligations of the LLC. The cash flow of the LLC shall be determined by the Members separately for each fiscal year and not cumulatively.

1.9 **"Construction Lender"** means the bank providing acquisition, development and construction financing for the Project.

1.10 **"Improvements"** means the site development and infrastructure on the Property, and the construction of residential townhouse units on the Property, together with any recreational or other facilities incidental thereto, if any.

1.11 **"Financial Interest"** means a member's right to share in the profits, losses, incomes, expenses, or other monetary items and to receive distributions and allocations from the LLC.

1.12 **"LLC"** means San Remo Homes at Florida City, LLC., a limited liability company organized under the laws of the State of Florida.

1.13 **"LLC Interest"** or **"Interest"** means an ownership interest in the LLC, which includes the Financial Interest, the right to vote, the right to participate in management, and the right to obtain information concerning the LLC and any other rights granted to a Member under the Articles of Organization or this Agreement.

1.14 **"Majority in Interest"** shall have the same meaning as is provided for in the Statute.

1.15 **"Member"** means any person or entity who owns any interest in this LLC.

1.16 **"Property"** means the Property described in the recitals hereto and any and all assets, in whole or in part, of the LLC, both tangible and intangible.

1.17 **"Project"** means the residential homes to be constructed on the Property described in the recitals hereto.

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 2 of 22*

1.18 **"Regulations"** means current binding regulations issued pursuant to the Code.

1.19 **"Statute"** means the Florida Limited Liability Company Act, as amended, set forth as Chapter 608 of the Florida Statutes.

## SECTION 2

### FORMATION

2.1 **Formation of the LLC.** The Members have formed the LLC pursuant to the laws of the State of Florida by filing the Articles of Organization with the Secretary of State.

2.2 **Name.** The name of the LLC is **"San Remo Homes at Florida City, LLC."** The Members shall operate the business of the LLC under such name or use such other names as the Members deem necessary provided that such names do not violate the Statute.

2.3 **Principal Office.** The LLC's principal place of business will be located at 782 N.W. LeJeune Road, Suite 635, Miami, Florida 33126 or any other location mutually agreed upon by the Members.

2.4 **Term.** The LLC will continue to exist until terminated or dissolved in accordance with its Articles of Organization or this Agreement.

2.5 **Business Purpose.** The purpose of the LLC is to engage in any lawful activities for which a LLC may be organized under the Statute.

2.6 **Registered Agent.** The LLC's registered agent will be Esquire Corporate Services, Inc., a Florida Corporation or any other person or entity with an office in the state of organization as determined by the Members.

2.7 **Registered Office.** The LLC's registered office will be ESQUIRE CORPORATE SERVICES, INC., 780 NW Le Jeune Road, Suite 324, Miami, Florida 33126 or any other location within the State of organization as determined by the Members.

## SECTION 3

### MEMBERSHIP

3.1 **Initial Members.** The initial Members of the LLC are those persons set forth at the outset of this Agreement.

3.2 **Additional Members.** Additional persons or entities may be admitted to the LLC as Members, and LLC Interests may be issued to those additional Members, upon the unanimous consent of the current Members and on such terms and conditions as determined by the Members and in accordance with the Articles of Organization and this Agreement. All new Members must sign a copy of this Agreement and agree to be bound by the terms of this Agreement.

3.3 **Liability to Third Parties.** No Member shall be liable for the debts, obligations or liabilities of the LLC to a third party unless the Member agrees in writing to be liable.

3.4 **Authority.** Each Member has the authority or power to act for or on behalf of, to bind, or to incur any liability on behalf of the LLC except as otherwise provided in this Agreement.

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 3 of 22*

3.5 **Withdrawal.** No Member has the right to withdraw from the LLC as a Member except as provided in this Agreement. However, a Member has the power to withdraw but such withdrawal shall be deemed a breach of this Agreement. If a Member does exercise such power of withdrawal in breach of this Agreement, the Member shall be liable to the LLC and the other Members for all monetary damages as a result of the breach, including but not limited to direct, indirect, incidental, and consequential damages. The LLC and the other Members shall not have the right to prevent the withdrawing Member from withdrawing through the use of an injunction or otherwise.

3.6 **Compensation.** No Member shall receive compensation for services rendered to the LLC except as expressly permitted by this Agreement or any other written agreement. However, the LLC shall reimburse Members for any expense paid by them that is properly an expense of the LLC.

## SECTION 4

### CAPITAL ACCOUNTS

4.1 **Capital Contributions.** The initial Members shall contribute to the LLC the following Capital Contributions and shall receive the following LLC Interest:

| Name: | Capital Contribution: | LLC Interest: |
|---|---|---|
| Dinuro | $1,497,271.96 | 50 Shares |
| Starmac | $1,497,271.96 | 50 Shares |
| Merici | $1,497,271.96 | 50 Shares |

4.2 **Additional Contributions.** Except as specifically set forth in this Agreement, no Member shall be required to make any additional Capital Contributions.

4.3 **Failure to Contribute.** If a Member fails to timely provide a required Capital Contribution, the LLC may take such action as it deems necessary and appropriate including but not limited to instituting a court proceeding to obtain payment, canceling the Member's LLC Interest, or exercising any other right or remedy available at law or equity.

4.4 **Capital Accounts.** A Capital Account (hereinafter referred to as "Capital Account") shall be established and maintained for each Member. Each Member's Capital Account will be accounted for separately and will be maintained in accordance with generally accepted accounting principles. If a Member validly transfers an LLC interest, the Capital Account of the transferring Member shall carry over to the transferee Member in accordance with the Code and Regulations.

4.5 **Advances by Members.** The Members anticipate that additional funds and working capital may be required for the working capital needs of the LLC and the Project. The Members agree that one or more Members may, from time to time, advance such additional funds and working capital as may be required for such purposes in the form of loan advances and such advances shall be repaid to such Member(s) as the Member's cash flow shall permit. All loans made by the Members shall bear interest at a rate of not less than the prime rate published in the Wall Street Journal at the time the loan is made to the LLC plus two percent (2%), as shall be agreed to between

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 4 of 22*

the lending Member(s) and the LLC, shall be evidenced by a promissory note or shown on the books and records of the LLC and shall be due and payable in full principal and interest, at such time as shall be mutually agreed to by such Member(s) and the LLC.

4.6 **Preemptive Rights.** Each Member of the LLC shall be entitled to full preemptive or preferential rights, as such rights are defined by law, to subscribe for or purchase his or her proportional part of any additional or future LLC Interests which may be issued by the LLC.

4.7 **Return of Capital.** No Member shall have the right to withdraw or obtain a return of his or her capital contribution except as provided in this Agreement. The return of a Member's capital contribution may not be withdrawn in the form of property other than cash except as provided in this Agreement.

## SECTION 5

### ALLOCATION OF PROFITS AND LOSSES AND DISTRIBUTIONS

5.1 **Determination of Profits and Losses.** Profits and losses shall mean net income and net loss as determined by the books and records of the LLC which shall be kept in accordance with generally accepted accounting principals and the Code.

5.2 **Allocations.** For each Accounting Period, all items of income, gain, revenue, credit, expenses, deductions, losses, and costs (including all income items separately stated on the LLC's informational tax return filed for federal tax purposes) shall be allocated as follows:

5.2.1 Losses shall be allocated to Members in accordance with each Member's Capital Contributions.

5.2.2 Until the Members have been allocated profits equal to the aggregate losses allocated to them, if any, profits shall be allocated to Members in the same manner as losses were allocated to them.

5.2.3 Thereafter, Members shall be allocated profit to the extent of distributions received pursuant to Section 5.6.

5.3 **Qualified Income Offset.** Notwithstanding the above, if a Member unexpectedly receives any adjustments, allocations, or distributions described in Treasury Regulations Section 1.704-1(b)(2)(ii)(d)(4) and (5) or (6) or any amendment thereto, or receives an allocation of loss which produces a negative capital account for any Member while any other Member has a positive capital account, then items of LLC income shall be specially allocated to such Member such that the deficit Capital Account is eliminated. This paragraph is intended to constitute a "qualified income offset" within the meaning of Treasury Regulation Section 1.704-1(b)(2)(ii)(d).

5.4 **Minimum Gain Chargeback.** Notwithstanding the above, if there is a net decrease in LLC "minimum gain" during a taxable year, each Member shall be specially allocated, before any other allocation, items of income and gain for such taxable year (and, if necessary, subsequent years) in proportion to each Member's share of the net decrease in LLC "minimum gain" as determined in accordance with Treasury Regulation Section 1.704-2(g)(2). This paragraph is intended to comply with the "minimum gain chargeback" provisions of Treasury Regulation Section 1704.-2(f).

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 5 of 22*

5.5 **Section 704(c) Allocation.** Notwithstanding the above, to the extent that Code Section 704(c)) is applicable to any item of income, gain, loss, and deduction with respect to any property (other than cash) that has been contributed by a Member and which is required to be allocated to such Member for income tax purposes, the item shall be allocated to such Member in accordance with Code Section 704(c).

5.6 **Distributions.** The Members understand and agree that all distributions shall be made at such times and in such amounts as shall be determined by the unanimous consent of the Members from available Cash Flow. If the Members, unanimously, determine to make a distribution of Cash Flow, then the Managing Member shall distribute the Cash Flow in the following order of priority (provided that no distribution shall be made if any default exists under the loan from the Construction Lender):

5.6.1 To pay any debt, service, including accrued interest or principal, on any outstanding obligation of the LLC, including without limitation, the LLC's loan from the Construction Lender, made by the Members, and to provide a reasonable reserve for such payment in the future.

5.6.2 To the extent that there is Cash Flow thereafter available, said Cash Flow shall be distributed to the Members to the extent of their positive Capital Account balance on a pro-rata basis in accordance with each Member's Interest.

5.6.3 To the extent that there is Cash Flow thereafter available, said Cash Flow shall be distributed among the Members on a pro-rata basis.

5.7 **Distribution of Assets in Kind.** Except as otherwise provided in this Section, if any assets of the Members shall be distributed in kind, such assets shall be distributed to the Members entitled thereto as tenants in common, in the same proportions in which such Members would have been entitled to cash distributions if there had been a sale of said assets.

5.8 **Demand for Distribution.** No Member shall be entitled to demand or receive a distribution of LLC property in return for his Capital Contribution to the LLC.

## SECTION 6

### MEETINGS

6.1 **Place of Meeting.** Meetings of Members shall be held at any place within or outside the United States designated by the Members and stated in the notice of the meeting. If no place is so specified, Members' meetings shall be held at the LLC's principal office.

6.2 **Annual Meeting.** An annual meeting of Members shall be held on the last week of February of each year at the corporate offices of the LLC. At the annual meeting, any proper business may be transacted.

6.3 **Special Meetings.** A special meeting of the Members may be called at any time by one or more Members holding Interests which, in the aggregate, constitute not less than ten percent (10%) of the LLC Interests. A request for a special meeting of the Members shall be in writing, specifying the time and place of the meeting and the general nature of the business proposed to be transacted. The notice shall be delivered in accordance with this Agreement.

6.4 **Notice of Members' Meetings.** All notices of meetings of Members shall be sent not less than ten (10) nor more than sixty (60) days before the date of the meeting being noticed. The notice shall specify the place, date, and hour of the meeting and (i) in the case of a special meeting, the general nature of the business to be transacted, or (ii) in the case of the annual meeting, those matters which are intended to be presented for action by the Members. If a proposal contains (i) a contract or transaction in which a Member has a direct or indirect Financial Interest, (ii) an amendment of the Articles of Organization, (iii) a reorganization of the LLC, or (iv) a voluntary dissolution of the LLC, the notice shall state the general nature of such proposal.

6.5 **Conduct of Meetings.** All meetings of the Members shall be presided over by the chairman of the meeting who shall be designated by a majority of the Members at the meeting. The chairman of the meeting shall determine the order of business and the procedures to be followed at the meeting.

6.6 **Quorum.** The presence, in person or by proxy, of the holder(s) of an aggregate of fifty one percent (51%) or more of the LLC Interests shall constitute a quorum at all meetings of the Members for the transaction of business.

6.7 **Voting.** Each Member shall have a number of votes equal to the percentage LLC Interest held by such Member. An aggregate of fifty one percent (51%) or more of the votes shall be required to approve any action, unless a greater or lesser vote is required pursuant to this Agreement or by Statute. Any Member entitled to vote on any matter may vote part of the votes in favor of the proposal and refrain from voting the remaining votes or vote them against the proposal, but if the member fails to specify the number of votes such Member is voting affirmatively, it will be conclusively presumed that the Member's approving vote is with respect to all votes the Member is entitled to vote.

6.8 **Adjourned Meeting and Notice Thereof.** Any Members' meeting, annual or special, whether or not a quorum is present, may be adjourned from time to time by the vote of a majority of the LLC Interests represented at such meeting, either in person or by proxy, but in the absence of a quorum, no other business may be transacted at such meeting. When any meeting of Members, either annual or special, is adjourned to another time and place, notice need not be given of the adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken, unless a new record date for the adjourned meeting is fixed, or unless the adjournment is for more than five (5) days from the date set for the original meeting, in which case the Members shall set a new record date. Notice of any such adjourned meeting, if required, shall be given to each Member entitled to vote at the adjourned meeting in accordance with this Agreement. At any adjourned meeting the LLC may transact any business which might have been transacted at the original meeting.

6.9 **Waiver of Notice or Consent by Absent Members.** The transactions of any meeting of Members, either annual or special, however called and noticed, and whenever held, shall be as valid as if it had occurred at a meeting duly held after regular call and notice, if a quorum be present either in person or by proxy and if, either before or after the meeting, each person entitled to vote but not present in person or by proxy, signs a written waiver of notice, a consent to the holding of the meeting or any approval of the minutes thereof. The waiver of notice or consent shall state either the business to be transacted or the purpose of any annual or special meeting of Members. All such

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 7 of 22*

waivers, consents and approvals shall be filed with the LLC's books and records. Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, unless such person objects at the beginning of the meeting.

6.10 **Member Action by Written Consent without a Meeting.** Any action which may be taken at any annual or special meeting of Members may be taken without a meeting and without prior notice, if consent in writing, setting forth the action so taken, are signed by Members holding LLC interests representing the aggregate number of votes equal to or greater than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all LLC Interests entitled to vote thereon were present and voted. All such consents shall be filed with the LLC's books and records.

6.11 **Arbitration.** In the event of a deadlock between the Members as to decisions or matters which require the unanimous vote of all of Members or inability to reach a fifty one percent (51%) Membership Interest consensus, the dispute or matter shall be settled through binding arbitration in accordance with the procedures, rules and regulations of the American Arbitration Association. The Managers shall each select one (1) impartial and independent arbitrator with at least 5 years experience in the mediation and arbitration of real estate development and construction disputes. A third arbitrator shall be chosen by the American Arbitration Association. The decision rendered by the arbitration panel shall be binding upon the Members. Arbitration shall be held in Miami Dade County, Florida. The non prevailing party shall pay for any costs, fees and expenses regarding the arbitration and said costs, fees and expenses shall not be reimbursed or paid by the LLC.

## SECTION 7

### MANAGEMENT

7.1 **Managers.** Each of the Members shall be a Manager, until changed by an amendment to this Agreement. The Managers shall be responsible for the management of the LLC's business and affairs.

7.2 **Vacancies.** A Manager vacancy shall be deemed to exist if (i) a Manager dies, or is removed by the Members; or (ii) a Manager resigns. Vacancies are to be filled solely by vote of the Members, but the Members shall not be obligated to fill a vacancy.

7.3 **Resignation.** Any Manager may resign effective upon the delivery of written notice to any other Member, unless the notice specifies a later effective date.

