UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:12-cv-20673-DLG

DINURO INVESTMENTS, LLC, a Florida
limited     liability     company,     [ROBERTO
ROMAGNOLI and MARCO ROMAGNOLI,]

       Plaintiff(s),

vs.

FELISBERTO    FIGUEIRA    CAMACHO;
FELMA, LLC;  MERICI, LLC;  JAVIER
MACEDO; ROMAC, LLC; STARMAC, LLC;
SR         ACQUISITIONS,         LLC;         SR
ACQUISITIONS– FLORIDA CITY, LLC; SR
ACQUISITIONS–        HOMESTEAD,        LLC;
FELCA, LLC; and OCEAN BANK,

       Defendants.

_____/

### DEFENDANTS MERICI, STARMAC, SR FLORIDA CITY, SR HOMESTEAD, ROMAC, FELCA, SRA, FELMA, AND MACEDO'S MOTION TO DISMISS, WITH PREJUDICE, THE SECOND AMENDED COMPLAINT, SUPPORTING MEMORANDUM OF LAW (ALTERNATIVELY, MOTION TO STRIKE) AND REQUEST FOR ATTORNEYS' FEES AND COSTS[1]

Defendants Merici, LLC ("Merici"); Starmac, LLC ("Starmac"); SR Acquisitions –

Florida City, LLC ("SR Florida City"); SR Acquisitions – Homestead, LLC ("SR Homestead");

Romac, LLC ("Romac"); Felma, LLC ("Felma"); SR Acquisitions, LLC ("SRA"); Felca, LLC

("Felca"); and Javier Macedo ("Macedo") (hereinafter collectively referred to as the

"MSSSRFSFM Defendants"), by their undersigned counsel and pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure, hereby move to dismiss, with prejudice, the Second Amended

Complaint filed by Plaintiff Dinuro Investments, LLC ("Dinuro") and purported Plaintiffs Marco

Romagnoli and Roberto Romagnoli (jointly, the "Romagnoli brothers") and submit their

---

[1] It should be noted that Defendant Felisberto Figueira Camacho ("Camacho") has not yet been served with legal process.  Consequently, no response is due on his behalf.

1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI   FORT LAUDERDALE   WEST PALM BEACH   ORLANDO   TAMPA   TALLAHASSEE   AMSTERDAM

supporting memorandum of law.  Alternatively, in the unlikely event that the Court does not dismiss the Second Amended Complaint in its entirety, the MSSSRFSFM Defendants move to strike the improper portions of Plaintiff's Second Amended Complaint.  The grounds for this motion are as follows:

## INTRODUCTION

While the history of the proceedings that led to the filing of the Second Amended Complaint is a little complicated, the problem it presents is very simple – Plaintiff(s) lack standing and do not have any viable claims against the MSSSRFSFM Defendants.  In fact, Miami-Dade Circuit Court Judges Gil Freeman and Pedro Echarte as well as Florida's Third District Court of Appeal have all entered Dismissal Orders, Final Judgments and/or a Writ of Mandamus against Dinuro in this action and/or related actions.

Dinuro is under the mistaken impression that simply repackaging its already-examined and rejected allegations in a second "amended" pleading (i.e., its third pleading) is sufficient to overcome Judge Freeman's December 28, 2011 Order dismissing the First Amended Complaint ("FAC").[2]  In fact, Counts I, II and VII of the SAC are virtually identical to Counts I/II, III and VII of the FAC.  Similarly, apart from including certain information about a prior successful business transaction between Merici, Starmac and Dinuro (SAC, ¶¶ 26-30), nearly each and every one of the preliminary general allegations from the SAC are repeated verbatim from the FAC.  (*Compare* FAC, ¶¶ 1-50 and SAC, ¶¶3-24, 31-60, 62-65, and 67).  Accordingly, Plaintiff(s)' claims fail for each of the reasons asserted in the MSSSRFSFM Defendants'

---

[2]   Copies of Judge Freeman's Order dismissing all of the counts asserted against the MSSSRFSFM Defendants as well as the original Verified Complaint, the Motion to Dismiss the original Verified Complaint, the Amended Complaint and the Motions to Dismiss the Amended Complaint in the state court actions, Case No. 11-10901-CA-40 (the "Florida City Action") and Case No. 11-10900-CA-40 (the "Homestead Action"), are attached hereto as Composite Exhibits 1 and 2, respectively.

1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI    FORT LAUDERDALE    WEST PALM BEACH    ORLANDO    TAMPA    TALLAHASSEE    AMSTERDAM

previously granted Motion to Dismiss. Namely, Plaintiff(s) have no standing to assert any causes of action against the MSSSRFSFM Defendants and have not alleged, and cannot possibly allege, that they suffered any damages. Moreover, Plaintiff(s) completely ignore well-established Florida law regarding corporate structure and form.

In its Second Amended Complaint ("SAC"), Plaintiff(s) virtually ignore nearly a year of litigation activity where multiple courts have held that Dinuro has no standing and is not entitled to the relief it seeks. Instead, Plaintiff(s) simply summarize the extensive, contentious and protracted litigation in only two (2) perfunctory paragraphs. *See* SAC, ¶¶ 65, 66. However, stripped of its increasingly inflammatory language, the SAC is virtually identical to the original Verified Complaints as well as the First Amended Complaints, all of which have been judicially determined to be deficient. Accordingly, the SAC – just like the FAC – should be dismissed.

### A.   Procedural and Factual Background.

On or about February 10, 2005, Dinuro, Merici, and Starmac formed San Remo Homes at Florida City, LLC (the "Florida City Company"). Dinuro, Merici and Starmac are all Members of the Florida City Company and each one of them, *inter alia*, owns 50 shares of the Florida City Company, has equal voting rights, and is not required to make additional capital contributions. (See ¶¶ 3.1, 4.1, 4.2 and 6.7 of the Florida City Operating Agreement, attached to the SAC as Exhibit A). On May 31, 2005, in order to purchase a parcel of real estate in Florida City (the "FC Property"), the Florida City Company obtained a loan by executing, *inter alia*, a promissory note in favor of Ocean Bank (the "Florida City Note") (SAC ¶¶ 37-39).

Similarly, on or about July 11, 2005, Dinuro, Merici and Starmac formed San Remo Homes at Homestead, LLC (the "Homestead Company") on nearly identical terms as the Florida City Company, (See ¶¶ 4.1 and 6.7 of the Homestead Operating Agreement, attached to the SAC as Exhibit B), to purchase a second parcel of real estate in Homestead (The "H Property"). (SAC

3

1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • **ph** 305.358.6300 • **fx** 305.381.9982 • **www.shutts.com**

MIAMI    FORT LAUDERDALE    WEST PALM BEACH    ORLANDO    TAMPA    TALLAHASSEE    AMSTERDAM

¶ 40).  On September 29, 2005, the Homestead Company obtained a loan by executing, *inter alia*, a promissory note in favor of Ocean Bank (the "Homestead Note").  (SAC, ¶ 47).

From 2005 to 2009, in order to avoid default, the Florida City Company and the Homestead Company (jointly, the "Companies") modified the Florida City Note and the Homestead Note (jointly, the "Notes"), several times with a final maturity date of March 29, 2010.[3]  (SAC, ¶ 49-50).  As part of certain of the modifications, including the last modification, Ocean Bank (the "Bank") required various payments from the Companies (e.g., curtailment of principal, interest reserve and extension fee).  (See, e.g., SAC, Ex. C, ¶ 3, 4, 9, 10).  However, because the Companies' only real assets were the FC Property and the H Property (jointly, the "Properties"), which did not produce any income as they had not been developed (and the market value of the Properties had dramatically decreased), the payment requirement essentially forced the Members of the Companies (and/or their principals) to make additional voluntary capital contributions to satisfy the conditions of each modification.  Despite this requirement, Dinuro's principals claimed that they were unable to pay their share of the payment requirements for Dinuro in connection with the last modification and, therefore, asked the other Members of the Companies to advance Dinuro's share (i.e., entitling Dinuro to the potential benefits of the transaction without any additional risk or expense).  (*See*, FAC ¶ 35 (stating that in the past Defendants Macedo and Camacho had advanced Dinuro's fees)).  As the final maturity date approached for the Notes, Merici and Starmac, who were not obligated to advance Dinuro's fee under the Operating Agreements, (SAC, Ex. A, ¶ 4.2; Ex. B, ¶ 4.2) were not willing to further

---

[3] The documents evidencing the modifications and amendments to the Notes over nearly four years are outlined in the original Verified Complaints in the Foreclosure Actions.

1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI   FORT LAUDERDALE   WEST PALM BEACH   ORLANDO   TAMPA   TALLAHASSEE   AMSTERDAM

fund their partner and the Notes went into Default.[4]  On or about May 11, 2010, the Bank sent the Companies a written notice of default. (SAC, ¶ 55).