7.4 **Powers.** Any two (2) Manager(s) have, subject to the control of the Members, general supervision, direction, and control of the business of the LLC, and the authority to bind the LLC. In addition, subject to the provisions of the Statute, Florida law, any limitations in the Articles of Organization and this Agreement relating to actions requiring approval by the Members, any two (2) Managers may make all decisions and take all actions on behalf of the LLC not otherwise provided for in this Agreement including but not limited to the following:

7.4.1 To borrow money, with or without security, in furtherance of any or all of the purposes of the LLC, and to secure the same by mortgage, pledge or other lien on any assets of the LLC, and to execute and deliver in the name of the LLC, notes evidencing same and mortgages, deeds of trust

and any other security instruments securing same and to modify, alter or otherwise restructure indebtedness of the LLC, provided, however, that one of the Managers acting on behalf of the LLC pursuant to this Section 7.4.1 shall be Starmac or Merici;

7.4.2  To procure and maintain with responsible companies such insurance as may be advisable in such amounts and covering such risks as are deemed appropriate by the Members;

7.4.3  To execute and deliver on behalf of and in the name of the LLC, or in the name of a nominee of the LLC, deeds, mortgages, deeds of trust, notes, leases, subleases, licenses, rental or occupancy agreements, or use agreements of or with respect to all or any assets of the LLC, management agreements, sales agreements, bills of sale, and any and all other instruments necessary or incidental to the conduct of the LLC 's business, provided, however, that one of the Managers acting on behalf of the LLC pursuant to this Section 7.4.3 shall be Starmac or Merici;

7.4.4  To protect and preserve the assets of the LLC and incur any other indebtedness in the LLC 's ordinary course of business, provided, however, that one of the Managers acting on behalf of the LLC pursuant to this Section 7.4.4 shall be Starmac or Merici;

7.4.5  To delegate all or any of its duties hereunder and in furtherance of any such delegation, to appoint, employ or contract on behalf of the LLC with any person (including entities owned or controlled, by, or affiliated with a Member provided that the other Members consent in advance thereto), as the Managers may in their sole discretion deem necessary or desirable; which persons may, under the supervision of the Managers, perform any of the following or other acts or services for the LLC as the Managers may approve, except that the Managers shall continue to be primarily responsible for the performance of all such obligations: serve as the LLC 's advisor and consultant in connection with policy decisions made by the Members or the Managers; act as or engage the services of consultants, accountants, correspondents, attorneys, brokers, escrow agents, or in any other capacity deemed by the Managers necessary or desirable; investigate, select and, on behalf of the LLC, conduct relations with persons acting in such capacities and pay appropriate fees to, and enter into appropriate contracts with, or employ or retain any of them to render services for the LLC; and perform or assist in the performance of administrative or managerial functions necessary in the management of the LLC;

7.4.6  To open LLC bank accounts to deposit LLC funds and to pay LLC expenses and obligations, provided, however, that any payment of an LLC expense or obligation in excess of Ten Thousand and 00/100 Dollars ($10,000.00) shall require the act of either Starmac or Merici or Jose Coto, acting as agent for Starmac or Merici, but only for the matters specifically set forth in this Section 7.4.6.;

7.4.7  To acquire, develop, improve, operate, finance, refinance, sell or dispose of the Project, provided, however, that one of the Managers acting on behalf of the LLC pursuant to this Section 7.4.7 shall be Starmac or Merici or Jose Coto, upon specific written authority of Starmac or Merici;

7.4.8  To engage in any kind of activity and to perform and carry out contracts of any kind necessary to, or in connection with, or incidental to the accomplishment of the purposes of the LLC, provided said activities and contracts may be lawfully carried on or performed by a LLC under the laws of the State of Florida, and further provided that any contract obligating the LLC to payment of funds in excess of Fifty Thousand and 00/100 Dollars ($50,000.00) shall require the act of either

Starmac or Merici or Jose Coto, acting as agent for Starmac or Merici, but only for the matters specifically set forth in this Section 7.4.8;

7.4.9 To make all decisions concerning the operational aspects of the LLC, and the execution and delivery of all contracts, deeds and other instruments for the sales of residential units within the Project, in connection therewith provided, however; that one of the Managers acting on behalf of the LLC pursuant to this Section 7.4.9 shall be Starmac or Merici or Jose Coto, upon specific written authority of Starmac or Merici;

7.4.10 To ask for, collect, and receive any rents, issues, and profits or income from any property of the LLC, or any part or parts thereof, and to disburse LLC funds for LLC purposes to those persons entitled to receive same, subject to the limits on disbursements established in Section 7.4.6 above;

7.4.11 Subject to Section 7.4.6 above, to pay from LLC assets, all expenses of organizing and conducting the business of the LLC, including without limitation, engineering, architectural, construction, professional, consulting, marketing, brokerage, legal, accounting fees and other;

7.4.12 To institute, prosecute, defend, mediate, arbitrate, settle, compromise, and dismiss lawsuits or other judicial or administrative proceedings brought on or in behalf of, or against, the LLC or the Members in connection with activities arising out of, connected with, or incidental to this Agreement, and to engage counsel or others in connection therewith provided, however; that one of the Managers acting on behalf of the LLC pursuant to this Section 7.4.12 shall be Starmac or Merici or Jose Coto, upon specific written authority of Starmac or Merici;

7.4.13 To execute any and all other instruments and take any and all other actions necessary or desirable to carry out the purposes and business of the LLC;

7.4.14 To execute and approve homeowners' association documents, or to sell, transfer, convey, exchange, lease, ground lease, or grant an easement to any of the property of the LLC or any portion of the LLC property, including closing statements provided, however; that one of the Managers acting on behalf of the LLC pursuant to this Section 7.4.14 shall be Starmac or Merici or Jose Coto, upon specific written authority of Starmac or Merici;

7.4.15 To assume the overall duties, general management, and final determination of all questions relating to the usual daily business affairs and ministerial acts of the LLC;

7.4.16 To sell all or substantially all of the assets of the LLC, whether or not in the ordinary course of business, to pay, settle and compromise LLC liabilities, obligations and expenses, and to wind up the affairs of and liquidate the LLC, provided, however, that one of the Managers acting on behalf of the LLC pursuant to this Section 7.4.16 shall be either Starmac and Merici; and

7.4.17 To do any and all acts necessary, useful or convenient, in the judgment of the Managers to carry on the business and affairs of the LLC and the purposes thereof.

Notwithstanding anything herein to the contrary, any act of a Manager which may materially affect the LLC or its property shall require the prior consent of the Members. Additionally, the Members understand and agree that no Manager shall be compensated for the services it renders to and capital it contributes to, for, or on behalf of the LLC, except as provided for in the Budget.

7.5 **Restrictions on Authority of the Managers.** Except with the written consent or ratification of all of the Members, no Manager shall have the authority to:

7.5.1 Do any act in contravention of the certificate of the LLC or this Agreement;

7.5.2 Do any act that would make it impossible or unreasonably burdensome to carry on the ordinary business and purpose of the LLC;

7.5.3 Confess a judgment against the LLC;

7.5.4 Make, execute or deliver any general assignment for the benefit of the creditors of the LLC;

7.5.5 Possess LLC property or assign the LLC 's rights in specific LLC property for other than an LLC purpose;

7.5.6 Knowingly or willingly do any act (except an act expressly required by this Agreement) which would cause the LLC to become an association taxable as a corporation;

7.5.7 Change or reorganize the LLC into any other legal form;

7.5.8 Incur any obligation in the name or on the credit of the LLC, except in the ordinary course of the LLC 's business; or

7.5.9 Amend or otherwise change this Agreement so as to modify the rights of a Member to profits, losses, allocations, or distribution, or obligations of the Member as set forth herein.

7.6 **Place of Meeting.** Regular meetings of the Managers may be held without notice, at any time and at any place within the United States that is designated by the Managers. In the absence of the designation of a place, regular meetings shall be held at the principal office of the LLC. Special meetings of the Managers shall be held at any place that has been designated in the notice of the meeting or, if not stated in the notice, at the principal office of the LLC. Any meeting, regular or special, may be held by conference telephone or similar communications equipment, so long as all Managers participating in such meeting can hear one another, and all such Managers shall be deemed to be present in person at such meeting.

7.7 **Liability to Third Parties.** No Manager shall be liable for the debts, obligations, or liabilities of the LLC to a third party unless the Manager agrees in writing to be liable.

7.8 **Standard of Care; Liability.** Each Manager shall exercise such powers and otherwise perform such duties in good faith, in the matters such Manager believes to be in the best interests of the LLC, and with such care including reasonable inquiry, using ordinary prudence, as a person in a like position would use under similar circumstances. In performing the duties of a Manager, a Manager shall be entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, in which case prepared or presented by:

7.8.1 one or more Officers or employees of the LLC who the Manager believes to be reliable and competent in the matters presented;

7.8.2 counsel, independent accountants, or other persons as to matters which the Manager believes to be within such person's professional or expert competence; or

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 11 of 22*

7.8.3  a Committee upon which the Manager does not serve, as to matters within the Committee's designated authority, which Committee the Manager believes to merit confidence, so long as in any such case, the Manager acts in good faith, after reasonable inquiry when the need therefor is indicated by the circumstances, and without knowledge that would cause such reliance to be unwarranted.

## SECTION 8:

### TRANSFER AND ASSIGNMENT OF LLC INTERESTS

8.1  **Transfer or Assignment of Member's Interest.** Except as otherwise provided in this Agreement, no Member may transfer and/or assign, in whole or in part, his or her LLC Interest at any time without the consent of the other member.  For purposes of this Agreement transfer shall mean sale, exchange, assignment, alienation, sale of underlying company interest, disposition, gift, pledge, hypothecation, encumbrance, or grant of security interest in the LLC Interest.

8.2  **Consent to Transfer.** No transfer or assignment of a LLC Interest, or any part thereof, will be valid without the express written consent of all of the Members.  If a LLC Interest is transferred or assigned without the consent of all of the other Members, the transferee shall have no rights in, nor may participate in the management or operation of the business and affairs of the LLC, nor have the right to become a Member of the LLC.  Any transfer or assignment of a LLC Interest without the proper consent shall only effect a transfer or assignment of the Member's Financial Interest, and the transferring Member shall still be bound to the terms of this Agreement.  If a transfer or assignment does obtain the required consent, then the transferee shall be admitted as an additional Member pursuant to this Agreement.

8.3  **Right of First Refusal.** If any Member shall receive an offer from a third party to sell its interest and that Member desires to sell his or her Interests, that Member must cause the purchaser to make the same offer to purchase all the Interests of the Members on the same terms and conditions as made to the selling Member.  The other Members shall have thirty (30) days to accept or reject the offer.  If the other Members reject the offer, whoever shall desire to sell his or her Interests shall first offer the offer thereof to the LLC and the other Members on a pro-rata basis upon the same terms and conditions as made to the selling Member.  Such offer shall be communicated by the one offering to sell his or her Interest to all other parties and the LLC by written notice.  If either the LLC or the other Members do not wish to purchase the pro-rata share, the LLC or other Members may purchase all or any part of the Interests being sold.  In the event that such offer shall not be accepted by written notice no later than thirty (30) days after the date of the mailing of the offer by either the LLC or the other Members, whoever shall have offered the Interests shall be free to sell his or her Interests to any other person, firm, or entity, subject to any restrictions in the articles of organization, this Agreement, or other governing documents, except that the subsequent transfer of such Interests shall not be on different or terms more favorable to the transferee than the terms upon which the transfer was initially offered to the LLC or other Members.  If, within thirty (30) days after the expiration of the thirty (30) day period referred to in the preceding paragraph, the Member offering to sell his or her Interests shall fail to consummate a sale thereof to any other purchaser, then no sale of such shares may be made thereafter by the offeror without again reoffering the same to the LLC or the other Members in accordance with the provisions of this paragraph. Each Interest Certificate

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 12 of 22*

issued by the LLC to the Members, if any, shall bear an appropriate legend that the transfer of such Interests is restricted by the provisions of this Agreement.

8.4 **Permitted Transfers, Determination of Purchase Price and Payment.** If a Member desires to withdraw from the LLC or desires to sell its LLC Interest, the other Members shall have the right but not the obligation purchase all or any part of the withdrawing Member's LLC Interest. The price for Interests purchased pursuant to this Agreement shall be the Interest's net worth in the LLC, adjusted to reflect the fair market value of the LLC's contracts and potential contracts, of the LLC at the close of the fiscal quarter immediately preceding the occurrence of the event giving rise to the purchase. The Interest's net worth shall be determined, within thirty (30) days of acceptance by the remaining Members of the withdrawing Member's offer to sell, by a certified public accountant, selected by the LLC, in accordance with the accounting principles generally applied by the LLC. If the selling Member does not agree with the purchase price determined by the accountant selected by the LLC, the selling Member shall select an independent certified public accountant who shall, jointly with the accountant selected by the LLC, determine the purchase price of the Interest according to the terms of the preceding sentence. In the event such accountants cannot agree on the purchase price, they shall select a third independent certified public accountant. The purchase price determined by a majority of the three accountants shall be final and binding. Unless otherwise agreed, the purchase price shall be paid with an initial deposit of at least twenty percent (20%) of the total purchase price of the Interest not later than the thirtieth (30th) day following the date upon which the accountants determine the purchase price of the Interest. The LLC shall pay to the selling party the balance of the purchase price (hereinafter referred to as the "Balance") represented by the amount by which the aggregate purchase price of the Interest exceeds the amount of the initial payment, in twenty four (24) consecutive equal monthly payments commencing one month after the initial payment. The Balance outstanding shall bear interest from the date of sale, payable monthly together with the principal, at a rate equal to the yield to maturity of one hundred eighty (180) day United States Treasury Bills (at their date of issue) issued most recently prior to the date on which the interest rate is being determined. The obligation to pay the Balance and interest thereon shall be evidenced by a duly executed promissory note, payable to the order of the selling party, secured by the Interest being sold which shall be held in escrow until the final payment, and containing the aforesaid terms and such other terms as are customary for such instruments, including acceleration in the event of default, the right of prepayment in whole or part without penalty. Notwithstanding the foregoing, no Member shall be obligated, under any circumstances, to purchase the Membership Interests of a selling Member pursuant to this Section.

8.5 **Interests.** This Agreement shall control the disposition of any Interest of the LLC now owned or hereafter acquired by the Members.

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 13 of 22*

## SECTION 9

### BOOKS AND RECORDS

9.1 **Maintenance of Books and Records.** The LLC shall establish and maintain appropriate books and records of the LLC in accordance with generally accepted accounting principles. There shall be kept at the principal office of the LLC, the following LLC documents: (a) A current list of the name and business or residence address of each Member and his or her Capital Contribution and LLC Interest; (b) A current list of the name and business or residence address of each Manager, if any; (c) A copy of the Articles of Organization and this Agreement and any amendments thereto; (d) Copies of the LLC's federal, state, and local income tax or information returns, if any, for the past six fiscal years; (e) Copies of the financial statements of the LLC, if any, for the past six fiscal years; (f) Originals or copies of all minutes, actions by written consent, consents to action, and waivers of notice to Members, Member votes, actions and consents; and (f) Any other information required to be maintained by the LLC pursuant to the Statute.

9.2 **Annual Accounting.** Within ninety (90) days after the close of each fiscal year of the LLC, the LLC shall cause to be prepared and submitted to each Member a balance sheet and income statement for the preceding fiscal year of the LLC (or portion thereof in conformity with generally accepted accounting principles and provide to the Members all information necessary for them to complete federal and state tax returns.

9.3 **Inspection and Audit Rights.** Each Member has the right, upon reasonable request, for purposes reasonably related to the interest of that Member, to inspect and copy during normal business hours any of the LLC books and records. Such right may be exercised by the Member or his or her agent or attorney. Any Member may require a review and/or audit of the books, records, and reports of the LLC.

9.4 **Bank Accounts.** All funds of the LLC shall be deposited in the LLC's name in such banks as determined by the Members. All checks, drafts, or other orders for payment of money, notes or other evidences of indebtedness, issued in the name of or payable to the LLC, shall be signed or endorsed by such person or persons and in such manner as, from time to time, shall be determined by the Members.

9.5 **Fiscal Year.** The LLC's fiscal year shall end on December 31st.

9.6 **Accounting Method.** For financial reporting purposes, the books and records of the LLC shall be kept on the cash (or accrual) method of accounting applied in a consistent manner and shall reflect all transactions of the LLC and be appropriate and adequate for the purposes of the LLC.

## SECTION 10:

### TAXATION

10.1 **Tax Year.** The LLC's taxable year shall end on December 31st.

10.2 **Tax Matters Member.** The Code requires the Internal Revenue Service (the "Service") to promulgate regulations describing procedures for designating a Tax Matters Member (the "TMM"). Unless prohibited by such regulations, the LLC intends to designate Starmac to serve as TMM for the LLC. Until a different person is designated the TMM, Starmac will act as liaison

between the LLC and the Service in connection with all administrative and judicial proceedings involving tax controversies of the LLC, and agrees to assume all the rights and duties of a TMM as set forth in the Code. These rights and duties include, but are not limited to:

10.2.1  The duty to notify and keep all other Members informed of any audit of the LLC;

10.2.2  The obligation to furnish the Service with the name, address, and taxpayer identification number of each Member;

10.2.3  The right to settle, any claims by the Service against the LLC;

10.2.4  The right to initiate judicial proceedings contesting adverse determinations by the Service against the LLC;

10.2.5  The right to extend the statute of limitations; and

10.2.6  The right to take any other action on behalf of the Members or the LLC in connection with any administrative or judicial tax proceeding to the extent permitted by applicable laws or regulations.

Notwithstanding the fact that Starmac will act as TMM, as to tax related matters or controversies which affect the other Members, Starmac shall seek the advice and consent of Dinuro and Merici in acting as TMM and shall take no action which would adversely affect the other Members without each other Member's prior consent.