As a result of the default (due to Dinuro's refusal to provide additional capital contributions), the other Members of the Companies were essentially left with few options. They could decide to voluntarily advance Dinuro's fees (as they had done on the previous modification) with little or no prospect of repayment.  Although this option would enable the Companies to bring the Notes out of default, it would be solely at the personal and voluntary expense of Merici and Starmac.  Alternatively, they could allow the Companies to remain in default on their obligations to the Bank.  This option was equally undesirable because the Companies did in fact owe the money to the Bank, there were personal guaranties on the Notes, and Macedo was one of the Bank's directors.  Another option was to restructure the debt by creating new entities to buy the defaulted Notes from the Bank.  However, to avoid a recurrence of the challenges presented to the Companies, the provisions relating to additional capital contributions needed to be changed in order to prevent any Member from being able to default on its share of the obligations while simultaneously reaping the benefits of the honorable conduct of others.  On those more prudent terms the beneficial owners of Starmac and Merici were willing to participate, but Dinuro declined to participate in the new entity. (*See* SAC, ¶¶ 56, 57). As a result, the decision was made to create SR Florida City and SR Homestead in order to purchase the Notes from the Bank.  On or about August 9, 2011, SR Florida City and SR Homestead purchased the Notes from the Bank for **100% of the outstanding Note amount** (i.e., at "**par value**"), even though the Notes were already in default and the collateralized Property was worth far less than the amount owed, and the Bank "cleared the  . . . **bad debt** from its

---

[4] Though Merici voluntarily made a loan for Dinuro's share of the additional capital required for the previous modifications, it did not want to do it again. (FAC, ¶ 35).

1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI   FORT LAUDERDALE   WEST PALM BEACH   ORLANDO   TAMPA   TALLAHASSEE   AMSTERDAM

balance sheet,". (See original Florida City Verified Complaint ¶¶ 1, 27, 31 and 35 (emphasis added), original Homestead Verified Complaint ¶¶ 1, 27, 31 and 35 (emphasis added), and SAC ¶¶ 58, 62-64).[5]

Prior to SR Florida City and SR Homestead's purchase of the Notes, Dinuro alleges that its principals were approached and provided with the opportunity to participate in the purchase of the defaulted Notes from the Bank (SAC ¶ 56, Exhibit D).   However, they decided not to participate in either the SR Florida City or the SR Homestead venture (SAC ¶ 56-57).   Instead, Dinuro decided to make its own attempt to purchase the Notes directly from the Bank (*See* original Verified Complaint ¶ 34 and SAC ¶¶ 58-61).   Unlike the SR Florida City and the SR Homestead purchases, however, Dinuro did not disclose its intentions to the other members of the Companies and/or their principals and did not offer to include the Companies and/or its members.

---

[5] Any objection by Dinuro to the MSSSRFSFM Defendants' use of the term "par value" or other allegations asserted in Dinuro's original Verified Complaint should be rejected.  Though Florida courts have not addressed whether a verified pleading which has been subsequently amended is admissible as a judicial admission, most courts that have considered the issue found that the original verified pleading may be used a judicial admission, or at a minimum as evidence in the proceeding.  *See, e.g., Konstant Products, Inc. v. Liberty Mut. Fire Ins. Co.*, 401 Ill. App. 3d 83, 86, 929 N.E.2d 1200, 1203 (Ill. App. Ct. 2010) ("A party's admissions contained in an original verified pleading are judicial admissions that still bind the pleader even after the filing of an amended pleading that supercedes the original."); *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 736 (7th Cir. 2002) (stating that "under some circumstances, a party may offer earlier versions of its opponent's pleadings as evidence of the facts therein").  *See also* 52 A.L.R.2d 516 (Originally published in 1957) ("an admission in an original verified pleading will remain binding as a judicial admission even after the filing of an amended pleading which supersedes the original unless the amended pleading discloses that the original pleading was made through mistake or inadvertence.")

1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • **ph** 305.358.6300 • **fx** 305.381.9982 • **www.shutts.com**

MIAMI   FORT LAUDERDALE   WEST PALM BEACH   ORLANDO   TAMPA   TALLAHASSEE   AMSTERDAM

## B. **The Foreclosure Actions**[6]

On February 16, 2011, SR Florida City initiated a foreclosure action against the Florida City Company, in the action styled *SR Acquisitions – Florida City, LLC v. San Remo Homes at Florida City*, LLC, Case No. 11-05226 CA 13 in the 11th Judicial Circuit, in and for Miami-Dade County, FL (the "FC Foreclosure Action"), based upon the Florida City Company's default on the Note. (SAC, ¶ 65).[7] On the same date, SR Homestead initiated a foreclosure action against the Homestead Company, in the action styled *SR Acquisitions – Homestead, LLC v. San Remo Homes at Homestead*, LLC, Case No. 11-05222 CA 20 in the 11th Judicial Circuit, in and for Miami-Dade County, FL (the "H Foreclosure Action"), based upon the Homestead Company's default on the Note. (SAC, ¶ 65).[8] The Companies did not respond to the Complaints in the H Foreclosure Action or the FC Foreclosure Action (jointly, the "Foreclosure Actions") as they, *inter alia*, clearly owed the money, there were no legitimate defenses and they did not have sufficient funds to retain counsel. Consequently, on March 14, 2011, SR Florida City and SR Homestead obtained clerk's defaults against the Companies based upon their failure to respond to the Complaint.

---

[6] Each of the claims raised in this action arise from and are inextricably linked to the Foreclosure Actions. Accordingly, the MSSSRFSFM Defendants respectfully request that this Court take judicial notice of the Foreclosure Actions. *See Olmstead v. Humana, Inc.*, 154 Fed. Appx. 800, 803 (11th Cir. 2005) ("A court may take judicial notice of another court order, at least for the limited purpose of recognizing the judicial action taken or the subject matter of the litigation.") (citing *Young v. City of Augusta, Ga. Through DeVaney*, 59 F.3d 1160, 1166 n. 11 (11th Cir.1995) (taking judicial notice that the district court denied a motion for summary judgment in another action)).

[7] The FC Foreclosure Action was assigned to the Honorable Pedro P. Echarte. Attached hereto as Exhibit 3 is a copy of the docket in the FC Foreclosure Action.

[8] The H Foreclosure Action was assigned to the Honorable Ronald Dresnick. Attached hereto as Exhibit 4 is a copy of the docket in the H Foreclosure Action.

7

1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • **ph** 305.358.6300 • **fx** 305.381.9982 • **www.shutts.com**

MIAMI    FORT LAUDERDALE    WEST PALM BEACH    ORLANDO    TAMPA    TALLAHASSEE    AMSTERDAM

On March 8, 2011, without even being a party to the Foreclosure Actions, Dinuro served a motion for **Dinuro** to intervene (the "Motion to Intervene") in the Foreclosure Actions and, on March 9, 2011, served a motion for an extension of time for **Dinuro** to file a response to the Complaint. On April 7, 2011, Dinuro filed "Counterclaims" in the Foreclosure Actions against the SR Homestead, SR Florida City, Merici, Starmac, Macedo, and Camacho (as well as Ocean Bank) asserting similar allegations to those asserted by Dinuro against the MSSSRFSFM Defendants in this action.[9]

On June 16, 2011, after reviewing and analyzing, *inter alia*, Dinuro's Motion to Set Aside the Clerk's Default (the "Vacate Default Motion"), SR Florida City's Motion for Final Judgment (the "Final Judgment Motion") and Dinuro's Memorandum in Opposition to the Final Judgment Motion, as well as affording SR Florida City and Dinuro time for oral argument, Judge Echarte properly denied the Vacate Default Motion and granted the Final Judgment Motion in the FC Foreclosure Action. In the Final Judgment, the foreclosure sale date for the underlying property was set for July 22, 2011.

In addition, on June 16, 2011, Judge Gil Freeman heard oral argument on Dinuro's Motion to Set Aside the Clerk's Default (the "Other Vacate Motion"), SR Homestead's Motion for Final Judgment (the "Other Final Judgment Motion") and Dinuro's Memorandum in Opposition to the Final Judgment Motion in the H Foreclosure Action.[10] After entertaining oral argument from SR Homestead and Dinuro, Judge Freeman reserved decision.

Shortly thereafter, and even though it was post-final judgment, Dinuro was somehow able to have the FC Foreclosure Action transferred from Judge Echarte to Judge Freeman. After

---

[9] Copies of Dinuro's "Counterclaims" in the Foreclosure Actions are attached hereto as Composite Exhibit 5.

[10] Shortly before this date, Dinuro was somehow able to have the H Foreclosure Action transferred from Judge Dresnick to Judge Freeman.

1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI   FORT LAUDERDALE   WEST PALM BEACH   ORLANDO   TAMPA   TALLAHASSEE   AMSTERDAM

moving the action to what it perceived to be a more favorable judge, Dinuro filed an untimely Motion for Rehearing of the Final Judgment (the "Rehearing Motion").  On July 21, 2011, Judge Freeman heard oral argument on Dinuro's Motion For Rehearing on the Final Judgment entered by Judge Echarte.  At that hearing, Judge Freeman postponed the sale date and reserved decision on the underlying issues stating that she would issue a decision shortly.

As a result of Dinuro's procedural maneuvers in the FC Foreclosure Action, it successfully delayed SR Florida City's properly scheduled foreclosure sale for several months.  As a result, SR Florida City petitioned Florida's Third District Court of Appeal (the "Third DCA") for relief on a Petition for Writ of Mandamus.