## SECTION 11:

### INDEMNIFICATION

11.1  **Definitions: Agents, Proceedings, and Expenses.**  For the purposes of this Agreement, "Agent" means any person who is or was a Member, Manager, Officer, employee, or other agent of this LLC; "Proceeding" means any threatened, pending or completed action or proceeding, whether civil, criminal, administrative, or investigative; and "Expenses" means any and all costs, fees, and expenses including but not limited to court costs and attorneys' fees.

11.2  **Actions Other Than by the LLC.**  The LLC shall indemnify and hold harmless any person or Agent who was or is a party, or is threatened to be made a party, to any Proceeding (other than an action by or in the right of this LLC) by reason of the fact that such person is or was an Agent of this LLC, against Expenses, judgments, fines, settlements and other amounts actually and reasonably incurred in connection with such Proceeding, if that person acted in good faith and in a manner that person reasonably believed to be in the best interests of this LLC, and, in the case of a criminal proceeding, had no reasonable cause to believe his or her conduct was unlawful. The termination of any Proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent shall not, of itself, create a presumption that the person did not act in good faith and in a manner which the person reasonable believed to be in the best interests of this LLC or that the person had reasonable cause to believe that his or her conduct was unlawful. Notwithstanding the foregoing , no person or Agent shall be indemnified for their wilful acts or gross negligence.

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 15 of 22*

11.3   **Actions by the LLC.** This LLC shall indemnify any person or Agent who was or is a party, or is threatened to be made a party, to any threatened, pending, or completed action by or in the right of this LLC to procure a judgment in its favor by reason of the fact that the person is or was an Agent of this LLC, against expenses actually and reasonably incurred by that person or Agent in connection with the defense or settlement of that action if that person or Agent acted in good faith, in a manner that person or Agent believed to be in the best interests of this LLC, and with such care, including reasonable inquiry, as an ordinary prudent person in a like position would use under similar circumstances.  No indemnification, however, shall be made under this Section 11.3 with respect to any claim, issue or matter as to which that person or Agent shall have been adjudged to be liable to this LLC in the performance of that person's or Agent's duty to the LLC, unless the court in which that action was brought shall determine upon application that the person or Agent is fairly and reasonably enticed to indemnity for the expenses which the court shall determine; (ii) for amounts paid in settling or otherwise disposing of a threatened or pending action, with or without court approval; or (iii) for Expenses incurred in defending a threatened or pending action which is settled or otherwise disposed of without court approval.  Notwithstanding the foregoing , no person or Agent shall be indemnified for their wilful acts or gross negligence.

11.4   **Successful Defense by Agent.**  To the extent that an Agent of this LLC has been successful on the merits in defense of any Proceeding, the Agent shall be indemnified against Expenses actually and reasonably incurred by the Agent in connection with the Proceeding.

11.5   **Required Approval.**  Any indemnification under this Section shall be made by the LLC only if authorized upon a determination by a majority vote of the LLC Interests of Members who were not parties to the proceeding at a duly held meeting of the Members at which a quorum is present.

11.6   **Advance of Expenses.**  Expenses incurred in defending any Proceeding may be advanced by the LLC before the final disposition of the Proceeding upon receipt of an undertaking by or on behalf of the Agent to repay the amount of the advance unless it shall be determined ultimately that the Agent is entitled to be indemnified.

11.7   **Other Contractual Rights.**  Nothing contained in this Section shall affect any right to indemnification to which Agents of this LLC or any subsidiary may be entitled by contract, by vote of the Members, as a matter of law or equity, or otherwise.

11.8   **Insurance.**  The LLC may, upon a determination by the Members, purchase and maintain insurance on behalf of any Agent of the LLC against any liability which might be asserted against or incurred by the Agent in such capacity, or which might arise out of the Agent's status as such, whether or not the LLC would have the power to indemnify the Agent against that liability.

11.9   **Amendment to Florida Laws.**  In the event that Florida law regarding indemnification of members, managers, directors, officers, employees, and other agents of a LLC, as in effect at the time of adoption of this Agreement, is subsequently amended to in any way that increases the scope of permissible indemnification beyond that set forth herein, the indemnification authorized by this Section shall be deemed to be coextensive with the maximum afforded by Florida law as so amended.

## SECTION 12

### LLC CERTIFICATES

12.1  **Issuance of LLC Certificates.** Each Member's LLC Interest shall be represented by a LLC Certificate.  Upon the execution of this Agreement and the payment of the Capital Contributions by the Member, the Members shall have the LLC issue one or more LLC Certificates in the name of each Member certifying that the named Member is the record holder of the LLC Interests.

12.2  **Transfer of LLC Certificates.** An LLC Interest which is transferred in accordance with the terms of this Agreement shall be transferable on the books of the LLC. However, the transfer of an LLC Interest shall not be entered until the previously issued LLC Certificate representing such LLC Interest is surrendered to the LLC and canceled and a replacement LLC Certificates issued to the assignee of such LLC Interest.

12.3  **Lost, Stolen, or Destroyed Certificates.** The LLC shall issue a new LLC Certificate in place of any LLC Certificate previously issued if the holder of the LLC Certificate satisfactorily proves that a previously issued LLC Certificate has been lost, destroyed, or stolen. If a Member fails to notify the LLC within a reasonable time after it has notice of the loss, destruction, or theft of a LLC Certificate, and a transfer of the LLC Interest represented by the LLC Certificate is registered before receiving such notification, the LLC shall have no liability with respect to any claim against the LLC for such transfer or for a new LLC Certificate.

## SECTION 13

### DEFAULT BY A MEMBER

13.1  **Event of Default**. The following events shall constitute a default by a Member:

13.1.1  Violation of the provisions of this Agreement and failure to remedy the violation within sixty (60) days after written notice of the violation to the alleged defaulting Member from a non-defaulting Member and a reasonable opportunity to cure.

13.1.2  A fraudulent act by a Member in connection with the affairs of the LLC that materially adversely affects the LLC.

13.1.3  The assignment of a Member Interest by a Member for the benefit of creditors, or the voluntary or involuntary filing of a petition under any section or chapter of the Federal Bankruptcy Code or under any similar law of the United States or any state thereof.

13.1.4  Adjudication of a Member as bankrupt or insolvent under any section or chapter of the Federal Bankruptcy Code or under any similar law of the United States or any state thereof.

13.1.5  The appointment of a receiver or trustee for all or substantially all of a Member's assets and the failure to have the receiver or trustee discharged within thirty (30) days after appointment.

13.1.6  The commencement of any legal action by a creditor against a Member resulting in litigation that, in the reasonable opinion of the unrelated Member, creates a real and substantial risk of involvement of LLC property that will probably:

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 17 of 22*

13.1.6.1  Have a material adverse effect on the LLC; or

13.1.6.2  Result in the creditor or the creditor's assigns succeeding in or to all or part of the Member's interest in the LLC.

13.2  **Effect of Default by a Member.**  Upon a Member's default, the unrelated Member shall have the right to elect to terminate the defaulting Member's LLC Interest without effecting a termination of the LLC. The unrelated Member may make this election at any time sixty (60) days from the date of knowledge by that Member of the default, upon ten (10) days' written notice of such election to the defaulting Member provided that the default is continuing on the date notice is given and the defaulting Member does undertake reasonable measures to correct the default.

Notwithstanding anything herein to the contrary, upon the expiration of any applicable cure period hereunder, and thereafter during the continuation of a default by a Member, the LLC Interest of such Member and of any Member affiliated with the defaulting Member shall be deemed to be "defaulted interests" and the holders of such defaulted interests shall have no right to vote on or otherwise to direct, manage or control the activities of the LLC. For the purposes of determining the interests required for the Members to take any action, any defaulted interest shall not be considered, and only the unanimous or majority vote, as the case may be, of the Members holding LLC Interests not in default shall be required to approve actions or make decisions for the LLC; provided, however, that in no event shall such non-defaulting Member(s) take any action or make any decision (i) to amend or modify the Agreement, (ii) which may adversely affect the interests of the Members in default, or (iii) which is not in the best interests of the LLC.

13.3  **Election to Purchase.**  The Members understand and agree that a breach or violation of this Agreement may cause the LLC to suffer substantial damages which are not susceptible of accurate determination at this time. Accordingly, the Members understand and agree that such default by a Member may, in the reasonable discretion of the non defaulting Member, trigger an offer to sell such defaulting Member's LLC Interest to the other Members in accordance with the procedure set forth in Section 8.4. Provided, however, that the purchase price of the defaulting Member's LLC Interest shall be reduced by the aggregate amount of any outstanding debts of the defaulting Member to the LLC and by any damages caused by the defaulting Member's default, as determined by the Manager(s) in their reasonable discretion. The Members have agreed that this provision for liquidated damages is a fair and reasonable estimate and liquidation of the LLC's damages in the event of such Member's default.

Upon receipt of the purchase price, the defaulting Member shall have no further interest in the LLC, its business, or its assets, and shall execute and deliver any assignments and other instruments necessary to evidence and effectively transfer the interest of the defaulting Member to the Purchasing Members. If the necessary assignments and instruments are not delivered after notice by the Manager(s) that the consideration is available to the defaulting Member, the Purchasing Members shall execute such assignments and instruments as the defaulting Member's irrevocable agent. All Members agree that the Member(s) shall not be individually liable for any actions so taken. Each defaulting Member hereunder irrevocably constitutes and appoints the Manager(s) as its attorney and agent for, in the name of and on behalf of the defaulting Member to execute and deliver in the name of the defaulting Member, all such assignments, transfers, powers and instruments as may be necessary to effectively transfer the LLC Interrests being transferred to the

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 18 of 22*

Purchasing Members on the books of the LLC. Such appointment and power of attorney, being coupled with an interest, shall not be revoked by the insolvency, bankruptcy, death or incapacity of the defaulting Member and the defaulting Member hereby ratifies and confirms and agrees to ratify and confirm all that the Manager(s) may lawfully do or cause to be done, by and on behalf of the LLC, by virtue thereof.

13.4  **Additional Effects of Default.**  In the event of a Member's default under this Agreement, the LLC and the Members may, at their election, pursue any and all remedies provided under this Agreement or any other remedies available at law or equity. The LLC and the Members shall not be deemed to waive or forfeit, by pursuit of remedies provided under this Agreement not considered liquidated damages, any amounts due to them as a result of another Member's default under this Agreement. If non-defaulting Members or the LLC waive another Member's specific default, the waiver shall not be deemed to extend to any other default of this Agreement. If the non-defaulting Members or the LLC refrain from enforcing any remedy available under this Agreement against a defaulting Member, they shall not be deemed to have waived the default.

## SECTION 14:

### TERMINATION AND DISSOLUTION

14.1  **Dissolution.**  The LLC shall be dissolved upon the occurrence of any of the following events: (a) The written consent of a majority (or all) of the LLC Interests; or (b) The death, withdrawal, resignation, expulsion, bankruptcy or dissolution of a Member or the occurrence of any other event which terminates the Member's continued membership in the LLC, unless the business of the LLC is continued by the consent of a majority (or all) of the remaining LLC Interests within ninety (90) days of the happening of that event.

14.2  **Conduct of Business.**  Upon the occurrence of any of the events specified above, a majority of the members shall appoint one or more of the Members (or Managers) to act as liquidator and wind up all LLC business and affairs. However, the LLC shall continue to exist until Articles of Dissolution have been filed or until a decree dissolving the LLC has been entered by a court of competent jurisdiction.

14.3  **Distribution of Net Proceeds.**  Upon the occurrence of any of the events specified above and the completion of the winding up of all LLC business and affairs, the assets of the LLC shall be promptly liquidated and distributed in the following order: (a) To the payment of creditors, excluding Members, in the order of priority as provided by law; (b) To the payment of loans or advances made by the Members; (c) To the Members in proportion to their Capital Accounts after adjustments for all allocations of net profits and net loss; and (d) any net profit thereafter remaining shall be distributed to the Members in proportion to their Membership Interest. Where the distribution consists both of cash and noncash assets, the cash shall be distributed first, in descending order, to the above categories. With respect to the noncash assets, which distribution values are to be based on the fair market value of the noncash asset as determined in good faith by the liquidator, the liquidator may sell the noncash assets and distribute the cash proceeds or distribute the assets in kind, in descending order, to the above categories.

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 19 of 22*

14.4  **Termination.** The LLC shall be terminated upon the distribution of all assets. The Members shall cause the LLC to file Articles of Dissolution, if required, or take any other actions necessary to terminate the LLC.

## SECTION 15

### AMENDMENTS

15.1  **Amendments by Members.** This Agreement may be adopted, amended, altered, or repealed by the vote or written consent of all the Members at which a quorum is present.

## SECTION 16

### GENERAL PROVISIONS

16.1  **Entire Agreement/Modification.** This Agreement contains the entire understanding of the parties with respect to the subject matter of the Agreement, and it supersedes all prior understandings and agreements, whether written or oral, and all prior dealings of the parties with respect to the subject matter hereof. This Agreement, in whole or in part, cannot be changed, modified, extended, or discharged orally and no waiver of compliance with any provision or condition hereof and no consent provided for herein shall be effective unless evidenced by an instrument in writing duly executed by the party against whom enforcement of any waiver, change, modification, extension, or discharge is sought. Further, no consent or waiver, express or implied, to or of any breach or default shall constitute a consent or waiver to or of any other breach.

16.2  **Confidentiality.** Each Member agrees that it shall not, and shall cause the LLC not to, at any time or under any circumstances, without the consent of the Majority in Interest, directly or indirectly, communicate or disclose to any person or entity any knowledge or information whatsoever acquired by such Member relating to confidential information of the LLC, or of the other Members, nor shall it utilize or make available any such knowledge or information directly or indirectly in connection with the transfer or proposed transfer of any of its Interest in the LLC.

16.3  **Partition.** Each Member agrees that the Member has no right, and irrevocably waives any and all such rights, to have the assets of the LLC partitioned, or to file a complaint, or institute and maintain any proceeding at law or equity to have the assets of the LLC partitioned.

16.4  **Further Actions.** Each of the Members agrees to execute, acknowledge, and deliver such additional documents, and take such further actions, as may reasonably be required from time to time to carry out each of the provisions and the intent of this Agreement, and every agreement or document relating hereto, or entered into in connection herewith.

16.5  **Severability.** If any provision of this Agreement or the application thereof to any person or circumstance shall be invalid or unenforceable to any extent, the remainder of this Agreement and the application of such provision to other persons or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

16.6  **Successor and Assigns.** This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors, legal representatives, and assigns. This Agreement may not be assigned by any party without the express written consent of the other parties.

*Operating Agreement for San Remo Homes at Florida City, LLC.*
*Page 20 of 22*

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION SECTION

CASE NO. 11-10901 CA 40

DINURO INVESTMENTS, LLC,

      Plaintiff,

v.

FELISBERTO FIGUEIRA CAMACHO, FELMA, LLC, MERICI, LLC, JAVIER MACEDO, ROMAC, LLC, STARMAC, LLC, SR ACQUISITIONS – FLORIDA CITY, LLC, SR ACQUISITIONS, LCC, ROMAC, LLC, FELCA, LLC, and OCEAN BANK,

      Defendants.

_____/

## ORDER GRANTING DEFENDANT OCEAN BANK'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO SUBMIT RESPONSE TO FIRST AMENDED COMPLAINT

      THIS CAUSE having come before me on Defendant Ocean Bank's Unopposed Motion for Extension of Time to Submit Response to First Amended Complaint (the "Motion") and, having reviewed the Motion and being duly advised in the premises, it is hereby

      ORDERED AND ADJUGED as follows:

1.     Defendant Ocean Bank's Motion is GRANTED.

2.     Defendant Ocean Bank shall serve its response to Plaintiff's First Amended Complaint on or before August 19, 2011.

      DONE AND ORDERED in Miami-Dade County, Florida this 5th day of August, 2011.

                  Judge Gill S. Freeman

                  _____
                  GILL S. FREEMAN
                  CIRCUIT COURT JUDGE

Copies furnished to:
Counsel of record

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR
MIAMI DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION
DIVISION

DINURO INVESTMENTS, LLC, a Florida      CASE NO. 11-10901-CA 40
limited liability company,
                             Plaintiff,

v.