On November 30, 2011, The Third DCA ruled that Dinuro did not have standing to raise the alleged counterclaims asserted in the FC Foreclosure Action in *SR Acquisitions-Florida City, LLC v. San Remo Homes at Florida City, LLC*, -- So. 3d --, 2011 WL 5964348 (Fla. 3d DCA Nov. 30, 2011).[11]

Shortly thereafter, and based on the Third DCA decision, Judge Freeman denied all of Dinuro's outstanding motions and entered Final Judgments in favor of both SR Florida City and SR Homestead in the two Foreclosure Actions.

### B. <u>The Current Actions</u>

On or about April 7, 2011, approximately one month after Dinuro began to improperly raise arguments in the Foreclosure Actions, Dinuro initiated the instant state court actions (the "Current Actions") against Camacho, Macedo, Merici, Starmac, SR Florida City and the Bank in Case No. 11-10901-CA-40 and Camacho, Macedo, Merici, Starmac, SR Homestead and the Bank in Case No. 11-10900-CA-13, alleging various causes of action stemming from SR Florida

---

[11] A true and correct copy of the Third DCA decision is attached hereto as Exhibit 6.

1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI   FORT LAUDERDALE   WEST PALM BEACH   ORLANDO   TAMPA   TALLAHASSEE   AMSTERDAM

City and SR Homestead's purchase of the Notes.  The allegations in Dinuro's original Verified Complaints were substantially similar to the "Counterclaims" raised in the Foreclosure Actions.

On June 20, 2011, Defendants SR Florida City, Merici and Starmac (collectively, "SRMS") filed their motion to dismiss Dinuro's original Verified Complaint.[12]   On July 25, 2011, instead of opposing SRMS' motion to dismiss the Complaint, Dinuro recognized its deficient pleading and filed its First Amended Complaint.

Although Dinuro added a number of Defendants to the FAC, including Felca, Felma, Romac, and SRA, it was similarly deficient.  Consequently, on December 28, 2011, based upon, *inter alia*, Dinuro's lack of standing, improper pleading and the recent ruling by the Third DCA in the FC Foreclosure Action, Judge Freeman dismissed the Current Actions against all of the MSSSRFSFM Defendants.   Judge Freeman's decision is consistent with the Third DCA's holding that:

> **Dinuro has no direct interest in the case and no standing** upon which to seek relief from judgment.  Dinuro is neither one of the parties to the case, since only SR Acquisitions and San Remo are parties, nor a party's representative, as **Dinuro was outvoted by its co-members and cannot act on behalf of San Remo**.

*See* Ex. 6, at 5 (emphasis added).

Nevertheless, Dinuro refuses to accept that it has no standing and no viable claims against the MSSSRFSFM Defendants -- something that several courts have already decided.  As a result, Dinuro filed its SAC, which is its third attempt to state a viable claim against the MSSSRFSFM Defendants.  In its SAC, Dinuro asserts virtually identical causes of action to the ones that were previously dismissed and improperly attempts to assert new claims against the MSSSRFSFM Defendants by purported Plaintiffs the Romagnoli brothers without leave of court.

---

[12] Macedo and Camacho had not yet been served with process.

1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI   FORT LAUDERDALE   WEST PALM BEACH   ORLANDO   TAMPA   TALLAHASSEE   AMSTERDAM

Accordingly, dismissal with prejudice is warranted where, as here, it is shown that further amendment would be futile to state a viable claim, and the privilege to amend has been abused.[13]

## THE STANDARD FOR DISMISSAL

In resolving a motion to dismiss, the Court must accept as true only those well-pleaded factual allegations that support a facially plausible claim. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-54 (2009). In contrast, "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) (quotation marks omitted); *accord Iqbal*, 129 S.Ct. at 1949-50. Similarly, formulaic recitations of the elements of a cause of action are insufficient. *Id.* at 1949.

Thus, a complaint is properly dismissed where a plaintiff (i) merely alleges elements of a cause of action with no well pled facts and/or (ii) fails to plead facts sufficient to establish a "plausible" claim – not simply a conceivable claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). In *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327 (11th Cir. 2010), the Eleventh Circuit, discussing the Supreme Court's pleading requirements established in *Twombly* and *Iqbal*, held that:

> Plausibility is the key, as the well-pled allegations must nudge the claim across the line from conceivable to plausible. And to nudge the claim across the line, the

---

[13] *See Gateway Investors, LLC v. Innovest Cappital, Inc.*, 402 Fed. Appx. 459, 461 (11th Cir. 2010) (holding that district court did not abuse its discretion in dismissing plaintiff's complaint with prejudice, where plaintiff had been given three attempts to amend and any additional attempts to amend would be futile); *accord Kohn v. City of Miami Beach*, 611 So. 2d 538, 539 (Fla. 3d DCA 1992) ("It is settled that as an action progresses, the privilege of amendment progressively decreases to the point that the trial judge does not abuse his discretion in dismissing with prejudice. While there is no magical number of amendments which are allowed, we have previously observed that with amendments beyond the third attempt, dismissal with prejudice is generally not an abuse of discretion. There is simply a point in litigation when defendants are entitled to be relieved from the time, effort, energy, and expense of defending themselves against seemingly vexatious claims.") (internal citations omitted).

11

1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI   FORT LAUDERDALE   WEST PALM BEACH   ORLANDO   TAMPA   TALLAHASSEE   AMSTERDAM

complaint must contain more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.

626 F.3d at 1333 (internal citations and quotation marks omitted).

Only after the Court has conducted a context-specific inquiry, and has found sufficient factual allegations to support a claim that is facially plausible, may a complaint survive a 12(b)(6) challenge.  *See Iqbal*, 129 S.Ct. at 1950-52.  Moreover, documents to which Plaintiff's lawsuit relates, or relies on, (*e.g.*, the Operating Agreement) are to be considered as part of the Complaint.  "Documents whose contents are alleged in a Complaint . . . **may** be considered on a motion to dismiss, and the attachments of same by a defendant to a motion to dismiss will not convert the motion into one for summary judgment."  *Rhodes v. Omega Research Inc.*, 38 F.Supp.2d 1353, 1357-58 (S.D. Fla. 1999) (emphasis added).

## ARGUMENT

The instant lawsuit is entirely premised upon the sale of two Notes secured by commercial property in which Dinuro concedes that (1) the Companies defaulted on the Notes; (2) the Notes were sold by Ocean Bank to SR Florida City and SR Homestead (jointly, the "SR Entities") at par value; (3) Dinuro had the opportunity to participate in the SR Entities' acquisition of the Notes; (4) Dinuro attempted to purchase the Notes on its own; (5) the Companies still owned the subject property at the time Dinuro filed its original Verified Complaint, its FAC and its SAC; and (6) the Third DCA held that "Dinuro cannot act on behalf of [the Companies]."  Consequently, based upon the foregoing undisputed facts, Dinuro is precluded from pursuing this frivolous lawsuit.  The Bank's sale of the Notes to the SR Entities is simply not actionable.

1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

I.     **FLORIDA'S THIRD DCA ALREADY DECIDED THAT PLAINTIFF HAS NO STANDING TO ACT ON BEHALF OF THE COMPANIES AND, THEREFORE, THE ENTIRE ACTION MUST BE DISMISSED**

Standing "is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir.2005)(quotation omitted).  There are two aspects to standing jurisprudence: (1) Article III standing, which enforces the Constitution's "case or controversy" requirement, which is established by the moving party showing an "injury in fact"; and (2) "prudential standing, which embodies 'judicially self-imposed limits on the exercise of federal jurisdiction.' " *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 11–12 (2004)(quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

In the case at bar, Plaintiff is unable to establish that it has standing to maintain the instant action under Florida and Federal law and, therefore, all of its claims must be dismissed.  Essentially, Plaintiff claims that the Companies sustained damage.  However, Plaintiff is unable to assert that it has authority to act on behalf of the Companies (or has been injured independently of any injury to the Companies).  Any claims for the alleged loss sustained by the Companies must be brought by the Companies.[14]

> Chapter 608 of the Florida Statutes, governing LLCs, provides that: a member of an LLC is not a proper party to proceedings by an LLC, Fla. Stat. § 608.462; a member of an LLC has no interest in property acquired by an LLC, which is instead property of the company, Fla. Stat. § 608.425; and, a member of an LLC owns as his own personal property only this interest in the LLC itself. Fla. Stat. § 608.431

*United States v. All Funds in the Account of Prop. Futures, Inc.*, 08-81244-CIV, 2011 WL 5084319 (S.D. Fla. 2011) (holding that member of an LLC lacked standing to bring claim in

---

[14] This is not meant to suggest that the Companies have been injured, merely that Plaintiff is unable to establish any independent injury sufficient to confer standing on Plaintiff.

1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI   FORT LAUDERDALE   WEST PALM BEACH   ORLANDO   TAMPA   TALLAHASSEE   AMSTERDAM

forfeiture proceeding in member's own name).

Likewise, in the FC Foreclosure Action -- addressing the very same facts as this case --, the Third DCA held that "Dinuro has no direct interest in this case and no standing" as "Dinuro is . . . [not the Companies'] representative, as Dinuro was outvoted by its co-members and **cannot act on behalf of San Remo**." *SR Acquisitions-Florida City, LLC v. San Remo Homes at Florida City, LLC*, --- So.3d ---, No. 3D11–2393, 2011 WL 5964348 at *3 (Fla. 3d DCA November 30, 2011) (emphasis added) (citing Fla. Stat. § 608.422(2)(b), 4(b), (2010), which states that under Florida law, unless the agreement provides otherwise, a majority of the managers can vote for the LLC to take action).  Therefore, because Plaintiff lacks any interest in the Property (i.e., it belonged to the Companies – not Dinuro), and lacks the authority to bring any claims on behalf of the Companies, Plaintiff does not have standing to raise the claims asserted (especially not for the <u>third</u> time).  Accordingly, each and every one of the Counts of the SAC should be dismissed with prejudice.