FELISBERTO FIGUEIRA CAMACHO;
JAVIER MACEDO; MERICI, LLC, a
Florida limited liability company;
STARMAC, LLC, a Florida limited liability
company, SR ACQUISITIONS –
FLORIDA CITY, LLC, a Florida limited
liability company; OCEAN BANK,

                  Defendants,
_____/

## ORDER ON MOTION FOR EXTENSION OF TIME
## TO EFFECTUATE SERVICE OF PROCESS

       THIS CAUSE having come before the Court upon Plaintiff DINURO INVESTMENTS, LLC's

Motion for Extension of Time to Effectuate Service of Process, and the Court having reviewed the file

and being otherwise duly advised in the premises, it is

       ORDERED and ADJUDGED that the Motion is **GRANTED**.   Plaintiff DINURO

INVESTMENTS, LLC shall have one hundred twenty (120) days from the signing of this order within

which to effectuate service of process on Defendants FELISBERTO FIGUEIRA CAMACHO and

JAVIER MACEDO.

       DONE and ORDERED in Chambers at Miami-Dade County, Florida this

_____ day of _____ 2011.

                          _____
                          HONORABLE GILL S. FREEMAN   Conformed Copy
                          CIRCUIT COURT JUDGE

cc: All counsel of record

                                   AUG 0 5 2011

                                   Gill S. Freeman
                                 Circuit Court Jud

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION DIVISION

CASE NO. 11-10901-CA-40

DINURO INVESTMENTS, LLC, a Florida limited liability company,

      Plaintiff,

vs.

FELISBERTO FIGUEIRA CAMACHO; FELMA, LLC, a Florida limited liability company; MERICI, LLC, a Florida limited liability company; JAVIER MACEDO; ROMAC, LLC, a Florida limited liability company; STARMAC, LLC, a Florida limited liability company; SR ACQUISITIONS – FLORIDA CITY, LLC, a Florida limited liability company; SR ACQUISITIONS, LLC, a Florida limited liability company; ROMAC, LLC, a Delaware limited liability company, FELCA, LLC, a limited liability company; and OCEAN BANK,

      Defendants.

_____/

## AGREED ORDER GRANTING MOTION FOR ENLARGEMENT OF TIME

THIS MATTER is before the Court upon Defendants Romac, LLC, a Delaware limited liability company, Felca, LLC, SR Acquisitions, LLC, Felma, LLC and Javier Macedo's Motion for Enlargement of Time, dated August 12, 2011. The Court having reviewed the Motion and being fully advised in the premises, it is hereby

ORDERED and ADJUDGED as follows:

1.    The Motion for Enlargement of Time is hereby Granted.

2.    Defendants Romac, LLC, a Delaware limited liability company, Felca, LLC, SR

Acquisitions, LLC, Felma, LLC and Javier Macedo shall have until September 14, 2011 to serve

their Responses to Plaintiff's First Amended Complaint, by motions or otherwise.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on
08/22/11 1:59 PM.

*Gill S. Freeman*

GILL S. FREEMAN
CIRCUIT COURT JUDGE

The movant shall, using any method(s) mandated by the Florida Rules of Civil
Procedure serve all parties/counsel of record with a true and correct copy of this Order
IMMEDIATELY and file proof of service with the Clerk.

Signed and stamped original Order sent to court file by Judge Freeman's staff.
Electronic copy furnished ONLY to any below listed recipient(s) by facsimile whose
facsimile number(s) is/are CORRECTLY FORMATTED and listed herein.

Copies furnished to:

[Fax:Steven M. Ebner@305-347-7760]
[Fax:Scott Burr@305-444-3665]
[Fax:Jorge E. Otero@305-443-0164]
[Fax:Wilfredo A. Rodriguez@305-779-3561]

## IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
## IN AND FOR MIAMI, MIAM-DADE COUNTY, FLORIDA

### COMPLEX BUSINESS LITIGATION DIVISION (40)
### CASE NO.: 11-10901 CA (01)

DINURO INVESTMENTS, LLC., a
Florida limited liability company,

        Plaintiff,

vs.

FELISBERTO FIGUEIRA CAMACHO,
JAVIER MACEDO, MERICI, LLC., a
Florida limited liability company, et al.,

        Defendants.

_____/

### CASE MANAGEMENT ORDER
### Case Management Schedule

| JURY TRIAL DATE AND TIME | 12.03.12 @ 9:00 A.M. |
|---|---|
| FINAL CASE MANAGEMENT CONFERENCE DATE | 08.21.12 @ 3:30 P.M. |
| FINAL PRE-TRIAL CONFERENCE DATE | 11.26.12 @ 10:00 A.M. |

THIS CAUSE came before the Court on **August 5, 2011**, for a Case Management Conference pursuant to the Court's notice and order. All counsel and the parties were present or by telephone. This case has been assigned to Division 40, Complex Business Litigation Court pursuant to Administrative Order No. 08-02, in the Eleventh Judicial Circuit, Miami, Miami-Dade County, Florida. After reviewing the Joint Case Management Report, with the stipulation of the Parties to the trial date set forth below and being otherwise fully informed, it is

**ORDERED AND ADJUDGED** that unless later modified by Order of this Court, the following schedule of events shall control the management and proceedings in this case.

1

## COMMUNICATION WITH THE COURT AND AMONG THE PARTIES

1.     The parties are represented by the following who shall be designated "Lead Trial Counsel":

**Carlos F. Concepcion, Esq.,** for Plaintiff;
**Felisberto Figueria Camacho,** Defendant has not been served
**Steven M. Ebner, Esq.,** for Defendant, SR Florida City, SR Homestead, Merici and Starcmac
**Wilfredo A. Rodriguez, Esq.,** for Defendant, Ocean Bank

2.     **Courtesy copies of all motions and memoranda related thereto where required, shall be delivered to the Court immediately upon being filed with the Clerk of the Court.** All communications with the Court must be delivered to the following address:

The Honorable Gill S. Freeman
73 West Flagler Street, Suite 1407
Miami, Florida 33130
Telephone: 305.349.7255
Facsimile: 305.349.7252
or
E-Mail: cbl@jud11.flcourts.org

## MOTIONS, DISCOVERY, ALTERNATIVE DISPUTE RESOLUTION AND TRIAL

3.     Any motions to dismiss or other preliminary or pre-discovery motions shall be filed and briefed on or before **AUGUST 23, 2011**.

4.     The Parties have stipulated and it is ordered that this case shall be tried in **DECEMBER, 2012**.

5.     The parties are directed to comply in all respects with the Complex Business Litigation Rules located at: www.jud11.flcourts.org.

6.     The jury trial of this case shall occur during the **two** **(2)** week trial period beginning **DECEMBER 3, 2012** with **Call of the Calendar** at **9:00 A.M.** on **NOVEMBER 30,**

2012. The parties estimate the trial will be completed in <u>5-7</u> days. Pursuant to Fla. R. Civ. P. 1.201 (b)(3) continuance of the trial will be granted only upon good cause shown.

**The parties have stipulated to comply with Paragraph 6.A. or 6.B as marked.**

6.A.    Pursuant to Fla. R. Civ. P. 1.201 (d), which requires a Final Case Management conference be set ninety days prior to the trial date, the same is scheduled on **AUGUST 21, 2012** at **3:30 P.M.** in Courtroom 14-2. At least ten (10) days prior to said conference, the parties shall confer and prepare a joint case status report which shall comply with rule 1.201 (d)(1-8). The Joint Case Status Report shall be submitted to the Court five (5) days prior to the hearing.

7.    The Final Pre-Trial Conference is scheduled on **NOVEMBER 26, 2012** at **10:00 A.M.** in Courtroom 14-2. The parties shall prepare in advance and provide at the pre-trial conference an updated pre-trial statement comporting with CBL Rule 9.2.

8.    The parties shall have until **AUGUST 30, 2012** to conduct and conclude fact discovery. It is further ordered that the setting of the discovery deadline will not limit any party from filing summary judgment motions during the period, but any such motions should be narrowly drawn to address only issues on which discovery has been completed. If there are still motions pending after the discovery period, the Court will set a briefing schedule at that time.

9.    Discovery will proceed with respect to the San Remo project. All discovery as to corporation structures and ownership is stayed.

10.    The Parties are limited to <u>two (2)</u> expert witnesses per party. In all respects, the presumptive limitations on discovery contained in the Complex Business Litigation Procedures shall apply.

11.    The Plaintiff(s) shall designate the experts expected to be called at trial and provide all information specified in CBL Rule 6.2 <u>ninety (90)</u> days after the Court's ruling on the Motion to Dismiss.. The Defendant(s) shall designate the experts expected to be called at

trial and provide all information specified in CBL Rule 6.2 **forty-five (45)** days after receipt of Plaintiffs' expert reports.

12.     Expert depositions shall be completed by **forty-five (45)** days after production of Defendants' expert reports.

13.     Dispositive Motions shall be filed by **SEPTEMBER 28, 2012**.

14.     Motions in limine shall be filed by **OCTOBER 26, 2012**

15.     The parties shall mediate this dispute within **ninety (90)** days after the ruling on the motion to dismiss with the mediator of their choice.  Plaintiff shall advise the Court of the precise date of mediation no later than **thirty (30)** days prior to the mediation.  Plaintiff is Ordered to advise the Court, in writing, of the outcome of the mediation no later than five (5) days following the conclusion of the mediation conference.  A second mediation is required, the same shall be scheduled before **NOVEMBER 16, 2012**.  Plaintiff shall advise the Court of the precise date of mediation no later than **OCTOBER 5, 2012**.  Plaintiff is Ordered to advise the Court, in writing, of the outcome of the mediation no later than five (5) days following the conclusion of the mediation conference.

16.     In the event any party files a petition for writ of certiorari or a notice of appeal during the course of the proceeding which would divest this Court of jurisdiction, said party shall provide the Court with a copy of same in order to advise the Court that such a proceeding has been commenced.

17.     **If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas**

Courthouse Center, 175 NW 1st Ave., Suite 2702, Miami, FL 33128, Telephone

(305) 349-7175; TDD (305) 349-7174, Fax (305) 349-7355 at least 7 days before

your scheduled court appearance, or immediately upon receiving this

notification if the time before the scheduled appearance is less than 7 days; if

you are hearing or voice impaired, call 711.

**DONE AND ORDERED** in Chamber at Miami, Miami-Dade County, Florida this <u>25th</u>

day of August, 2011.

GILL S. FREEMAN
CIRCUIT COURT JUDGE

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished via U. S. mail on this <u>5th</u> day of August, 2011, to:

cc:

CARLOS F. CONCEPTION, Esq.
SCOTT A. BURR, Esq.
PATRICIA A. MONTES DE OCA, Esq.
CONCEPCION MARTINEZ BELLIDO
255 ARAGON AVE # 2ND FL
CORAL GABLES, FL 33134

JORGE E. OTERO, Esq.
JORGE E. OTERO & ASSOCIATES
75 VALENCIA AVE # 2ND FL
CORAL GABLES, FL 33134

STEVEN M. EBNER, Esq.
SHUTTS & BOWEN, LLP
201 SO. BISCAYNE BLVD., #1500
MIAMI, FL 33131

WILFREDO A. RODRIGUEZ, Esq.
AVILA RODRIGUEZ ET AL
2525 PONCE DE LEON BLVD., #1225
CORAL GABLES, FL 33134

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI, MIAM-DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION DIVISION (40)
CASE NO.: 11-10901 CA (01)

DINURO INVESTMENTS, LLC., a
Florida limited liability company,

       Plaintiff,

vs.

FELISBERTO FIGUEIRA CAMACHO,
JAVIER MACEDO, MERICI, LLC., a
Florida limited liability company, et al.,

       Defendants.

_____/

## SUA SPONTE ORDER ON FINAL PRETRIAL STIPULATION FOR JURY TRIALS

The Court hereby enters the following pretrial order to focus the issues in the captioned matter prior to trial. Pursuant to this overall objective, the Court ORDERS that the parties will comply with the following additional pretrial requirements and shall file a Joint Final Pretrial Statement" (hereinafter "Pretrial Statement") by five (5) days before the Final Pre-Trial Conference.

1.     The parties shall prepare a concise statement of the case that can be read and distributed to the jury panel prior to voir dire in order to apprise the panel of the subject matter involved in this case.

2.     The parties shall stipulate to as many facts and issues as possible in their "Statement of Uncontested Facts". The supplemented agreed statement of facts will be included in each juror's notebook, if any, as further addressed in Paragraph 7 below. The purpose is to minimize the exhibits or testimony at trial necessary to establish these facts. **For this reason, the Court orders the parties to address this matter in good faith with specific attention to**

**matters already admitted by answers, answers to requests for admissions, and answers to interrogatories.** Notwithstanding, the parties will be permitted to elicit witness testimony concerning undisputed background information for the purpose of establishing a foundation or context for additional testimony.

3.    The parties Pretrial Statement shall include two separate lists of their witnesses and exhibits. Each party's first witness list, the "A" list, shall designate those witnesses the party deems integral to its case and intends to call at trial. The second list, the "B" list, shall designate witnesses that the party may intend to call at trial, depending on the circumstances. The parties shall include an estimate of time expected for direct and cross-examination of each "A" witness. Based upon this revised estimate, the parties shall re-estimate the number of trial days required assuming a 6 hour trial day and a five (5) day trial week.

4.    Each party shall prepare exhibit lists in the same manner as described in Paragraph 3 above; that is, each party shall prepare an "A" list identifying those exhibits that will be offered into evidence, and a "B" list of exhibits that also may be offered depending on the circumstances. Exhibits not listed will not be received into evidence at trial, except by order of the court in furtherance of justice. Substantive, succinct, legal objections to any listed "A" exhibit shall be reflected in a separate column of the list in accordance with CBL Rule 9.2 (c) ("all objections reserved" does not suffice) objections not made, including objections not made with specificity are waived. As with record custodians, the parties shall attempt to enter into stipulations regarding the authenticity of documents, thereby reserving their objections only for substantive evidentiary issues.

5.    The Court shall initially provide a general questionnaire to inquire of the jury panel. The parties may submit a proposed questionnaire at the Final Pre-trial Conference.

6.     The parties shall coordinate their efforts to prepare a set of proposed jury instructions, verdict forms, and where applicable, jury interrogatories for submission to the Court as part of the Pretrial Statement. In their proposed instructions, the parties shall designate areas of agreement and those areas which remain in dispute in terms of the substantive application of the law. In preparing their proposed instructions, the parties shall utilize Florida Standard Jury Instructions as applicable, for both the procedural and substantive instructions.  If there are no applicable Florida Standard Jury Instructions, the Court recommends the Eleventh Circuit Federal Pattern Jury Instructions (2006 West Group).  The parties may propose other substantive jury instructions if related to the count at issue. If the parties are of the view that the pattern instructions have been superseded by applicable case law, they may red line their proposed revisions to the pattern instructions and provide highlighted copies of the case law with their joint pretrial stipulation. The parties' joint set of proposed jury instructions shall be submitted in printed form, accompanied by a computer disk and legal authorities relied upon. The legal authorities shall be included in the Court's Notebook along with the proposed jury instructions and given to the Court with key portions of the cases highlighted.

7.     The parties also shall coordinate the preparation of trial notebooks, if agreed, for distribution to jurors at the commencement of evidence at trial.   The notebooks shall include the statement of the agreed facts, any joint exhibits, and copies of the parties' "A" exhibits intended to be introduced at trial. The parties shall provide the Court on the first day of trial with a sufficient amount of notebooks for distribution to each juror, the testifying witness, counsel, and for the Court.  If the jurors are not going to have notebooks, the parties must still prepare the remaining required notebooks.

8.     All exhibits must be pre-marked and initialed. The parties shall prepare their exhibit lists and submit said exhibit lists on the form attached hereto, which is available from the Clerk's office. The Plaintiff shall mark its exhibits to which there is no objection numerically. Defendant shall mark its exhibits alphabetically. The typewritten exhibit list setting forth the number, or letter, and description of each exhibit must be submitted at the final joint pretrial conference. At trial, each exhibit shall be marked with a sticker identifying the case number, exhibit number, and party offering the exhibit. No document or exhibit, except impeachment exhibits, maybe offered into evidence unless it has been pre-marked and initialed by all counsel as having been reviewed. Plaintiff's exhibits to which there is an objection shall be marked "1-A" consecutively. Defendant's exhibits to which there is an objection shall be marked "A-1" consecutively.

9.     In accordance with CBL Rule 9.2(e), at the required meeting, counsel and unrepresented parties shall agree upon and specify in writing in the Pretrial Statement the pages and lines of each deposition (except where used solely for impeachment) to be published to the trier of fact. The parties shall include in the Joint Final Pretrial Statement a page-and-line description of any testimony that remains in dispute after an active and substantial effort at resolution, together with argument and authority for each party's positions. The parties **shall** prepare for submission and consideration at the final pretrial conference edited and marked copies of any depositions or deposition excerpts which are to be offered into evidence including edited videotaped depositions. Designation of an entire deposition will not be permitted except on a showing of necessity.