## II.  PLAINTIFF HAS NOT SUFFERED, OR ALLEGED, ANY DAMAGES AND, THEREFORE, THE ENTIRE ACTION MUST BE DISMISSED

Each of the causes of action brought by Plaintiff fails because Plaintiff does not properly allege, and cannot allege, that it sustained any damages.  "Even assuming arguendo, that a 'wrong' . . . was perpetrated by the defendants on the plaintiff, it is, nonetheless, well-established in the common law that there is no valid cause of action where there is shown to exist, at the very most, a 'wrong' without 'damage.' "  *McIntyre v. McCloud*, 334 So. 2d 171, 172 (Fla. 3d DCA 1976) (citing *Scott–Steven Devlp. Corp. v. Gables By The Sea, Inc.*, 167 So. 2d 763 (Fla. 3d DCA 1964) (holding that plaintiff was not entitled to recover damages for breach of contract absent any evidence of damages)).  "Where there is no proof of damages, there can be no recovery." *Broxmeyer v. Elie*, 647 So.2d 893, 895 (Fla. 4th DCA 1994) (citing *Ryan v. Atlantic*

14

1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI   FORT LAUDERDALE   WEST PALM BEACH   ORLANDO   TAMPA   TALLAHASSEE   AMSTERDAM

*Fertilizer & Chemical Co.*, 515 So. 2d 324 (Fla. 3d DCA 1987) and *All Florida Surety Co. v. Vann*, 128 So. 2d 768 (Fla. 3d DCA 1961)).

In the case at bar, the entire SAC is completely devoid of coherent allegations that Plaintiff suffered any out of pocket damages by virtue of the Bank's sale of the Notes to the SR Entities. Nevertheless, in an attempt to allege that it sustained damages, Plaintiff advances several insufficient theories of damages. First, Plaintiff states that the SR Entities' purchase of the land resulted in an immediate gain as the book value of the Notes was lower than the fair market value of the property subject to the mortgage and that Dinuro was deprived of the opportunity to share in this unrealized "gain." *See* SAC ¶ 67(a). Second, Dinuro alleges that it was denied the right to share in any future profits earned by the Companies. SAC ¶ 67(b). Third, Dinuro claims that it was deprived of the right to recover its proportional share of the expenses incurred by the Companies and/or that it lost its capital investment in the Companies. SAC ¶ 67(c) and (d). Finally, the Romagnoli brothers allege that they have been damaged due to the possibility of the SR Entities enforcing the personal Guarantees of Dinuro's principals and that the value of Dinuro has decreased due to the decrease in value of the Companies. SAC ¶ 67 (e) and (f). While Dinuro attempts to cobble together some theory of damages, a review of the SAC clearly confirms that: (1) Plaintiff has **not directly** suffered any damages; and (2) the alleged damages are contradictory and wholly speculative.

### A. Plaintiff Has Not Been Directly Damaged.

In order to state a cause of action for damages, the party claiming damages must show that the injuries sustained are the direct, natural and necessary result of the injury. *Seaboard Air Line Ry. Co. v. Hess*, 74 So. 500, 502 (Fla. 1917). Where a shareholder seeks to recover damages based on an injury to a corporation, the shareholder must show that it sustained injuries directly, not merely indirectly as a result of the injury to the corporation. As Florida's Third

15

1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI   FORT LAUDERDALE   WEST PALM BEACH   ORLANDO   TAMPA   TALLAHASSEE   AMSTERDAM

District Court of Appeal held:

> A stockholder may bring a suit in his own right to redress an injury sustained
> directly by him, and which is separate and distinct from that sustained by other
> stockholders; however, if injury is primarily against corporations, or stockholders
> generally, then the cause of action is in the corporation and the individual's right
> to bring it is derived from the corporation.

*Dubbin v. Touche Ross & Co.*, 324 So. 2d 128, 128 (Fla. 3d DCA 1975). *See also Chemplex Florida v. Norelli*, 790 So.2d 547, 549-50 (Fla. 4th DCA 2001) (quoting *Fort Pierce Corp. v. C.L. Ivey*, 671 So.2d 206 (Fla. 4th DCA 1996)).

As highlighted by Plaintiff's purported "theory on damages," Plaintiff has not suffered any direct damages. All of the damages complained of are based on the fact that the Companies were purportedly damaged.[15] Simply put, Plaintiff's claim is that the Companies sustained a financial loss and, as a result, Dinuro lost money as a shareholder. However, such a claim is insufficient to support a direct injury for damages. *See Braun v. Buyers Choice Mortg. Corp. ex rel. McAloon*, 851 So. 2d 199, 203 (Fla. 4th DCA 2003) (holding that shareholder had failed to state a direct cause of action against remaining shareholders because the fact that the corporation went out of business was "at best, an indirect injury to" the suing shareholder).

Plaintiff does not seek recovery for the Companies, but rather seeks to "shake-down" others for money. This is evidenced by the fact that the Companies are not even parties to this action. This material defect leaves Plaintiff without a cause of action and this Court without jurisdiction. In a derivative action (i.e., an action by a shareholder to recover damages based on injury to a corporation):

> The corporation is a necessary defendant. In other words, the corporation on
> behalf of which plaintiffs sue must be made a party defendant so that a decree

---

[15] This is not to suggest that either Company actually sustained any damages. Rather, undersigned counsel is merely pointing out that Plaintiff's claims for direct damages fail as a matter of law.

1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI   FORT LAUDERDALE   WEST PALM BEACH   ORLANDO   TAMPA   TALLAHASSEE   AMSTERDAM

may appropriately give the corporation the fruit of any recovery by the plaintiffs. The corporation is not merely a proper party, but is an essential, indispensable party, and **the failure to make the corporation a party is not a mere defect of parties but leaves the stockholder without a cause of action and the court without jurisdiction.**

*Alario v. Miller*, 354 So.2d 925, 927 (Fla. 2d DCA 1978) (emphasis added).  The SAC does not include the Companies as parties, nor does it seek derivative recovery on behalf of the Companies.  To the contrary, Plaintiff only seeks to recover for itself individually.  However, Plaintiff has no individual cause of action and the SAC should be dismissed.

**B.   Plaintiff's Theory of Damages is Contradictory and Speculative.**

Each of Plaintiff's assertions relating to damages in the SAC is also wholly speculative.  For example, Plaintiff claims that it "**may** be liable for any deficiencies resulting from the sale of the property."  *See* SAC, ¶ 67(e) (emphasis added).  This single statement highlights two of the pleading deficiencies in Plaintiff's claim for damages.  First, the SR Entities merely owned the Notes by virtue of their purchase from the Bank - - they did not own the subject real estate and took nothing from the Companies at the time that Plaintiff filed its original Verified Complaint, its FAC and the SAC.  The only thing that changed was the name of the lender (i.e., the outstanding balance owed on the Notes was owed to the SR Entities instead of Ocean Bank).  Second, there is nothing to suggest that Plaintiff has **already** sustained any damages – it is merely a hypothecation of future damages.

The Florida Supreme Court has held that "to warrant a recovery of substantial damages, the losses complained of must have actually and proximately resulted from the breach of the contract . . . and the amount of the losses must be capable of reasonably certain ascertainment, and not remote, conjectural, contingent, or speculative." *Atlanta & St. A.B. Ry. Co. v. Thomas*, 53 So. 510, 514-15 (Fla. 1910).  Federal courts, applying Florida law, have likewise held that:

17

1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • **ph** 305.358.6300 • **fx** 305.381.9982 • **www.shutts.com**

MIAMI    FORT LAUDERDALE    WEST PALM BEACH    ORLANDO    TAMPA    TALLAHASSEE    AMSTERDAM

> Proof must show with reasonable certainty that the plaintiff suffered damages and that the damages flowed as the natural and proximate result of defendant's wrongful conduct. Once the causal connection has been demonstrated, . . . the amount of damages must be capable of proof to a reasonable certainty and not left to speculation or conjecture.

*Aldon Indus., Inc. v. Don Myers & Associates, Inc.*, 517 F.2d 188, 191 (5th Cir. 1975) (internal citations omitted).

Moreover, "special or consequential damages that is, damages which do not necessarily result from the injury complained of or which the law does not imply as the result of that injury must be particularly specified in the plaintiff's pleading." *Bazal v. Belford Trucking Co., Inc.*, 442 F. Supp. 1089, 1100 (S.D. Fla. 1977) (applying Florida law). However, "[t]he chief characteristic of special damages is a realized loss." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So.2d 381, 388 (Fla. 4th DCA 1999); *see also Bothmann v. Harrington*, 458 So.2d 1163, 1170 (Fla. 3d DCA 1984) ("Regardless of which theory a plaintiff is proceeding under, 'special damages' generally means pecuniary loss"). As Dinuro has not, and cannot, claim that it has suffered an actual loss, its theory on damages is too speculative to meet the necessary pleading requirements and the SAC must be dismissed. *Augustine v. S. Bell Tel. & Tel. Co.*, 91 So. 2d 320, 324 (Fla. 1956), distinguishing *Byers v. Southern Bell Tel. & Tel. Co.*, 73 So. 2d 875, (Fla. 1954) (stating that dismissal is proper where "the complaint itself revealed that the damages alleged were either non-recoverable or else on the face of the complaint were shown to be too remote and speculative even if proved."); *accord Stein v. Paradigm Mirasol, LLC*, 586 F.3d 849, 858 (11th Cir. 2009) (stating that under Florida law speculative damages are not recoverable for breach of contract).