10.     The Rule of Sequestration is hereby invoked unless otherwise agreed and provided in the Final Pretrial Statement. Each party shall bring to the court's attention the

appearance of any witness in the courtroom which violates the Rule. The Rule shall apply to a witness once he or she is turned over for cross-examination, unless otherwise ordered by the Court upon good grounds shown. The attorneys and parties who remain in the courtroom are prohibited from communicating, by means of any electronic device, any testimony of a witness, or summary of testimony, to a prospective witness, or to another person whose purpose is to communicate with a prospective witness. Any intentional violation of this order may be addressed by contempt or other dire sanctions.

The Rule restriction will not apply to the opposing parties' expert witness(es) who may desire to hear the testimony of fact or another expert so as to be in a position to comment on such testimony in the Defendants' case or on Plaintiffs' rebuttal case.

11.     If the parties desire to use charts or exhibits during opening statements, each such item must be disclosed to the other party as part of the Pretrial Statement. In the event a party objects to such disclosure, then the court shall examine each such item prior to its use in opening statement. No item of actual evidence may be displayed to the jury absent prior written agreement between the parties which specifies the item of evidence that may be used. Furthermore, the actual evidence shall be attached to the stipulation as an exhibit.

12.     The parties shall bring to the court's attention the use of technological equipment in the courtroom. The court shall arrange with the parties a date for installation. The parties shall consult with each other as to the use of the other's computer based exhibits. For use during *voir dire*, the parties shall prepare an exhibit to be shown to the panel identifying the law firms and attorneys who have worked on this case and the names of persons who may be witnesses in the case, including, where applicable, their titles.

13.     All summaries to be offered into evidence shall comply with §90.956 Fla. Stat. All summaries shall be included in the Pretrial Statement. Any objection to the summaries shall be filed five (5) days prior to the Final Pre-Trial Conference. Summary evidence is admissible under §90.956 only if the underlying materials are admissible. If written objections are filed, the underlying materials shall be produced in court and shall be subject to a hearing in accordance with Florida Rules of Evidence prior to their admission.

14.     All demonstrative exhibits shall be disclosed to the opposing party and referenced in the Pretrial Statement. The party proposing to use a demonstrative exhibit as substantive evidence shall include it on the "A" exhibit list. With respect to an item to be used demonstratively, the burden shall be on the proposing party to demonstrate that it depicts relevant information that is or will be proven by other, substantive evidence. Any objection to the opposing party's demonstrative exhibit shall be raised in the Pretrial Statement.

15.     Where the parties have designated experts and exchanged expert witness summaries and reports in accordance with CBL Rule 6.2 each such party, as part of the Pretrial Statement, shall set forth the following: (1) a statement of each opinion to which the expert is intended to testify; (2) a specific reference to where each such opinion was included in the expert report or rebuttal report; (3) verification, where applicable, that each such opinion was subject to expert discovery, and (4) a list of "A" exhibits or demonstrative exhibits applicable to each such opinion.

The purpose here is to prevent any "new" opinions to be presented at trial which were not properly disclosed. Absent leave of the Court, each party is hereby on notice that any "new" such opinion shall be stricken. If any party intends to challenge an opposing party expert's opinion under §90.702 or 90.703 Fla. Stat., such party shall state in the Pretrial Statement the specific

basis for the objection(s), including any legal authorities in support of the stated objection. If a prior brief has been filed on the subject, the parties may incorporate it by reference.

16.   If either party desires the Court to judicially notice any adjudicative facts pursuant to §90.201, Fla. Stat., such request shall be in writing and included in the Pretrial Statement. The request shall specify with particularity the specific facts sought to be recognized and provide any legal authorities in support. Any objections shall also be in writing and attached as an exhibit to the Pretrial Statement.

**DONE AND ORDERED** in Chambers at Miami-Dade County, Florida, this <u>26th</u> day of, August, 2011

GILL S. FREEMAN
CIRCUIT COURT JUDGE

Copies furnished to
Counsel of Record

PAGE 1/2 * RCVD AT 8/25/2011 10:10:03 AM [Eastern Daylight Time] * SVR:SB-NAP-FAX/0 * DNIS:7760 * CSID: * DURATION (mm-ss):01-02

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION
DIVISION

CASE NO. 11-10901-CA-40

DINURO INVESTMENTS, LLC, a Florida limited
liability company,

     Plaintiff,

vs.

FELISBERTO FIGUEIRA CAMACHO; FELMA,
LLC, a Florida limited liability company; MERICI,
LLC, a Florida limited liability company; JAVIER
MACEDO; ROMAC, LLC, a Florida limited
liability company; STARMAC, LLC, a Florida
limited liability company; SR ACQUISITIONS –
FLORIDA CITY, LLC, a Florida limited liability
company; SR ACQUISITIONS, LLC, a Florida
limited liability company; ROMAC, LLC, a
Delaware limited liability company, FELCA, LLC, a
limited liability company; and OCEAN BANK,

     Defendants.

_____/

## AGREED ORDER GRANTING MOTION FOR ENLARGEMENT OF TIME

THIS MATTER is before the Court upon Defendants Romac, LLC, a Delaware limited

liability company, Felca, LLC, SR Acquisitions, LLC, Felma, LLC and Javier Macedo's Motion

for Enlargement of Time, dated August 12, 2011. The Court having reviewed the Motion and

being fully advised in the premises, it is hereby

ORDERED and ADJUDGED as follows:

1.    The Motion for Enlargement of Time is hereby Granted.

2.    Defendants Romac, LLC, a Delaware limited liability company, Felca, LLC, SR

Acquisitions, LLC, Felma, LLC and Javier Macedo shall have until September 14, 2011 to serve

their Responses to Plaintiff's First Amended Complaint, by motions or otherwise.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on
08/22/11 1:59 PM.

*Gill S. Freeman*

GILL S. FREEMAN
CIRCUIT COURT JUDGE

The movant shall, using any method(s) mandated by the Florida Rules of Civil
Procedure serve all parties/counsel of record with a true and correct copy of this Order
IMMEDIATELY and file proof of service with the Clerk.

Signed and stamped original Order sent to court file by Judge Freeman's staff.
Electronic copy furnished ONLY to any below listed recipient(s) by facsimile whose
facsimile number(s) is/are CORRECTLY FORMATTED and listed herein.

Copies furnished to:

[Fax:Steven M. Ebner@305-347-7760]
[Fax:Scott Burr@305-444-3665]
[Fax:Jorge E. Otero@305-443-0164]
[Fax:Wilfredo A. Rodriguez@305-779-3561]

2

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION DIVISION

DINURO INVESTMENTS, LLC, a Florida    CASE NO.: 11-10900-CA-40
limited liability company,

             Plaintiff,

v.

FELISBERTO FIGUEIRA CAMACHO;
JAVIER MACEDO; MERICI, LLC, a
Florida limited liability company;
STARMAC, LLC, a Florida limited liability
company, SR ACQUISITIONS –
FLORIDA CITY, LLC, a Florida limited
liability company; OCEAN BANK,

             Defendants,

_____/

### ORDER GRANTING PLAINTIFF DINURO'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO RESPOND TO OCEAN BANK'S MOTION TO DISMISS DINURO'S FIRST AMENDED COMPLAINT

THIS CAUSE having come before me on Plaintiff Dinuro Investments LLC's ("Dinuro") Unopposed Motion for Extension of Time to Respond to Ocean Bank's Motion To Dismiss Dinuro's First Amended Complaint (the "Motion") and, having reviewed the Motion and being duly advised in the premises, it is hereby ORDERED AND ADJUGED as follows:

1.      Plaintiff Dinuro's Motion is GRANTED.

2.      Plaintiff Dinuro shall file its response to Ocean Bank's Motion to Dismiss Dinuro's First Amended Complaint on or before September 5, 2011.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on 08/31/11 1:40 PM.

*Gill S. Freeman*

CASE NO. 11-10900-CA 40

_____
GILL S. FREEMAN
CIRCUIT COURT JUDGE

The movant shall, using any method(s) mandated by the Florida Rules of Civil Procedure serve all parties/counsel of record with a true and correct copy of this Order IMMEDIATELY and file proof of service with the Clerk.

Signed and stamped original Order sent to court file by Judge Freeman's staff. Electronic copy furnished ONLY to any below listed recipient(s) by facsimile whose facsimile number(s) is/are CORRECTLY FORMATTED and listed herein.

Copies furnished to:

Scott A. Burr, Esq.
[Fax: Scott A. Burr@305-444-3665]

Steve Ebner, Esq.
[Fax: Steve Ebner@305-347-7760]

Eduardo F. Rodriguez, Esq.
[Fax: Eduardo F. Rodriguez@305-779-3561]

2

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION DIVISION

DINURO INVESTMENTS, LLC, a Florida          CASE NO.:  11-10901-CA-40
limited liability company,

                Plaintiff,

v.

FELISBERTO FIGUEIRA CAMACHO;
JAVIER MACEDO; MERICI, LLC, a
Florida limited liability company;
STARMAC, LLC, a Florida limited liability
company, SR ACQUISITIONS –
FLORIDA CITY, LLC, a Florida limited
liability company; OCEAN BANK,

                Defendants,
_____/

**ORDER GRANTING PLAINTIFF DINURO'S UNOPPOSED MOTION FOR
EXTENSION OF TIME TO RESPOND TO DEFENDANTS SR., MERICI AND
STARMAC'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT,
SUPPORTING MEMORANDUM OF LAW (ALTERNATIVELY, MOTION TO
STRIKE) AND REQUEST FOR ATTORNEYS' FEES, COSTS AND ORAL ARGUMENT**

        THIS CAUSE having come before me on Plaintiff Dinuro Investments LLC's ("Dinuro")

Unopposed Motion for an Extension of Time to File a Response to Defendants Sr., Merici and

Starmac's Motion to Dismiss the First Amended Complaint, Supporting Memorandum of Law

(Alternatively, Motion To Strike) and Request for Attorneys' Fees, Costs and Oral Argument (the

"Motion") and, having reviewed the Motion and being duly advised in the premises, it is hereby

ORDERED AND ADJUGED as follows:

        1.      Plaintiff Dinuro's Motion is GRANTED.

        2.      Plaintiff Dinuro shall file its response to Defendants' Defendants Sr., Merici and

Starmac's Motion to Dismiss the First Amended Complaint, Supporting Memorandum of Law

CASE NO. 11-10901-CA 40

(Alternatively, Motion To Strike) and Request for Attorneys' Fees, Costs and Oral Argument on or before September 12, 2011.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on 08/31/11 1:43 PM.

*Gill S. Freeman*

GILL S. FREEMAN
CIRCUIT COURT JUDGE

The movant shall, using any method(s) mandated by the Florida Rules of Civil Procedure serve all parties/counsel of record with a true and correct copy of this Order IMMEDIATELY and file proof of service with the Clerk.

Signed and stamped original Order sent to court file by Judge Freeman's staff. Electronic copy furnished ONLY to any below listed recipient(s) by facsimile whose facsimile number(s) is/are CORRECTLY FORMATTED and listed herein.

Copies furnished to:

Scott A. Burr, Esq.
[Fax: Scott A. Burr@305-444-3665]

Steve Ebner, Esq.
[Fax: Steve Ebner@305-347-7760]

Eduardo F. Rodriguez, Esq.
[Fax: Eduardo F. Rodriguez@305-779-3561]

2

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION DIVISION

DINURO INVESTMENTS, LLC, a Florida    CASE NO.: 11-10901-CA-40
limited liability company,

           Plaintiff,

v.

FELISBERTO FIGUEIRA CAMACHO;
JAVIER MACEDO; MERICI, LLC, a Florida
limited liability company; STARMAC, LLC, a
Florida limited liability company, SR
ACQUISITIONS – FLORIDA CITY, LLC, a
Florida limited liability company; OCEAN
BANK,

           Defendants,

_____/

### ORDER GRANTING PLAINTIFF DINURO'S
### UNOPPOSED SECOND MOTION FOR EXTENSION OF TIME
### TO RESPOND TO OCEAN BANK'S MOTION TO DISMISS

      THIS CAUSE having come before me on Plaintiff Dinuro Investments LLC's ("Dinuro")

Unopposed Second Motion for Extension of Time to Respond to Ocean Bank's Motion to Dismiss

(the "Motion") and, having reviewed the Motion and being duly advised in the premises, it is hereby

ORDERED AND ADJUGED as follows:

      1.    Plaintiff Dinuro's Motion is GRANTED.

      2.    Plaintiff Dinuro shall file its response to Ocean Bank's Motion to Dismiss on or

before September 9, 2011.

      DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on 09/06/11

4:32 PM.

*Gill S. Freeman*

CASE NO. 11-10901-CA 40

GILL S. FREEMAN
CIRCUIT COURT JUDGE

The movant shall, using any method(s) mandated by the Florida Rules of Civil Procedure serve all parties/counsel of record with a true and correct copy of this Order IMMEDIATELY and file proof of service with the Clerk.

Signed and stamped original Order sent to court file by Judge Freeman's staff. Electronic copy furnished ONLY to any below listed recipient(s) by facsimile whose facsimile number(s) is/are CORRECTLY FORMATTED and listed herein.

Copies Furnished To:

Scott A. Burr, Esq.
[Fax: Scott A. Burr@305-444-3665]

Steve Ebner, Esq.
[Fax: Steve Ebner@305-347-7760]

Eduardo F. Rodriguez, Esq.
[Fax: Eduardo F. Rodriguez@305-779-3561]

2

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION DIVISION

DINURO INVESTMENTS, LLC, a Florida          CASE NO.: 11-10901-CA-40
limited liability company,

        Plaintiff,

v.

FELISBERTO FIGUEIRA CAMACHO;
JAVIER MACEDO; MERICI, LLC, a
Florida limited liability company;
STARMAC, LLC, a Florida limited liability
company, SR ACQUISITIONS –
FLORIDA CITY, LLC, a Florida limited
liability company; OCEAN BANK,

        Defendants,

_____/

**ORDER GRANTING PLAINTIFF DINURO'S SECOND UNOPPOSED MOTION FOR
EXTENSION OF TIME NUNC PRO TUNC TO RESPOND TO DEFENDANTS SR.,
MERICI AND STARMAC'S MOTION TO DISMISS THE FIRST AMENDED
COMPLAINT, SUPPORTING MEMORANDUM OF LAW (ALTERNATIVELY,
MOTION TO STRIKE) AND REQUEST FOR ATTORNEYS' FEES, COSTS
AND ORAL ARGUMENT**

THIS CAUSE having come before me on Plaintiff Dinuro Investments LLC's ("Dinuro")

Second Unopposed Motion for an Extension of Time Nunc pro tunc to File  a Response to

Defendants Sr., Merici and Starmac's Motion to Dismiss the First Amended Complaint,

Supporting Memorandum of Law (Alternatively, Motion To Strike) and Request for Attorneys'

Fees, Costs and Oral Argument (the "Motion") and, having reviewed the Motion and being duly

advised in the premises, it is hereby ORDERED AND ADJUGED as follows:

    1.    Plaintiff Dinuro's Motion is GRANTED.

    2.    Plaintiff Dinuro shall file its response to Defendants' Defendants Sr., Merici and

Starmac's Motion to Dismiss the First Amended Complaint, Supporting Memorandum of Law

CASE NO. 11-10901-CA 40

(Alternatively, Motion To Strike) and Request for Attorneys' Fees, Costs and Oral Argument on or before September 19, 2011.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on 09/13/11 4:26 PM.

GILL S. FREEMAN
CIRCUIT COURT JUDGE

The movant shall, using any method(s) mandated by the Florida Rules of Civil Procedure serve all parties/counsel of record with a true and correct copy of this Order IMMEDIATELY and file proof of service with the Clerk.

Signed and stamped original Order sent to court file by Judge Freeman's staff. Electronic copy furnished ONLY to any below listed recipient(s) by facsimile whose facsimile number(s) is/are CORRECTLY FORMATTED and listed herein.

Copies furnished to:

Scott A. Burr, Esq.
[Fax: Scott A. Burr@305-444-3665]

Steve Ebner, Esq.
[Fax: Steve Ebner@305-347-7760]

Eduardo F. Rodriguez, Esq.
[Fax: Eduardo F. Rodriguez@305-779-3561]

2

IN THE CIRCUIT COURT OF THE ELEVENTH
JUDICIAL CIRCUIT IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION SECTION

CASE NO. 11-10901 CA 40

DINURO INVESTMENTS, LLC,

     Plaintiff,

v.

FELISBERTO FIGUEIRA CAMACHO,
FELMA, LLC, MERICI, LLC, JAVIER
MACEDO, ROMAC, LLC, STARMAC,
LLC, SR ACQUISITIONS – FLORIDA
CITY, LLC, SR ACQUISITIONS, LCC,
ROMAC, LLC, FELCA, LLC, and
OCEAN BANK,

     Defendants.