In addition, Plaintiff's damages claims are directly contradicted by the underlying Operating Agreements. (SAC, Ex. A and B). The Operating Agreements specifically provide that: "no Manager shall be compensated for services rendered to the LLC," and that "[n]o

1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • **ph** 305.358.6300 • **fx** 305.381.9982 • **www.shutts.com**

MIAMI   FORT LAUDERDALE   WEST PALM BEACH   ORLANDO   TAMPA   TALLAHASSEE   AMSTERDAM

Member shall be entitled to demand or receive a distribution of LLC property in return for his capital contribution to the LLC." *See* Operating Agreements, SAC, Exs. A and B §§ 3.6, 5.8. These provisions expressly contradict Dinuro's claim that it is entitled to be compensated for "its proportional share of the expenses relating to the pre-development planning and design" of the property. *See* SAC ¶ 67(c). Accordingly, Plaintiff's theory of damages is improper and the SAC should be dismissed.

Finally, Plaintiff's claim that it was supposedly denied its rights to share in any future profits of the Companies is also speculative and unsupported by the allegations of the SAC. As already noted, Plaintiff is not entitled to recover "lost profits" damages based on the potential losses to the Companies. Moreover:

> [T]o recover anticipated lost profits in Florida, the plaintiff must show such a loss with reasonable certainty by competent proof. To carry this burden, it is incumbent upon the plaintiff to show a history of profitability for a reasonable time anterior to the breach of the contract sued upon. It is undisputed that [plaintiff] had no history of past profits, and, therefore, any award for loss of future profits would be "too remote, contingent, and speculative to meet the legal standards of reasonable certainty."

*T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1533 n. 14 (11th Cir. 1985) (quoting *Polyglycoat Corp. v. Hirsch Distrib., Inc.*, 442 So.2d 958, 959 (Fla. 4th DCA 1983)) (internal citations omitted). Plaintiff has not alleged, and cannot allege, that the Companies constructed a single unit on either the Homestead Property or the Florida City Property. Accordingly, Plaintiff's purported damages are too remote and speculative to state a claim for damages.

### III.   PLAINTIFF'S ALTER EGO THEORY OF LIABILITY IS INSUFFICIENT AS A MATTER OF LAW

Throughout the SAC, Plaintiff alleges that some entity or person is subject to liability because that entity or person acted through another entity or person. Presumably, Plaintiff is attempting to bring claims against the MSSSRFSFM Defendants based on the actions of its

19

1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI   FORT LAUDERDALE   WEST PALM BEACH   ORLANDO   TAMPA   TALLAHASSEE   AMSTERDAM

managing members and the actions of other companies owned and/or operated by those members

based upon an alter-ego theory of liability. This attempt fails as a matter of law as the SAC fails

to meet the basic test for piercing the corporate veil under a theory of alter-ego liability.

> Under the basic alter ego theory (confusion of identities), the personal affairs of
> the shareholder become confused with the business affairs of the corporation.
> Individual liability under this theory rests in part on the fact that a shareholder has
> taken it upon himself to disregard the corporate entity. After a showing of
> confusion of identities, there must additionally be a showing of improper conduct.
> **A simple showing that a corporation is an alter ego would not, without a
> concomitant showing of wrongdoing, be sufficient to pierce the corporate
> veil.** Finally, the demonstrated improper conduct must be the proximate cause of
> the alleged loss.

*Solomon v. Betras Plastics, Inc.*, 550 So. 2d 1182, 1184-1185 (Fla. 5th DCA 1989) (internal

footnotes omitted) (emphasis added); *accord Dole Food Co. v. Patrickson*, 538 U.S. 468, 475

(2003) ("[t]he doctrine of piercing the corporate veil . . . is the rare exception applied in . . .

exceptional circumstances"); *see also In re World Vision Entm't, Inc.*, 275 B.R. 641, 661 (Bankr.

M.D. Fla. 2002) (holding that the decision whether to pierce the corporate veil is a question of

state law).

It is axiomatic that a corporation can only act through its agents and principals.

*Browning v. State*, 133 So. 847, 848 (Fla. 1931) ("A corporation can act only through its officers

and agents"). The acts of an individual acting on behalf of a corporation are indistinguishable

from the acts of the corporation itself, and will be treated as acts on behalf of the corporation. It

does not follow, however, that the converse is necessarily true—simply because an agent or

principal of a corporation acts, does not necessarily make that action one attributable to the

corporation and "courts are reluctant to pierce the corporate veil" because the nature of a

corporation is "generally to limit liability and serve a business convenience." *Roberts' Fish

Farm v. Spencer*, 153 So. 2d 718, 721 (Fla. 1963). As noted by the Florida Supreme Court,

20

1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI   FORT LAUDERDALE   WEST PALM BEACH   ORLANDO   TAMPA   TALLAHASSEE   AMSTERDAM

> The mere fact that one or two individuals own and control the stock structure of a corporation does not lead inevitably to the conclusion that the corporate entity is a fraud or that it is necessarily the alter ego of its stockholders to the extent that the debts of the corporation should be imposed upon them personally. If this were the rule, it would completely destroy the corporate entity as a method of doing business and it would ignore the historical justification for the corporate enterprise system.

*Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1120 (Fla. 1984). *See also Hilton Oil Transp. v. Oil Transp. Co., S.A.*, 659 So. 2d 1141 (Fla. 3d DCA 1995) (same). As is abundantly clear from a review of the SAC, Plaintiff does not have legitimate claims against each of the MSSSRFSFM Defendants, and lumping them all together in a misguided and incoherent attempt to state a cause of action against multiple parties based on the fact that those parties are somehow related to other parties is insufficient as a matter of law and the SAC should be dismissed.

IV.   **COUNT I OF THE SAC FAILS AS A MATTER OF LAW—DINURO HAS NOT STATED A CAUSE OF ACTION AGAINST MERICI AND STARMAC FOR BREACH OF CONTRACT**

A.   **Ocean Bank's Sale Of The Notes To The SR Entities Does Not Create A Cause Of Action For Breach Of Contract Against Merici And Starmac.**

In Count I of its SAC, Dinuro alleges that Merici and Starmac essentially breached the parties' contracts (i.e., the Operating Agreements) due to Ocean Bank's sale of the Notes to the SR Entities. However, as stated in the SAC, the Notes **were purchased by the SR Entities** – not Merici and/or Starmac (and neither Merici nor Starmac are principals, members and/or managers of the SR Entities). (SAC ¶¶ 62-63.) Therefore, Ocean Bank's decision to sell the defaulted Notes to the SR Entities cannot give rise to a cause of action for breach of contract against Merici and/or Starmac.

Moreover, throughout the SAC, Dinuro claims that it was **Macedo** and **Camacho's** actions that resulted in the SR Entities' acquisition of the Notes. Specifically, the SAC alleges:

1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI   FORT LAUDERDALE   WEST PALM BEACH   ORLANDO   TAMPA   TALLAHASSEE   AMSTERDAM

1. "**Macedo and Camacho** concocted a scheme whereby –**trading on Macedo's inside position as a director of the Bank**—they would purchase the [Company's] promissory note **themselves** from the Bank . . .  [in order] to ultimately obtain the [Company's property] for **themselves**."  (SAC ¶ 51 (emphasis added));

2. "the Bank gave its director and shareholder, **Macedo**, favorable treatment." (SAC ¶ 63 (emphasis added)); and

3. "**Camacho** informed the Romagnoli brothers by letter of **his and Macedo's** intention to create a competing company that would purchase the [Company's] loan from the Bank." (SAC ¶ 56 (emphasis added)).

Consequently, for the reasons outlined in section III, *supra*, the alleged actions of Ocean Bank, SR Florida City, SR Homestead, Macedo and/or Camacho cannot be the basis of a breach of contract action against Merici and/or Starmac.

In addition, Plaintiff admits that the Companies borrowed funds for their real estate ventures and were obligated to repay the balance owed on the Notes (SAC ¶¶ 2, 37-39). Moreover, there is no dispute that Ocean Bank, as the owner of the Notes, had every right to sell the Notes to whomever it wanted and at whatever price it chose.  This is especially true given the fact that, although almost every financial institution is selling defaulted notes at substantial discounts, the defaulted Notes were sold at full value a/k/a par value.[16]  (SAC ¶ 58.)