_____/

**ORDER GRANTING DEFENDANT OCEAN BANK'S UNOPPOSED
MOTION FOR EXTENSION OF TIME TO SUBMIT REPLY IN
SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

THIS CAUSE having come before me on Defendant Ocean Bank's Unopposed Motion

for Extension of Time to Submit Reply in Support of Motion to Dismiss First Amended

Complaint (the "Motion") and, having reviewed the Motion and being duly advised in the

premises, it is hereby

ORDERED AND ADJUGED as follows:

1.     Defendant Ocean Bank's Motion is GRANTED.

2.     Defendant Ocean Bank shall serve its Reply in support of its Motion to Dismiss

CASE NO. 11-10901 CA 40

Plaintiff's First Amended Complaint on or before October 4, 2011.

DONE AND ORDERED in Miami-Dade County, Florida this 21st day of September, 2011.

GILL S. FREEMAN
CIRCUIT COURT JUDGE

Copies furnished to:
Counsel of record

Conformed Copy

SEP 21 2011

Gill S. Freeman
Circuit Court Judge

2

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION DIVISION

DINURO INVESTMENTS, LLC, a Florida limited
liability company,

              Plaintiff,

v.

FELISBERTO FIGUEIRA CAMACHO; JAVIER
MACEDO; MERICI, LLC, a Florida limited
liability company; STARMAC, LLC, a Florida
limited liability company, SR ACQUISITIONS –
FLORIDA CITY, LLC, a Florida limited liability
company; OCEAN BANK,

              Defendants,

_____/

CASE NO. 11-10901-CA 40

## NOTICE OF AMENDMENTS TO FIRST AMENDED
## COMPLAINT BY INTERLINEATION

      Plaintiff Dinuro Investments, Inc. amends the First Amended Complaint by interlineation
as follows:

- Page 13, line 20 -- "San Remo-Florida City" amended to state "Starmac"

- Page 14, line 19 --  "San Remo-Florida City" amended to state "Starmac"

- Page 16, line 19 -- "covenant of good faith and fair dealing" amended to
  state "breach of fiduciary duty"

- Page 20, line 8 --  "15.8" amended to state "16.8"

CASE NO. 11-10901-CA 40

**CONCEPCION MARTINEZ & BELLIDO**
*Attorneys for DINURO INVESTMENTS, LLC,*
255 Aragon Avenue, Second Floor
Coral Gables, Florida 33134
Telephone: (305) 444-6669
Facsimile: (305) 444-3665

By: _____
        CARLOS F. CONCEPCION
        Florida Bar. No. 386730
        SCOTT A. BURR
        Florida Bar No. 99325

and

JORGE E. OTERO & ASSOCIATES, P.A.
75 Valencia Avenue, Second Floor
Coral Gables Florida 33134
Telephone:  (305) 567-9000
Facsimile:   (305) 443-0164

By: _____
        JORGE E. OTERO
        Florida Bar No. 438596

Concepción Martinez & Bellido, Attorneys at Law
255 Aragon Avenue • 2nd Floor • Coral Gables, FL 33134 • T 305.444.6669 • F 305.444.3665
www.cfclaw.com

CASE NO. 11-10901-CA 40

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by

U.S. Mail this September 21, 2011 to:

| | |
|---|---|
| Steve Ebner, Esq. | Wilfredo A. Rodriguez, Esq. |
| Shutts & Bowen, LLP | Eduardo F. Rodriguez, Esq. |
| 1500 Miami Center | Avila, Rodriguez, Hernandez, Mena & Ferri, LLP. |
| 201 South Biscayne Blvd. | 2525 Ponce de Leon Boulevard, Suite 1225 |
| Miami, FL. 33131 | Coral Gables, FL. 33134 |
| Fax: (305) 347-7760 | Fax: (305) 779-3561 |

SCOTT A. BURR

3

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION
DIVISION

CASE NO. 11-10901-CA-40

DINURO INVESTMENTS, LLC, a Florida limited
liability company,

       Plaintiff,

vs.

FELISBERTO FIGUEIRA CAMACHO; FELMA,
LLC, a Florida limited liability company; MERICI,
LLC, a Florida limited liability company; JAVIER
MACEDO; ROMAC, LLC, a Florida limited
liability company; STARMAC, LLC, a Florida
limited liability company; SR ACQUISITIONS –
FLORIDA CITY, LLC, a Florida limited liability
company; SR ACQUISITIONS, LLC, a Florida
limited liability company; ROMAC, LLC, a
Delaware limited liability company, FELCA, LLC, a
limited liability company; and OCEAN BANK,

       Defendants.

_____/

## AGREED ORDER GRANTING MOTION FOR ENLARGEMENT OF TIME

THIS MATTER is before the Court upon Defendants SR Acquisitions – Florida City,

LLC, Merici, LLC and Starmac, LLC's (collectively referred to as "SRMS") Motion for

Enlargement of Time, dated September 26, 2011. The Court having reviewed the Motion and

being fully advised in the premises, it is hereby

ORDERED and ADJUDGED as follows:

1.     The Motion for Enlargement of Time is hereby Granted.

Fax Server          9/27/2011 9:59:54 AM   PAGE   4/004   Fax Server

2.      Defendants SR Acquisitions – Florida City, LLC, Merici, LLC and Starmac, LLC shall have until October 18, 2011 to serve their Reply to Dinuro's Memorandum in Opposition to SRMS' Motion to Dismiss First Amended Complaint and Motion to Strike.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on 09/27/11 9:53 AM.


*Gill S. Freeman*

GILL S. FREEMAN
CIRCUIT COURT JUDGE

The movant shall, using any method(s) mandated by the Florida Rules of Civil Procedure serve all parties/counsel of record with a true and correct copy of this Order IMMEDIATELY and file proof of service with the Clerk.

Signed and stamped original Order sent to court file by Judge Freeman's staff. Electronic copy furnished ONLY to any below listed recipient(s) by facsimile whose facsimile number(s) is/are CORRECTLY FORMATTED and listed herein.

Copies furnished to:


[Fax:Steven M. Ebner@305-347-7760]
[Fax:Scott Burr@305-444-3665]
[Fax:Jorge E. Otero@305-443-0164]
[Fax:Wilfredo A. Rodriguez@305-779-3561]

2

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION DIVISION

DINURO INVESTMENTS, LLC, a Florida    CASE NO.: 11-10901-CA-40
limited liability company,

          Plaintiff,

v.

FELISBERTO FIGUEIRA CAMACHO;
JAVIER MACEDO; MERICI, LLC, a
Florida limited liability company;
STARMAC, LLC, a Florida limited liability
company, SR ACQUISITIONS –
FLORIDA CITY, LLC, a Florida limited
liability company; OCEAN BANK,

          Defendants,
_____/

**ORDER GRANTING PLAINTIFF DINURO'S UNOPPOSED MOTION FOR AN
EXTENSION OF TIME TO FILE A RESPONSE TO DEFENDANTS ROMAC, LLC,
FELCA, LLC, SR ACQUISITIONS, LLC, FELMA, LLC, AND JAVIER MACEDO'S
MOTION TO DISMISS COUNTS IV, V, VI AND VII OF THE FIRST AMENDED
COMPLAINT, SUPPORTING MEMORANDUM OF LAW (ALTERNATIVELY,
MOTION TO STRIKE) AND REQUEST FOR ATTORNEYS' FEES, COSTS AND
ORAL ARGUMENT**

THIS CAUSE having come before me on Plaintiff Dinuro Investments LLC's ("Dinuro")

Unopposed Motion for Extension of Time to Respond Defendants Romac, LLC, a Delaware

Limited Liability Company, Felca, LLC, Sr Acquisitions, LLC, Felma, LLC, and Javier

Macedo's Motion To Dismiss Counts IV, V, VI and VII of the First Amended Complaint,

Supporting Memorandum of Law (Alternatively, Motion to Strike) and Request for Attorneys'

Fees, Costs and Oral Argument (the "Motion") and, having reviewed the Motion and being duly

advised in the premises, it is hereby ORDERED AND ADJUGED as follows:

    1.    Plaintiff Dinuro's Motion is GRANTED.

CASE NO. 11-10901-CA 40

2.      Plaintiff Dinuro shall file its response to Defendants Romac, LLC, a Delaware Limited Liability Company, Felca, LLC, Sr Acquisitions, LLC, Felma, LLC, and Javier Macedo's Motion To Dismiss Counts IV, V, VI and VII of the First Amended Complaint, Supporting Memorandum of Law (Alternatively, Motion to Strike) and Request for Attorneys' Fees, Costs and Oral Argument, on or before October 14, 2011.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on 09/27/11 11:39 AM.

*Gill S. Freeman*

GILL S. FREEMAN
CIRCUIT COURT JUDGE

The movant shall, using any method(s) mandated by the Florida Rules of Civil Procedure serve all parties/counsel of record with a true and correct copy of this Order IMMEDIATELY and file proof of service with the Clerk.

Signed and stamped original Order sent to court file by Judge Freeman's staff. Electronic copy furnished ONLY to any below listed recipient(s) by facsimile whose facsimile number(s) is/are CORRECTLY FORMATTED and listed herein.

Copies furnished to:

Scott A. Burr, Esq.
[Fax: Scott A. Burr@305-444-3665]

Steve Ebner, Esq.
[Fax: Steve Ebner@305-347-7760]

Eduardo F. Rodriguez, Esq.
[Fax: Eduardo F. Rodriguez@305-779-3561]

2

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION DIVISION

CASE NO. 11-10901-CA-40

DINURO INVESTMENTS, LLC, a Florida limited liability company,

      Plaintiff,

vs.

FELISBERTO FIGUEIRA CAMACHO; FELMA, LLC, a Florida limited liability company; MERICI, LLC, a Florida limited liability company; JAVIER MACEDO; ROMAC, LLC, a Florida limited liability company; STARMAC, LLC, a Florida limited liability company; SR ACQUISITIONS – FLORIDA CITY, LLC, a Florida limited liability company; SR ACQUISITIONS, LLC, a Florida limited liability company; ROMAC, LLC, a Delaware limited liability company, FELCA, LLC, a limited liability company; and OCEAN BANK,

      Defendants.

_____/

## AGREED ORDER GRANTING MOTION FOR ENLARGEMENT OF TIME

THIS MATTER is before the Court upon Defendants SR Acquisitions – Florida City, LLC, Merici, LLC and Starmac, LLC's (collectively referred to as "SRMS") Motion for Enlargement of Time, dated September 26, 2011. The Court having reviewed the Motion and being fully advised in the premises, it is hereby

ORDERED and ADJUDGED as follows:

1.    The Motion for Enlargement of Time is hereby Granted.

    2.      Defendants SR Acquisitions – Florida City, LLC, Merici, LLC and Starmac, LLC

shall have until October 18, 2011 to serve their Reply to Dinuro's Memorandum in Opposition to

SRMS' Motion to Dismiss First Amended Complaint and Motion to Strike.

          DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on

09/27/11 9:53 AM.

*Gill S. Freeman*

GILL S. FREEMAN
CIRCUIT COURT JUDGE

The movant shall, using any method(s) mandated by the Florida Rules of Civil
Procedure serve all parties/counsel of record with a true and correct copy of this Order
IMMEDIATELY and file proof of service with the Clerk.

Signed and stamped original Order sent to court file by Judge Freeman's staff.
Electronic copy furnished ONLY to any below listed recipient(s) by facsimile whose
facsimile number(s) is/are CORRECTLY FORMATTED and listed herein.

Copies furnished to:


[Fax:Steven M. Ebner@305-347-7760]
[Fax:Scott Burr@305-444-3665]
[Fax:Jorge E. Otero@305-443-0164]
[Fax:Wilfredo A. Rodriguez@305-779-3561]

2

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION SECTION

CASE NO. 11-10901 CA 40

DINURO INVESTMENTS, LLC,

      Plaintiff,

v.

FELISBERTO FIGUEIRA CAMACHO, FELMA, LLC, MERICI, LLC, JAVIER MACEDO, ROMAC, LLC, STARMAC, LLC, SR ACQUISITIONS – FLORIDA CITY, LLC, SR ACQUISITIONS, LCC, ROMAC, LLC, FELCA, LLC, and OCEAN BANK,

      Defendants.

_____/

## ORDER GRANTING DEFENDANT OCEAN BANK'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO RESPOND TO FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

THIS CAUSE having come before me on Defendant Ocean Bank's Unopposed Motion for Extension of Time to Respond to First Request for Production of Documents (the "Motion") and, having reviewed the Motion and being duly advised in the premises, it is hereby

ORDERED AND ADJUDGED as follows:

1.    Defendant Ocean Bank's Motion is GRANTED.

2.    Defendant Ocean Bank shall serve its response to Plaintiff's First Request for Production of Documents to Ocean Bank on or before October 17, 2011.

DONE AND ORDERED in Miami-Dade County, Florida this 3RD day of October, 2011.

                                Judge Gill S. Freeman
                                _____
                                GILL S. FREEMAN
                                CIRCUIT COURT JUDGE

Copies furnished to:
Counsel of record

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION DIVISION

CASE NO. 11-10901CA-40

DINURO INVESTMENTS, LLC, a Florida limited liability company,

        Plaintiff,

vs.

FELISBERTO FIGUEIRA CAMACHO; FELMA, LLC, a Florida limited liability company; MERICI, LLC, a Florida limited liability company; JAVIER MACEDO; ROMAC, LLC, a Florida limited liability company; STARMAC, LLC, a Florida limited liability company; SR ACQUISITIONS – FLORIDA CITY, LLC, a Florida limited liability company; SR ACQUISITIONS, LLC, a Florida limited liability company; ROMAC, LLC, a Delaware limited liability company, FELCA, LLC, a limited liability company; and OCEAN BANK,

        Defendants.

_____/

## AGREED ORDER GRANTING SECOND MOTION FOR ENLARGEMENT OF TIME

THIS MATTER is before the Court upon Defendants SR Acquisitions – Florida City, LLC, Merici, LLC and Starmac, LLC's (collectively referred to as "SRMS") Second Motion for Enlargement of Time, dated October 11, 2011. The Court having reviewed the Motion and being fully advised in the premises, it is hereby

ORDERED and ADJUDGED as follows:

1.      The Motion for Enlargement of Time is hereby Granted.

CASE NO. 11-10901-CA-40

2.      Defendants SR Acquisitions – Florida City, LLC, Merici, LLC and Starmac, LLC shall

have until November 1, 2011 to serve their Reply to Dinuro's Memorandum in Opposition to SRMS'

Motion to Dismiss First Amended Complaint and Motion to Strike.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on 10/12/11

2:14 PM.

*Gill S. Freeman*

GILL S. FREEMAN
CIRCUIT COURT JUDGE

The movant shall, using any method(s) mandated by the Florida Rules of Civil Procedure
serve all parties/counsel of record with a true and correct copy of this Order IMMEDIATELY
and file proof of service with the Clerk.

Signed and stamped original Order sent to court file by Judge Freeman's staff.
Electronic copy furnished ONLY to any below listed recipient(s) by facsimile whose facsimile
number(s) is/are CORRECTLY FORMATTED and listed herein.

Copies furnished to:


[Fax:Steven M. Ebner@305-347-7760]
[Fax:Scott Burr@305-444-3665]
[Fax:Jorge E. Otero@305-443-0164]
[Fax:Wilfredo A. Rodriguez@305-779-3561]

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION DIVISION

CASE NO. 11-10901-CA-40

DINURO INVESTMENTS, LLC, a Florida limited liability company,

        Plaintiff,

vs.

FELISBERTO FIGUEIRA CAMACHO; FELMA, LLC, a Florida limited liability company; MERICI, LLC, a Florida limited liability company; JAVIER MACEDO; ROMAC, LLC, a Florida limited liability company; STARMAC, LLC, a Florida limited liability company; SR ACQUISITIONS – FLORIDA CITY, LLC, a Florida limited liability company; SR ACQUISITIONS, LLC, a Florida limited liability company; ROMAC, LLC, a Delaware limited liability company, FELCA, LLC, a limited liability company; and OCEAN BANK,

        Defendants.

_____/

## AGREED ORDER GRANTING MOTION FOR ENLARGEMENT OF TIME

THIS MATTER is before the Court upon Defendants Romac, LLC, a Delaware limited liability company, Felca, LLC, SR Acquisitions, LLC, Felma, LLC, and Javier Macedo's (hereinafter collectively referred to as "RFSFM" ) Motion for Enlargement of Time, dated October 19, 2011. The Court having reviewed the Motion and being fully advised in the premises, it is hereby

ORDERED and ADJUDGED as follows:

1.      The Motion for Enlargement of Time is hereby Granted.

Fax Server                    10/20/2011 2:24:07 PM   PAGE    004    Fax Server

CASE NO. 11-10901-CA-40

    2.    Defendants RFSFM shall have until November 10, 2011 to serve their Reply to Dinuro's Memorandum in Opposition to RFSFM's Motion to Dismiss First Amended Complaint and Motion to Strike.

    DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on 10/20/11 2:21 PM.

*Gill S. Freeman*

GILL S. FREEMAN
CIRCUIT COURT JUDGE

The movant shall, using any method(s) mandated by the Florida Rules of Civil Procedure serve all parties/counsel of record with a true and correct copy of this Order IMMEDIATELY and file proof of service with the Clerk.

Signed and stamped original Order sent to court file by Judge Freeman's staff.
Electronic copy furnished ONLY to any below listed recipient(s) by facsimile whose facsimile number(s) is/are CORRECTLY FORMATTED and listed herein.

Copies furnished to:

[Fax:Steven M. Ebner@305-347-7760]
[Fax:Scott Burr@305-444-3665]
[Fax:Jorge E. Otero@305-443-0164]
[Fax:Wilfredo A. Rodriguez@305-779-3561]

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN
AND FOR MIAMI-DADE COUNTY,
FLORIDA

DINURO INVESTMENTS, LLC

Complex Business Litigation Division
Case No. 11 - 10901 -CA-40

                    Plaintiffs,

vs.

FELISBERTO FIGUEIRA CAMACHO,        ORDER   DENYING   MOTION   TO
ET AL                               DISMISS AMENDED COMPLAINT

                    Defendant.
_____/

**THIS MATTER** came before the Court on Ocean Bank's Motion to Dismiss the

Amended Complaint and the Court having reviewed the file, the motion, memoranda, and being

otherwise fully advised in the premises, it is

**ORDERED** and **ADJUDGED** that the Motion is **DENIED**. *Chodorow v Porto Vita*

*Ltd.*, 954 So. 2d 1240, 1242 (Fla. 3d DCA 2007); *see also Regis Ins. Co. v. Miami Management*

*Inc.*, 902 So. 2d 966, 968 (Fla. 4th DCA 2005)("A Court may not go beyond the four corners of

the complaint and must accept the facts alleged therein and exhibits attached as true, with all

reasonable inferences drawn in favor of the pleader."). A motion to dismiss is not a substitute

for a motion for summary judgment. *Roberts v. Children's Medical Services*, 751 So. 2d 672,

673 (Fla. 2d DCA 2000); *Baycon Industries v Shea*, 714 So. 2d 1094, 1095 (Fla. 2d DCA 1998).

Defendant has ten (10) days within which to file its answer.

**DONE** and **ORDERED** in Chambers at Miami, Miami-Dade County, Florida, on this
4 day of November, 2011.

                                        _____
                                        GILL S. FREEMAN
                                        CIRCUIT COURT JUDGE

cc:    Counsel / Parties of record       **Conformed Copy**

                                        NOV 0 4 2011

                                        **Gill S. Freeman**
                                        **Circuit Court Judge**



EXHIBIT
A

IN THE CIRCUIT COURT FOR THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION DIVISION

**CASE NO. 11-10900 CA 40**
**Consolidated for Discovery Only With**
**CASE NO. 11-10901 CA 40**

DINURO INVESTMENTS, LLC,
a Florida limited liability company,

          Plaintiff,

v.

FELISBERTO FIGUEIRA CAMACHO,
et al.,

          Defendants.

_____/

## GENERAL MAGISTRATE'S REPORT AND RECOMMENDATION
## GRANTING DEFENDANTS' MOTION FOR PROTECTIVE ORDER
## STAYING DISCOVERY AND ON PLAINTIFF'S MOTION TO OVERRULE
## OBJECTIONS TO SUBPOENA DUCES TECUM TO NON-PARTY
## SAN REMO HOMES AT HOMESTEAD, LLC

THIS CAUSE came on for hearing on December 8, 2011, pursuant to the Court's

Order of Referral on Defendants, Merici, LLC, Starmac, LLC, SR Acquisitions-Homestead,

LLC, SR Acquisitions, LLC, Romac, LLC, Felca, LLC, Flema LLC, and Javier Macedo

(collectively, "Objecting Defendants"), September 27, 2011, Motion for Protective Order

Staying Discovery, and on the Plaintiff, Dinuro Investments, Inc.'s, September 29, 2011,

Motion to Overrule Objections, and the undersigned, having heard argument of counsel and

having reviewed the Objecting Party's September 6, 2011, Notice of Objection to the

Page 1 of 4

Plaintiff's August 25, 2011, Notice of Intent and the proposed subpoena duces tecum to non-party San Remo Homes at Homestead, LLC, and the Objecting Party's October 12, 2011, Response, and Plaintiff's October 17, 2011, Reply, and having reviewed the discovery at issue and the file herein and being otherwise advised in the premises, it is

FOUND AND RECOMMENDED as follows:

**A.     The Objecting Defendants' Motion for Protective Order Staying Discovery**

1.     The Objecting Defendants' Motion for Protective Order is granted. The Magistrate finds good cause for a brief stay of discovery in light of the Court's Orders denying Ocean Bank's Motions to Dismiss and based upon the Court's indication that the rulings on the Objecting Defendants' pending Motions to Dismiss in the cases consolidated for discovery are anticipated within the next thirty days.

2.     Accordingly, discovery between and among the Plaintiff and the Objecting Parties only is stayed until **the earlier of ten days following entry of the Court's Order on the pending motions to dismiss or Monday, January 24, 2012.**

3.     Once the Court enters its Order on the pending Motions to Dismiss, the Plaintiff's counsel shall serve a copy of the Court's Order by fax to all counsel of record. Any party may then seek an expedited conference call case management conference with the Magistrate's office on the issue of discovery and discovery scheduling.

**B.     The Objecting Defendants' Objection to Plaintiff's Notice of Intent to Serve a Subpoena Duces Tecum to Non-Party San Remo Homes at Homestead, LLC**

CASE NO. 11-10900 CA 40 Consolidated for Discovery Only With CASE NO. 11-10901 CA 40

4.  The Magistrate reviewed the Objecting Defendants' objections to Plaintiff's August 25, 2011, proposed Subpoena Duces Tecum to non-party San Remo Homes at Homestead, LLC. Specifically, the Objecting Defendants raised objections that the twenty-two categories of documents (not including subparts) requested in Schedule "A" were overbroad, irrelevant (i.e., not calculated to lead to the discovery of admissible evidence), and "improper."

5.  In the event that the Objecting Parties' Motion to Dismiss is denied (or, for example, if the Court grants their Motion to Dismiss in part, without prejudice, and denies their Motion in part), the Magistrate will provide an expedited hearing on the merits of the Defendants' Objections and set a deadline for San Remo Homes at Homestead, LLC's service of objections and a hearing on those objections.

6.  Because this Report was prepared without the benefit of a hearing transcript, either side may seek rehearing or clarification by setting a conference call hearing with the Magistrate's office prior to the expiration of the deadline for exceptions.

7.  Absent timely exceptions pursuant to Fla. R. Civ. P. 1.490(h), the Objecting Defendants' Motion to Stay is granted until the earlier of (a) ten days following entry of the Court's Orders on the pending motions to dismiss, or (b) Monday, January 24, 2012.

(This Report is continued on the next page.)

Page 3 of 4

CASE NO. 11-10900 CA 40 Consolidated for Discovery Only With CASE NO. 11-10901 CA 40

This Report and Recommendation is filed with the Clerk of Court in Miami, Miami-

Dade County, Florida, this 8th day of December, 2011.

Elizabeth M. Schwabedissen
GENERAL MAGISTRATE

Conformed copies furnished via telecopy to:

Scott A. Burr, Esq.
Jorge E. Otero, Esq.
Steve Ebner, Esq.
Wilfredo A. Rodriguez, Esq.

Page 4 of 4

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION SECTION

CASE NO. 11-10901 CA 40

DINURO INVESTMENTS, LLC,

      Plaintiff,

v.

FELISBERTO FIGUEIRA CAMACHO, FELMA, LLC, MERICI, LLC, JAVIER MACEDO, ROMAC, LLC, STARMAC, LLC, SR ACQUISITIONS – FLORIDA CITY, LLC, SR ACQUISITIONS, LCC, ROMAC, LLC, FELCA, LLC, and OCEAN BANK,

      Defendants.

_____/

## DEFENDANT OCEAN BANK'S ANSWER & AFFIRMATIVE DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant, Ocean Bank ("Ocean Bank"), by and through undersigned counsel, hereby submits its Answer and Affirmative Defenses to the First Amended Complaint served by Plaintiff, Dinuro Investments, LLC ("Plaintiff"), states:

## ANSWER

Ocean Bank answers each of the like-numbered paragraphs of the First Amended Complaint as follows:

## NATURE OF THE CASE

1.    Ocean Bank admits only that Defendant, San Remo Homes at Florida City, LLC ("San Remo"), defaulted on a loan made by Ocean Bank to San Remo and that Ocean Bank subsequently sold the defaulted loan to Defendant, SR Acquisitions – Florida City, LLC ("SR"),

CASE NO. 11-10901 CA 40

at par value.  Ocean Bank is without knowledge of the remaining allegations of Paragraph 1 and those allegations are, therefore, denied.

2.       Ocean Bank denies that it "substantially assisted" any of the remaining Defendants in the purported "scheme" set forth in Paragraph 1.  Ocean Bank is without knowledge of the remaining allegations of Paragraph 2 and those allegations are, therefore, denied.

3.       Ocean Bank admits that Plaintiff seeks to recover monetary damages and attorneys' fees and costs, but denies that Plaintiff is entitled to the relief it seeks and denies the propriety of Plaintiff's causes of action.

## JURISDICTION AND VENUE

4.       Ocean Bank admits that Plaintiff seeks damages in excess of $15,000, but denies that Plaintiff is entitled to the relief it seeks.

5.       Ocean Bank admits it is subject to the Court's personal jurisdiction, but denies that it has "committed violations of Florida law in Florida" that bring it within this Court's personal jurisdiction.

6.       Admitted.

## THE PARTIES

7.       Without sufficient knowledge and, therefore, denied.

### The San Remo at Home-Florida City Corporate Structure

8.       Without sufficient knowledge and, therefore, denied.

9.       Without sufficient knowledge and, therefore, denied.

10.      Without sufficient knowledge and, therefore, denied.

11.      Without sufficient knowledge and, therefore, denied.

12.      Without sufficient knowledge and, therefore, denied.

2

CASE NO. 11-10901 CA 40

13.    Without sufficient knowledge and, therefore, denied.

**The SR-Florida City Corporate Structure**

14.    Without sufficient knowledge and, therefore, denied.

15.    Without sufficient knowledge and, therefore, denied.

16.    Without sufficient knowledge and, therefore, denied.

17.    Without sufficient knowledge and, therefore, denied.

18.    Without sufficient knowledge and, therefore, denied.

19.    Without sufficient knowledge and, therefore, denied.

**Other Co-Conspirator**

20.    Admitted.

## FACTUAL BACKGROUND

21.    Without sufficient knowledge and, therefore, denied.

22.    Without sufficient knowledge and, therefore, denied.

23.    Without sufficient knowledge and, therefore, denied.

24.    Without sufficient knowledge and, therefore, denied.

25.    Without sufficient knowledge and, therefore, denied.

26.    Without sufficient knowledge and, therefore, denied.

27.    Without sufficient knowledge and, therefore, denied.

28.    Admitted.

29.    Admitted.

30.    Paragraph 30 elicits a legal conclusion, with respect to which no response is required.

31.    Admitted.

32.    Admitted.

3

33.   Admitted.

34.   Ocean Bank admits only that Defendant, Javier Macedo ("Macedo"), is a director of Ocean Bank.  Ocean Bank denies that Macedo was permitted or able to trade on his inside position at Ocean Bank for any purpose.  Ocean Bank is without knowledge as to the remaining allegations of Paragraph 34 and those allegations are, therefore, denied.

35.   Ocean Bank admits only that it provided proposed commitment letters to San Remo's members in anticipation of the maturity of the subject loan.  Ocean Bank is without knowledge as to the remaining allegations of Paragraph 35 and those allegations are, therefore, denied.

36.   Ocean Bank admits only that San Remo's members did not execute the proposed commitment letters for renewal of the subject loan and that San Remo subsequently defaulted on the loan.

37.   Ocean Bank is without sufficient knowledge of the allegations of Paragraph 37 and those allegations are, therefore, denied.

38.   Admitted.

39.   Ocean Bank admits only that SR purchased the subject loan from Ocean Bank shortly after August 6, 2010.  Ocean Bank is without sufficient knowledge of the remaining allegations of Paragraph 39 and those allegations are, therefore, denied.

40.   Ocean Bank is without sufficient knowledge of the allegations of Paragraph 40 and those allegations are, therefore, denied.

41.   Ocean Bank is without sufficient knowledge of the allegations of Paragraph 41 and those allegations are, therefore, denied.

42.   Admitted.

43.     Ocean Bank admits that Plaintiff's principals requested certain financial information regarding Defendant San Remo, which Ocean Bank did not make available because was precluded from disclosing such information by applicable banking laws.  Ocean Bank is without sufficient knowledge of the remaining allegations of Paragraph 43 and those allegations are, therefore, denied.

44.     Ocean Bank admits that on or about August 5, 2011, it renewed its offer to Plaintiff's principals to purchase the subject loan based on the information previously provided by Ocean Bank to Plaintiff's principals.  Ocean Bank admits that Plaintiff and its principals requested additional time to evaluate the loan, which Ocean Bank did not provide.  Ocean Bank is without sufficient knowledge of the remaining allegations of Paragraph 44 and those allegations are, therefore, denied.

45.     Ocean Bank admits only that SR purchased the subject loan from Ocean Bank on or about August 9, 2010.  Ocean Bank denies that it provided favorable treatment to Macedo and/or SR.  Otherwise, denied.

46.     Without sufficient knowledge and, therefore, denied.

47.     Admitted.

48.     Admitted.

49.     Without sufficient knowledge and, therefore, denied.

50.     Ocean Bank denies any wrongdoing on its part.  Ocean Bank is without sufficient knowledge of the remaining allegations of Paragraph 50 and those allegations are, therefore, denied.

## CAUSES OF ACTION

## COUNT I – BREACH OF CONTRACT (FLORIDA LAW)

### (Plaintiff v. Defendants Merici and Starmac)

51.     Ocean Bank repeats its responses above to Paragraphs 1 through 50 of the First Amended Complaint as if set forth fully herein.

52 – 55.     The allegations of Paragraphs 52 through 55 do not apply to Ocean Bank and, therefore, no response is required.

## COUNT II – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING – FLORIDA LAW

### (Plaintiff v. Defendants Merici and Starmac)

56.     Ocean Bank repeats its responses above to Paragraphs 1 through 50 of the First Amended Complaint as if set forth fully herein.

57 – 60.     The allegations of Paragraphs 57 through 60 do not apply to Ocean Bank and, therefore, no response is required.

## COUNT III – BREACH OF FIDUCIARY DUTY – FLORIDA LAW

### (Plaintiff v. Defendants Merici and Starmac)

61.     Ocean Bank repeats its responses above to Paragraphs 1 through 50 of the First Amended Complaint as if set forth fully herein.

62 – 64.     The allegations of Paragraphs 62 through 64 do not apply to Ocean and, therefore, no response is required.

## COUNT IV – AIDING AND ABETTING BREACH OF FIDUCIARY DUTY – FLORIDA LAW

### (Plaintiff v. Defendants Camacho, Macedo, Romac, Felma, SR-Florida City, SR Acquisitions, Felca, and Ocean Bank)

65.     Ocean Bank repeats its responses above to Paragraphs 1 through 50 and 61 through 64 of the First Amended Complaint as if set forth fully herein.

66.     Without sufficient knowledge and, therefore, denied.

67.     Without sufficient knowledge and, therefore, denied.

68.     Without sufficient knowledge and, therefore, denied.

CASE NO. 11-10901 CA 40

69.     Without sufficient knowledge and, therefore, denied.

70.     Without sufficient knowledge and, therefore, denied.

71.     Ocean Bank repeats its responses above to Paragraphs 20, 42 and 44 of the First Amended Complaint as if set forth fully herein. Ocean Bank denies that it had knowledge of any breach of fiduciary duty or that it in any way substantially assisted in inducing such breach. Otherwise, denied.

72.     Denied.

## COUNT V – FRAUD AND DECEIT – FLORIDA LAW

### (Plaintiff v. Defendants Camacho, Macedo, Merici, and Starmac)

73.     Ocean Bank repeats its responses above to Paragraphs 1 through 50 and 61 through 64 of the First Amended Complaint as if set forth fully herein.

74 – 75.     The allegations of Paragraphs 74 and 75 do not pertain to Ocean Bank and, therefore, no response is required.