Furthermore, within the SAC, Plaintiff essentially concedes that Defendants' conduct was proper.  Specifically, Dinuro admits that its principals were approached and provided with the opportunity to participate in the SR Entities' purchase of the defaulted Notes from Ocean Bank.[17]

---

[16] Throughout its original <u>Verified</u> Complaints, Plaintiff repeatedly admitted that the Notes were purchased "from the Bank at **par value**" (*i.e.*, they were not discounted) (Compl. ¶¶ 1, 27 and 31 (emphasis added)), that the Notes were in default and classified the amount owed by the Companies as "**bad debt**."  (Compl. ¶¶ 1, 29-30 and 35-36.)  Consequently, there was no question that Ocean Bank did not provide favorable treatment to the SR Entities.  Plaintiff now attempts to avoid dismissal by removing all references to "par value."  This strategic omission does not change the fact that a dismissal is still warranted.

[17] Alternatively, Dinuro could have made or participated in the "pay down requirements and exten[ded] [the] terms for the continuation of the loan" to the Companies.  *See* SAC ¶¶ 53, 54.

1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI   FORT LAUDERDALE   WEST PALM BEACH   ORLANDO   TAMPA   TALLAHASSEE   AMSTERDAM

(SAC ¶ 56.)  However, they decided not to participate in the SR Entities.  *Id.*  Instead, Dinuro admits that its principals made their own unsuccessful attempt to purchase the Notes directly from Ocean Bank (i.e., without Merici and/or Starmac's participation) (SAC ¶ 58-60).[18] Consequently, it is absurd that Dinuro is suing Merici and Starmac for allegedly engaging in the very actions that it committed, especially when such actions, unlike Dinuro's surreptitious attempts, were made with Dinuro's full knowledge and with the prior opportunity to participate. Simply put, Ocean Bank's sale of the Notes to the SR Entities is not actionable.

### B. The Allegations Asserted In Count I Are Woefully Inadequate As Plaintiff Fails To Specify How The Contract Was Purportedly Breached By Merici And/Or Starmac.

The SAC must also be dismissed as a matter of law because it fails to allege, at a minimum, how Sections 7.4, 7.5 and 7.52 of the Operating Agreements were purportedly breached, the specific purported actions of Merici and Starmac that allegedly breached the contract, and the damage that Dinuro purportedly sustained.  *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1037 (11th Cir. 2001) ("pleadings must be something more than an ingenious academic exercise in the conceivable").  The Florida Supreme Court has described Florida's fact-pleading standards as follows:

> A liberal construction will be allowed to effectuate the intended purpose of allowing a complainant to state his case and facilitate an expeditious trial on its merits however he must, in fact, state a case showing a legal liability.  It must be more than a grievance. **He must plead factual matter sufficient to apprise his adversary of what he is called upon to answer so that the court many, upon proper challenge, determine its legal effect.**

However, that option would have required Dinuro to actually make payments out of its own pocket instead of simply attempting to be subsidized by others.

[18]In its original Verified Complaints, Plaintiff explicitly admitted that instead of participating in the SR Entities' attempted purchase, Dinuro's principals "tried to purchase the loan from the bank themselves."  Complaint ¶34.

23

*Messana v. Maule Industries, Inc.,* 50 So. 2d 874, 876 (Fla. 1951) (emphasis added).

The SAC's vague allegations that Merici and Starmac engaged in actions that "may materially affect the [Companies] or [their] property" or that "would make it impossible or unreasonably burdensome to carry on the ordinary business and purpose of the [Companies]" (SAC ¶ 70) is woefully insufficient.  Plaintiff is required to provide substantive allegations instead of theoretical conclusory remarks.

<div style="margin-left:2em">

**C.      Dinuro's Allegations Concerning an Alleged Breach of the Implied Covenant of Good Faith and Fair Dealing Are Duplicative and Improper**

</div>

Dinuro also attempts to make its purported breach of contract claim a matter of "bad faith" by including vague and conclusory allegations that Merici and Starmac breached the implied covenant of good faith and fair dealing.  This attempt must fail as a matter of law.

Florida courts have consistently held that a claim for breach of the implied covenant of good faith and fair dealing cannot exist without a breach of the underlying contract. *S. Internet Sys., Inc. ex rel. Menotte v. Pritula*, 856 So. 2d 1125, 1127-28 (4th DCA 2003) (a breach of the implied covenant of good faith and fair dealing: (1) presupposes a binding and enforceable contract; and, (2) requires the breach of an express term thereof); *Insurance Concepts and Design, Inc. v. Healthplan Serv., Inc.*, 785 So. 2d 1232, 1234-35 (Fla. 4th DCA 2001) ("claim for breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law absent an allegation than an express term of the contract has been breached").  In the present case, Dinuro merely slaps some vague and conclusory allegations on the end of its breach of contract count. (SAC ¶ 71.) Consequently, the alleged conduct, whether couched as a purported breach of contract or breach of the implied covenant of good faith and fair dealing, is improper.

In addition, Florida's implied covenant of good faith is a gap-filling rule, not an independent cause of action. *Burger King Corp. v. C.R. Weaver*, 169 F.3d 1310, 1317-18 (11th

<div align="center">24</div>

1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • **ph** 305.358.6300 • **fx** 305.381.9982 • **www.shutts.com**

MIAMI   FORT LAUDERDALE   WEST PALM BEACH   ORLANDO   TAMPA   TALLAHASSEE   AMSTERDAM

Cir. 1999). "Because it is a gap-filling rule, the covenant applies only when the propriety of the conduct is not resolved by the terms of the contract. *Shibata v. Lim*, 133 F.Supp.2d 1311, 1318 (M.D. Fla. 2000). Therefore, "[i]n order to state a claim for breach of the implied duty of good faith and fair dealing, [the moving party] must assert allegations different from those underlying the accompanying breach of contract." *Int'l Brokerage & Surplus Lines, Inc. v. Liberty Mut. Ins.*, 2007 WL 220172 (M.D. Fla. 2007).

## V. DINURO'S CLAIM FOR BREACH OF FIDUCIARY DUTY AGAINST MERICI AND STARMAC (COUNT II) IS IMPROPER AND FAILS TO MEET BASIC PLEADING REQUIREMENTS UNDER FLORIDA LAW

### A. Dinuro's Claims for Breach of Fiduciary Duty Fail as a Matter of Substantive Florida Law.

The elements of a breach of fiduciary duty claim are: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damages that are proximately caused by the breach. *Oginsky v. Paragon Properties of Costa Rica LLC*, 784 F. Supp. 2d 1353, 1375 (S.D. Fla. 2011) (citing *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002)). The alleged actions taken by Merici and Starmac do not constitute a breach of fiduciary duty. Pursuant to Florida Statutes, § 608.4225 (1), each manager and managing member owes a duty of loyalty and a duty of care to the limited liability company and all of the members of the limited liability company. However,

> A manager or managing member does not violate a duty or obligation under [the Florida Limited Liability Company Act] or under the articles of organization or operating agreement merely because the manager's or managing member's conduct furthers such manager's or managing member's own interest.

FLA. STAT. § 608.4225 (d). Dinuro's claims that Merici and Starmac "owed Dinuro a fiduciary duty to safeguard Dinuro's capital investment and act in the best interests of the [Companies] and not for themselves," (SAC, ¶ 74), are directly contradicted by Florida law. The properties were purchased by SR Florida City and SR Homestead, not Merici and/or Starmac. Moreover, the fact that Merici and Starmac may have furthered their own interest by not voluntarily

1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • **ph** 305.358.6300 • **fx** 305.381.9982 • **www.shutts.com**

MIAMI   FORT LAUDERDALE   WEST PALM BEACH   ORLANDO   TAMPA   TALLAHASSEE   AMSTERDAM

investing additional capital in an entity that did not produce any income when their business partner chose not to invest does not mean that Merici and Starmac breached their fiduciary duties to Dinuro.  Furthermore, Dinuro attempts to attribute the actions of Camacho and Macedo to Merici and Starmac by virtue of the fact that the former are the principals of the latter.  There is no legal basis for Dinuro to ignore well-established law on the corporate form and Dinuro has not pled any factual allegations sufficient to pierce the corporate veil.  Accordingly, Dinuro's claims for breach of fiduciary duty must be dismissed.

### B.      Dinuro's Claims for Breach of Fiduciary Duty Also Fail Procedurally

Pursuant to Florida law, a cause of action alleging a breach of fiduciary duty must be pled with particularity.  *See Sussman v. Weintraub*, 06-20408, 2007 WL 908280 (S.D. Fla. 2007) (citing *Parker v. Gordon*, 442 So. 2d 273, 275 (Fla. 4th DCA 1983)).  Accordingly, where a pleader compiles a list of alleged breaches, but there are no allegations as to what injury the pleader sustained as a result of those alleged breaches, nor how the injury is causally related to the alleged breaches, the pleader fails to state a cause of action for breach of fiduciary duty. *Spencer v. Wachovia Bank, N.A.*, 05-81016-CIV-RYSKAMP, 2006 WL 3408043 (S.D. Fla. 2006) (dismissing action for failure to state a claim, where plaintiff failed to plead any entitlement to damages proximately caused by the alleged breach of fiduciary duty).  *See also Bankers Trust Realty, Inc. v. Kluger*, 672 So. 2d 897, 898 (Fla. 3d DCA 1996) (affirming the trial court's dismissal of a claim for breach of fiduciary duty for failure to state a cause of action); *and see Himes v. Brown & Co. Securities Corp.*, 518 So. 2d 937 (Fla. 3d DCA 1987) (plaintiff is required to demonstrate actual proximate damage suffered as a result of its claims, including the alleged breach of fiduciary duty).

The SAC fails, *inter alia*, to articulate: (1) facts suggesting that Ocean Bank's decision to sell the Notes to the SR Entities (i.e., a change in lender) is a purported breach of fiduciary duty

1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI   FORT LAUDERDALE   WEST PALM BEACH   ORLANDO   TAMPA   TALLAHASSEE   AMSTERDAM

by Merici and/or Starmac when the outstanding balance was owed regardless of the identity of the lender; (2) how the initial loans and the Companies' subsequent inability to repay the loans constitute an alleged breach of fiduciary duty by Merici and Starmac (*See* SAC ¶ 75(c)); (3) why Merici and Starmac's refusal to voluntarily execute additional commitment letters to Ocean Bank was a breach of fiduciary duty (SAC ¶ 75(a)) when Section 4.2 of the Operating Agreements does not require members to make additional capital contributions and personal loans are clearly not required;[19] (4) when, how and why Merici/Starmac allegedly participated in "creating [the SR Entities]" and the "decisions to have [the SR Entities] deem [the Companies] in default of the loan[s]" (SAC ¶¶ 75(b)-(c)); and (5) why the actions in which Dinuro admittedly engaged (i.e., attempting to purchase the Notes directly from Ocean Bank), which form the basis of its claim against the MSSRFSFM Defendants (See SAC ¶¶ 58-61), were permissible for Dinuro while the very same purported actions by some of the Defendants were improper.

Although the SAC is replete with the same conclusory allegations contained in the prior Complaints, it is still impossible to ascertain exactly what (if anything) Merici and/or Starmac have allegedly done wrong and how those allegations supposedly support this cause of action. Accordingly, Plaintiff's failure to properly plead and define the issues necessitates the dismissal of Count II of the SAC.

## VI.   THE ROMAGNOLI BROTHERS' CLAIM FOR BREACH OF FIDUCIARY DUTY AGAINST MACEDO AND CAMACHO (COUNT III) IS IMPROPER

In Count III of the SAC, the Romagnoli brothers attempt to assert the identical claims against Macedo and Camacho as those raised by Plaintiff Dinuro against Merici and Starmac in

---

[19]Section 4.2 of the Operating Agreements (attached as Exhibit A and B to the SAC) explicitly states that "[e]xcept as specifically set forth in this Agreement, no Member shall be required to make additional Capital Contributions."

27

1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI   FORT LAUDERDALE   WEST PALM BEACH   ORLANDO   TAMPA   TALLAHASSEE   AMSTERDAM

Count II.[20]  The Romagnoli brothers contend that Camacho and Macedo somehow owed them a fiduciary duty by virtue of the unsupported allegation that they were "business partners" and needed to properly conduct the Companies' business. (SAC ¶ 78).  However, it was Merici, Starmac and Dinuro – not Macedo, Camacho and the Romagnoli brothers – that were Members of the Companies (SAC ¶¶ 11-15, 17, 18, 31, 40).  Consequently, Macedo and Camacho did not have any fiduciary duty to the Romagnoli brothers and, thus, could not have breached any such imaginary duty.  Moreover, the Romagnoli brothers fail to, *inter alia:* (1) allege any fiduciary relationship with Macedo and Camacho; (2) reference any documents executed by Macedo and Camacho in their individual capacities; or (3) establish any duty or breach by Macedo and Camacho.

In addition, the Romagnoli brothers do not include a single allegation as to why this Court should ignore well-established corporate law and pierce not only the corporate veil of Defendants Merici and Starmac to get to Camacho and Macedo, but also, the corporate veil of Plaintiff Dinuro to get to the Romagnoli brothers.  Accordingly, Count III should be dismissed.

Finally, the attempted inclusion, for the very first time, of the Romagnoli brothers as "party-plaintiffs" in the Second Amended Complaint amounts to an entirely new cause of action by entirely new parties. *See generally, Martz v. Miller Bros. Co.*, 244 F. Supp. 246, 249 (D. Del. 1965).  This attempt to include new additional plaintiffs, however, is wholly improper and is an independent basis for dismissal of Count III.  In its prior Complaints, Plaintiff Dinuro failed to establish that it could maintain any viable causes of action against any of the MSSRFSFM Defendants.  Therefore, it certainly has no basis to include additional parties-plaintiff.  *See Schwartz v. The Olympic, Inc.*, 74 F. Supp. 800, 801 (D. Del. 1947) (dismissing complaint after

---

[20] As discussed, *infra*, the attempted inclusion of the Romagnoli brothers as party plaintiffs was entirely improper.

1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI    FORT LAUDERDALE    WEST PALM BEACH    ORLANDO    TAMPA    TALLAHASSEE    AMSTERDAM

plaintiff sought to amend its complaint to bring in other party plaintiffs, finding that "[i]f [plaintiff] cannot maintain his own complaint, he has no right to amend it"). Moreover, the fact that Judge Freeman's Order dismissing the FAC allowed Plaintiff Dinuro the opportunity to file a SAC does not grant Dinuro free license to include additional plaintiffs. *See Pedrina v. Chun*, 906 F. Supp. 1377, 1397 (D. Haw. 1995) *aff'd*, 97 F.3d 1296 (9th Cir. 1996) (dismissing claims of newly added plaintiffs in Fourth Amended Complaint where prior plaintiffs had not sought leave of court to include additional party plaintiffs).[21] As the Romagnoli brothers are not proper parties to this action, any claims asserted on their behalf must be dismissed.[22]

## VII.   DINURO'S CLAIM AGAINST MACEDO FOR VIOLATIONS OF 12 U.S.C. § 375 (COUNT VI) IS WHOLLY IMPROPER

In Count VI of the SAC, Dinuro attempts to assert a cause of action against Macedo for allegedly violating 12 U.S.C. § 375 (the "Federal Reserve Act"). As a threshold matter, this action must fail because 12 U.S.C § 375 only applies to member banks of the Federal Reserve System. Dinuro has not, and cannot possibly, state a cause of action under the Federal Reserve Act, as Ocean Bank is not a member of the Federal Reserve System. *See Homes by Michelle, Inc. v. Fed. Sav. Bank*, 733 F. Supp. 1495, 1498-99 (N.D. Ga. 1990) (dismissing claims based on 12 U.S.C. §§ 375b and 503 because "the Court observes that plaintiffs did not (and could not) allege in their complaint that [the defendant was] a member of the Federal Reserve System, which is an essential element of claims based on statutes that apply only to banks that are members of the Federal Reserve System."). Moreover, Dinuro cannot possibly attempt to state a

---

[21] Any attempt by the Romagnoli brothers to assert claims against Ocean Bank is equally improper. The Orders granting the MSSSRFSFM Defendants' Motion to Dismiss Dinuro's First Amended Complaint only dismissed those claims asserted against the MSSSRFSFM Defendants, (i.e., it did not include Ocean Bank). Accordingly it is wholly improper for Dinuro and/or the Romagnoli brothers to bring any new claims against Ocean Bank without leave of Court.

[22] This analysis applies to all of the Counts that are attempted to be asserted by the Romagnoli brothers.

1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

claim against Macedo for violations of 12 U.S.C. 375 as this provision was not intended to apply to individuals, only to member banks. *Id.*

To the extent Dinuro purports to state a claim against Macedo under Section 503 of the Federal Reserve Act, which imposes liability on officers and directors of member banks for violations of certain provisions of the Federal Reserve Act, such a claim must also fail as the Federal Reserve Act was not intended to apply to the type of claims asserted in this case:

> The thrust of [plaintiff's] amended complaint is that defendants perpetrated a fraud on it in securing the loan to [a third party]. The difficulty with implying a cause of action under the National Bank Act in this case is . . . **the acts of alleged mismanagement, negligence, fraud, conversion, and breach of contract generally fall within the purview of state law claims. This Court is wary of inferring a federal cause of action merely because such claims are asserted against bank officers and directors.**

*Brown Leasing, Inc. v. F.D.I.C.*, 91 C 3729, 1993 WL 115552 (N.D. Ill. 1993) (citing *Golar v. Daniels & Bell, Inc.*, 533 F.Supp. 1021, 1027 (S.D.N.Y.1982)) (internal citations omitted) (emphasis added).[23]   Accordingly, as Dinuro cannot possibly state a claim for relief under the Federal Reserve Act, Count VI should be dismissed, with prejudice.

## VIII.   DINURO FAILS TO STATE A CAUSE OF ACTION FOR CIVIL CONSPIRACY (COUNT VII)

To state a claim for civil conspiracy, a plaintiff must allege: "(a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *TracFone Wireless, Inc. v. SND Cellular, Inc.*, 715 F. Supp.

---

[23] As very few Federal Courts have analyzed the Federal Reserve Act, many courts look to 12 U.S.C. § 93, a nearly identical provision of the National Bank Act, to interpret the Federal Reserve Act. *See, e.g.*, *Brown Leasing Co. v. Cosmopolitan Bancorp, Inc.*, 42 F.3d 1112, 1117-18 (7th Cir. 1994) (analyzing the plaintiff's claims under the Federal Reserve Act by reference to the National Banking Act).

1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI   FORT LAUDERDALE   WEST PALM BEACH   ORLANDO   TAMPA   TALLAHASSEE   AMSTERDAM

2d 1246, 1262 (S.D. Fla. 2010) (quoting *Florida Fern Growers Assoc., Inc. v. Concerned Citizens of Putnam Cty.*, 616 So.2d 562, 565 (Fla. 5th DCA 1993)).

General allegations of conspiracy are inadequate; the allegations must be clear, positive, and specific. *Renpak, Inc. v. Oppenheimer*, 104 So. 2d 642, 646 (Fla. 2d DCA 1958) (citing *Gair v. Lockhart*, 47 So .2d 826 (Fla. 1950)). As "conspiracy is not a separate or independent tort," (*Hogan v. Provident Life & Acc. Ins. Co.*, 665 F. Supp. 2d 1273, 1285 (M.D. Fla. 2009)), "conspiracy allegations, which are vague, unsupported by any description of particular overt acts, and conclusory," are insufficient to state a claim for conspiracy. *Lloyd v. Hines,* 474 So. 2d 376 (Fla. 1st DCA 1985) (citing *Guedry v. Ford*, 431 F.2d 660, 664 (5th Cir. 1970) overruled on other grounds by, *Sparks v. Duval County Ranch Co., Inc.*, 604 F.2d 976 (5th Cir. 1979) ("Plaintiff's allegation that a conspiracy existed between all the captioned defendants is [conclusory] in nature and unsupported by any pleaded facts and hence insufficient to constitute a basis for relief"). In order for one to be held liable for the actions of their co-conspirators, they must have had knowledge of, and participated in, the conspiracy. *See Voll v. Randazzo*, 674 So. 2d 892 (Fla. 5th DCA 1996).

As conspiracy per se is not grounds for the award of civil damages, "the character and extent of the 'private injury' resulting from the alleged conspiracy must be pleaded by the complaining party" in order to state a cause of action for civil conspiracy. *Catlett v. Chestnut*, 146 So. 547, 548 (Fla. 1933). Likewise, the nature of the damages must be pleaded with specificity and an allegation of general, but not special, damages is insufficient. *Id. See also* 10 FLA. JUR 2D *Conspiracy—Civil Aspects* § 12.

Plaintiff's paltry and generic allegations that: "Defendants Camacho, Macedo, Starmac, Merici, Romac, Felma, Felca, Ocean Bank, SR Florida City and SR Acquisitions agreed to commit one or more of the offenses alleged in Counts I through III"; that "[o]ne or more of the

1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI   FORT LAUDERDALE   WEST PALM BEACH   ORLANDO   TAMPA   TALLAHASSEE   AMSTERDAM

defendants have, as alleged in paragraphs 24 through 67, committed an overt act in furtherance of the conspiracy"; and that "Plaintiff has sustained damages. . ." (SAC ¶¶ 100-102), completely fails to comply with the heightened pleading requirement for a civil conspiracy claim. Stated another way, Dinuro, in its third Complaint, claims that, at some point in time, some of the Defendants did something that, somehow, caused some vague and speculative damage to Plaintiff. Certainly, these vague and conclusory allegations fall far short of the specificity required in pleading a cause of action for civil conspiracy.

In addition, "an actionable conspiracy requires an actionable underlying tort or wrong." *Raimi v. Furlong*, 702 So.2d 1273, 1284 (Fla. 3d DCA 1997); *see also Loeb v. Geronemus*, 66 So. 2d 241, 243 (Fla. 1953) (holding that to determine whether a cause of action has been stated for civil conspiracy depends on whether plaintiff has stated a cause of action for the underlying tort). "Thus, a cause of action for civil conspiracy exists . . . only if the basis for the conspiracy is an independent wrong or tort which would constitute a cause of action if the wrong were done by one person." *Blatt v. Green, Rose, Kahn & Piotrkowski*, 456 So. 2d 949, 951 (Fla. 3d DCA 1984). *Accord BMC-The Benchmark Mgmt. Co. v. Ceebraid-Signal Corp.*, 292 Fed. Appx. 784, 787 (11th Cir. 2008) (holding that summary judgment against plaintiff on conspiracy claim was proper where plaintiff failed to state a cause of action for the underlying tort). Therefore, as set forth *supra*, since the other counts are improper there can be no claim for conspiracy.

Finally, Dinuro's claims for civil conspiracy against Merici and Starmac are barred by the economic loss rule. *See Clayton v. State Farm Mut. Auto. Ins. Co.*, 729 So. 2d 1012, 1014 (Fla. 3d DCA 1999). Because Dinuro has not pled an injury separate and apart from the injury caused by the alleged breach of contract, its claims for civil conspiracy cannot survive. *See Behrman v. Allstate Ins. Co.*, 388 F. Supp. 2d 1346, 1350 (S.D. Fla. 2005) (dismissing claim for civil

32

1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI   FORT LAUDERDALE   WEST PALM BEACH   ORLANDO   TAMPA   TALLAHASSEE   AMSTERDAM

conspiracy pursuant to the economic loss rule where the injury resulting from the alleged civil conspiracy was identical to the injury resulting from the alleged breach of contract).

## THE MSSSRFSFM DEFENDANTS' ALTERNATIVE MOTION TO STRIKE

In the unlikely event that the SAC is not dismissed in its entirety, the MSSSRFSFM Defendants hereby request that Plaintiff's demand for an award of its attorneys' fees (contained within paragraph B of the "Prayer For Relief" section of the SAC) be stricken. Absent a specific statute or contractual provision expressly authorizing recovery of attorneys' fees, this Court must follow the "American Rule," which mandates that each party bear its own attorneys' fees. *See Bidon v. Department of Prof. Reg.*, 596 So. 2d 450, 452 (Fla. 1992) ("[a]ttorneys' fees incurred while prosecuting or defending a claim are not recoverable in the absence of a statute or contractual agreement authorizing their recovery . . . Today, we reaffirm and reiterate our well established rule that under Florida law, each party is responsible for its own attorneys' fees unless a contract or statute provides otherwise"); *see also State Farm Fire & Cas. Co. v. Palma*, 629 So. 2d 830, 832 (Fla. 1993). As already stated herein, only Dinuro, Merici and Starmac are parties to the Operating Agreements. Any attempt by the Romagnoli Brothers to recover any fees at all, or by Dinuro to recover fees from any of the remaining Defendants is wholly improper and should be stricken.

## REQUEST FOR ATTORNEYS' FEES AND COSTS

Pursuant to Sections 15.8 and 16.8 of the Operating Agreements, Defendants Merici and Starmac hereby request that an award of their reasonable attorneys' fees and costs incurred in connection with the defense of this action be imposed against Plaintiff Dinuro.

1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI    FORT LAUDERDALE    WEST PALM BEACH    ORLANDO    TAMPA    TALLAHASSEE    AMSTERDAM

## CONCLUSION

WHEREFORE, Defendants Merici, LLC; Starmac, LLC; SR Acquisitions – Florida City, LLC; SR Acquisitions – Homestead, LLC; Romac, LLC; Felma, LLC; SR Acquisitions, LLC; Felca, LLC; and Javier Macedo respectfully request that this Court grant their Motion to Dismiss the Second Amended Complaint, with prejudice, that Merici and Starmac be awarded their reasonable attorneys' fees and costs incurred in connection with the defense of this action, and for such other and further relief as this Court deems just, proper, and equitable.

<div style="margin-left:40%">

*s/ Steven M Ebner*
Steven M. Ebner
Florida Bar No. 634727
sebner@shutts.com
Jacqueline B. Savir
Florida Bar No. 84651
jsavir@shutts.com
SHUTTS & BOWEN LLP
1500 Miami Center
201 South Biscayne Blvd.
Miami, Florida 33131
(305) 358-6300 Telephone
(305) 347-7760 Facsimile

*Attorneys for SR Acquisitions – Florida City, LLC; SR Acquisitions – Homestead, LLC; Merici, LLC; Starmac, LLC; Romac, LLC; Felma, LLC; SR Acquisitions, LLC; Felca, LLC; and Javier Macedo*

</div>

34

1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI   FORT LAUDERDALE   WEST PALM BEACH   ORLANDO   TAMPA   TALLAHASSEE   AMSTERDAM

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 2nd day of March, 2012 I electronically filed the

foregoing document with the Clerk of the Court using CM/ECF system which will send a notice

of electronic filing to the following:

Scott A. Burr, Esq.               Eduardo F. Rodriguez, Esq.
sburr@cfclaw.com                  erodriguez@arhmf.com

Carlos F. Concepcion, Esq.        Wilfredo A. Rodriguez, Esq.
Cconcepcion@cfclaw.com            frodriguez@arhmf.com

Patricia Marie Montes de Oca
pmontesdeoca@cfclaw.com
jlorenzo@cfclaw.com

I HEREBY CERTIFY that on this 2nd day of March, 2012, the foregoing document was

sent via U.S. Mail to:

Jorge E. Otero, Esq.
Otero Tomlin & Tomlin
75 Valencia Avenue, 4th Floor
Coral Gables, FL  33134

                                   *s/ Steven M Ebner*
                                   Steven M. Ebner

MIADOCS 6046285 7

1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • **ph** 305.358.6300 • **fx** 305.381.9982 • **www.shutts.com**

MIAMI   FORT LAUDERDALE   WEST PALM BEACH   ORLANDO   TAMPA   TALLAHASSEE   AMSTERDAM