## COUNT VI – AIDING AND ABETTING FRAUD AND DECEIT – FLORIDA LAW

### (Plaintiff v. Felca, Felma, Roma, SR-Florida City, SR Acquisitions and Ocean Bank)

76.     Ocean Bank repeats its responses above to Paragraphs 1 through 50 and 73 through 75 of the First Amended Complaint as if set forth fully herein.

77.     Without sufficient knowledge and, therefore, denied.

78.     Without sufficient knowledge and, therefore, denied.

79.     Ocean Bank repeats its responses above to Paragraphs 42 through 45 of the First Amended Complaint as if set forth fully herein. Ocean Bank denies that it had knowledge of any fraud or that it in any way substantially assisted in inducing such breach. Otherwise, denied.

80.     Without sufficient knowledge and, therefore, denied.

81.     Denied.

7

## COUNT VII – CONSPIRACY – FLORIDA LAW

### (Plaintiff v. Defendants Camacho, Macedo, Starmac, Merici, Romac, Felma, Felca, Ocean Bank, SR-Florida City and SR Acquisitions)

82.     Ocean Bank repeats its responses above to Paragraphs 1 through 50, 61 through 64, and 73 through 75 of the First Amended Complaint as if set forth fully herein.

83.     Denied as to Ocean Bank.  Ocean Bank is without sufficient knowledge of the remaining allegations of Paragraph 83 and those allegations are, therefore, denied.

84.     Denied as to Ocean Bank.  Ocean Bank is without sufficient knowledge of the remaining allegations of Paragraph 84 and those allegations are, therefore, denied.

85.     Denied as to Ocean Bank.  Ocean Bank is without sufficient knowledge of the remaining allegations of Paragraph 85 and those allegations are, therefore, denied.

### PRAYER FOR RELIEF

Ocean Bank denies that Plaintiff is entitled to the relief it seeks from Ocean Bank and denies any allegations to that effect.

### JURY DEMAND

Because the nature of the relief Plaintiff seeks and the nature of its underlying claims is derivative by nature, Plaintiff is not entitled to a trial by jury on any of its claims.

Any allegation or averment in the First Amended Complaint not specifically admitted above is hereby denied.

### AFFIRMATIVE DEFENSES

Ocean Bank asserts the following affirmative defenses:

### First Affirmative Defense

Plaintiff's claims are barred because it lacks standing to assert its claims, which are derivative claims by nature.  More specifically, Plaintiff's claims are based upon injury sustained

CASE NO. 11-10901 CA 40

by San Remo, of which it was a member. Plaintiff alleges that by purchasing the subject loan from Ocean Bank and seeking to enforce the loan documents in question, Defendants Merici, LLC ("Merici") and Starmac, LLC ("Starmac"), as well as their related entities, have in essence usurped an opportunity that was rightfully San Remo's—i.e., the opportunity to develop the property that served as collateral for the subject loan and derive the profits therefrom. Plaintiff alleges that Merici, Starmac and their related entities effectively diluted Plaintiff's interest in San Remo by defaulting on the subject loan causing San Remo to lose the property in question to SR, of which Plaintiff is not a member. Plaintiff's claims are derivative in nature and cannot form the basis of direct claims by Plaintiff. Accordingly, Plaintiff lacks standing to assert its claims as a matter of law.

## Second Affirmative Defense

Plaintiff's claims as to Ocean Bank are barred as a matter of law since Plaintiff has sustained no damages as a result of Ocean Bank's sale of the subject loan to SR. More specifically, Plaintiff admits that any damages it may have suffered were the result of Merici and Starmac electing to default on the loan that is the subject of this litigation, and not the subsequent sale of said loan to SR. SR's subsequent enforcement of the terms of the loan is no different than if Ocean Bank had elected to enforce the underlying loan itself rather than sell the loan. Had Ocean Bank elected instead to enforce the obligations set forth in the loan documents, as it clearly had the right to do, Plaintiff (derivatively through San Remo) would have sustained the same damages it now claims it suffered as a result of Ocean Bank's sale of the loan. That is, San Remo would have still lost the property that served as collateral for the loan and Plaintiff's interest in San Remo would have been diluted accordingly. Plaintiff's claims are barred as to Ocean Bank because Plaintiff has sustained no damages as a result of Ocean Bank's conduct.

CASE NO. 11-10901 CA 40

### Third Affirmative Defense

Plaintiff's claims as to Ocean Bank are barred to the extent they are founded upon allegations that Ocean Bank demonstrated favorable treatment to Macedo and/or SR in its sale of the loan. To the contrary, Ocean Bank demonstrated favorable treatment to Plaintiff and its principals, the Romagloni Brothers, by offering them the opportunity to purchase the loan upon receipt of an offer by SR and its principals to purchase the loan and prior to the closing of such purchase. Despite offering Plaintiff and its principals the opportunity to purchase the loan on two separate occasions, Plaintiff demanded that Ocean Bank provide confidential financial information to Plaintiff and its principals which Ocean Bank was not authorized to release to Plaintiff or its principals as a matter of law and which information was not provided to SR or its principals and related entities during their own evaluation of the purchase of the loan. Notwithstanding, Ocean Bank demonstrated favorable treatment to Plaintiff and its principals by offering them the opportunity to purchase the loan, presumably to the detriment of Macedo, SR, Merici, Starmac and their related entities. Accordingly, Plaintiff's claims are barred to the extent they rely on allegations that Ocean Bank demonstrated favorable treatment to SR and/or Macedo, and their related parties, as such allegations are categorically untrue.

### Fourth Affirmative Defense

Plaintiff's claims are barred under the doctrine of unclean hands. Plaintiff cannot complaint about Ocean Bank's sale of the subject loan to SR when Plaintiff's principals were engaged in discussions to complete the identical transaction on Plaintiff's and their own behalf. Plaintiff's contention that the sale of the loan to SR was a breach of duty (contractual or otherwise), or fraudulent, is inconsistent with Plaintiff's own admitted attempts to purchase the loan to the detriment of Merici, Starmac, Macedo and their related entities and parties.

Plaintiff's admitted efforts to purchase the loan for itself or its members demonstrate their unclean hands.

### Fifth Affirmative Defense

Plaintiff's claims are barred as to Ocean Bank because of the non-existence of any underlying tort or wrong by Ocean Bank. Plaintiff contends that Ocean Bank favored SR and/or Macedo by refusing to provided confidential financial information regarding San Remo to Plaintiff's principals for their evaluation of their own purchase of the loan. However, Plaintiff was precluded as a matter of law from disclosing such information and its refusal to do so cannot form the basis of any claims against Ocean Bank as a matter of law.

### Sixth Affirmative Defense

Plaintiff's claims are barred by its failure to mitigate appropriately their damages. Specifically, Plaintiff and its principals were provided two separate opportunities to purchase the loan themselves and refused to do so amid unreasonable demands that Ocean Bank provide confidential financial information that it was precluded from disclosing. Plaintiff had an opportunity to mitigate its damages and failed to do so by refusing to purchase the loan.

WHEREFORE, Defendant, Ocean Bank, demands that the Court enter judgment in its favor, giving Plaintiff nothing, and awarding Ocean Bank its attorneys' fees and costs in this action, and for such further relief as the Court deems just and proper.

CASE NO. 11-10901 CA 40

AVILA RODRIGUEZ, HERNANDEZ
MENA & FERRI, LLP
*Attorneys for Defendant Ocean Bank*
2525 Ponce de Leon Boulevard, Suite 1225
Coral Gables, Florida 33134
Telephone: (305) 779-3560
Facsimile: (305) 779-3561
Email: frodriguez@arhmf.com
Email: erodriguez@arhmf.com

By: _____
Wilfredo A. Rodriguez
Florida Bar No: 334936
Eduardo F. Rodriguez
Florida Bar No: 036423

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 22nd day of December, 2011, a true and correct copy of

the foregoing was furnished by U.S. Mail upon: **Carlos F. Concepcion, Esq., Scott A. Burr,**

**Esq. and Patricia M. Montes de Oca, Esq., Concepcion Martinez & Bellido**, 255 Aragon

Avenue, Second Floor, Coral Gables, Florida 33134; **Jorge E. Otero, Esq., Jorge E. Otero &**

**Associates, P.A.** 75 Valencia Avenue, Second Floor, Coral Gables, Florida 33134; **Joshua W.**

**Dobin, Esq. and Eric Ostroff, Esq., Meland Russin & Budwick, P.A.**, 3000 Southeast

Financial Center, 200 South Biscayne Boulevard, Miami, Florida 33131; and **Steven Ebner,**

**Esq., Shutts & Bowen, LLP**, 1500 Miami Center, 201 South Biscayne Boulevard, Miami,

Florida 33131.

By: _____
Eduardo F. Rodriguez

12

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

DINURO INVESTMENTS, LLC

Complex Business Litigation Division
Case No. 11 – 10900 -CA-40
Case No. 11-10901 – CA -40

Plaintiffs,

vs.

FELISBERTO FIGUEIRA CAMACHO, ET AL

ORDER GRANTING MOTIONS TO DISMISS AMENDED COMPLAINT

Defendant.

/

**THIS MATTER** came before the Court on all Defendants', except Ocean Bank, and Camacho who has not been served, Motions to Dismiss the Amended Complaint and the Court having reviewed the file, the motion, memoranda, and being otherwise fully advised in the premises, it is

**ORDERED** and **ADJUDGED** that the Motions are **GRANTED** on the grounds asserted.

Plaintiff shall have ten (10) days from the date hereof within which to file its Second Amended Complaint.

**DONE** and **ORDERED** in Chambers at Miami, Miami-Dade County, Florida, on this 28 day of December, 2011.

_____
GILL S. FREEMAN
CIRCUIT COURT JUDGE

cc:     Counsel / Parties of record

Conformed Copy

DEC 2 8 2011

Gill S. Freeman
Circuit Court Judge

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION DIVISION

DINURO INVESTMENTS, LLC, a Florida limited    CASE NO. 11-cv-10901 CA 40
liability company,
           Plaintiff,
v.

FELISBERTO FIGUEIRA CAMACHO; FELMA,
LLC, a Florida limited liability company; MERICI,
LLC, a Florida limited liability company; JAVIER
MACEDO; ROMAC, LLC, a Florida limited
liability company; STARMAC, LLC, a Florida
limited liability company; SR ACQUISITIONS –
FLORIDA CITY, LLC, a Florida limited liability
company; SR ACQUISITIONS, LLC, a Florida
limited liability company; ROMAC, LLC, a
Delaware limited liability company; FELCA, LLC,
a limited liability company; and OCEAN BANK,

           Defendants,
_____/

**ORDER GRANTING PLAINTIFF DINURO'S UNOPPOSED MOTION FOR EXTENSION OF
TIME TO FILE THE SECOND AMENDED COMPLAINT**

       THIS CAUSE having come before me on Plaintiff Dinuro Investments LLC's ("Dinuro")

Unopposed Motion for Extension of Time to file the Second Amended Complaint (the "Motion") and,

having reviewed the Motion and being duly advised in the premises, it is hereby ORDERED AND

ADJUGED as follows:

      1.     Plaintiff Dinuro's Motion is GRANTED.

      2.     Plaintiff Dinuro shall file its Second Amended Complaint, on or before January 19, 2012.

    DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on 01/06/12
5:34 PM.

                             *Gill S. Freeman*

                            GILL S. FREEMAN
                            CIRCUIT COURT JUDGE

CASE NO. 11-10900-CA 40

The movant shall, using any method(s) mandated by the Florida Rules of Civil Procedure serve all parties/counsel of record with a true and correct copy of this Order IMMEDIATELY and file proof of service with the Clerk.

Signed and stamped original Order sent to court file by Judge Freeman's staff. Electronic copy furnished ONLY to any below listed recipient(s) by facsimile whose facsimile number(s) is/are CORRECTLY FORMATTED and listed herein.

Copies furnished to:

Scott A. Burr, Esq.  [Fax: Scott A. Burr@305-444-3665]
Steve Ebner, Esq.  [Fax: Steve Ebner@305-347-7760]
Eduardo F. Rodriguez, Esq.  [Fax: Eduardo F. Rodriguez@305-779-3561]

2

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION
DIVISION

DINURO INVESTMENTS, LLC, a Florida limited
liability company,

        Plaintiff,

v.

FELISBERTO FIGUEIRA CAMACHO;
FELMA, LLC, a Florida limited liability
company; MERICI, LLC, a Florida limited liability
company; JAVIER MACEDO;
ROMAC, LLC, a Florida limited liability
company; STARMAC, LLC, a Florida limited
liability company; SR ACQUISITIONS –
FLORIDA CITY, LLC, a Florida limited liability
company; SR ACQUISITIONS, LLC, a Florida
limited liability company; ROMAC, LLC, a
Delaware  limited liability company;
FELCA, LLC, a limited liability company; and
OCEAN BANK,

        Defendants,

CASE NO. 11-cv-10901 CA 40

_____/

## PLAINTIFF DINURO'S REPLY TO OCEAN BANK'S AFFIRMATIVE DEFENSES

Plaintiff Dinuro Investments, LLC ("Dinuro") replies to Defendant Ocean Bank's affirmative defenses as follows:

### First Affirmative Defense

The First Affirmative Defense is denied.

### Second Affirmative Defense

The Second Affirmative Defense is denied.

## Third Affirmative Defense

The Third Affirmative Defense is denied.

## Fourth Affirmative Defense

The Fourth Affirmative Defense is denied.

## Fifth Affirmative Defense

The Fifth Affirmative Defense is denied.

## Sixth Affirmative Defense

The Sixth Affirmative Defense is denied.

WHEREFORE, Plaintiff Dinuro demands that judgment be entered in its favor and against Defendant Ocean Bank.

Respectfully submitted,

**CONCEPCION MARTINEZ & BELLIDO**
*Attorneys for DINURO INVESTMENTS, LLC,*
255 Aragon Avenue, Second Floor
Coral Gables, Florida 33134
Tel.: (305) 444-6669; Fax: (305) 444-3665

By: _____
      CARLOS F. CONCEPCION
      Florida Bar. No. 386730
      SCOTT A. BURR
      Florida Bar No. 99325

and

JORGE E. OTERO & ASSOCIATES, P.A.
75 Valencia Avenue, Second Floor
Coral Gables Florida 33134
Tel.:  (305) 567-9000; Fax:  (305) 443-0164

By: _____
      JORGE E. OTERO
      Florida Bar No. 438596

2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by

U.S. Mail this January 11, 2012 to:

Steve Ebner, Esq.                    Wilfredo A. Rodriguez, Esq.
Shutts & Bowen, LLP                  Eduardo F. Rodriguez, Esq.
1500 Miami Center                    Avila, Rodriguez, Hernandez, Mena & Ferri, LLP.
201 South Biscayne Blvd.             2525 Ponce de Leon Boulevard, Suite 1225
Miami, FL. 33131                     Coral Gables, FL. 33134
Fax: (305) 347-7760                  Fax: (305) 779-3561


_____
SCOTT A. BURR

Concepción Martinez & Bellido, Attorneys at Law
255 Aragon Avenue • 2nd Floor • Coral Gables, FL 33134 • T 305.444.6669 • F 305.444.3665
www.cfclaw.com

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION
DIVISION

ROBERTO ROMAGNOLI, MARCO
ROMAGNOLI, and DINURO INVESTMENTS,
LLC, a Florida limited liability company,

CASE NO. 11-cv-10901 CA 40

Consolidated with

        Plaintiff,

CASE NO. 11-cv-10900 CA 40

v.

FELISBERTO FIGUEIRA CAMACHO; FELMA,
LLC, a Florida limited liability company; MERICI,
LLC, a Florida limited liability company; JAVIER
MACEDO; ROMAC, LLC, a Delaware limited
liability company; STARMAC, LLC, a Florida
limited liability company; SR-ACQUISITIONS,
LLC, a Florida limited liability company; SR
ACQUISITIONS – FLORIDA CITY, LLC, a
Florida limited liability company; SR
ACQUISITIONS-HOMESTEAD, LLC; FELCA,
LLC, a limited liability company; and OCEAN
BANK,

        Defendants.

_____/

## SECOND AMENDED COMPLAINT

    Plaintiffs Roberto Romagnoli ("R. Romagnoli"), Marco Romagnoli ("M. Romagnoli"),

and Dinuro Investments, LLC ("Dinuro") sue Felisberto Figueira Camacho ("Camacho"), Javier

Macedo Rodriguez ("Macedo"), Merici, LLC ("Merici"), Starmac, LLC ("Starmac"), SR

Acquisitions, LLC ("SR Acquisitions"), SR Acquisitions-Florida City, LLC (SR-Florida City"),

SR Acquisitions-Homestead, LLC ("Homestead"), Romac, LLC (Romac"), Felca, LLC ("Felca")

and Ocean Bank ("the Bank"), and state: